063967.0014(207)                    RMC:ddm                                    #397

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

OWNERS INSURANCE COMPANY )
and AUTO-OWNERS INSURANCE )
COMPANY, )
                      )
                **Plaintiffs,** )
                      )
   **v.** )
                      )
COMPLETE MECHANICAL SERVICES, )
INC., THOMAS FLYNN and MICHAEL )
EHRHARDT, )
                      )
               **Defendants.** )

```
FILED: JULY 24, 2008
08CV4201
JUDGE SHADUR
MAGISTRATE JUDGE COLE
EDA
```

### COMPLAINT FOR DECLARATORY JUDGMENT

Now come the Plaintiffs, Owners Insurance Company and Auto-Owners Insurance Company, by their attorney, Robert Marc Chemers of Pretzel & Stouffer, Chartered, and for their Complaint for Declaratory Judgment against the Defendants, Complete Mechanical Services, Inc., an Illinois corporation, Thomas Flynn, and Michael Ehrhardt, allege the following:

#### JURISDICTION

1.     The jurisdiction of the Court is premised upon 28 U.S.C. §1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs in this action seeking a declaration of no insurance coverage.

**VENUE**

2.      Venue is premised upon 28 U.S.C. §1391 as the Defendants are residents of this District and the policies of insurance were issued in this District.

**THE PARTIES**

3.      Owners Insurance Company (hereinafter "Owners") is an Ohio insurance corporation with its principal place of business in Lansing, Michigan, which at all times herein relevant was authorized to and which did transact insurance business in the State of Illinois.

4.      Auto-Owners Insurance Company (hereinafter "Auto-Owners") is a Michigan insurance corporation with its principal place of business in Lansing, Michigan, which at all times herein relevant was authorized to and which did transact insurance business in the State of Illinois.

5.      Complete Mechanical Services, Inc. (hereinafter "CMS") is a corporation organized and existing under the laws of the State of Illinois, which maintains its principal place of business in St. Charles, Illinois, and which at times herein relevant was the named insured on certain policies of insurance issued by Owners and Auto-Owners.

6.      Thomas Flynn (hereinafter "Flynn") is an individual who is employed by CMS, and claims to be an insured on the Owners and Auto-Owners policies issued to CMS.  Flynn is a citizen of the State of Illinois and a resident of St. Charles, Illinois.

7.      Michael Ehrhardt (hereinafter "Ehrhardt") is a citizen of the State of Illinois and a resident of Carol Stream, Illinois, and a former employee of CMS and co-employee of

2

Flynn, and is the plaintiff in various actions pending in other Courts which actions will be more fully described later herein. Ehrhardt is a nominal but interested party to this declaratory judgment action, and he has been joined as a party defendant herein solely in order to be bound by the judgment to be rendered in this cause. Owners and Auto-Owners seek no relief against Ehrhardt, and in the event that Ehrhardt agrees and stipulates to be bound by the judgment rendered in this cause, then Plaintiffs will voluntarily dismiss him as a party defendant from this action.

### THE INSURANCE POLICIES

8.    Owners issued its policy of insurance numbered 054604-07424498-05 to CMS as named insured. The policy provided for Commercial General Liability insurance on a primary basis with an effective policy period from June 28, 2005 to and including June 28, 2006. A certified true and correct copy of the Owners policy is attached hereto, made a part hereof and is marked as Pleading Exhibit A. The policy will be referred to as the CGL Policy.

9.    Auto-Owners issued its policy of insurance numbered 46-487-023-00 to CMS as named insured. The policy provided for Umbrella Liability insurance on an excess basis with an effective policy period from June 28, 2005 to and including June 28, 2006. A certified true and correct copy of the Auto-Owners policy is attached hereto, made a part hereof and is marked as Pleading Exhibit B. The policy will be referred to as the Umbrella policy.

3

10.    Owners issued its policy of insurance numbered 051704 07239279 to CMS as named insured.  The policy provided for Workers Compensation and Employers Liability insurance on a primary basis with an effective policy period from June 28, 2005 to and including June 28, 2006.  A certified true and correct copy of the Owners policy is attached hereto, made a part hereof and is marked as Pleading Exhibit C.  The policy will be referred to as the Employers Liability Policy.

## THE *EHRHARDT* LITIGATION

11.    Ehrhardt has filed an action for damages against CMS in the Circuit Court of the 18th Judicial Circuit, DuPage County, Illinois, under Cause No. 07 L 153.  A true and correct copy of the verified third amended complaint is attached hereto, made a part hereof and is marked as Pleading Exhibit D.

12.    In his verified complaint, Ehrhardt seeks damages from CMS for assault (Count I), battery (Count II), and intentional infliction of emotional distress (Count III), all of which more fully appears in Pleading Exhibit D attached hereto.

13.    Ehrhardt has filed an action for damages against CMS in the United States District Court for the Northern District of Illinois, Eastern Division, under Cause No. 07 C 6246.  A true and correct copy of the verified complaint is attached hereto, made a part hereof and is marked as Pleading Exhibit E.

14.    In his verified complaint, Ehrhardt seeks damages from CMS under Title VII for a sexually hostile work environment (Count I), and constructive discharge from his

employment in retaliation for complaining of sexual and other harassment (Count II), all of which more fully appears in Pleading Exhibit E attached hereto.

15.    Ehrhardt alleges that the harassment began July 11, 2005 and continued to March 5, 2006, all of which more fully appears in Pleading Exhibit E attached hereto, and similar allegations are made by Ehrhardt in Pleading Exhibit D.

16.    Ehrhardt has filed an action for damages against Flynn in the Illinois Human Rights Commission under Charge No. 2006 CN 3222.  A true and correct copy of the complaint is attached hereto, made a part hereof and is marked as Pleading Exhibit F.

17.    In his complaint, Ehrhardt seeks damages from Flynn, his immediate supervisor, for a sexually hostile work environment and other claims, all of which more fully appears in Pleading Exhibit F attached hereto.

18.    Ehrhardt alleges that the sexual and other harassment began July 11, 2005 and continued throughout his employment to March 5, 2006, all of which more fully appears in Pleading Exhibit F attached hereto.

<div align="center">

**TENDERS OF DEFENSE**

</div>

19.    CMS tendered its defense in the actions filed by Ehrhardt to Owners, which tenders Owners accepted subject to reservation.

20.    Flynn tendered his defense in the action filed by Ehrhardt to Owners, which tender Owners refused to accept for the reasons stated herein.

## PROVISIONS OF THE CGL POLICY

21. The CGL Policy provides, in an opening paragraph, in pertinent part, as follows:

> Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is not covered.

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

> The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

> Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION V).

22. The CGL Policy provides in its Insuring Agreement A, as follows:

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.    Insuring Agreement.**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

        **(1)**    The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

        **(2)**    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlement under

Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS COVERAGES A AND B.

**b.**    This insurance applies to "bodily injury" and "property damage" only if:

**(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

**(2)**    The "bodily injury" or "property damage" occurs during the policy period.

23.    The CGL Policy provides in its Insuring Agreement B, as follows:

**COVERAGE B.   PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.    Insuring Agreement.**

**a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this coverage part applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result. But.

**(1)**    The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

**(2)**    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under

> Coverage A or B or medical expenses under Coverage C.
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

    **b.**    This insurance applies to:

        **(1)**    "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

        **(2)**    "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

    but only if the offense was committed in the "coverage territory" during the policy period.

24.    The term "occurrence" is defined in the CGL Policy, as follows:

> "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

25.    The term "property damage" is defined in the CGL Policy as follows:

> "Property damage" means:

    a.    Physical injury to tangible property, including all resulting loss of use that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it;

    b.    Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

26.     The term "bodily injury" is defined in the policy as follows:

"Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

27.     The CGL Policy contains certain exclusions which provide, in pertinent part, as follows:

This insurance does not apply to:

a.     "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

* * * * *

e.     "Bodily injury" to:

(1)     An employee of the insured arising out of and in the course of employment by the insured;

28.     The terms "advertising injury" and "personal injury" are defined in the CGL Policy to include the following:

"Advertising injury" means injury arising out of one or more of the following offenses:

a.     Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b.     Oral or written publication of material that violates a person's right of privacy;

c.     Misappropriation of advertising ideas or style of doing business; or

9

    **d.**     Infringement of copyright, title or slogan.

<p align="center">* * * * *</p>

"Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:

    **a.**     False arrest, detention or imprisonment;

    **b.**     Malicious prosecution;

    **c.**     The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, by or on behalf of its owner, landlord or lessor;

    **d.**     Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

    **e.**     Oral or written publication of material that violates a person's right of privacy.

29.    The CGL Policy, by endorsement, added definitions and an exclusion to "personal injury" as follows:

<p align="center">**Illinois**</p>

<p align="center">**COMMERCIAL GENERAL LIABILITY PLUS ENDORSEMENT**</p>

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE COMMERCIAL GENERAL LIABILITY COVERAGE PART.**

It is agreed the insurance provided under this Coverage Part is amended as follows:

<p align="center">* * * * *</p>

    4.    **PERSONAL INJURY EXTENSION COVERAGE**

<p align="center">10</p>

  a.  Under the section DEFINITIONS, the following is added to the definition for "Personal Injury":

  b.  Under COVERAGE B., 2 Exclusions, the following exclusion is added:

  c.  Any alleged or actual "personal injury" if directly or indirectly related to the past, present or prospective employment of any person or persons by an insured.

30.  The CGL Policy provides in its section entitled "Who Is an Insured", in pertinent part, as follows:

  **1.**  If you are designated in the Declarations as:

      * * * * *

  **c.**  An organization other than a partnership or joint venture, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

  **2.**  Each of the following is also an Insured:

  **a.**  Your employees, other than your executive officers, but only for acts within the scope of their employment by you. However, no employee is an insured for:

    **(1)**  "Bodily injury" or "personal injury" to you or to a co-employee while in the course of his or her employment * * *.

31.  The CGL Policy contains an endorsement entitled "EMPLOYMENT - RELATED PRACTICES EXCLUSION" which, although a part of Pleading Exhibit A, provides as follows:

11

1.      The following exclusion is added as COVERAGE A (SECTION I) [see ¶ 22]:

     **c.**     "Bodily injury" arising out of any:

         **(1)**     Refusal to employ;

         **(2)**     Termination of employment;

         **(3)**     Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or

         **(4)**     Consequential "bodily injury" as a result of (1) through (3) above.

     This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of the injury.

**2.**     The following exclusion is added to COVERAGE B (Section I) [See ¶ 23]:

     **c.**     "Personal injury" arising out of any:

         **(1)**     Refusal to employ;

         **(2)**     Termination of employment;

         **(3)**     Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or

         **(4)**     Consequential "personal injury" as a result of (1) through (3) above.

<center>**PROVISIONS OF THE UMBRELLA POLICY**</center>

32.    The Umbrella Policy provides in its Insuring Agreement, as follows:

> When **underlying insurance** does not apply to an **incident** which is covered by this policy, **we** shall have the right and duty to defend any suit against the **insured** seeking damages on account of **bodily injury, property damage, personal injury,** or **advertising injury. We** may investigate and settle any claim or suit at **our** discretion, but **our** right and duty to defend any suit ends when **we** have used up **our** limit of liability as described in LIMITS OF LIABILITY in payment of judgements or settlements.

33.    The Umbrella policy defines the terms "bodily injury," "property damage," "advertising injury," and "personal injury" similarly to the CGL Policy.

34.    The Umbrella policy excludes bodily injury or personal injury related to the employment of any person by an insured pursuant to Exclusion M.

35.    The Umbrella policy defines who is an "insured", and Flynn, an employee, is not an "insured".

<center>**PROVISIONS OF THE EMPLOYERS LIABILITY POLICY**</center>

36.    The Employers Liability Policy provides in its provision entitled "How This Insurance Applies", as follows:

> A.    **How this Insurance Applies**
>
> This employers liability insurance applies to bodily injury by accident or bodily injury by disease.  Bodily injury includes resulting death.
>
> 1.    The bodily injury must arise out of and in the course of the injured employee's employment by you.

<center>13</center>

2.      The employment must be necessary or incidental to your work in a state or territory listed in Item 3.A. of the Information Page.

3.      Bodily injury by accident must occur during the policy period.

4.      Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

5.      If you are sued, the original suit and any related legal actions for damages for bodily injury by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

37.     The Employers Liability Policy provides in its section entitled "We Will Defend", as follows:

D.      **We Will Defend**

We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance.

38.     The Employers Liability Policy contains a certain exclusion from coverage, and Exclusion No. 7 provides that there is no coverage for the discharge of an employee, and specifically provides as follows:

14

This insurance does not cover:

* * * * *

7.　　damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions.

### FIRST CLAIM FOR RELIEF
### (DECLARATORY JUDGMENT RE: NO DUTY TO DEFEND CMS UNDER THE CGL POLICY FOR THE DUPAGE COUNTY ACTION)

39.　　Owners adopts and repeats the allegations of ¶¶ 1 through 31 as and for ¶ 39 hereof as through the same were fully set forth herein.

40.　　Owners contends that it has no duty or obligation to defend CMS because the allegations contained in the verified third amended Complaint are not covered and/or are excluded under the CGL Policy for one or more or all of the following reasons:

(a)　　That the claims of Ehrhardt do not involve an "occurrence" as defined by the CGL Policy;

(b)　　That the claims of Ehrhardt do not involve "property damage" as defined by the CGL Policy;

(c)　　That the claims of Ehrhardt do not involve "bodily injury" as defined by the CGL Policy and, alternatively, if they did, then Exclusion (e) operates to exclude coverage, as does the Employment-Related Practice Exclusion;

(d)　　That the claims of Ehrhardt do not involve "advertising injury" as defined by the CGL Policy;

(e)　　That Ehrhardt does not allege accidental conduct on the part of CMS, hence there is no "occurrence";

15

(f)    That the claims of Ehrhardt do not involve "personal injury" as
defined by the CGL Policy and, if they did, then all such claims
are excluded by the Employment-Related Practices Exclusion.

41.    The above contentions of Owners are, on information and belief, denied by

CMS which, in turn, contends that the damages sought and the allegations contained in the

verified third amended complaint in the DuPage County action against CMS are covered

under the CGL Policy.  Owners, in turn, denies the contrary contentions of CMS and each

of them.

42.    By reason of the foregoing, an actual and justiciable controversy exists between

the parties and each of them, which may be determined by a judgment or order of this Court.

Pursuant to the terms of 28 U.S.C. §§2201 and 2202, this Court has the power to declare and

adjudicate the rights and liabilities of the parties hereto under the terms and provisions of the

CGL Policy referred to herein and to adjudicate the final rights of the parties and to give such

other and further relief as may be necessary to enforce the same.

## SECOND CLAIM FOR RELIEF
### (DECLARATORY JUDGMENT RE: NO DUTY TO DEFEND CMS UNDER THE CGL POLICY FOR THE FEDERAL ACTION)

43.    Owners adopts and repeats the allegations of ¶¶1 through 31 as and for ¶ 43

hereof as though the same were fully set forth herein.

44.    Owners contends that it has no duty or obligation to defend CMS because the

allegations contained in the verified complaint in the federal district court action are not

covered and/or are excluded under the CGL Policy for one or more or all of the following

reasons:

16

(a)    That the claims of Ehrhardt do not involve an "occurrence" as defined by the CGL Policy;

(b)    That the claims of Ehrhardt do not involve "property damage" as defined by the CGL Policy;

(c)    That the claims of Ehrhardt do not involve "bodily injury" as defined by the CGL Policy and, alternatively, if they did, then Exclusion (e) operates to exclude coverage, as does the Employment-Related Practice Exclusion;

(d)    That the claims of Ehrhardt do not involve "advertising injury" as defined by the CGL Policy;

(e)    That Ehrhardt does not allege accidental conduct on the part of CMS, hence there is no "occurrence";

(f)    That the claims of Ehrhardt do not involve "personal injury" as defined by the CGL Policy and, if they did, then all such claims are excluded by the Employment-Related Practices Exclusion.

45.    The above contentions of Owners are, on information and belief, denied by CMS which, in turn, contends that the damages sought and the allegations contained in the verified complaint in the federal district court action against CMS are covered under the CGL Policy. Owners, in turn, denies the contrary contentions of CMS and each of them.

46.    By reason of the foregoing, an actual and justiciable controversy exists between the parties and each of them, which may be determined by a judgment or order of this Court. Pursuant to the terms of 28 U.S.C. §§2201 and 2202, this Court has the power to declare and adjudicate the rights and liabilities of the parties hereto under the terms and provisions of the CGL Policy referred to herein and to adjudicate the final rights of the parties and to give such other and further relief as may be necessary to enforce the same.

### THIRD CLAIM FOR RELIEF
### (DECLARATORY JUDGMENT RE: NO DUTY TO DEFEND CMS
### UNDER THE UMBRELLA POLICY FOR THE DUPAGE COUNTY ACTION)

47.     Auto-Owners adopts and repeats the allegations of ¶¶ 1 through 35 as and for

¶ 47 hereof as though the same were fully set forth herein.

48.     Auto-Owners contends that it has no duty or obligation to defend CMS because

the allegations contained in the verified third amended complaint are not covered and/or are

excluded under the Umbrella Policy for one or more or all of the following reasons:

      (a)     That Ehrhardt does not seek damages for bodily injury caused
            by an incident as those terms are defined by the Umbrella
            Policy;

      (b)     That Ehrhardt does not allege accidental conduct, that is, an
            occurrence as that term is defined by the Umbrella Policy;

      (c)     That Ehrhardt does not seek damages for personal injury or
            advertising injury as those terms are defined by the Umbrella
            Policy;

      (d)     That Ehrhardt seeks damages for intentional conduct, namely,
            assault, battery and intentional infliction of emotional distress
            which are not covered by the Umbrella Policy.

49.     The above contentions of Auto-Owners are, on information and belief, denied

by CMS which, in turn, contends that the damages sought and the allegations contained in

the verified third amended complaint in the DuPage County action against CMS are covered

under the Umbrella Policy.  Auto-Owners, in turn, denies the contrary contentions of CMS

and each of them.

50.    By reason of the foregoing, an actual and justiciable controversy exists between the parties and each of them, which may be determined by a judgment or order of this Court. Pursuant to the terms of 28 U.S.C. §§2201 and 2202, this Court has the power to declare and adjudicate the rights and liabilities of the parties hereto under the terms and provisions of the Umbrella Policy referred to herein and to adjudicate the final rights of the parties and to give such other and further relief as may be necessary to enforce the same.

### FOURTH CLAIM FOR RELIEF
### (DECLARATORY JUDGMENT RE: NO DUTY TO DEFEND CMS UNDER THE UMBRELLA POLICY FOR THE FEDERAL COURT ACTION)

51.    Auto-Owners adopts and repeats the allegations of ¶¶ 1 through 35 as and for ¶ 51 hereof as though the same were fully set forth herein.

52.    Auto-Owners contends that it has no duty or obligation to defend CMS because the allegations contained in the verified complaint in the federal district court action are not covered and/or are excluded under the Umbrella Policy for one or more or all of the following reasons:

    (a)    That Ehrhardt does not seek damages for bodily injury caused by an incident as those terms are defined by the Umbrella Policy;

    (b)    That Ehrhardt does not allege accidental conduct, that is, an occurrence as that term is defined by the Umbrella Policy;

    (c)    That Ehrhardt does not seek damages for personal injury or advertising injury as those terms are defined by the Umbrella Policy;

(d)    That Ehrhardt seeks damages for intentional conduct, namely, assault, battery and intentional infliction of emotional distress are not covered by the Umbrella Policy.

53.    The above contentions of Auto-Owners are, on information and belief, denied by CMS which, in turn, contends that the damages sought and the allegations contained in the verified complaint in the federal district court action against CMS are covered under the Umbrella Policy.  Auto-Owners, in turn, denies the contrary contentions of CMS and each of them.

54.    By reason of the foregoing, an actual and justiciable controversy exists between the parties and each of them, which may be determined by a judgment or order of this Court. Pursuant to the terms of 28 U.S.C. §§2201 and 2202, this Court has the power to declare and adjudicate the rights and liabilities of the parties hereto under the terms and provisions of the Umbrella Policy referred to herein and to adjudicate the final rights of the parties and to give such other and further relief as may be necessary to enforce the same.

## FIFTH CLAIM FOR RELIEF
### (DECLARATORY JUDGMENT RE: NO DUTY TO DEFEND CMS UNDER THE EMPLOYERS LIABILITY POLICY FOR THE DUPAGE COUNTY ACTION)

55.    Owners adopts and repeats the allegations of ¶¶ 1 through 38 as and for ¶ 55 hereof as though the same were fully set forth herein.

56.    Owners contends that it has no duty or obligation to defend CMS under its Employers Liability Policy for the DuPage County action filed by Ehrhardt for one or more or all of the following reasons:

20

(a)    That Ehrhardt does not seek damages for bodily injury by accident, nor does Ehrhardt seek damages for bodily injury by disease, and the Employers Liability Policy applies only to bodily injury by accident or bodily injury by disease;

(b)    That any claim by Ehrhardt for discharge from employment at CMS is excluded as the Employers Liability Policy does not cover damages arising out of the discharge of an employee from employment.

57.    The above contentions of Owners are, on information and belief, denied by CMS which, in turn, contends that Owners has a duty and obligation to defend the DuPage County action filed by Ehrhardt. Owners, in turn, denies the contrary contentions of CMS and each of them.

58.    By reason of the foregoing, an actual and justiciable controversy exists between the parties and each of them, which may be determined by a judgment or order of this Court. Pursuant to the terms of 28 U.S.C. §§2201 and 2202, this Court has the power to declare and adjudicate the rights and liabilities of the parties hereto under the terms and provisions of the Employers Liability Policy referred to herein and to adjudicate the final rights of the parties and to give such other and further relief as may be necessary to enforce the same.

**SIXTH CLAIM FOR RELIEF**
**(DECLARATORY JUDGMENT RE: NO DUTY TO DEFEND**
**CMS UNDER THE EMPLOYERS LIABILITY**
**POLICY FOR THE FEDERAL COURT ACTION)**

59.    Owners adopts and repeats the allegations of ¶¶ 1 through 38 as and for ¶ 59 hereof as though the same were fully set forth herein.

60.   Owners contends that it has no duty or obligation to defend CMS under its Employers Liability Policy for the federal district court action filed by Ehrhardt for one or more or all of the following reasons:

(a)   That Ehrhardt does not seek damages for bodily injury by accident, nor does Ehrhardt seek damages for bodily injury by disease, and the Employers Liability Policy applies only to bodily injury by accident or bodily injury by disease;

(b)   That any claim by Ehrhardt for discharge from employment at CMS is excluded as the Employers Liability Policy does not cover damages arising out of the discharge of an employee from employment.

61.   The above contentions of Owners are, on information and belief, denied by CMS which, in turn, contends that Owners has a duty and obligation to defend the federal district court action filed by Ehrhardt.  Owners, in turn, denies the contrary contentions of CMS and each of them.

62.   By reason of the foregoing, an actual and justiciable controversy exists between the parties and each of them, which may be determined by a judgment or order of this Court. Pursuant to the terms of 28 U.S.C. §§2201 and 2202, this Court has the power to declare and adjudicate the rights and liabilities of the parties hereto under the terms and provisions of the Employers Liability Policy referred to herein and to adjudicate the final rights of the parties and to give such other and further relief as may be necessary to enforce the same.

22

### SEVENTH CLAIM FOR RELIEF
### (DECLARATORY JUDGMENT RE: NO DUTY TO DEFEND
### FLYNN FOR THE ILLINOIS HUMAN RIGHTS COMMISSION ACTION)

63.   Owners adopts and repeats the allegations of ¶¶ 1 through 31 as and for ¶ 63

hereof as though the same were fully set forth herein.

64.   Owners contends that it has no duty or obligation to defend Flynn in the

Human Rights Commission action filed by Ehrhardt because the allegations contained in the

Complaint are not covered and/or are excluded under the CGL Policy for one or more or all

of the following reasons:

(a)   That the claims of Ehrhardt  do not involve an "occurrence" as
defined by the CGL Policy;

(b)   That the claims of Ehrhardt do not involve "property damage"
as defined by the CGL Policy;

(c)   That the claims of Ehrhardt do not involve "personal injury" or
"advertising injury" as defined by the CGL Policy;

(d)   That the claims of intentional conduct by Flynn against Ehrhardt
are excluded and not covered as Flynn does not qualify as an
"insured" for "bodily injury" or "personal injury" to Ehrhardt,
a co-employee;

(e)   That the conduct alleged does not constitute an offense under
"personal injury", and, if it did, Flynn is not an "insured" for a
claim brought by a co-employee.

(f)   That any alleged conduct of Flynn and any resultant damage to
Ehrhardt arose out of intentional conduct and all such conduct
is excluded by the CGL Policy.

(g)   That any alleged conduct of Flynn and any resultant damage to
Ehrhardt arose out of Flynn's intent to harm, and all such
conduct is excluded by the CGL Policy.

23

(h)    That any alleged conduct of Flynn and any resultant damage to Ehrhardt did not arise out of acts within the scope of his employment for CMS as Flynn was not hired to harass Ehrhardt.

65.    The above contentions of Owners are, on information and belief, denied by Flynn who, in turn, contends that he is entitled to coverage under the CGL Policy issued to CMS.  Owners, in turn, denies the contrary contentions of Flynn and each of them.

66.    Owners adopts and repeats the allegations of ¶ 42 as and for ¶ 66 as though the same were fully set forth herein.

## PRAYERS FOR RELIEF

**WHEREFORE,** the Plaintiffs, Owners Insurance Company and Auto-Owners Insurance Company, pray that this Court enters judgment finding and declaring the rights of the parties as follows:

## AS TO THE FIRST CLAIM FOR RELIEF:

A.    That Owners Insurance Company is not obligated to and does not owe a defense to Complete Mechanical Service, Inc. for the action filed by Michael Ehrhardt in the Circuit Court of the 18th Judicial Circuit, DuPage County, Illinois, under Cause No. 07 L 153 under the CGL Policy.

B.    That this Court grant Owners Insurance Company such other and further relief as the Court finds and deems fit and just under the circumstances.

24

C.   That Owners Insurance Company be awarded and have and recover its just and reasonable costs incurred herein and have execution issue therefor.

### AS TO THE SECOND CLAIM FOR RELIEF:

A.   That Owners Insurance Company has no duty or obligation to defend Complete Mechanical Services, Inc. in the action brought by Michael Ehrhardt in the United States District Court for the Northern District of Illinois, Eastern Division, under Cause No. 07 C 6246 under the CGL Policy.

B.   That this Court grant Owners Insurance Company such other and further relief as the Court finds and deems fit and just under the circumstances.

C.   That Owners Insurance Company be awarded and have and recover its just and reasonable costs incurred herein and have execution issue therefor.

### AS TO THE THIRD CLAIM FOR RELIEF:

A.   That Auto-Owners Insurance Company is not obligated to and does not owe a defense to Complete Mechanical Service, Inc. for the action filed by Michael Ehrhardt in the Circuit Court of the 18th Judicial Circuit, DuPage County, Illinois, under Cause No. 07 L 153 under the Umbrella Policy.

B.    That this Court grant Auto-Owners Insurance Company such other and further relief as the Court finds and deems fit and just under the circumstances.

C.    That Auto-Owners Insurance Company be awarded and have and recover its just and reasonable costs incurred herein and have execution issue therefor.

### AS TO THE FOURTH CLAIM FOR RELIEF:

A.    That Auto-Owners Insurance Company has no duty or obligation to defend Complete Mechanical Services, Inc. in the action brought by Michael Ehrhardt in the United States District Court for the Northern District of Illinois, Eastern Division, under Cause No. 07 C 6246 under the Umbrella Policy.

B.    That this Court grant Auto-Owners Insurance Company such other and further relief as the Court finds and deems fit and just under the circumstances.

C.    That Auto-Owners Insurance Company be awarded and have and recover its just and reasonable costs incurred herein and have execution issue therefor.

### AS TO THE FIFTH CLAIM FOR RELIEF:

A.    That Owners Insurance Company has no duty or obligation to defend Complete Mechanical Services, Inc. for the action filed by Michael

26

Ehrhardt in the Circuit Court of the 18th Judicial Circuit, DuPage County, Illinois, under Cause No. 07 L 153, under its Employers Liability Policy.

B.    That the Court grant Owners Insurance Company such other and further relief as the Court deems fit and just under the circumstances.

C.    That Owners Insurance Company be awarded and have and recover its just and reasonable costs incurred and have execution issue therefor.

### AS TO THE SIXTH CLAIM FOR RELIEF:

A.    That Owners Insurance Company has no duty or obligation to defend Complete Mechanical Services, Inc. for the action filed by Michael Ehrhardt in the United States District Court for the Northern District of Illinois, under Cause No. 07 C 6246, under its Employers Liability Policy.

B.    That the Court grant Owners Insurance Company such other and further relief as the Court deems fit and just under the circumstances.

C.    That Owners Insurance Company be awarded and have and recover its just and reasonable costs incurred and have execution issue therefor.

### AS TO THE SEVENTH CLAIM FOR RELIEF:

A.    That Owners Insurance Company has no duty or obligation to defend Thomas Flynn in the action brought by Michael Ehrhardt in the Illinois Human Rights Commission, under Charge No. 2006 CN 3222.

27

B.      That this Court grant Owners Insurance Company such other and
        further relief as the Court finds and deems fit and just under the
        circumstances.

C.      That Owners Insurance Company be awarded and have and recover its
        just and reasonable costs incurred herein and have execution issue
        therefor.

**s/ Robert Marc Chemers**
Robert Marc Chemers Bar Number: 00431508
***Attorneys for Plaintiff***
PRETZEL & STOUFFER, CHARTERED
One South Wacker Drive
Suite 2500
Chicago, Illinois 60606
Telephone:    (312) 578-7548
Fax:          (312) 346-8242
E-Mail:       rchemers@pretzel-stouffer.com

# PLEADING EXHIBIT A

# Owners

Page   1

55039 (11-87)
Issued  09-26-2005

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

**TAILORED PROTECTION POLICY DECLARATIONS**

Reissue Effective 06-28-2005

AGENCY  FISHER-SCHOL AGENCY INC
  04-0248-00    MKT TERR 097    (630) 587-9000
INSURED  COMPLETE MECHANICAL SERVICES INC

**POLICY NUMBER  054604-07424498-05**

ADDRESS  PO BOX 3038

  SAINT CHARLES, IL  60174-9099

Company
Bill

| **POLICY TERM** | |
| 12:01 a.m. | 12:01 a.m. |
| 06-28-2005 to | 06-28-2006 |

---

## COMMON POLICY INFORMATION

BUSINESS DESCRIPTION:  Hvac

ENTITY:  Corporation

PROGRAM:  Premier Subcontractors

Discount Applies For Affiliation With:  ILLINOIS HOME BUILDERS ASSOCIATION

| | PREMIUM |
|---|---|
| THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PART(S). | |
| THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT. | |
| COMMERCIAL PROPERTY COVERAGE | $1,153.00 |
| COMMERCIAL GENERAL LIABILITY COVERAGE | 16,323.00 |
| COMMERCIAL INLAND MARINE COVERAGE | 5,760.00 |
| TOTAL | $23,236.00 |

FORMS THAT APPLY TO ALL COVERAGE PART SHOWN ABOVE (EXCEPT GARAGE LIABILITY, DEALER'S
BLANKET, COMMERCIAL AUTOMOBILE, IF APPLICABLE)
  55003  (01-87)  IL0017 (11-85)


A 12% CUMULATIVE MULTI-POLICY DISCOUNT APPLIES.  SUPPORTING POLICIES ARE MARKED WITH
AN (X):  COMM UMB(X) COMM AUTO(X) WC(X) LIFE( ) PERSONAL( ) FARM( )




Countersigned By: _____

I certify that this policy was assembled from
available records as a representation of coverage
that was in effect for the policy period shown.

_Nancy Vanderhyde_

Date_ 3-6-08_

# *Owners*

Page    2

55198 (01-00)
Issued  09-26-2005

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

**TAILORED PROTECTION POLICY DECLARATIONS**

Reissue Effective 06-28-2005

AGENCY  FISHER-SCHOL AGENCY INC
   04-0248-00    MKT TERR 097    (630) 587-9000

**POLICY NUMBER  054604-07424498-05**

INSURED  COMPLETE MECHANICAL SERVICES INC

ADDRESS  PO BOX 3038

SAINT CHARLES, IL  60174-9099

| Company Bill | POLICY TERM |
|---|---|
| | 12:01 a.m.    12:01 a.m.<br>06-28-2005 to 06-28-2006 |

---

PROPERTY PLUS COVERAGE
PACKAGE DECLARATION

The coverages indicated below apply separately to the location(s) and sublocation(s) designated in the Commercial Property Coverage Declarations.  The corresponding limit of insurance for any one coverage applies to all covered loss:

a.  at the location designated in the Commercial Property Coverage Declarations, or
b.  away from the location designated in the Commercial Property Coverage Declarations

regardless of the number of locations or sublocations designated in the Commercial Property Coverage Declarations.

**   The deductible (DED) which applies to each coverage indicated below is the same as the deductible which applies to each location and sub-location shown on the Commercial Property Coverage Declarations, unless otherwise indicated:

| COVERAGE | LIMIT | DED |
|---|---|---|
| ARSON REWARD | $5,000 | NONE |
| BUSINESS INCOME & EXTRA EXPENSE | $30,000 | NONE |
| BUSINESS PERSONAL PROPERTY AT FAIRS OR EXHIBITIONS | $5,000 | ** |
| BUSINESS PERSONAL PROPERTY - EXPANDED COVERAGE | UP TO 1,000 FEET | ** |
| DEBRIS REMOVAL | $25,000 | NONE |
| FIRE EXTINGUISHER RECHARGE | $2,500 | NONE |
| GLASS BREAKAGE | $1,000 PER PANE | ** |
| | $5,000 PER OCCURRENCE | |
| INVENTORY | UP TO 25% OF BPP LIMIT | NONE |
| NEWLY ACQUIRED OR CONSTRUCTED PROPERTY | $500,000 FOR 90 DAYS | ** |
| NEWLY ACQUIRED BUSINESS PERSONAL PROPERTY | $500,000 FOR 90 DAYS | ** |
| OFF-PREMISES UTILITY SERVICE CHARGE FAILURE | $5,000 | ** |
| ORDINANCE OR LAW | $25,000 | ** |
| OUTDOOR PROPERTY | $5,000 | ** |
| TREES, SHRUBS OR PLANTS | $500 PER ITEM | ** |
| PERSONAL EFFECTS AND PROPERTY OF OTHERS | $15,000 | ** |
| POLLUTANT CLEAN UP AND REMOVAL | $25,000 | NONE |
| PROPERTY IN TRANSIT | $25,000 | ** |

Continued on next page

# Owners

Page    3

55198 (01-00)
Issued  09-26-2005

**INSURANCE COMPANY**
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

**TAILORED PROTECTION POLICY DECLARATIONS**

Reissue Effective 06-28-2005

AGENCY  FISHER-SCHOL AGENCY INC
04-0248-00    MKT TERR 097    (630) 587-9000

**POLICY NUMBER  054604-07424498-05**

INSURED  COMPLETE MECHANICAL SERVICES INC

ADDRESS  PO BOX 3038

SAINT CHARLES, IL  60174-9099

| Company Bill | **POLICY TERM** |
|---|---|
| | 12:01 a.m.    12:01 a.m.<br>06-28-2005 to 06-28-2006 |

---

PROPERTY PLUS COVERAGE

PACKAGE DECLARATION

| COVERAGE | LIMIT | DED |
|---|---|---|
| PROPERTY OFF PREMISES | $25,000 | ** |
| REFRIGERATED PRODUCTS | $5,000 | ** |
| REKEYING OF LOCKS | $1,000 | NONE |
| WATER BACK-UP FROM SEWERS OR DRAINS | $10,000 | ** |
| ACCOUNTS RECEIVABLE | $30,000 | ** |
| SIGNS (ATTACHED AND DETACHED) | $5,000 PER SIGN | ** |
| ELECTRONIC DATA PROCESSING EQUIPMENT | $10,000 | ** |
| SALESPERSON'S SAMPLES | $10,000 | ** |
| VALUABLE PAPERS | $30,000 | ** |
| EMPLOYEE DISHONESTY | $10,000 | ** |
| FORGERY AND ALTERATION | $10,000 | ** |
| MONEY AND SECURITIES | $10,000 ON PREMISES<br>$10,000 OFF PREMISES | ** |
| FIRE DEPARTMENT SERVICE CHARGE | $2,500 | NONE |

**FORMS THAT APPLY TO THIS COVERAGE PART:**

| | | | | |
|---|---|---|---|---|
| 54182 (06-00) | 54205 (06-00) | 54188 (06-00) | 54199 (06-00) | 54198 (06-00) |
| 54190 (06-00) | 54223 (06-00) | 54184 (06-00) | 54185 (06-00) | 54206 (06-00) |
| 54208 (06-00) | 54191 (06-00) | 54195 (06-00) | 54197 (06-00) | 54192 (06-00) |
| 54196 (06-00) | 54189 (06-00) | 54183 (06-00) | 54186 (06-00) | 54218 (06-00) |
| 54207 (06-00) | 54217 (06-00) | 54216 (06-00) | 54214 (06-00) | 54221 (06-00) |
| 54220 (06-00) | 54219 (06-00) | 54193 (06-00) | | |

# Owners

Page   1

54104 (07-87)
Issued  09-26-2005

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

**TAILORED PROTECTION POLICY DECLARATIONS**

Reissue Effective 06-28-2005

AGENCY  FISHER-SCHOL AGENCY INC
04-0248-00    MKT TERR 097    (630) 587-9000

**POLICY NUMBER  054604-07424498-05**

INSURED  COMPLETE MECHANICAL SERVICES INC

ADDRESS  PO BOX 3038

SAINT CHARLES, IL  60174-9099

Company
Bill

| POLICY TERM |
| --- |
| 12:01 a.m.    12:01 a.m. |
| 06-28-2005 to 06-28-2006 |

---

### COMMERCIAL PROPERTY COVERAGE

**COVERAGES PROVIDED**

INSURANCE AT THE DESCRIBED PREMISES APPLIES ONLY FOR COVERAGES FOR WHICH A LIMIT OF
INSURANCE IS SHOWN.

---

LOCATION 001

**ADDITIONAL FORMS THIS LOCATION:**  None

**LOC 001    BLDG 001** 3660 Swenson Ave
Saint Charles, IL  60174-3442

**OCCUPIED AS:**  Hvac

**COVERAGE: Legal Lia-Real**          Limit of Insurance    $200,000

| CAUSES OF LOSS | COINSURANCE | DEDUCTIBLE | RATE | PREMIUM |
| --- | --- | --- | --- | --- |
| Basic Group I | | $0 | 0.023 | $46.00 |
| Basic Group II | | 0 | 0.016 | 32.00 |
| Special | | 0 | 0.010 | 20.00 |

**OPTIONAL COVERAGE:**

Inflation Guard Factor
Building
1.033

**COVERAGE: Personal Prop.**          Limit of Insurance    $200,000

| CAUSES OF LOSS | COINSURANCE | DEDUCTIBLE | RATE | PREMIUM |
| --- | --- | --- | --- | --- |
| Basic Group I | 80% | $500 | 0.074 | $148.00 |
| Basic Group II | 80% | 500 | 0.058 | 116.00 |
| Special | 80% | 500 | 0.043 | 86.00 |
| Special Including Theft | 80% | 500 | 0.039 | 78.00 |

**OPTIONAL COVERAGE:**

Replacement Cost

Inflation Guard Factor
Personal Property
1.023

| CAUSE OF LOSS | LIMITS | DEDUCTIBLE | RATE | PREMIUM |
| --- | --- | --- | --- | --- |
| System Breakdown Comp. | Unlimited | $500 | | $263.00 |
| Property Plus Coverage Package | See Dec Page | 500 | | 111.00 |

**COVERAGE: Bi & Extra Exp**          Limit of Insurance    $100,000

| CAUSES OF LOSS | COINSURANCE | DEDUCTIBLE | RATE | PREMIUM |
| --- | --- | --- | --- | --- |
| Basic Group I | | $0 | 0.096 | $96.00 |
| Basic Group II | | 0 | 0.066 | 66.00 |
| Special | | 0 | 0.068 | 68.00 |

# Owners

Page    2

54104 (07-87)
Issued   09-26-2005

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

**TAILORED PROTECTION POLICY DECLARATIONS**

Reissue Effective 06-28-2005

AGENCY  FISHER-SCHOOL AGENCY INC
       04-0248-00    MKT TERR 097    (630) 587-9000

**POLICY NUMBER  054604-07424498-05**

INSURED  COMPLETE MECHANICAL SERVICES INC

ADDRESS  PO BOX 3038

       SAINT CHARLES, IL  60174-9099

Company
Bill

| POLICY TERM |
| 12:01 a.m.   12:01 a.m. |
| 06-28-2005 to 06-28-2006 |

---

## COMMERCIAL PROPERTY COVERAGE

**OPTIONAL COVERAGE:**

| Monthly Limit Of Indemnity (Fraction) | Maximum Period Of Indemnity (X) | Extended Period Of Indemnity (Days) |
| 1/6 | | |

**ADDITIONAL FORMS THIS BUILDING:**  59350  (02-03)  54833  (01-06)  54236  (03-01)
       IL0284 (05-90)  IL0003 (11-85) CP0090 (07-88)  CP0040 (10-90)  CP1030 (10-91)
       CP0010 (10-91)  54147  (06-91)  CP0030 (10-91)

**SECURED INTERESTED PARTIES:**  None

**RATING INFORMATION**

Territory: 230
Program:  Premier Subcontractors

County:  Kane
Construction:  Mas N-C
Specific Rate - Legal Lia-Real  0.000
PC:   02          Class Code:   0433
Specific Rate - Contents:   0.071
Specific Rate - Bi & Extra Exp  0.082

FOREIGN TERRORISM - CERTIFIED ACTS    SEE FORM  59350, 54833, 59390          $23.00

LOCATION 001    PREMIUM          $1,153.00

# *Owners*

Page    1

55040 (11/87)
Issued  09-26-2005

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

**TAILORED PROTECTION POLICY DECLARATIONS**

Reissue Effective 06-28-2005

AGENCY  FISHER-SCHOL AGENCY INC
04-0248-00    MKT TERR 097    (630) 587-9000

INSURED  COMPLETE MECHANICAL SERVICES INC

**POLICY NUMBER  054604-07424498-05**

ADDRESS  PO BOX 3038

SAINT CHARLES, IL  60174-9099

| Company Bill | **POLICY TERM** |
|---|---|
| | 12:01 a.m.   12:01 a.m. |
| | 06-28-2005 to 06-28-2006 |

---

## COMMERCIAL GENERAL LIABILITY COVERAGE

### LIMITS OF INSURANCE
| | |
|---|---|
| General Aggregate Limit | $2,000,000 |
| (Other Than Products-Completed Operations) | |
| Products-Completed Operations Aggregate Limit | 2,000,000 |
| Personal And Advertising Injury Limit | 1,000,000 |
| Each Occurrence Limit | 1,000,000 |
| Fire Damage Limit | 100,000 Any One Fire |
| Medical Expense Limit | 10,000 Any One Person |

Twice the "General Aggregate Limit", shown above, is provided at no additional charge for each 12 month period in accordance with form 55050.

   **AUDIT TYPE:** Annual Audit

**FORMS THAT APPLY TO LIABILITY:** CG2404 (11-85)  59350  (02-03)  55118  (08-91)
55146  (07-96)  55209  (01-01)  55229  (01-02)  55403  (07-04)  55006  (07-87)
55200  (06-96)  55238  (04-02)  IL0021 (11-85)  55029  (07-87)  CG0001 (11-88)
CG0200 (04-87)  IL0017 (11-85)  55050  (06-01)  55064  (07-87)  CL175  (02-86)
55069  (01-88)  CG0198 (08-90)  CG2147 (09-89)  55152  (08-94)  55145  (12-01)
55202  (05-00)

**LOCATION OF PREMISES YOU OWN, RENT OR OCCUPY**

**LOC** 001  **BLDG** 001 3660 Swenson Ave
                 Saint Charles, IL  60174-3442

**TERRITORY:** 009   **COUNTY:** Kane

| Classification | Subline | Premium Basis | Rates | Premium |
|---|---|---|---|---|
| **CODE 00501** | | Prem/Op Prem | | |
| Commercial General Liability Plus Endorsement Included At 7% Of The Premises Operation Premium | Prem/Op | Inc | Inc | Inc |
| **CODE 35648** | | Payroll | Each 1000 | |
| Premier Subcontractors Class Heating Or Combined Heating And Air Conditioning Systems Or Equipment-Dealers Or Distributors And Installation Servicing Or Repair Noc - With Lpg | Prem/Op  Prod/Comp Op | 875,000  875,000 | 11.691  6.778 | $10,230.00  $5,931.00 |
| FOREIGN TERRORISM - CERTIFIED ACTS | SEE FORM 59350, 55405, 59390 | | | $162.00 |
| | **LOCATION  001  PREMIUM** | | | **$16,323.00** |

# Owners

Page   1

16198 (07-87)
Issued  09-26-2005

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

**TAILORED PROTECTION POLICY DECLARATIONS**

Reissue Effective 06-28-2005

AGENCY  FISHER-SCHOL AGENCY INC
        04-0248-00    MKT TERR 097    (630) 587-9000

**POLICY NUMBER   054604-07424498-05**

INSURED  COMPLETE MECHANICAL SERVICES INC

ADDRESS  PO BOX 3038

        SAINT CHARLES, IL  60174-9099

| Company Bill | **POLICY TERM** | |
|---|---|---|
| | 12:01 a.m. | 12:01 a.m. |
| | 06-28-2005 to | 06-28-2006 |

---

### COMMERCIAL INLAND MARINE COVERAGE

**COVERAGES PROVIDED**

INSURANCE APPLIES TO COVERED PROPERTY FOR WHICH A LIMIT OF INSURANCE IS SHOWN.

**FORMS THAT APPLY TO INLAND MARINE:** 59350  (02-03) 16080  (08-86)

**LOCATION OF PREMISES**

**LOC 001 BLDG 001** 3660 Swenson Ave
                     Saint Charles, IL  60174-3442

**COVERAGE:**  Tools and Equipment (TE)- Actual Cash Value

| Insured's Equipment - Special Form | LIMIT | DEDUCTIBLE | RATE | PREMIUM |
|---|---|---|---|---|
| Unscheduled items up to $1000 each | $5,000 | $500 | variable | $162.00 |

**ADDITIONAL FORMS FOR THIS COVERAGE:** 16010  (10-97)

**RATING INFORMATION**
  Territory: 045                    County: Kane
  Program: Premier Subcontractors

**TOTAL FOR THIS COVERAGE:**          $162.00

**COVERAGE:**  Contractors Equipment - Actual Cash Value

| Rented Equipment - Special Form | LIMIT | DEDUCTIBLE | RATE | PREMIUM |
|---|---|---|---|---|
| Rented Equipment | $25,000 | $500 | variable | $240.00 |

**ADDITIONAL FORMS FOR THIS COVERAGE:** 16242  (05-95) 16071  (12-02)

**RATING INFORMATION**
  Territory: 045                    County: Kane
  Program: Premier Subcontractors
  Rate Class: 3

# Owners

Page    2

16198 (07-87)
Issued  09-26-2005

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

**TAILORED PROTECTION POLICY DECLARATIONS**

Reissue Effective 06-28-2005

AGENCY  FISHER-SCHOL AGENCY INC
04-0248-00    MKT TERR 097    (630) 587-9000

**POLICY NUMBER  054604-07424498-05**

INSURED  COMPLETE MECHANICAL SERVICES INC

ADDRESS  PO BOX 3038

SAINT CHARLES, IL  60174-9099

| Company Bill | POLICY TERM |
|---|---|
| | 12:01 a.m.    12:01 a.m. |
| | 06-28-2005 to 06-28-2006 |

---

## COMMERCIAL INLAND MARINE COVERAGE

**TOTAL FOR THIS COVERAGE:**        $240.00

**COVERAGE:**  Commercial Computers - Replacement Cost

| Electronic Data Processing (EDP) Equipment - Special Form | LIMIT | DEDUCTIBLE | RATE | PREMIUM |
|---|---|---|---|---|
| Unscheduled Equipment | $5,000 | $500 | variable | $14.00 |
| Laptop Equipment 1 DELL | $5,000 | $500 | variable | $69.00 |

INCLUDED COVERAGES:

| | | | | |
|---|---|---|---|---|
| Media | $5,000 | $500 | Included | Included |
| Extra Expense | $5,000 | $500 | Included | Included |
| Transportation | $10,000 | $500 | Included | Included |

OPTIONAL COVERAGES THAT APPLY:

| | | | | |
|---|---|---|---|---|
| Mechanical Breakdown | $10,000 | $1,000 | 0.017 | $2.00 |
| Electrical Disturbance | $10,000 | $1,000 | 0.034 | $3.00 |

**ADDITIONAL FORMS FOR THIS COVERAGE:** 16083  (02-99)

**RATING INFORMATION**
Territory: 230                County: Kane
Program: Premier Subcontractors    Construction: Mas N-C
PC: 02 Class Code: 3567        Group I:  0.0710 Group II:  0.0560
Specific Rated

**TOTAL FOR THIS COVERAGE:**        $88.00

**COVERAGE:**  Installation

| Installation Floater - Special Form | LIMIT | DEDUCTIBLE | RATE | PREMIUM |
|---|---|---|---|---|
| Description of Property: | | | | |
| Aggregate Limit for Property at All Installation Locations | $250,000 | | 2.085 | $5,213.00 |
| Property at Any One Installation Location | $250,000 | $500 | Included | Included |
| Property While in Transit | $250,000 | $500 | Included | Included |

**ADDITIONAL FORMS FOR THIS COVERAGE:** 16082  (12-02)

# *Owners*

Page    3

16198 (07-87)
Issued  09-26-2005

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

**TAILORED PROTECTION POLICY DECLARATIONS**

Reissue Effective 06-28-2005

AGENCY FISHER-SCHOL AGENCY INC
04-0248-00    MKT TERR 097    (630) 587-9000
INSURED COMPLETE MECHANICAL SERVICES INC

**POLICY NUMBER  054604-07424498-05**

ADDRESS PO BOX 3038

SAINT CHARLES, IL  60174-9099

Company
Bill

| POLICY TERM |
|---|
| 12:01 a.m.  12:01 a.m. |
| 06-28-2005 to 06-28-2006 |

---

**COMMERCIAL INLAND MARINE COVERAGE**

RATING INFORMATION
Territory: 045                County: Kane
Program: Premier Subcontractors

**TOTAL FOR THIS COVERAGE:**        $5,213.00

FOREIGN TERRORISM - CERTIFIED ACTS    SEE FORM  59350, 16381, 59390        $57.00

LOCATION  001  PREMIUM        $5,760.00

A single deductible applies per claim.  If more than one item is involved in a claim, the single highest applicable deductible amount is used.

**TOOLS AND EQUIPMENT SUBTOTAL**        $162.00

**TOOLS AND EQUIPMENT BALANCE TO MINIMUM**        $0.00

Agency Code 04-0248-00        Policy Number 054604-07424498

CG 24 04 11 85
COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAIVER OF TRANSFER RIGHTS OF RECOVERY AGAINST OTHERS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART

## SCHEDULE

**Name of Person or Organization:**

WC WEGMAN CONSTRUCTION CO

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

We waive any right of recovery we may have against the person or organization shown in the Schedule because of payments we make for injury or damage arising out of "your work" done under a contract with that person or organization. The waiver applies only to the person or organization shown in the Schedule.

Copyright, Insurance Services Office, Inc., 1984

Exhibit A - Page 10 of 198

Agency Code  04-0248-00                              Policy Number  054604-07424498

55202 (5-00)
COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED
# EXCLUSION - PRODUCTS-COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM.

### SCHEDULE

**Name of Person or Organization (Additional Insured):**
WC WEGMAN CONSTRUCTION CO

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

1.  Under Section II - WHO IS AN INSURED, the following is added:

    The person or organization shown in the above Schedule is an Additional Insured, but only with respect to liability arising out of "your work" for that insured by or for you.

2.  Under Section I, COVERAGES, 2. Exclusions, the following exclusion is added:

    The insurance provided herein to the Additional Insured does not apply to the "products-completed operations hazard".

3.  Under Section III - LIMITS OF INSURANCE, the following is added:

    The limits of liability for the Additional Insured are those specified in the written contract or agreement between the insured and the owner, lessee or contractor, not to exceed the limits provided in this policy.  These limits are inclusive of and not in addition to the limits of insurance shown in the Declarations.

4.  Under Section IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, 4. Other Insurance, the following is added:

    This insurance is primary for the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" for that person or organization by or for you.  Other insurance available to the person or organization shown in the Schedule will apply as excess insurance and not contribute as primary insurance to the insurance provided by this endorsement.

Includes copyrighted material of Insurance Services Office., Inc., with its permission
Copyright, Insurance Services Office, Inc., 1984

CG 00 01 11 88

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION V).

## SECTION I - COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement.**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

        **(1)** The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

        **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payments of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS COVERAGES A AND B.

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

        **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

        **(2)** The "bodily injury" or "property damage" occurs during the policy period.

    **c.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions.**

    This insurance does not apply to:

    **a.** "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

    **b.** "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of

Copyright, Insurance Services Office, Inc., 1982, 1988

liability in a contract or agreement. This exclusion does not apply to liability for damages:

    **(1)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

    **(2)** That the insured would have in the absence of the contract or agreement.

**c.** "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

    **(1)** Causing or contributing to the intoxication of any person;

    **(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

    **(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d.** Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e.** "Bodily injury" to:

    **(1)** An employee of the insured arising out of and in the course of employment by the insured; or

    **(2)** The spouse, child, parent, brother or sister of that employee as a consequence of (1) above.

This exclusion applies:

    **(1)** Whether the insured may be liable as an employer or in any other capacity; and

    **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f.** **(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

    **(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

    **(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

    **(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

    **(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

        **(i)** if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

Copyright, Insurance Services Office, Inc., 1982, 1988

**(ii)** if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraphs (a) and (d) (i) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

**(2)** Any loss, cost or expense arising out of any:

    **(a)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

    **(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing from, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**g.** "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading and unloading".

This exclusion does not apply to:

    **(1)** A watercraft while ashore on premises you own or rent;

    **(2)** A watercraft you do not own that is:

        **(a)** Less than 26 feet long; and

        **(b)** Not being used to carry persons or property for a charge;

    **(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

    **(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

    **(5)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of "mobile equipment" (Section V.8.).

**h.** "Bodily injury" or "property damage" arising out of:

    **(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

    **(2)** The use of "mobile equipment" in, or while in practice or preparation for, a prearranged racing, speed or demolition contest or in any stunting activity.

**i.** "Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j.** "Property damage" to:

    **(1)** Property you own, rent or occupy;

Copyright, Insurance Services Office, Inc., 1982, 1988

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k.** "Property damage" to "your product" arising out of it or any part of it.

**l.** "Property damage" to "your work" arising out of it or any part of it and including in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.** "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.** Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Exclusions c. through n. do not apply to damage by fire to premises rented to you. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (SECTION III).

## COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement.**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this coverage part applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate

Copyright, Insurance Services Office, Inc., 1982, 1988

any "occurrence" or offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLE-MENTARY PAYMENTS - COVERAGES A AND B.

**b.** This insurance applies to:

**(1)** "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

**(2)** "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

**2.    Exclusions.**

This insurance does not apply to:

**a.** "Personal injury" or "advertising injury":

**(1)** Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of falsity;

**(2)** Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

**(3)** Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured; or

**(4)** For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**b.** "Advertising injury" arising out of:

**(1)** Breach of contract, other than mis-appropriation of advertising ideas under an implied contract;

**(2)** The failure of goods, products or services to conform with advertised quality or performance;

**(3)** The wrong description of the price of goods, products or services; or

**(4)** An offense committed by an insured whose business is advertising, broad-casting, publishing or telecasting.

**COVERAGE C. MEDICAL PAYMENTS**

**1.    Insuring Agreement.**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(1)** The accident takes place in the "cover-age territory" and during the policy period;

**(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(3)** The injured person submits to exam-ination, at our expense, by physicians of

our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

    **(1)** First aid at the time of an accident;

    **(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

    **(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2.    Exclusions.**

We will not pay expenses for "bodily injury":

**a.** To any insured.

**b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** To a person injured on that part of premises you own or rent that the person normally occupies.

**d.** To a person, whether or not an employee of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefit law or similar law.

**e.** To a person injured while taking part in athletics.

**f.** Included within the "products-completed operations hazard".

**g.** Excluded under Coverage A.

**h.** Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

**SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**

We will pay, with respect to any claim or "suit" we defend:

**1.** All expenses we incur.

**2.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**3.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**4.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $100 a day because of time off from work.

**5.** All costs taxed against the insured in the "suit".

**6.** Prejudgment interest awarded against the insured on the part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**7.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**SECTION II - WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and

Copyright, Insurance Services Office, Inc., 1982, 1988

Page 6 of 14

their spouses are also insureds, but only with respect to the conduct of your business.

**c.** An organization other than a partnership or joint venture, you are insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**2.** Each of the following is also an insured:

**a.** Your employees, other than your executive officers, but only for acts within the scope of their employment by you. However, no employee is an insured for:

**(1)** "Bodily injury" or "personal injury" to you or to a co-employee while in the course of his or her employment, or the spouse, child, parent, brother or sister of that co-employee as a consequence of such "bodily injury" or "personal injury ', or for any obligation to share damages with or repay someone else who must pay damages because of the injury; or

**(2)** "Bodily injury" or "personal injury" arising out of his or her providing or failing to provide professional health care services; or

**(3)** "Property damage" to property owned or occupied by or rented or loaned to that employee, any of your other employees, or any of your partners or members (if you are a partnership or joint venture).

**b.** Any person (other than your employee), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

**a.** "Bodily injury" to a co-employee of the person driving the equipment; or

**b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

**4.** Any organization you newly acquire or form, other than a partnership of joint venture, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

Copyright, Insurance Services Office, Inc., 1982, 1988

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    a. Insureds,

    b. Claims made or "suits" brought; or

    c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

    a. Medical expenses under Coverage C;

    b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products completed operations hazard"; and

    c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

    a. Damages under Coverage A; and

    b. Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises rented to you arising out of any one fire.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The limits of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy.**

    Bankruptcy or insolvency of the insured or the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Claim Or Suit.**

    a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        (1) How, when and where the "occurrence" or offense took place;

        (2) The names and addresses of any injured persons and witnesses; and

        (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

    b. If a claim is made or "suit" is brought against any insured, you must:

Copyright, Insurance Services Office, Inc., 1982, 1988

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit"

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3.** **Legal Action Against Us.**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial;

but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4.** **Other Insurance.**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverage A or B of this Coverage Part, our obligations are limited as follows:

**a.** Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

**b.** Excess Insurance

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

**(1)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(2)** That is Fire insurance for premises rented to you; or

**(3)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I).

When this insurance is excess, we will have no duty under Coverage A or B to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

Copyright, Insurance Services Office, Inc., 1982, 1988

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

5. **Premium Audit.**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

6. **Representations.**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

7. **Separation of Insureds.**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

8. **Transfer Of Rights Of Recovery Against Others To Us.**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. **When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

Copyright, Insurance Services Office, Inc., 1982, 1988

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V - DEFINITIONS

1. "Advertising injury" means injury arising out of one or more of the following offenses:

   a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   b. Oral or written publication of material that violates a person's right of privacy;

   c. Misappropriation of advertising ideas or style of doing business; or

   d. Infringement of copyright, title or slogan.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any one time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

   c. All parts of the world if:

      (1) The injury or damage arises out of:

         (a) Goods or products made or sold by you in the territory described in a. above; or

      (b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

      (2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

6. "Insured contract" means:

   a. A lease of premises;

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of

Copyright, Insurance Services Office, Inc., 1982, 1988

another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

An "insured contract" does not include that part of any contract or agreement:

a. That indemnifies any person or organization for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

b. That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   (1) Preparing, approving or failing to pre-pare or approve maps, drawings, opin-ions, reports, surveys, change orders, designs or specifications; or

   (2) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

c. Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in b. above and supervisory, inspection or engineering services; or

d. That indemnifies any person or organization for damage by fire to premises rented or loaned to you.

7. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

8. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   (1) Power cranes, shovels, loaders, diggers or drills; or

   (2) Road construction or resurfacing equip-ment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   (1) Air compressors, pumps and genera-tors, including spraying, welding, building cleaning, geophysical explora-tion, lighting and well servicing equip-ment; or

   (2) Cherry pickers and similar devices used to raise and lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

Copyright, Insurance Services Office, Inc., 1982, 1988

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   (1)  Equipment designed primarily for:

      (a)  Snow removal;

      (b)  Road maintenance, but not construction or resurfacing;

      (c)  Street cleaning;

   (2)  Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise and lower workers; and

   (3)  Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**9.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**10.** "Personal injury" means, other than "bodily injury", arising out of one or more of the following offenses:

   **a.**  False arrest, detention or imprisonment;

   **b.**  Malicious prosecution;

   **c.**  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

   **d.**  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

   **e.**  Oral or written publication of material that violates a person's right of privacy.

**11.**  **a.**  "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      (1)  Products that are still in your physical possession; or

      (2)  Work that has not yet been completed or abandoned.

   **b.**  "Your work" will be deemed completed at the earliest of the following times:

      (1)  When all of the work called for in your contract has been completed.

      (2)  When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

      (3)  When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   **c.**  This hazard does not include "bodily injury" or "property damage" arising out of:

      (1)  The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of it;

      (2)  The existence of tools, uninstalled equipment or abandoned or unused materials;

      (3)  Products or operations for which the classification in this Coverage Part or in our manual of rules includes products or completed operations.

**12.** "Property damage" means:

Copyright, Insurance Services Office, Inc., 1982, 1988

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

13. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

14. "Your product" means:

**a.** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   **(1)** You;

   **(2)** Others trading under your name; or

   **(3)** A person or organization whose business or assets you have acquired; and

**b.** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

**a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**b.** The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

15. "Your work" means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

**a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**b.** The providing of or failure to provide warnings or instructions.

Copyright, Insurance Services Office, Inc., 1982, 1988

CG 01 98 08 90
COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART (OCCURRENCE VERSION)

Condition 2. DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT (SECTION IV) is replaced by the following:

**2.  Duties In The Event Of Occurrence, Offense, Claim or Suit.**

a.  You must see to it that we are notified as soon as practicable of an  "occurrence" or an offense which may result in a claim.  To the extent possible, notice should include:

(1)  How, when and where the  "occurrence" or offense took place;

(2)  The names and addresses of any injured persons and witnesses; and,

(3)  The nature and location of any injury or damage arising out of the  "occurrence" or offense.

b.  If a claim is made or  "suit" is brought against any insured, you must:

(1)  Immediately record the specifics of the claim or "suit" and the date received; and,

(2)  Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c.  You and any other involved insured must:

(1)  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2)  Authorize us to obtain records and other information;

(3)  Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and,

(4)  Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d.  No insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

Copyright, Insurance Services Office, Inc., 1990

CG 02 00 04 87

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** CANCELLATION (Common Policy Conditions) is replaced by the following:

CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing us advance written notice of cancellation.

2. **a.** We may cancel this policy by mailing to you written notice stating the reason for cancellation.

   **b.** If we cancel for nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

   **c.** If we cancel for a reason other than nonpayment of premium, we will mail the notice at least:

      **(1)** 30 days prior to the effective date of cancellation if the policy has been in effect for 60 days or less.

      **(2)** 60 days prior to the effective date of cancellation if the policy has been in effect for more than 60 days.

3. If this policy has been in effect for more than 60 days, we may cancel only for one or more of the following reasons:

   **a.** Nonpayment of premium;

   **b.** The policy was obtained through a material misrepresentation;

   **c.** Any insured has violated any of the terms and conditions of the policy;

   **d.** The risk originally accepted has measurably increased.

   **e.** Certification to the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or

   **f.** A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this State.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro

Copyright, Insurance Services Office, Inc., 1987

Page 1 of 2

rata. If the first Named Insured cancels, the refund will be less than pro rata. The cancellation will be effective even if we have not offered a refund.

**B.** The following is added and supersedes any provision to the contrary:

NONRENEWAL

1. If we decide not to renew this policy, we will mail written notice stating the reason for nonrenewal no less than 60 days before the expiration date to:

   **a.** You; and

   **b.** The broker, if known to us, or the agent of record.

2. Even if we do not comply with these terms, this policy will terminate:

   **a.** On the expiration date if:

      **(1)** You fail to perform any of your obligations in connection with the payment of the premium for the policy, or any installment payment, whether payable directly to us or our agents or indirectly under any premium finance plan or extension of credit; or

      **(2)** We have indicated our willingness to renew this policy to you or your representative; or

      **(3)** You have notified us or our agent that you do not want to renew this policy.

   **b.** On the effective date of any other insurance replacing this policy.

**C.** Mailing of Notices

We will mail cancellation and nonrenewal notices to you, and the agent or broker, at the last addresses known to us. Proof of mailing will be sufficient proof of notice.

Copyright, Insurance Services Office, Inc., 1987

CG 21 47 09 89

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT - RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

1. The following exclusion is added to COVERAGE A (Section I):

   o. "Bodily injury" arising out of any:

   (1) Refusal to employ;

   (2) Termination of employment;

   (3) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or

   (4) Consequential "bodily injury" as a result of (1) through (3) above.

   This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of the injury.

2. The following exclusion is added to COVERAGE B (Section I):

   c. "Personal injury" arising out of any:

   (1) Refusal to employ;

   (2) Termination of employment;

   (3) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or

   (4) Consequential "personal injury" as a result of (1) through (3) above.

Copyright, Insurance Services Office, Inc., 1988

CL 175 (2-86)

# QUICK REFERENCE
# COMMERCIAL GENERAL LIABILITY COVERAGE PART

### READ YOUR POLICY CAREFULLY

The Commercial General Liability Coverage Part in your policy consists of Declarations, a Coverage Form (either CG 00 01 or CG 00 02), Common Policy Conditions and Endorsements, if applicable.  Following is a Quick Reference indexing of the principal provisions contained in each of the components making up the Coverage Part, listed in sequential order, except for the provisions in the Declarations which may not be in the sequence shown.

**DECLARATIONS**
    Named Insured and Mailing Address
    Policy Period
    Description of Business and Location of Premises
    Limits of Insurance
    Forms and Endorsements applying to the Coverage Part at time of issue

**COVERAGE FORM (CG 00 01 or CG 00 02)**
    SECTION I - COVERAGES
        Coverage A - Bodily Injury and Property Damage Liability
            Insuring Agreement
            Exclusions
        Coverage B - Personal and Advertising Injury Liability
            Insuring Agreement
            Exclusions
        Coverage C - Medical Payments
            Insuring Agreement
            Exclusions
        Supplementary Payments
    SECTION II - WHO IS AN INSURED
    SECTION III - LIMITS OF INSURANCE
    SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS
        Bankruptcy
        Duties in the Event of Occurrence, Claim or Suit
        Legal Action Against Us
        Other Insurance
        Premium Audit
        Representations
        Separation of Insureds
        Transfer of Rights of Recovery Against Others to Us
        When We Do Not Renew (applicable to CG 00 02 only)
        Your Right to Claim and  "Occurrence" Information (applicable to CG 00 02 only)
  SECTION V - EXTENDED REPORTING PERIODS (applicable to CG 00 02 only)
    SECTION VI - DEFINITIONS (SECTION V IN CG 00 01)

Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1982, 1984, 1986.

CP 00 10 10 91
COMMERCIAL PROPERTY

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION H - DEFINITIONS.

## A. COVERAGE

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the following types of property for which a Limit of Insurance is shown in the Declarations:

**a. Building,** meaning the building or structure described in the Declarations, including:

(1) Completed additions;

(2) Permanently installed:

  (a) Fixtures;

  (b) Machinery; and

  (c) Equipment;

(3) Outdoor fixtures;

(4) Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

  (a) Fire extinguishing equipment;

  (b) Outdoor furniture;

  (c) Floor coverings; and

  (d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

(5) if not covered by other insurance:

  (a) Additions under construction, alterations and repairs to the building or structure;

  (b) Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

**b. Your Business Personal Property** located in or on the building described in the Declarations or in open (or in a vehicle) within 100 feet of the described premises, consisting of the following unless otherwise specified in the Declarations or on the Your Business Personal Property - Separation of Coverage form:

Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

**(1)** Furniture and fixtures;

**(2)** Machinery and equipment;

**(3)** "Stock;"

**(4)** All other personal property owned by you and used in your business;

**(5)** Labor, materials or services furnished or arranged by you on personal property of others;

**(6)** Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

    **(a)** Made a part of the building or structure you occupy but do not own; and

    **(b)** You acquired or made at your expense but cannot legally remove;

**(7)** Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property of Others.

**c.** **Personal Property of Others** that is:

**(1)** In your care, custody or control; and

**(2)** Located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**2.** **Property Not Covered**

Covered Property does not include:

**a.** Accounts, bills, currency, deeds, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

**b.** Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of the buildings;

**c.** Automobiles held for sale;

**d.** Bridges, roadways, walks, patios or other paved surfaces;

**e.** Contraband, or property in the course of illegal transportation or trade;

**f.** The cost of excavations, grading, backfilling or filling;

**g.** Foundations of buildings, structures, machinery or boilers if their foundations are below:

**(1)** The lowest basement floor; or

**(2)** The surface of the ground, if there is no basement;

**h.** Land (including land on which the property is located), water, growing crops or lawns;

**i.** Personal property while airborne or waterborne;

**j.** Pilings, piers, wharves or docks;

**k.** Property that is covered under another coverage form of this or any other policy in which it is more specifically described except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

**l.** Retaining walls that are not part of the building described in the Declarations;

**m.** Underground pipes, flues or drains;

Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

Page 2 of 12

**n.** The cost to research, replace or restore the information on valuable papers and records, including those which exist on electronic or magnetic media, except as provided in the Coverage Extensions;

**o.** Vehicles or self-propelled machines (including aircraft or watercraft) that:

**(1)** Are licensed for use on public roads; or

**(2)** Are operated principally away from the described premises.

This paragraph does not apply to:

**(a)** Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

**(b)** Vehicles or self-propelled machines, other than autos, you hold for sale; or

**(c)** Rowboats or canoes out of water at the described premises;

**p.** The following property while outside of buildings:

**(1)** Grain, hay, straw or other crops;

**(2)** Fences, radio or television antennas, including their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants (other than "stock" of trees, shrubs or plants), all except as provided in the Coverage Extensions.

**3. Covered Causes Of Loss**

See applicable Causes of Loss Form as shown in the Declarations.

**4. Additional Coverages**

**a. Debris Removal**

**(1)** We will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

**(2)** The most we will pay under this Additional Coverage is 25% of:

**(a)** The amount we pay for the direct physical loss of or damage to Covered Property; plus

**(b)** The deductible in this policy applicable to that loss or damage.

But this limitation does not apply to any additional debris removal limit provided in the Limits of Insurance section.

**(3)** This Additional Coverage does not apply to costs to:

**(a)** Extract "pollutants" from land or water; or

**(b)** Remove, restore or replace polluted land or water.

**b. Preservation of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

Page 3 of 12

(2) Only if the loss or damage occurs within 10 days after the property is first moved.

### c. Fire Department Service Charge

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for your liability for fire department service charges:

(1) Assumed by contract or agreement prior to loss; or

(2) Required by local ordinance.

No Deductible applies to this Additional Coverage.

### d. Pollutant Clean Up and Removal

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this policy.

### 5. Coverage Extensions

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more or, a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

### a. Newly Acquired or Constructed Property

(1) You may extend the insurance that applies to Building to apply to:

(a) Your new buildings while being built on the described premises; and

(b) Buildings you acquire at locations, other than the described premises, intended for:

(i) Similar use as the building described in the Declarations; or

(ii) Use as a warehouse.

The most we will pay for loss or damage under this Extension is 25% of the Limit of Insurance for Building shown in the Declarations, but not more than $250,000 at each building.

(2) You may extend the insurance that applies to Your Business Personal Property to apply to that property at any location you acquire other than at fairs or exhibitions.

The most we will pay for loss or damage under this Extension is 10% of the Limit of Insurance for Your Business Personal Property shown in the Declarations, but not

Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

more than $100,000 at each building.

(3) Insurance under this Extension for each newly acquired or constructed property will end when any of the following first occurs:

(a) This policy expires.

(b) 30 days expire after you acquire or begin to construct the property; or

(c) You report values to us.

We will charge you additional premium for values reported from the date construction begins or you acquire the property.

**b. Personal Effects and Property of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

(1) Personal effects owned by you, your officers, your partners or your employees. This extension does not apply to loss or damage by theft.

(2) Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers and Records - Cost of Research**

You may extend the insurance that applies to Your Business Personal Property to apply to your costs to research, replace or restore the information on lost or damaged valuable papers and records, including those which exist on electronic or magnetic media, for which duplicates do not exist. The most we will pay under this Extension is $1,000 at each described premises.

**d. Property Off-Premises**

You may extend the insurance provided by this Coverage Form to apply to your Covered Property, other than "stock", that is temporarily at a location you do not own, lease or operate. This Extension does not apply to Covered Property:

(1) In or on a vehicle;

(2) In the care, custody or control or your salespersons; or

(3) At any fair or exhibition.

The most we will pay for loss or damage under this Extension is $5,000.

**e. Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas, signs (other than signs attached to buildings), trees, shrubs and plants (other than "stock" of trees, shrubs or plants), including debris removal expense, caused by or resulting from any of the following cause of loss if they are Covered Causes of Loss:

(1) Fire;

(2) Lightning;

(3) Explosion;

(4) Riot or Civil Commotion; or

(5) Aircraft.

Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

Page 5 of 12

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant.

Each of these Exclusions is additional insurance. The Additional Condition, Co-insurance, does not apply to these Exclusions.

## B. EXCLUSIONS

See applicable Causes of Loss Form as shown in the Declarations.

## C. LIMITS OF INSURANCE

The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs attached to buildings is $1,000 per sign in any one occurrence.

The limits applicable to the Coverage Extensions and the Fire Department Service Charge and Pollutant Clean Up and Removal Additional Coverages are in addition to the Limits of Insurance.

Payments under the following Additional Coverages will not increase the applicable Limit of Insurance:

1. Preservation of Property; or

2. Debris Removal; but if:

   a. The sum of direct physical loss or damage and debris removal expense exceeds the Limit of Insurance; or

   b. The debris removal expense exceeds the amount payable under 25% limitation in the Debris Removal Additional Coverage;

   we will pay up to an additional $5,000 for each location in any one occurrence under the Debris Removal Additional Coverage.

## D. DEDUCTIBLE

We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible, up to the applicable Limit of Insurance, after any deduction required by the Coinsurance condition or the Agreed Value Optional Coverage.

## E. LOSS CONDITIONS

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

1. **Abandonment**

   There can be no abandonment of any property to us.

2. **Appraisal**

   If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   a. Pay its chosen appraiser; and

   b. Bear the other expenses of the appraisal and umpire equally.

   If there is an appraisal, we will still retain our right to deny the claim.

3. **Duties In The Event Of Loss Or Damage**

Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

Page 6 of 12

a. You must see that the following are done in the event of loss or damage to Covered Property:

  (1) Notify the police if a law may have been broken.

  (2) Give us prompt notice of the loss or damage. Include a description of the property involved.

  (3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

  (4) Take all reasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss. If feasible, set the damaged property aside and in the best possible order for examination. Also keep a record of your expenses for emergency and temporary repairs, for consideration in the settlement of the claim. This will not increase the Limit of Insurance.

  (5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

  (6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

  Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

  (7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days

after our request. We will supply you with the necessary forms.

  (8) Cooperate with us in the investigation or settlement of the claim.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

4. **Loss Payment**

a. In the event of loss or damage covered by this Coverage Form, at our option, we will either:

  (1) Pay the value of loss or damaged property;

  (2) Pay the cost of repairing or replacing the lost or damaged property;

  (3) Take all or any part of the property at an agreed or appraised value; or

  (4) Repair, rebuild or replace the property with other property of like kind and quality.

b. We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

c. We will not pay you more than your financial interest in the Covered Property.

d. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

e. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

f. We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if:

(1) You have complied with all of the terms of this Coverage Part; and

(2) (a) We have reached agreement with you on the amount of loss; or

(b) An appraisal award has been made.

5. **Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

6. **Vacancy**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage, we will:

a. Not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

(1) Vandalism;

(2) Sprinkler leakage, unless you have protected the system against freezing;

(3) Building glass breakage;

(4) Water damage;

(5) Theft; or

(6) Attempted theft.

b. Reduce the amount we would otherwise pay for the loss or damage by 15%.

A building is vacant when it does not contain enough business personal property to conduct customary operations.

Buildings under construction are not considered vacant.

7. **Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

a. At actual cash value as of the time of loss or damage, except as provided in b., c., d., e. and f. below.

b. If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

This provision does not apply to the following even when attached to the building:

(1) Awnings or floor coverings;

(2) Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

(3) Outdoor equipment or furniture.

c. "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

d. Glass at the cost of replacement with safety glazing material if required by law.

Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

**e.** Tenant's Improvements and Betterments at:

    **(1)** Actual cash value of the lost or damaged property if you make repairs promptly.

    **(2)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

        **(a)** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

        **(b)** Divide the amount determined in (a) above by the number of days from the installation of improvements to the expiration of the lease.

    If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

    **(3)** Nothing if others pay for repairs or replacement.

**f.** Valuable Papers and Records, including those which exist on electronic or magnetic media (other than pre-packaged software programs), at the cost of:

    **(1)** Blank materials for reproducing the records; and

    **(2)** Labor to transcribe or copy the records when there is a duplicate.

**F. ADDITIONAL CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1. Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies.

**a.** We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

    **(1)** Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

    **(2)** Divide the Limit of Insurance of the property by the figure determined in step (1);

    **(3)** Multiply the total amount of loss, before the application of any deductible by the figure determined in step (2); and

    **(4)** Subtract the deductible from the figure determined in step (3).

We will pay the amount determined in step (4) or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example No. 1** (Underinsurance):
When:

| | |
|---|---|
| The value of property is | 250,000 |
| The Coinsurance percentage for it is | 80% |
| The Limit of Insurance for it is | 100,000 |
| The Deductible is | $250 |
| The amount of loss is | $ 40,000 |

Step (1): $250,000 x 80% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)
Step (2): $100,000 ÷ $200,000 = .50
Step (3): $40,000 x .50 = $20,000
Step (4): $20,000 - $250 = $19,750

Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example No. 2 (Adequate Insurance):**
When:

| | |
|---|---|
| The value of the property is | $250,000 |
| The Coinsurance percentage for it is | 80% |
| The Limit of Insurance for it is | $200,000 |
| The Deductible is | $250 |
| The amount of loss is | $40,000 |

Step (1): $250,000 x 80% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)
Step (2): $200,000 ÷ $200,000 = 1.00
Step (3): $40,000 x 1.00 = $40,000
Step (4): $40,000 - $250 = $39,750

We will cover the $39,750 loss in excess of the Deductible. No penalty applies.

**b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example No. 3:**
When:

The value of the property is:

| | |
|---|---|
| Bldg. at Location No. 1 | $75,000 |
| Bldg. at Location No. 2 | $100,000 |
| Personal Property at Location No. 2 | $75,000 |
| | $250,000 |

| | |
|---|---|
| The Coinsurance percentage for it is | 90% |

| | |
|---|---|
| The Limit of Insurance for Buildings and Personal Property at Location Nos. 1 and 2 is | $180,000 |
| The Deductible is | $1,000 |
| The amount of loss is Bldg. at Location No. 2 | $30,000 |
| Personal Property at Location No. 2 | $20,000 |
| | $50,000 |

Step (1): $250,000 x 90% = $225,000

(the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)
Step (2): $180,000 ÷ $225,000 = .80
Step (3): $50,000 x .80 = $40,000
Step (4): $40,000 - $1,000 = $39,000.

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2. Mortgage Holders**

**a.** The term "mortage holder" includes trustee.

**b.** We will pay for covered loss of or damage to buildings or structures to each mortgage holder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgage holder will still have the right to receive loss payment if the mortgage holder:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgage holder.

All of the terms of this Coverage Part will then apply directly to the mortgage holder.

Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

e. If we pay the mortgage holder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

   (1) The mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

   (2) The mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired.

   At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f. If we cancel this policy, we will give written notice to the mortgage holder at least:

   (1) 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   (2) 30 days before the effective date of cancellation if we cancel for any other reason.

g. If we elect not to renew this policy, we will give written notice to the mortgage holder at least 10 days before the expiration date of this policy.

## G. OPTIONAL COVERAGES

If shown in the Declarations, the following Optional Coverages apply separately to each item.

1. **Agreed Value**

   a. The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies.

   We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

   b. If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

   c. The terms of this Optional Coverage apply only to loss or damage that occurs:

      (1) On or after the effective date of this Optional Coverage; and

      (2) Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

2. **Inflation Guard**

   a. The Limit of Insurance for property to which this Optional Coverage applied will automatically increase by the annual percentage shown in the Declarations.

   b. The amount of increase will be:

      (1) The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

      (2) The percentage of annual increase shown in the Declarations, expressed a decimal (example: 8% is .08), times

      (3) The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

    (i)   Relocation expenses; and

    (ii)  Costs to equip and operate the replacement or temporary locations.

**(2)** We will pay any Extra Expense to minimize the suspension of business if you cannot continue "operations."

**(3)** We will pay any Extra Expense to:

    **(a)** Repair or replace any property; or

    **(b)** Research, replace or restore the lost information on damaged valuable papers and records;

to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

**b.** **Civil Authority.** We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss. This coverage will apply for a period of up to two consecutive weeks from the date of that action.

**c.** **Alterations and New Buildings.** We will pay for the actual loss of Business Income you sustain due to direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss to:

**(1)** New buildings or structures, whether complete or under construction;

**(2)** Alterations or additions to existing buildings or structures; and

**(3)** Machinery, equipment, supplies or building materials located on or within 100 feet of the described premises and:

    **(a)** Used in the construction, alterations or additions; or

    **(b)** Incidental to the occupancy of new buildings.

If such direct physical loss or damage delays the start of "operations," the "period of restoration" will begin on the date "operations" would have begun if the direct physical loss or damage had not occurred.

**d.** **Extended Business Income.** We will pay for the actual loss of Business Income you incur during the period that:

**(1)** Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

**(2)** Ends on the earlier of:

    **(a)** The date you could restore your "operations" with reasonable speed, to the condition that would have existed if no direct physical loss or damage occurred; or

    **(b)** 30 consecutive days after the date determined in (1) above.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**4.** **Coverage Extension**

If a Coinsurance percentage of 50% or more is shown in the Declarations, you may

Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

extend the insurance provided by this Coverage Part as follows:

**Newly Acquired Locations**

a.  You may extend your Business Income Coverage to apply to property at any location you acquire other than fairs or exhibitions.

b.  The most we will pay for loss under this Extension is 10% of the Limit of Insurance for Business Income shown in the Declarations, but not more than $100,000 at each location.

c.  Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

   (1)  This policy expires;

   (2)  30 days expire after you acquire or begin to construct the property; or

   (3)  You report values to us.

   We will charge you additional premium for values reported from the date you acquire the property.

   This Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

**B.  EXCLUSIONS**

See applicable Causes of Loss Form as shown in the Declarations.

**C.  LIMITS OF INSURANCE**

The most we will pay for loss in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

The limit applicable to the Coverage Extension is in addition to the Limit of Insurance.

Payments under the following Additional Coverages will not increase the applicable Limit of Insurance:

1.  Alterations and New Buildings;

2.  Civil Authority;

3.  Extra Expense; or

4.  Extended Business Income.

**D.  LOSS CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

1.  **Appraisal**

   If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss.  In this event, each party will select a competent and impartial appraiser.

   The two appraisers will select an umpire.  If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction.  The appraisers will state separately the amount of Net Income and operating expense or amount of loss.  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will be binding.  Each party will:

   a.  Pay its chosen appraiser; and

   b.  Bear the other expenses of the appraisal and umpire equally.

   If there is an appraisal, we will still retain our right to deny the claim.

2.  **Duties In The Event Of Loss**

   a.  You must see that the following are done in the event of loss:

      (1)  Notify the police if a law may have been broken.

Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

Page 3 of 9

**(2)** Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when, and where the direct physical loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss. If feasible, set the damaged property aside and in the best possible order for examination. Also keep a record of your expenses for emergency and temporary repairs, for consideration in the settlement of the claim. This will not increase the Limit of Insurance.

**(5)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(6)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(7)** Cooperate with us in the investigation or settlement of the claim.

**(8)** If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**3. Limitation - Electronic Media And Records**

We will not pay for any loss of Business Income caused by direct physical loss of or damage to Electronic Media and Records after the longer of:

**a.** 60 consecutive days from the date of direct physical loss or damage; or

**b.** The period, beginning with the date of direct physical loss or damage, necessary to repair, rebuild or replace, with reasonable speed and similar quality, other property at the described premises due to loss or damage caused by the same occurrence.

Electronic Media and Records are:

**(1)** Electronic data processing, recording or storage media such as films, tapes, discs, drums or cells;

**(2)** Data stored on such media; or

**(3)** Programming records used for electronic data processing or electronically controlled equipment.

This limitation does not apply to Extra Expense.

Example No. 1:

A Covered Cause of Loss damages a computer on June 1. It takes until September 1 to replace the computer, and until October 1 to restore the data that was lost when the damage occurred. We will only pay for the Business Income loss sustained during the period June 1 - September 1. Loss during the period September 2 - October 1 is not covered.

Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

Example No. 2:

A Covered Cause of Loss results in the loss of data processing programming records on August 1. The records are replaced on October 15. We will only pay for the Business Income loss sustained during the period August 1 - September 29 (60 consecutive days). Loss during the period September 30 - October 15 is not covered.

**4. Loss Determination**

  **a.** The amount of Business Income loss will be determined based on:

    **(1)** The Net Income of the business before the direct physical loss or damage occurred;

    **(2)** The likely Net Income of the business if no loss or damage occurred;

    **(3)** The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

    **(4)** Other relevant sources of information, including:

      **(a)** Your financial records and accounting procedures;

      **(b)** Bills, invoices and other vouchers; and

      **(c)** Deeds, liens or contracts.

  **b.** The amount of Extra Expense will be determined based on:

    **(1)** All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We

will deduct from the total of such expenses:

    **(a)** The salvage value that remains of any property bought for temporary use during the "period of restoration" once "operations" are resumed; and

    **(b)** Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

    **(2)** All necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

  **c. Resumption Of Operations**

  We will reduce the amount of your:

    **(1)** Business Income loss, other than Extra Expense, to the extent you can resume your "operations," in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

    **(2)** Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

  **d.** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**5. Loss Payment**

We will pay for covered loss within 30 days after we receive the sworn proof of loss, if:

  **a.** You have complied with all of the terms of this Coverage Part; and

Copyright, ISO Commercial Risk Services, Inc., 1983, 1990    Page 5 of 9

**b.** **(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

**E. ADDITIONAL CONDITION**

**Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the Common Policy Conditions and the Commercial Property Conditions.

We will not pay the full amount of any loss if the Limit of Insurance for Business Income is less than:

**a.** The Coinsurance percentage shown for Business Income in the Declarations; times

**b.** The sum of:

**(1)** The Net Income (Net Profit or Loss before income taxes), and

**(2)** All operating expenses, including payroll expenses,

that would have been earned (had no loss occurred) by your "operations" at the described premises for the 12 months following the inception, or last previous anniversary date, of this policy (whichever is later)

Instead, we will determine the most we will pay using the following steps:

**1.** Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this policy by the Coinsurance percentage;

**2.** Divide the Limit of Insurance for the described premises by the figure determined in step 1; and

**3.** Multiply the total amount of loss by the figure determined in Step 2.

We will pay the amount determined in step 3. or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

Example No. 1 (Underinsured):

When: The Net Income and opera-
ting expenses for the
12 months following the
inception, or last previous
anniversary date,
of this policy at the de-
scribed premises
would have been                    $400,000
The Coinsurance percentage
is                                        50%
The Limit of Insurance is       $150,000
The amount of loss is           $ 80,000

Step 1: $400,000 x 50%  = $200,000
(the minimum amount of
insurance to meet your
Coinsurance requirements)
Step 2: $150,000 ÷ $200,000 = .75
Step 3: $ 80,000 x .75  = $60,000

We will pay no more than $60,000. The remaining $20,000 is not covered.

Example No. 2 (Adequate Insurance):

When: The Net Income and opera-
ting expenses for the
12 months following the
inception, or last previous
anniversary date,
of this policy at the de-
scribed premises
would have been                    $400,000
The Coinsurance percentage
is                                        50%
The Limit of Insurance is       $200,000
The amount of loss is           $ 80,000
Step 1: $400,000 x 50%  = $200,000
(the minimum amount of
insurance to meet your
Coinsurance requirements)
Step 2: $200,000 ÷ $200,000 = 1.00

Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

Step 3: $ 80,000 x 1.00 = $80,000

We will cover the $80,000 loss. No penalty applies.

This condition does not apply to the Extra Expense Additional Coverage.

## F. OPTIONAL COVERAGES

If shown in the Declarations, the following Optional Coverages apply separately to each item.

### 1. Maximum Period Of Indemnity

a.  The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

b.  The most we will pay for loss of Business Income is the lesser of:

   (1)  The amount of loss sustained during the 120 days immediately following the direct physical loss or damage; or

   (2)  The Limit of Insurance shown in the Declarations.

### 2. Monthly Limit Of Indemnity

a.  The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

b.  The most we will pay for loss of Business Income in each period of 30 consecutive days after the direct physical loss or damage is:

   (1)  The Limit of Insurance, multiplied by

   (2)  The fraction shown in the Declarations for this Optional Coverage.

Example:

When: The Limit of Insurance
is                                        $120,000
The fraction shown in
the Declarations for
this Optional Coverage
is                                             1/4
The most we will pay for loss in
each period of 30 consecutive
days is:
$120,000 x 1/4 = $30,000
If, in this example, the actual amount
of loss is:

| Days  | |
|---|---|
| Days 1-30 | $40,000 |
| Days 31-60 | 20,000 |
| Days 61-90 | 30,000 |
| | $90,000 |

We will pay:

| | |
|---|---|
| Days 1-30 | $30,000 |
| Days 31-60 | 20,000 |
| Days 61-90 | 30,000 |
| | $80,000 |

The remaining $10,000 is not covered.

### 3. Agreed Value

a.  To activate this Optional Coverage:

   (1)  A Business Income Report/Work Sheet must be made a part of this policy and must show financial data for your "operations:"

      (a)  During the 12 months prior to the date of the Work Sheet; and

      (b)  Estimated for the 12 months immediately following the inception of this Optional Coverage.

   (2)  An Agree Value must be shown in the Declarations or on the Work Sheet. The Agreed Value should be at least equal to:

      (a)  The Coinsurance percentage shown in the Declarations; multiplied by

Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

**(b)** The amount of Net Income and Operating Expenses for the following 12 months you report on the Work Sheet.

**b.** The Additional Condition, Coinsurance, is suspended until:

**(1)** 12 months after the effective date of this Optional Coverage; or

**(2)** The expiration date of this policy; whichever occurs first.

**c.** We will reinstate the Additional Condition, Coinsurance, automatically if you do not submit a new Work Sheet and Agreed Value:

**(1)** Within 12 months of the effective date of this Optional Coverage; or

**(2)** When you request a change in your Business Income Limit of Insurance.

**d.** If the Business Income Limit of Insurance is less than the Agreed Value, we will not pay more of any loss than the amount of loss multiplied by:

**(1)** The Business Income Limit of Insurance; divided by

**(2)** The Agreed Value.

Example:

When: The Limit of Insurance
is                   $100,000
The Agreed Value is   $200,000
The amount of loss is $ 80,000

Step (a): $100,000 ÷ $200,000 = .50
Step (b): .50 x $80,000 = $40,000

We will pay $40,000. The remaining $40,000 is not covered.

**4. Extended Period Of Indemnity**

Under paragraph A.3.d., Extended Business Income, the number "30" in subparagraph (2)(b) is replaced by the number shown in the Declarations for this Optional Coverage.

**G. DEFINITIONS**

**1.** "**Finished Stock**" means stock you have manufactured.

"Finished stock" also includes whiskey and alcoholic products being aged, unless there is a Coinsurance percentage shown for Business Income in the Declarations.

"Finished stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this Coverage Part.

**2.** "**Operations**" means:

**a.** Your business activities occurring at the described premises; and

**b.** The tenantability of the described premises, if coverage for Business Income including "Rental Value" or "Rental Value" applies.

**3.** "**Period of Restoration**" means the period of time that:

**a.** Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

**b.** Ends on the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality.

"Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

**(1)** Regulates the construction, use or repair, or requires the tearing down of any property; or

Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

Page 8 of 9

**(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants."

The expiration date of this policy will not cut short the "period of restoration."

**4.** "**Pollutants**" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**5.** "**Rental Value**" means the:

**a.** Total anticipated rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, and

**b.** Amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be your obligations, and

**c.** Fair rental value of any portion of the described premises which is occupied by you.

Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

CP 00 40 10 90
COMMERCIAL PROPERTY

# LEGAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION F - DEFINITIONS.

## A.  COVERAGE

We will pay those sums that you become legally obligated to pay as damages because of direct physical loss or damage, including loss of use, to Covered Property caused by accident and arising out of any Covered Cause of Loss. We will have the right and duty to defend any "suit" seeking those damages. But:

**(1)** The amount we will pay for damages is limited as described in Section C. Limits of Insurance;

**(2)** We may investigate and settle any claim or "suit" at our discretion; and

**(3)** Our right and duty to defend end when we have used up the Limit of Insurance in the payment of judgments and settlements.

### 1.  Covered Property

Covered Property, as used in this Coverage Form, means tangible property of others in your care, custody or control that is described in the Declarations or on the Legal Liability Coverage Schedule.

### 2.  Covered Causes Of Loss

See applicable Causes of Loss Form as shown in the Declarations.

### 3.  Additional Coverage

**Supplementary Payments.** We will pay, with respect to any claim or "suit" we defend:

**a.**  All expenses we incur.

**b.**  The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance. We do not have to furnish these bonds.

**c.**  All reasonable expenses incurred by you at our request, including actual loss of earnings up to $100 a day because of time off from work.

**d.**  All costs taxed against you in the "suit".

**e.**  Prejudgment interest awarded against you on the part of the judgment we pay. If we make an offer to pay the Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**f.**  All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

### 4.  Coverage Extensions

**a.  Additional Insureds.** If the Named Insured shown in the Declarations is a partnership or corporation, throughout this Coverage Form, the words "you"

Copyright, ISO Commercial Risk Services, Inc., 1983, 1989

Page 1 of 4

and "your" include partners, executive officers, trustees, directors and stockholders of such partnership or corporation, but only with respect to their duties as such.

**b. Newly Acquired Organizations.**
Throughout this Coverage Form, the words "you" and "your" also include any organization (other than a partnership or joint venture) you newly acquire or form and over which you maintain ownership or majority interest if there is no other similar insurance available to that organization.

This Coverage Extension ends:

**(1)** 90 days after you acquire or form the organization; or

**(2)** At the end of the policy period shown in the Declarations;

whichever is earlier.

This Extension does not apply to direct physical loss or damage that occurred before you acquired or formed the organization.

**c. Newly Acquired Property**

**(1)** You may extend the insurance that applies to Covered Property, as used in this Coverage Form, to apply to your liability for tangible property of others that comes under your care, custody or control after the beginning of the current policy period. This Extension is subject to the following:

**(a)** All terms and Conditions of this Coverage Form.

**(b)** Buildings must be intended for:

**(i)** Similar use as the building described in the Declarations or on the Legal Liability Coverage Schedule; or

**(ii)** use as a warehouse.

The most we will pay as the result of any one accident for loss or damage to the total of all buildings covered under this Extension is 25% of the Legal Liability Limit of Insurance for buildings shown in the Declarations or on the Legal Liability Coverage Schedule, but not more than $250,000 at each building.

**(c)** Personal Property must be at a location:

**(i)** That you own; or

**(ii)** That is or comes under your care, custody or control;

other than at fairs or exhibitions.

The most we will pay as the result of any one accident for loss or damage to the total of all personal property covered under this Extension is 10% of the Legal Liability Limit of Insurance for personal propery shown in the Declarations or on the Legal Liability Coverage Schedule, but not more than $100,000 at each building.

**(2)** Insurance under this Extension for each item of property of others will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 30 days expire after the property has come under your care, custody or control; or

Copyright, ISO Commercial Risk Services, Inc., 1983, 1989

(c)  You report values to us.

We will charge you additional premium for values reported from the date the property comes under your care, custody or control.

This Extension does not apply to direct physical loss or damage that occurred before the property came under your care, custody or control.

## B.  EXCLUSIONS

See applicable Causes of Loss Form as shown in the Declarations.

## C.  LIMITS OF INSURANCE

The most we will pay in damages as the result of any one accident is the applicable Limit of Insurance shown on the Legal Liability Coverage Schedule, or in the Declarations.

Payments under the Additional Coverage and the Newly Acquired Property Coverage Extension are in addition to the Limits of Insurance.

The existence of one or more:

1.  Additional Insureds, or

2.  Newly Acquired Organizations,

does not increase the Limit of Insurance.

## D.  LOSS CONDITIONS

The following conditions apply in addition to the Commercial Property Conditions:

1.  **Duties In The Event Of Accident, Claim Or Suit**

    a.  You must see to it that we are notified promptly of any accident that may result in a claim.  Notice should include:

        (1)  How, when and where the accident took place; and

(2)  The names and addresses of any witnesses.

Notice of an accident is not notice of a claim.

b.  If a claim is made or "suit" is brought against you, you must see to it that we receive prompt written notice of the claim or "suit".

c.  You must:

    (1)  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

    (2)  Authorize us to obtain records and other information;

    (3)  Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

    (4)  Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to you because of damage to which this insurance may also apply.

d.  You will not, except at your own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

2.  **Legal Action Against Us**

No person or organization has a right under this Coverage Form:

a.  To join us as a party or otherwise bring us into a "suit" asking for damages from you; or

b.  To sue us on this Coverage Form unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a

Copyright, ISO Commercial Risk Services, Inc., 1983, 1989

Page 3 of 4

final judgment against you obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Form or that are in excess of the Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, you and the claimant or the claimant's legal representative.

**3.    Other Insurance**

You may have other insurance covering the same loss as the insurance under this Coverage Form. If you do, we will pay our share of the covered loss. Our share is the proportion that the Limit of Insurance under this Coverage Form covering such loss bears to the Limits of Insurance of all insurance covering the loss.

**4.    Transfer Of Rights Of Recovery Against Others To Us**

If you have rights to recover all or part of any payment we have made under this Coverage Form, those rights are transferred to us. You must do nothing after loss to impair them. At our request, you will bring "suit" or transfer those rights to us and help us enforce them.

**E.    ADDITIONAL CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions.

**1.    Amendment Of Commercial Property Conditions**

None of the Commercial Property Conditions apply to this Coverage Form, except:

a.    Condition A., Concealment, Misrepresentation or Fraud;

b.    Condition C., Insurance Under Two or More Coverages; and

c.    Condition E., Liberalization.

**2.    Bankruptcy**

Bankruptcy or insolvency of you or your estate will not relieve us of our obligations under this Coverage Form.

**3.    Policy Period, Coverage Territory**

Under this Coverage Form:

a.    We will pay for loss or damage caused by an accident:

(1)    During the policy period shown in the Declarations; and

(2)    Within the coverage territory.

b.    The coverage territory is:

(1)    The United State of America;

(2)    Puerto Rico; and

(3)    Canada.

**4.    Separation Of Insureds**

The insurance under this Coverage Form applies separately to you and each additional insured, except with respect to the Limits of Insurance.

**F.    DEFINITION**

"Suit" includes an arbitration proceeding to which you must submit or submit with our consent.

Copyright, ISO Commercial Risk Services, Inc., 1983, 1989

CP 00 90 07 88

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

**A. CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this Coverage Part.

**B. CONTROL OF PROPERTY**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**C. INSURANCE UNDER TWO OR MORE COVERAGES**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**D. LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part; and

2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

**E. LIBERALIZATION**

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

**F. NO BENEFIT TO BAILEE**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**G. OTHER INSURANCE**

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we

Copyright, Insurance Services Office, Inc., 1983, 1987

Page 1 of 2

will not pay more than the applicable Limit of Insurance.

## H.  POLICY PERIOD, COVERAGE TERRITORY

Under this Coverage Part:

1.  We cover loss or damage commencing:

    a.  During the policy period shown in the Declarations; and

    b.  Within the coverage territory.

2.  The coverage territory is:

    a.  The United States of America (including its territories and possessions);

    b.  Puerto Rico; and

    c.  Canada.

## I.  TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment.  That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them.  But you may waive your rights against another party in writing:

1.  Prior to a loss to your Covered Property or Covered Income.

2.  After a loss to your covered Property or Covered Income only if, at time of loss, that party is one of the following:

    a.  Someone insured by this insurance;

    b.  A business firm:

        (1)  Owned or controlled by you; or

        (2)  That owns or controls you; or

    c.  Your tenant.

This will not restrict your insurance.

Copyright, Insurance Services Office, Inc., 1983, 1987

CP 10 30 10 91
COMMERCIAL PROPERTY

# CAUSES OF LOSS - SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning.  Refer to Section F. - Definitions.

## A. COVERED CAUSES OF LOSS

When Special is shown in the Declarations, Covered Causes of Loss means RISKS OF DIRECT PHYSICAL LOSS unless the loss is:

1. Excluded in Section B., Exclusions; or

2. Limited in Section C., Limitations;

that follow.

## B. EXCLUSIONS

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

    **a. Ordinance or Law**

    The enforcement of any ordinance or law:

    (1) Regulating the construction, use or repair of any property; or

    (2) Requiring the tearing down of any property, including the cost of removing its debris.

    **b. Earth Movement**

    (1) Any earth movement (other than sinkhole collapse), such as an earthquake, landslide, mine subsidence or earth sinking, rising or shifting.  But if loss or damage by fire or explosion results, we will pay for that resulting loss or damage.

    (2) Volcanic eruption, explosion or effusion.  But if loss or damage by fire, building glass breakage or volcanic

actions results, we will pay for that resulting loss or damage.

Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

(a) Airborne volcanic blast or airborne shock waves;

(b) Ash, dust or particulate matter; or

(c) Lava flow.

All volcanic eruptions that occur within any 168 hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination however caused.

But if loss or damage by fire results, we will pay for that resulting loss or damage.

Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

**e. Off-Premises Services**

The failure of power or other utility service supplied to the described premises, however caused, if the failure occurs away from the described premises.

But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.

**f. War And Military Action**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

(2) Mudslide or mudflow;

(3) Water that backs up from a sewer or drain; or

(4) Water under the ground surface pressing on, or flowing or seeping through:

(a) Foundations, walls, floors or paved surfaces;

(b) Basements, whether paved or not; or

(c) Doors, windows or other openings.

But if loss or damage by fire, explosion or sprinkler leakage results, we will pay for that resulting loss or damage.

2. We will not pay for loss or damage caused by or resulting from any of the following:

a. Artificially generated electric current, including electric arcing, that disturbs electrical devices, appliances or wires.

But if loss or damage by fire results, we will pay for that resulting loss or damage.

b. Delay, loss of use or loss of market.

c. Smoke, vapor or gas from agricultural smudging or industrial operations.

d. (1) Wear and tear;

(2) Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

(3) Smog;

(4) Settling, cracking, shrinking or expansion;

(5) Insects, birds, rodents or other animals;

(6) Mechanical breakdown, including rupture or bursting caused by centrifugal force. However, this does not apply to any resulting loss or damage caused by elevator collision;

(7) The following causes of loss to personal property:

(a) Dampness or dryness of atmosphere;

(b) Changes in or extremes of temperature; or

(c) Marring or scratching.

But if loss or damage by the "specified causes of loss" or building glass breakage

Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

results, we will pay for that resulting loss or damage.

e. Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if loss or damage by fire or combustion explosions results, we will pay for that resulting loss or damage. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

f. Continuous or repeated seepage or leakage of water that occurs over a period of 14 days or more.

g. Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

   (1) You do your best to maintain heat in the building or structure; or

   (2) You drain the equipment and shut off the supply if the heat is not maintained.

h. Dishonest or criminal act by you, any of your partners, employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

   (1) Acting alone or in collusion with others; or

   (2) Whether or not occurring during the hours of employment.

   This exclusion does not apply to acts of destruction by your employees; but theft by employees is not covered.

i. Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

j. Rain, snow, ice or sleet to personal property in the open.

k. Collapse, except as provided below in the Additional Coverage for Collapse. But if loss or damage by a Covered Cause of Loss results at the described premises, we will pay for that resulting loss or damage.

l. Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss." But if loss or damage by the "specified causes of loss" results, we will pay for the resulting damage caused by the "specified causes of loss."

3. We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a Covered Cause of Loss results, we will pay for the resulting loss or damage.

a. Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss or damage.

b. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

c. Faulty, inadequate or defective:

   (1) Planning, zoning, development, surveying, siting;

   (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

   (3) Materials used in repair, construction, renovation or remodeling; or

Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

(4) Maintenance;

of part or all of any property on or off the described premises.

**4. Special Exclusions**

The following provisions apply only to the specified Coverage Forms.

**a. Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, or Extra Expense Coverage Form**

We will not pay for:

(1) Any loss caused by or resulting from:

    (a) Damage or destruction of "finished stock;" or

    (b) The time required to reproduce "finished stock."

This exclusion does not apply to Extra Expense.

(2) Any loss caused by or resulting from direct physical loss or damage to radio or television antennas, including their lead-in wiring, masts or towers.

(3) Any increase of loss caused by or resulting from:

    (a) Delay in rebuilding, repairing or replacing the property or resuming "operations," due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

    (b) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations," we will cover such loss that affects your Business Income during the "period of restoration."

(4) Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration."

(5) Any other consequential loss.

**b. Leasehold Interest Coverage Form**

(1) Paragraph B.1.a. Ordinance or Law, does not apply to insurance under this Coverage Form.

(2) We will not pay for any loss caused by:

    (a) Your canceling the lease;

    (b) The suspension, lapse or cancellation of any license; or

    (c) Any other consequential loss.

**c. Legal Liability Coverage Form**

(1) The following Exclusions do not apply to insurance under this Coverage Form:

    (a) Paragraph B.1.a., Ordinance or Law;

    (b) Paragraph B.1.c., Governmental Action;

    (c) Paragraph B.1.d., Nuclear Hazard;

    (d) Paragraph B.1.e., Power Failure; and

    (e) Paragraph B.1.f., War and Military Action.

(2) **Contractual Liability**

We will not defend any claim or "suit," or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement.

Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

**(3) Nuclear Hazard**

We will not defend any claim or "suit," or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

## C. LIMITATIONS

1. We will not pay for loss of or damage to:

   a. Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

   b. Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

   c. The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

      (1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

      (2) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

   d. Building materials and supplies not attached as part of the building or structure, unless held for sale by you, caused by or resulting from theft, except as provided in C.5.a. below.

   e. Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

   f. Gutters and downspouts caused by or resulting from weight of snow, ice or sleet.

   g. Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

2. We will not pay more for loss of or damage to glass that is part of a building or structure than $100 for each plate, pane, multiple plate insulating unit, radiant or solar heating panel, jalousie, louver or shutter. We will not pay more than $500 for all loss of or damage to building glass that occurs at any one time.

   This Limitation does not apply to loss or damage by the "specified causes of loss," except vandalism.

3. We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

   a. Valuable papers and records, such as books of account, manuscripts, abstracts, drawings, card index systems, film, tape, disc, drum, cell or other data processing, recording or storage media, and other records.

   b. Animals, and then only if they are killed or their destruction is made necessary.

   c. Fragile articles such as glassware, statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

      (1) Glass that is part of a building or structure;

      (2) Containers of property held for sale; or

Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

(3) Photographic or scientific instrument lenses.

d. Builders' machinery, tools, and equipment you own or that are entrusted to you, while away from the premises described in the Declarations, except as provided in paragraph C.5.b. below.

4. For loss or damage by theft, the following types of property are covered only up to the limits shown:

a. $2,500 for furs, fur garments and garments trimmed with fur.

b. $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

c. $2,500 for patterns, dies, molds and forms.

d. $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

5. **Builders' Risk Coverage Form Limitations**

The following provisions apply only to the Builders' Risk Coverage Form.

a. Limitation 1.d. is replaced by the following:

d. Building materials and supplies not attached as part of the building or structure caused by or resulting from theft.

b. Limitation 3.d. is replaced by the following:

d. Builders' machinery, tools and equipment you own or that are entrusted to you.

6. We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material es-

capes. But we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

a. Results in discharge of any substance from an automatic fire protection system; or

b. Is directly caused by freezing.

**D. ADDITIONAL COVERAGE    COLLAPSE**

We will pay for loss or damage caused by or resulting from risks of direct physical loss involving collapse of a building or any part of a building caused only by one or more of the following:

1. The "specified causes of loss" or breakage of building glass, all only as insured against in this Coverage Part;

2. Hidden decay;

3. Hidden insect or vermin damage;

4. Weight of people and personal property;

5. Weight of rain that collects on a roof;

6. Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

We will not pay for loss or damage to the following types of property, if otherwise covered in this Coverage Part, under items 2., 3., 4., 5. and 6. unless the loss or damage is a direct result of the collapse of a building:

outdoor radio or television antennas, including their lead-in wiring, masts or towers; awnings, gutters and downspouts; yard fixtures; outdoor swimming pools; fences; piers, wharves and docks; beach or diving platforms or appurtenances; retaining walls; walks, roadways and other paved surfaces.

Collapse does not include settling, cracking, shrinkage, bulging or expansion.

Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

This Additional Coverage will not increase the Limits of Insurance provided in this Coverage Part.

E. **ADDITIONAL COVERAGE EXTENSIONS**

1. **Property In Transit.** This Extension applies only to your personal property to which this form applies.

   a. You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

   b. Loss or damage must be caused by or result from one of the following causes of loss:

      (1) Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

      (2) Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the road bed.

      (3) Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

   c. The most we will pay for loss or damage under this Extension is $1000.

   This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to the Extension.

2. **Water Damage, Other Liquids, Powder or Molten Material Damage.** If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes

F. **DEFINITIONS**

   "Specified Causes of Loss" means the following:

   Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of ice and snow, ice or sleet; water damage.

   1. Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

      a. The cost of filling sinkholes; or

      b. Sinking or collapse of land into man-made underground cavities.

   2. Falling objects does not include loss or damage to:

      a. Personal property in the open; or

      b. The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

   3. Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam.

Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

# YOUR INSURANCE AUDIT HOW TO SAVE TIME AND MONEY

14019 (4-92)

## WHAT IS AN INSURANCE AUDIT?

Insurance audits are typically performed on commercial insurance policies providing workers compensation, general liability, garage liability and umbrella coverages. When these policies are issued, you are asked to pay an estimated premium. Estimated premiums are based on the nature of your business and your estimate of exposures (i.e. payroll, sales, etc.) for the policy period.

Once your policy expires, we conduct an audit (collecting information on actual exposures and operations). From this information, we determine the final earned premium. Premium adjustments are then determined by comparing audited exposures and operations with those originally estimated.

## WHAT RECORDS ARE NEEDED FOR THE AUDIT?

Records are important to the audit process. They provide and verify information, save time and minimize your insurance costs. The field auditor will let you know which of the following records will be needed for your audit when the audit appointment is made.

- PAYROLL RECORDS - includes payroll journal and summary, federal tax reports (941's), state unemployment reports and individual earnings records. Totals should be kept for overtime when applicable. Garage Liability payrolls should be kept per employee per quarter (3 months).

- SALES JOURNAL - includes all goods or products sold, rented and/or distributed as well as service, repair and installation. Sales or excise taxes collected separately and submitted to the government need to be identified in order to be excluded.

- CASH DISBURSEMENTS - shows subcontractors, materials and casual labor.

- CERTIFICATES OF INSURANCE - for subcontractors used during the policy period for construction, erection and/or structural alteration, showing liability and Workers Compensation Insurance coverage.

## WHEN AND HOW WILL THE AUDIT BE DONE?

We will collect audit information from you shortly after your policy expires.

Smaller, less complex policies may only require that you assemble and send the necessary information to us, or have the information available when a telephone auditor calls.

Larger and more complicated policies are handled by a field auditor who will schedule an appointment with you a few weeks after the policy expires.

It is important for the auditor to ask questions about your operations. If you cannot be present to answer questions, it is important for someone to be available that is familiar with the specifics of your entire business operations.

If you direct us to your accountant, we will obtain as much information as possible from your accountant and contact you if we have additional questions.

Most of our audits only take a half hour or less. Audits of larger policies may take longer. Though the auditor will have a number of questions, you won't have to be directly involved during the entire audit if adequate records are available.

If you must change or cancel a scheduled appointment, please advise the auditor as far in advance as you can. It is best to schedule and complete this audit within 30 days from your policy expiration date.

## HOW CAN YOU SAVE MONEY?

There are several ways you can save on premium dollars depending on the type of business and coverages you have. Not all of the following may apply to your particular business.

- PAYROLL DIVISION - A single employee's payroll can be divided when the employee works in construction, erection, or in trucking operations which are conducted as a separate enterprise. Proper records must be kept in dollar amounts that reflect work actually spent in the above mentioned classes before a breakdown can be applied. Without adequate records, the entire payroll for the employee must be placed in the highest rated classification.

- EMPLOYEE TIPS - Tips declared by employees may be excluded from their gross payroll if separately identified.

- CERTIFICATES OF INSURANCE - Have certificates available for the audit (at your premises or your accountant's) to ensure that charges are not made unnecessarily. Certificates must cover the period when the subcontractor worked for you (this may require Certificates covering two different policy terms for the subcontractor in some cases).

- DRIVERS - (For general liability coverage), employees with the sole responsibility of driving may often be excluded from chargeable payroll if their wages are shown separately. However, employees who perform other duties besides driving must be placed in the highest rated class describing their duties.

Your business is unique. If you have questions about how your specific circumstances will affect savings, please contact your insurance agent.

REMUNERATION - Commonly called payroll. Includes wages, commissions, bonuses, overtime pay, pay for holidays, vacations and sickness, payment for piece work, value of meals and lodging and other substitutes for money.

OVERTIME - Those hours worked for which there is an increase in the rate of pay. Includes:

- Work in excess of 8 hours per day or 40 hours per week.
- Work on Saturdays, Sundays or holidays.
- Work in any day or week in excess of a guaranteed wage agreement.

Extra pay for shift differential is not considered overtime.

Ordinarily, overtime pay is equal to 1 1/2 times the regular hourly rate. For example, a regular pay rate of $10 per hour at time and a half generates a $15 per hour overtime rate.

If the extra $5 of pay is shown separately, it is excluded in total. If total overtime wage is shown in a combined amount of $15 (regular pay plus increase) and included in gross payroll, one third ($5) will be deducted from gross pay.

If the overtime wage is calculated at double time, one half will be deducted from gross pay.

GROSS SALES - Gross amount charged by you or others trading under your name, for all goods or products sold or distributed, operations performed and rentals. Some deductions from gross sales include sales or excise tax, returns and allowances and finance charges for items sold on installment.

SUBCONTRACTORS - The term "subcontractor" is often used interchangeably with "independent contractor." We ordinarily apply the definition to subcontractors performing construction, erection or structural alteration for a general contractor. Most workers compensation laws hold you responsible for employees of an uninsured subcontractor. In some states, they may extend to an uninsured subcontractor without employees if an employee-employer relationship can be established. These people will also be charged under a liability policy as though they were your employees if there is no certificate showing evidence of insurance. Subcontractors can easily obtain a Certificate of Insurance through their insurance agent.

## COMMONLY ASKED QUESTIONS

Q: Why is an audit necessary?
A: To calculate the exact amount of premium you will be charged. Actual exposures and operations are determined by an audit. After they are compared with initial estimates and later endorsements, a final audit premium is determined.

Q: If overtime is not summarized, will I still get credit?
A: Overtime records must show overtime pay separately by employee or by classification or it will not be deducted.

Q: If I don't have Certificates of Insurance for the audit, will I be able to get them?
A: It is in your best interest to request a certificate from a subcontractor at the time the work is performed rather than at the time of audit. You will be charged for those subcontractors not providing certificates as though they were your employees.

Q: Several of my employees do more than one type of work. How should I assign their payrolls?
A: If these employees are not in construction they will go into the highest rated class in which they work. Payrolls may be divided into appropriate construction classifications, provided the division is reflected in the original records in dollar amounts.

Q: Some of my work could be considered clerical, should I separate it?
A: The clerical classification cannot be used with any other class for division of a single employee's payroll.

Q: Is it necessary to provide audit information if my renewal policy has been cancelled?
A: Yes, policies are issued using estimated payroll or sales. Final premium needs to be developed from the actual payroll or sales during the policy term.

**COINSURANCE CONTRACT**                                    16010 (10-97)

# TOOLS AND EQUIPMENT FLOATER

## PROPERTY COVERED

We cover the property which is:

1. described for this coverage in the Declarations; and

2. owned by:

   a. you; or

   b. your employees;

while the property is on the insured premise or elsewhere in the course of your business.

## AMOUNT OF INSURANCE

We will not pay more than:

1. the limit of insurance stated in the Declarations for any one loss occurrence; or

2. $1,000 ON ANY ONE ITEM UNLESS ANOTHER AMOUNT IS SPECIFICALLY SCHEDULED.

## PERILS WE INSURE AGAINST

We cover risk of direct physical loss or damage, not excluded in this form, to the property covered.

## EXCLUSIONS

We do not cover under this form loss or damage caused directly or indirectly by any of the following, whether or not any other cause or happening contributes concurrently or in any sequence to the loss or damage:

1. Seizure or destruction of property by order of governmental authority.  But we will pay for such acts of destruction taken at the time of a fire to prevent its spread if the fire would be covered under this form.

2. Nuclear action meaning nuclear reaction, radiation, radioactive contamination, discharge of a nuclear weapon, however caused and whether controlled or uncontrolled, or any consequence of any of these.  We will cover direct loss resulting from fire if caused by any of these, if fire is covered elsewhere in this form.

3. War (declared or undeclared), civil war, insurrection, rebellion or revolution.

4. Wear and tear; inherent vice; hidden or latent defect; gradual deterioration; mechanical break down; insects, vermin, rodents; depreciation; or by processing or an work on the property.  We will cover direct loss from fire or explosion which is caused by any of these.

5. Corrosion, rusting, dampness of atmosphere, or extremes of temperature.

Page 1 of 2

6. Misappropriation, secretion, conversion, infidelity or any dishonest act by you or others or the employees or agents of either to whom the covered property may be entrusted. This exclusion does not apply to carriers for hire.

7. Artificially generated electrical currents to electrical apparatus. We will cover loss or damage caused directly by ensuing fire or explosion.

8. The weight of a load exceeding the registered lifting or supporting capacity of any machine.

9. Strikes, lockouts, labor disturbances; riots and civil commotion; or the acts of any person or persons taking part in such occurrences or disorders.

10. Theft by an insured's employees or a person to whom the insured property is entrusted.

11. Loss or damage by an unexplainable or unaccountable cause where there is no visible evidence that the loss or damage resulted from a peril insured against.

**ADDITIONAL CONDITIONS**

1. **Coinsurance Clause**

   We will pay no more than the amount of loss or damage multiplied by the ratio of the amount of insurance on the property covered to its actual cash value at the time of loss or damage.

2. **Territory**

   This policy applies only within the continental United States and Canada.

3. **Special Condition**

   Each item of the schedule is deemed to be separately insured.

**COINSURANCE CONTRACT**

16071 (12-02)

# CONTRACTORS EQUIPMENT FORM

**COVERAGE**

1. **Property Covered**

   We cover the property described in the Declarations under Contractors Equipment.

2. **Property Not Covered**

   We do not cover:

   **a.** automobiles or similar vehicles;

   **b.** plans, blue prints, designs or specifications;

   **c.** underground property or property located underground; and

   **d.** property which has become a permanent part of any structure.

**PERILS WE INSURE AGAINST**

We cover accidental direct physical loss or damage to covered property, except for losses excluded in this form.

**EXCLUSIONS**

We do not cover under this form loss or damage caused directly or indirectly by any of the following, whether or not any other cause or happening contributes concurrently or in any sequence to the loss or damage:

1. Seizure or destruction of property by order of governmental authority. We will pay for such acts of destruction taken at the time of a fire to prevent its spread if the fire would be covered under this form.

2. Nuclear action meaning nuclear reaction, radiation, radioactive contamination, discharge of a nuclear weapon, however, caused and whether controlled or uncontrolled, or any consequence of any of these. We will cover direct loss resulting from fire if caused by any of these, if fire is covered elsewhere in this form.

3. War (declared or undeclared), civil war, insurrection, rebellion or revolution.

4. Wear and tear; inherent vice; hidden or latent defect; gradual deterioration; mechanical break down; insects, vermin, rodents; or depreciation. We will cover direct loss from fire or explosion which is caused by any of these.

5. A process to repair, adjust, service or maintain the property covered. If a fire or explosion results, we will cover the loss caused by the fire or explosion.

6. Corrosion, rusting, dampness of atmosphere, or extremes of temperature.

Page 1 of 2

7. Misappropriation, secretion, conversion, infidelity or any dishonest act by you or others or the employees or agents of either to whom the covered property may be entrusted. This exclusion does not apply to carriers for hire.

8. Artificially generated electrical currents to electrical apparatus. We will cover loss or damage caused directly by ensuing fire or explosion.

9. The weight of a load exceeding the registered lifting or supporting capacity of any machine.

10. While covered property is being supported or carried on water except loss or damage caused by fire.

11. Strikes, lockouts, labor disturbances, riots and civil commotion; or the acts of any person or persons taking part in such occurrences or disorders.

**LIMITS OF LIABILITY**

We shall not be liable for more than the limits shown in the Declarations under Contractors Equipment.

**DEDUCTIBLE**

We shall not pay any loss until the amount of covered loss exceeds any applicable deductible whether shown in the Declarations, this form or any attached form. We shall then pay the amount of loss in excess of such deductible not to exceed the applicable limit of insurance.

**ADDITIONAL CONDITIONS**

**Coinsurance Clause**

We will pay no more than the amount of loss or damage multiplied by the ratio of the amount of insurance on the property covered to 100% of its actual cash value at the time of loss.

**Territory**

This policy applies only within the continental United States and Canada.

**Special Condition**

Each item of property described in the Declarations under Contractors Equipment is deemed to be separately insured.

Page 2 of 2

## COMMERCIAL INLAND MARINE CONDITIONS

16080 (8-86)

## INSURING AGREEMENT

We agree to provide insurance subject to all the terms of this coverage part. In return, you must pay the premium and comply with all the terms of this coverage part.

This insurance applies to loss which occurs during the policy period as shown in the Declarations. The coverages provided, the limits of our liability and the premiums are also shown in the Declarations.

### DEFINITIONS

To understand this coverage part, you must understand what we mean when we use these words:

"**You**" and "**Your**" mean the insured named in the Declarations.

"**We**", "**us**" and "**our**" mean the Company providing this insurance.

### WHAT TO DO IN CASE OF LOSS

If covered loss occurs, you agree to:

(a) Give us or our agent immediate written notice. In case of theft also notify the police.

(b) Protect the property from further damage, making necessary and reasonable repairs to do so and keeping records of the cost.

(c) Make a list of all damaged and destroyed property, showing in detail quantities, costs, actual cash value and amount of loss claimed.

(d) Send to us, within 60 days of our request, proof of loss signed and sworn to by the insured person, including:

(1) the time and cause of loss;

(2) the interest of insured persons and all others in the property;

(3) actual cash value and amount of loss to the property;

(4) all encumbrances on the property;

(5) other policies covering the loss; and

(6) changes in the title, use or possession of the property.

(e) Exhibit the damaged property to us or our representative as often as may be reasonably required.

(f) Submit to examinations under oath by any person we name and sign the transcript of the examinations.

(g) Produce for examination, with permission to copy, all books of account, bills, invoices, receipts and other vouchers as we may reasonably require.

## SPECIAL CONDITIONS

**ABANDONMENT**   We are not obligated to accept abandoned property.

**APPRAISAL**  If you and we fail to agree on the actual cash value or amount of loss, either party may make written demand for an appraisal. Each party will select an appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record having jurisdiction where the appraisal is pending to select an umpire.

The appraisers shall then appraise the loss, stating separately the actual cash value and the amount of loss to each item. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the actual cash value or amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award by two will determine the actual cash value or amount of loss.

Each party will pay the appraiser it chooses, and equally pay the umpire and all other expenses of the appraisal.

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

This entire policy is void in any case of fraud by you or if you have intentionally concealed or misrepresented any material fact or circumstance relating to this insurance.

**OUR PAYMENT OF LOSS**  We will pay you or make good any loss covered by this policy, unless another payee is named in the policy. We will pay within 30 days after:

(a)  We receive your proof of loss; and

(b)  The amount of loss is finally determined by an agreement between you and us, a court judgement or an appraisal award.

We will not pay or make good any loss which you have collected from others.

**OTHER INSURANCE**  If you have other insurance covering the same loss as this insurance, we will pay only the excess over what the other insurer should pay. We will pay the excess whether you can collect on the other insurance or not.

**PAIR OR SET**  In case of loss or damage to any part of a pair or set, we may:

(a)  repair or replace any part of the pair or set to restore it to its value before the loss; or

(b)  pay the difference between the actual cash value of the property before and after the loss.

**PARTS**  In case of loss or damage to any part of property covered, consisting of several parts when complete, we shall pay only for the value of the part lost or damaged.

**RIGHT TO ADJUST LOSS WITH OWNER**  If a loss involved property of others in your care, custody or control, we may:

(a)  settle the loss with the owners; or

(b)  defend you against any claim or suit at our cost. The expense of the defense will not reduce the limit of this insurance.

**RECOVERIES**   Any recovery or salvage on a loss belongs to us until we recover what we have paid.

**LOSS CLAUSE**  The amount of insurance under this policy will not be reduced except for total loss of a scheduled item. Any unearned premium that applies to such item will be refunded.

**OUR RIGHT TO RECOVER PAYMENT**  After making payment under this policy, we will have the right to recover to the extent of our payment from anyone held responsible. You agree to do whatever is required to transfer this right to us.

**SUIT AGAINST US**  We may not be sued unless there is full compliance with all the terms of this policy. Suit must be brought within two years after you first know of the loss or damage.

**NO BENEFIT TO BAILEE**  This insurance will not, in any way, benefit any other person or organization who may be caring for or handling property for a fee.

**VALUATION**  We will not pay more than the least of:

(a) The actual cash value of the damaged property at the time any loss or damage occurs. Actual cash value may include a deduction for depreciation;

(b) the cost to repair or replace the damaged property with like kind or quality; or

(c) the amount of insurance stated for the class of property.

DEDUCTIBLE   Each claim for loss or damage will be adjusted separately. We will deduct the amount stated in the Declarations (or in the form that applies) from each adjusted claim.

ASSIGNMENT   No interest in this policy may be assigned without our written consent. But if you are an individual named insured and die, we will cover:

(a) your legal representative but only within the scope of his duties as such; and

(b) anyone having proper temporary custody of your insured property, but only:

   1.   with respect to that property; and

   2.   until your representative is appointed.

WHEN TWO OR MORE COVERAGES APPLY

If two or more of this policy's coverages apply to the same loss or damage, we shall pay no more than the actual amount of such loss or damage.

16082 (12-02)

# INSTALLATION FORM

## COVERAGE

**1. Covered Property**

    **a.** We cover the property described for this coverage in the Declarations which is:

        **(1)** owned by you; or
        **(2)** for which you are legally liable.

    **b.** Coverage applies to the property:

        **(1)** while it is in transit;
        **(2)** after arrival on the premises of installation;
        **(3)** while waiting for and during installation; and
        **(4)** until it is completely installed and accepted by the purchaser or until your interest in it ceases, whichever occurs first.

**2. Property Not Covered**

    We do not cover tools or equipment owned or used by an insured person.

## PERILS WE INSURE AGAINST

We cover accidental direct physical loss or damage to covered property, except for losses excluded in this form.

## EXCLUSIONS

We do not cover loss or damage caused directly or indirectly by any of the following, whether or not any other cause or happening contributes concurrently or in any sequence to the loss or damage:

**1.** Seizure or destruction of property by order of governmental authority. We will pay for such acts of destruction taken at the time of a fire to prevent its spread if the fire would otherwise be covered under this form.

**2.** Nuclear reaction, radiation, radioactive contamination, discharge of a nuclear weapon, however caused and whether controlled or uncontrolled, or any consequence of any of these. We will cover direct loss resulting from fire if caused by any of these, if fire is covered elsewhere in this form.

**3.** War (declared or undeclared), civil war, insurrection, rebellion or revolution.

**4.** Wear and tear; inherent vice; hidden or latent defect; gradual deterioration; mechanical break down; insects, vermin, rodents; corrosion, rust; dampness or extreme temperature.

**5.** Artificially generated electrical currents to electrical appliances and devices including wiring. We will pay if fire ensues but only for the loss or damage caused directly by such fire.

**6.** Error, omission or deficiency in design, specifications, workmanship or materials. We also do not cover direct or indirect expenses resulting from any of these.

Page 1 of 2

**LIMITS OF LIABILITY**

We shall not be liable for more than the limits shown in the Declarations under Installation.

**DEDUCTIBLE**

We shall not pay any loss until the amount of covered loss exceeds any applicable deductible whether shown in the Declarations, this policy or any attached form.  We shall then pay the amount of loss in excess of such deductible not to exceed the applicable limit of insurance.

**ADDITIONAL CONDITION**

**Territory**

This coverage applies only in the continental United States and Canada.

Page 2 of 2

**COINSURANCE CONTRACT**

16083 (2-99)

## DATA PROCESSING - FORM A-EQUIPMENT COVERAGES
## COMMERCIAL INLAND MARINE

### PROPERTY COVERED

Coverage 1:

1.  Scheduled Equipment

    When scheduled in the Declarations, we cover:

    a.  Electronic Data Processing Equipment, component parts of such equipment and air conditioning equipment necessary for the operation of the Electronic Data Processing Equipment which you own, which is leased or rented to you, or which is in your care, custody or control while located at the premises described in the Declarations.

    b.  Lap-top computers, component parts of such equipment and media designed for use with a covered lap-top computer which you own, which is leased or rented to you or which is in your care, custody or control.

2.  Unscheduled Equipment

When a limit of insurance is shown in the Declarations for unscheduled equipment, we cover Electronic Data Processing Equipment, component parts of such equipment and air conditioning equipment necessary for the operation of the Electronic Data Processing Equipment which you own, which is leased or rented to you or which is in your care custody or control.  We do not cover unscheduled lap-top computers.

Coverage 2:

a.  Electronic Data Processing Media;

b.  Materials on which information is recorded such as film, tape, disk, drum, cell and other magnetic recording or storage media; and

c.  Programs and/or instruction vehicles used for electronic data processing.

### PROPERTY NOT COVERED

We do not cover under Coverage 2., property which is rendered obsolete or not usable because of loss or damage to property covered under Coverage 1.

### PERILS WE INSURE AGAINST

We cover risk of accidental direct physical loss or damage to covered property unless excluded or limited by this form.

### EXCLUSIONS

We do not cover loss or damage caused directly or indirectly by any of the following, whether or not any other cause or happening contributes concurrently or in any sequence to the loss or damage:

1.  Seizure or destruction of property by order of governmental authority.  We will pay for such acts of destruction taken at the time of a fire to prevent

its spread if the fire would be covered under this form.

2.  Nuclear reaction, radiation, radioactive contamination, discharge of a nuclear weapon, however caused and whether controlled or uncontrolled, or any consequence of any of these.  We will cover accidental direct physical loss resulting from fire

Page 1 of 6

if caused by any of these, if fire is covered else-where in this form.

3. War (declared or undeclared), civil war, insurrection, rebellion or revolution.

4. Wear and tear; inherent vice; hidden or latent defect; gradual deterioration; insects, vermin, rodents; depreciation; or by processing or any work on the property. We will cover accidental direct physical loss from fire or explosion which is caused by any of these.

5. Loss or damage caused by:

   a. corrosion or rusting;
   b. dryness or dampness of atmosphere; or
   c. extremes of temperature;

   unless directly resulting from accidental direct physical damage to the data processing system's air conditioning equipment caused by a peril not excluded.

6. Any dishonest, fraudulent or criminal act by:

   a. you;
   b. your partners; or
   c. any of your officers, directors, or trustees;

   whether acting alone or in collusion with others.

7. Electrical disturbance unless caused by lightning.

8. Loss or damage caused by:

   a. data processing media failure; or
   b. breakdown or malfunction of the data processing equipment and component parts;

   while the media is being run through the system. We will cover loss, damage or expense caused directly by ensuing fire or explosion.

9. Actual work upon, installation or testing of property covered. We will cover loss caused by ensuing fire or explosion.

10. Mechanical breakdown. We will cover loss, damage or expense caused directly by lightning or by ensuing fire or explosion.

11. Faulty construction or error in design of the property covered. We will cover loss, damage or expense caused directly by ensuing fire or explosion.

12. Delay or loss of market.

13. Breakage, marring, scratching, tearing or denting of any lap-top computer, unless caused by: fire or lightning; aircraft; theft and/or attempted theft; cyclone, tornado or windstorm; earthquake; flood; explosion; malicious damages or collision, derailment or overturn of a transporting conveyance.

14. Loss or damage to any lap-top computer not scheduled in the Declarations.

## EXTENSIONS OF COVERAGE

The coinsurance clause does not apply to these extensions.

1. PROPERTY AT NEWLY ACQUIRED OR TEMPORARY LOCATIONS

   We will cover accidental direct physical loss or damage to covered property by a peril we insure against covered under Coverage 1. and Coverage 2. at:

   a. any location you acquire for similar occupancy or warehousing purposes; or

   b. any temporary location, other than fairs or exhibitions;

   elsewhere than at the premises shown in the Declarations, but within territorial limits.

   The most we will pay for loss or damage under this extension is the limit of insurance shown in the Declarations for covered property, but not more than $50,000.

   This coverage will stop:

   a. 60 days from your acquisition or use of such property;

Page 2 of 6

b. on the date, values at such locations are re-ported to us; or

c. on the expiration date of the policy;

whichever comes first.

Additional premium shall be due and payable for values reported from the date the property arrives at such locations.

2. NEWLY ACQUIRED PROPERTY

We will cover accidental direct physical loss or damage by a peril we insure against to property which you acquire of the same type as the prop-erty covered under Coverage 1. and Coverage 2. at any one location.

The most we will pay for loss or damage under this extension is the limit of insurance shown in the Declarations for covered property, but not more than $50,000.

This coverage will stop:

a. 60 days from your acquisition or use of such property;

b. on the date values of such property are re-ported to us; or

c. on the expiration date of the policy;

whichever occurs first.

Additional premium shall be due and payable for values reported from the date the property is ac-quired.

Each of the limits of liability stated for each of the following extensions is an additional amount of insur-ance.

3. DATA PROCESSING MEDIA

You may apply up to $5,000 under Coverage 1. to cover Data Processing Media which are:

a. your property; or

b. the property of others for which you are le-gally liable for direct physical loss or damage.

4. EXTRA EXPENSE

You may apply up to $5,000 to cover the neces-sary extra expense you incur to continue as closely as possible the normal functioning of your Data Processing operations immediately following loss or damage to property covered which is caused by a peril we insure against.

We do not cover under this extension:

a. loss of income;

b. the cost of repairing or replacing any of the described property;

c. the cost of research or other expense neces-sary to replace or restore:  books of account; manuscripts, abstracts or drawings; card in-dex systems; film, tape, disk, drum, cell and other magnetic recording or storage media for electronic data processing; and other records that have been damaged by a peril not ex-cluded; and

d. any other consequential or remote loss.

We do cover the cost in excess of the normal cost of such repair, replacement or restoration neces-sarily incurred for the purpose of reducing the total amount of extra expense payable under this coverage.  But, we will pay no more than such excess exceeds the amount by which the total extra expense otherwise payable under this ex-tension is reduced.

Any salvage value of property obtained for tempo-rary use during the period of restoration which remains after normal operations resume shall be taken into consideration in the adjustment of loss covered under this extension.

Definitions

1. "Extra Expense" means the total cost:

a. incurred during the period of restoration;

b. chargeable to the operation of your busi-ness; and

c. over and above the total cost that would normally have been incurred to conduct

your business during the same period had no loss occurred.

2. "Period of Restoration" means that period of time:

   a. starting with the date of damage; and
   b. not limited by the date of this policy's expiration;

   that would be required with the exercise of due diligence and dispatch to repair, rebuild or replace the parts of the buildings or personal property damaged.

5. TRANSPORTATION

You may apply up to $10,000, unless another limit is shown in the Declarations then that limit applies, for any one occurrence for loss or damage to property under Coverage 1. and 2. caused by:

a. fire; lightning; windstorm and hail; explosion; smoke; riot and civil commotion; and vandalism and malicious mischief;

b. the overturning, upset, or collision of the vehicle, transporting the insured property, with another vehicle or object other than the road bed; or

c. theft of an entire shipping bale, case or package from a vehicle:

   (1) while such property is in a fully enclosed and securely locked body or compartment; and
   (2) theft results from forcible entry, evidenced by visible marks;

which occurs during transportation by motor vehicles you own, lease or operate.

We do not cover under this extension property held as samples, held for rental or sale or that you rent to others while in the care, custody or control of salespersons.

## DEFINITION

"Lap-top computer" means portable data collectors, note book (lap-top) computers, sub-note book computers, palm-top computers, hand-held computers, and portable or any similar computer. Lap-top computer does not mean cellular phone, wireless phone or pager.

## OPTIONAL COVERAGES

1. MECHANICAL BREAKDOWN COVERAGE

   a. When Mechanical Breakdown Coverage is shown in the Declarations, we will pay for loss or damage to covered property caused by mechanical breakdown.

   b. Under EXCLUSIONS:

      (1) Exclusion 8. is deleted and replaced by the following:

         8. Loss or damage caused by data processing media failure while the media is being run through the system. We will cover loss, damage or expense caused directly by ensuing fire or explosion.

      (2) Exclusion 10. does not apply.

   c. We will not pay for loss or damage to Covered Property in any one occurrence until the loss or damage exceeds the deductible shown in the Declarations. We will then pay the amount of loss that exceeds the deductible. This deductible applies only once per occurrence regardless of the number of buildings in which Covered Property is located.

2. ELECTRICAL DISTURBANCE COVERAGE

   a. When Electrical Disturbance Coverage is shown in the Declarations, we will pay for loss or damage to covered property caused by:

Page 4 of 6

(1) electrical disturbance; or

(2) power supply disturbance.

b.  Under Exclusions, exclusion 7. does not apply.

c.  The deductible for this coverage shall be:

(1) $1,000; or

(2) 5% of the combined unscheduled equipment and scheduled equipment limits shown in the Declarations;

whichever is greater.

3.  DEFINITIONS

a.  "Electrical disturbance" means electrical or magnetic damage, disturbance or erasure of electronic recordings.

b.  "Mechanical breakdown" means component failure or mechanical malfunction, breakdown or failure.

c.  "Power supply disturbance" means blackout, brownout, power surge or interruption of power supply.

## ADDITIONAL CONDITIONS

### COINSURANCE CLAUSE (COVERAGE 1)

We will not pay for a greater proportion of any loss to property covered than the limit of insurance under this policy for such property bears to the amount produced by multiplying the actual cash value or replacement cost, as stated in the Declarations, of such property by the coinsurance percentage stated in the Declarations.

If the aggregate claim for any loss is both:

a.  less than $10,000; and

b.  less than 5% of the limit of insurance for all insurance which applies to the damaged property at the time of loss;

no inventory or appraisal of the undamaged property shall be required. However, this does not waive the requirements of the first paragraph of this clause.

If the insurance under Coverage 1. is divided into separate limits of insurance, this condition shall apply separately to the property covered under each such limit of insurance.

### REMOVAL

We will pay for property damaged while being removed or while removed from a premises because of danger from a peril we insure against. Coverage applies pro rata for five days at each place to which the property is removed.

### DEBRIS REMOVAL

We will pay reasonable expenses you incur to remove debris of covered property following a loss from a peril we insure against. The amount recovered under this insurance for both loss to property and debris removal shall not exceed the amount of insurance applying to the covered property.

Cost of removal of debris will not be considered in applying the Coinsurance Clause.

### LIMIT OF LIABILITY

Accidental direct physical loss of or damage to covered property shall be adjusted on the basis of:

a.  actual cash value; or

b.  replacement cost;

as shown in the Declarations. Actual cash value includes deduction for depreciation.

Under Coverage 1., when loss to covered property is settled at the actual cash value of the property at the time of loss, we shall pay no more than the lesser of the following:

a.  the cost to repair or replace the damaged covered property with property of like kind and quality; or

b. the limit of insurance shown in the Declarations for the covered property.

Under Coverage 1., when loss to covered property is settled at replacement cost of the property at the time of loss, we shall pay no more than the lesser of the following:

a. the full cost to repair the covered property;

b. the full cost to replace the covered property with property of like kind and quality even if the property has technological advantages, as long as such property is capable of performing the same function as the equipment being replaced; or

c. the limit of insurance shown in the Declarations for the property covered.

Under Coverage 2., we shall pay no more than the lesser of the following:

a. the actual cost to repair, replace or reproduce the media;

b. if the media is not repaired, replaced or reproduced the value of blank media; or

c. the limit of insurance shown in the Declarations for the property covered.

The limit of insurance shown in the Declarations for covered property is the total limit of our liability for loss or damage to all covered property in any one occurrence at one location. With respect to covered property you do not own, we will pay no more than the amount for which you are legally liable.

TERRITORY

This policy applies only within the continental United States and Canada.

## RENTED EQUIPMENT ENDORSEMENT

16242 (5-95)

It is agreed:

Coverage is provided for contractors equipment rented by the insured person.

We shall pay no more than the limit of insurance shown for Rented Equipment in the Declarations.

All other terms and conditions of the policy apply.

16381 (1-06)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONDITIONAL EXCLUSION OF TERRORISM INVOLVING NUCLEAR, BIOLOGICAL OR CHEMICAL TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT OF 2002)

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART

**A. Applicability Of This Endorsement**

1. The provisions of this endorsement will apply if and when one of the following situations occurs:

   a. The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act of 2002, terminates; or

   b. The Program is renewed, extended or otherwise continued in effect:

      (1) With revisions that increase insurers' statutory percentage deductible or decrease the federal government's statutory percentage share in potential terrorism losses above such deductible, or that results in a change in the level or terms or conditions of coverage; and

      (2) We are not required by the Program to make terrorism coverage available to you and elect not to do so.

The Program is scheduled to terminate at the end of December 31, 2005 unless renewed, extended or otherwise continued by act of Congress.

2. When this endorsement becomes applicable in accordance with the terms of A.1.a. or A.1.b., above, it supersedes any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism".

3. If this endorsement does NOT become applicable, then any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism", will remain in effect. However, if the Program is renewed, extended or otherwise continued in effect with revisions that change the level or terms or conditions of coverage, and we are required to offer you the revised coverage or to provide the revised coverage to those who previously accepted coverage under the Program, then we will take the appropriate steps in response to the federal requirements.

**B.** The following definition is added and applies under this endorsement wherever the term terrorism is enclosed in quotation marks.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright ISO Properties, Inc., 2004

Page 1 of 2

"Terrorism" means activities against persons, organizations or property of any nature:

1. That involve the following or preparation for the following:

   a. Use or threat of force or violence; or

   b. Commission or threat of a dangerous act; or

   c. Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

2. When one or both of the following applies:

   a. The effect is to intimidate or coerce a government or the civilian population or any segments thereof, or to disrupt any segment of the economy; or

   b. It appears that the intent is to intimidate or coerce a government or the civilian population, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

C. The following exclusion is added:

**Exclusion Of "Terrorism"**

We will not pay for loss or damage caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. This exclusion applies only when one or more of the following are attributed to an incident of "terrorism":

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination;

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material;

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, regardless of whether this endorsement was in effect during the entirety of that time period or not.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright ISO Properties, Inc., 2004

54147 (6-91)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SYSTEMS BREAKDOWN ENDORSEMENT

This Endorsement modifies insurance provided under the following:

Causes of Loss Basic Form
Causes of Loss Broad Form
Causes of Loss Special Form

## A.  COVERAGE

Subject to all the provisions of the Commerical Property Part which do not conflict with any of the provisions of this Endorsement, we will pay for:

1.  direct damage to Covered Property caused by a Covered Cause of Loss; and

2.  your loss and expense resulting from the necessary interruption of business (if Business Income is shown as covered in the Declarations of the Policy) caused by a Covered Cause of Loss.

3.  **COVERED PROPERTY**

Covered Property, as used in this Endorsement, means any property that:

a.  You own; or

b.  Is in your care, custody or control.

4.  **COVERED CAUSE OF LOSS**

A Covered Cause of Loss is an "accident" occurring on your premises (if you are a tenant, "premises" includes the part of the building under the control of the landlord).

5.  **COVERAGE EXTENSIONS**

a.  **EXPEDITING EXPENSES**

With respect to your damaged Covered Property, we will pay the reasonable extra cost to:

(1)  make temporary repairs; and

(2)  expedite permanent repairs; and

(3)  expedite permanent replacement.

b.  **HAZARDOUS MATERIALS COVERAGE** We will pay up to $25,000 for any additional expenses you incur for:

(1)  cleanup;

(2)  repair or replacement; or

(3)  disposal;

of Covered Property which is damaged, contaminated or polluted as a result of an "accident" by a substance declared by a governmental agency to be hazardous to health. This limitation does not apply to damage, contamination or pollution caused by ammonia.

c.  **REPLACEMENT COST COVERAGE**

We will pay you the amount you actually spend to repair or replace your damaged property with new property of like kind, capacity, size and quality, whichever is less except as provided in (1) and (2) below.

Contains Insurance Services Office Copyrighted material.
Copyright ISO 1983, 1984, 1985, 1987, 1988

1 of 4

**(1)** If any damaged property is not repaired or replaced, then we will pay only the actual cash value at the time of the "accident".

**(2)** With respect to electronic or magnetic media, we will pay only the cost of blank material for reproducing the records.

**d. OFF PREMISES SERVICE INTERRUPTION (IF APPLICABLE)**

If Business Income/Extra Expense is shown as covered, we will pay your loss and expense resulting from the necessary interruption of business caused by an "accident" to any equipment that is:

**(1)** located on or within 500 feet of your premises;

**(2)** owned by the building owner (if you are a tenant) or a public utility company; and

**(3)** used to supply electrical power, heating, air conditioning, gas, water, steam or telephone services to your premises.

**e. SPOILAGE COVERAGE**

We will pay for your loss of perishable goods due to spoilage resulting from lack of power, light, heat, steam or refrigeration caused solely by an "accident", including an "accident" to any equipment that is:

**(1)** located on or within 500 feet of your premises;

**(2)** owned by the building owner (if you are a tenant) or a public utility company; and

**(3)** used to supply electrical power, heating, air conditioning, gas, water or steam service to your premises.

The amount of our payment will be determined on the basis of the selling price of the perishable goods at the time of the "accident" less discounts and expenses you otherwise would have had.

**B. LIMITS OF INSURANCE**

**1.** Coverage under this Endorsement is separate from the Limit of Insurance shown on the Commerical Property Declarations.

**2.** We will only pay for loss of Business Income or Extra Expense that occurs within 12 consecutive months after the date of the "accident".

**C. DEDUCTIBLE**

We will not pay for loss, damage or expense resulting from any one "accident" until the total amount of loss, damage or expense exceeds the Deductible shown in the Declarations. We will then pay the amount of loss, damage or expense in excess of the Deductible.

**D. DEFINITIONS**

As used in this Endorsement:

**1.** When **BASIC COVERAGE** is stated in the Declarations:

"Accident" means a sudden and accidental breakdown of:

**a.** any boiler;

**b.** any fired or unfired pressure vessel subject to vacuum or internal pressure other than the static pressure of its contents; and

**c.** any piping and its accessory equipment.

At the time the breakdown occurs, it must become apparent by physical damage that requires repair or replacement of the equipment or a part of the equipment.

2 of 4

**SYSTEMS BREAKDOWN ENDORSEMENT**

2. When **COMPREHENSIVE COVERAGE** is stated in the Declarations:

"Accident" means a sudden and accidental breakdown of:

a. any boiler;

b. any fired or unfired pressure vessel subject to vacuum or internal pressure other than the static pressure of its contents;

c. any refrigerating or air conditioning system, piping and its accessory equipment; and

d. any mechanical or electrical machine or apparatus used for the generation, transmission or utilization of mechanical or electrical power.

At the time the breakdown occurs, it must become apparent by physical damage that requires repair or replacement of the equipment or a part of the equipment.

If covered electrical equipment requires drying out as a result of flood, the drying out will be considered an "accident".

If an initial "accident" causes other "accidents", all will be considered one "accident". All "accidents" at any one location that become apparent at the same time and are the result of the same cause will be considered one "accident".

E. **EXCLUSIONS**

1. None of the following is an "accident":

a. depletion, deterioration, corrosion or erosion, wear and tear; nor

b. the functioning of any safety or protective device.

2. We will not pay under this endorsement for loss caused by or resulting from:

a. the breakdown of any structure, foundation or setting supporting or housing any equipment;

b. the breakdown of any insulating or refractory material;

c. the breakdown of any sewer piping, any underground gas piping, or any piping forming a part of a sprinkler system;

d. the breakdown of any water piping other than boiler feed water piping, boiler condensate return piping or water piping forming a part of a refrigerating or air conditioning system;

e. the breakdown of any vehicle, elevator, escalator, crane or hoist;

f. fire or combustion explosion whether that fire or combustion explosion causes an "accident", is caused by an "accident" or occurs at the same time as an "accident". With respect to any electrical equipment, this exclusion is changed to read:

fire or combustion explosion outside the equipment, whether that fire or combustion explosion causes an "accident", is caused by an" accident", or occurs at the same time as an "accident";

g. an explosion of gas or unconsumed fuel within the furnace of any boiler or fired vessel or within the gas passages from the furnace to the atmosphere;

h. an "accident" caused directly or indirectly by earth movement, including but not limited to earthquake, landslide, mudslide, subsidence or volcanic eruption;

i. flood, unless an "accident" ensues; or

j. damage to media used with an electronic computer or electronic data processing equipment.

3 of 4

## F. CONDITIONS

### 1. SUSPENSION

When any equipment is found to be in, or exposed to a dangerous condition, any of our representatives may immediately suspend the insurance against loss from an "accident" to that equipment. We can do this by mailing or delivering a written notice of suspension to your address as shown in the Declarations, or at the address where the equipment is located. Once suspended in this way, your insurance can be reinstated only by written notice from us.

If we suspend your insurance, you will get a pro rata refund of premium. But the suspension will be effective even if we have not yet made or offered a refund.

### 2. REDUCING YOUR LOSS

As respects Business Income/Extra Expense and Spoilage, you must reduce your loss, if possible, by:

a. using due diligence and dispatch and all reasonable means to resume business, partially or completely;

b. using merchandise or other property available to you; and

c. using the property or services of others.

4 of 4

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**    54182 (6-00)

# ARSON REWARD

This endorsement modifies insurance under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM

Under **A. COVERAGE**, **4. Additional Coverages**, the following Additional Coverage is added:

**Arson Reward**

We will pay for information which leads to a conviction for arson in connection with a fire loss to Covered Property insured by this policy.  The most we will pay is the Limit of Insurance shown in the Declarations for ARSON REWARD regardless of the number of persons who provide information.  No Deductible applies to this Additional Coverage.

All other policy terms and conditions apply.

Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1984, 1986

54183 (6-00)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# REKEYING OF LOCKS

This endorsement modifies insurance under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM

Under **A. COVERAGE**, **4. Additional Coverages**, the following Additional Coverage is added:

**Rekeying of Locks**

We will pay reasonable necessary expenses you incur to rekey locks on doors of the building described in the Declarations, provided the keys to such locks are a part of a theft loss covered by this policy. The most we will pay is the Limit of Insurance shown in the Declarations for REKEYING OF LOCKS. No Deductible applies to this Additional Coverage.

All other policy terms and conditions apply.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

54184 (6-00)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# INVENTORY

This endorsement modifies insurance under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM

Under **A. COVERAGE**, **4. Additional Coverages,** the following Additional Coverage is added:

**Inventory**

a.  The Limit of Insurance for Business Personal Property (BPP) will automatically increase by the Limit of Insurance shown in the Declarations for INVENTORY for temporary variations in inventory.

b.  This increase will apply only if the Limit of Insurance shown for Business Personal Property in the Declarations is at least 80% of your average monthly values during the lesser of:

(1)  The twelve months immediately preceding the date the loss or damage occurs; or

(2)  The period of time you have been in business as of the date the loss or damage occurs.

No Deductible applies to this Additional Coverage.

All other policy terms and conditions apply.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1983, 1984, 1986, 1990

54185 (6-00)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEWLY ACQUIRED OR CONSTRUCTED PROPERTY

This endorsement modifies insurance under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM

1.  Under **A. COVERAGE, 5. Coverage Extensions, a. Newly Acquired or Constructed Property**, is deleted.

2.  Under **A. COVERAGE, 4. Additional Coverages**, the following Additional Coverage is added:

    **Newly Acquired or Constructed Property**

    a.  We will pay for direct physical loss or damage to:

        (1)  Your new buildings while being built on the described premises; and

        (2)  Buildings you acquire at locations, other than the described premises, intended for:

            (a)  Similar use as the building described in the Declarations; or

            (b)  Use as a warehouse.

        The most we will pay for loss or damage is the Limit of Insurance shown in the Declarations for NEWLY ACQUIRED OR CONSTRUCTED PROPERTY.

    b.  We will pay for direct physical loss of or damage to Your Business Personal Property at any location you acquire other than at fairs or exhibitions.

        The most we will pay for loss or damage is the Limit of Insurance shown in the Declarations for NEWLY ACQUIRED BUSINESS PERSONAL PROPERTY at each building.

    c.  Coverage for each newly acquired or constructed property will end when any of the following first occurs:

        (1)  This policy expires.

        (2)  The number of days shown in the Declarations under:

            (a)  NEWLY ACQUIRED OR CONSTRUCTED PROPERTY - INCREASED LIMIT; or

            (b)  NEWLY ACQUIRED BUSINESS PERSONAL PROPERTY - INCREASED LIMIT;

        expire after you acquire or begin to construct the property.

        (3) You report values to us.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

(4) You secure other insurance for such property.

We will charge you additional premium for values reported from the date construction begins or you acquire the property.

All other policy terms and conditions apply.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**    54186 (6-00)

# WATER BACK-UP FROM SEWERS OR DRAINS

This endorsement modifies insurance under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
CAUSES OF LOSS - SPECIAL FORM

1. Subject to the provisions of paragraph **2.** below, under **B. EXCLUSIONS, g. Water** subparagraph **(3)** is deleted.

2. Under **C. LIMITATIONS** the following limitation is added:

   In any one loss, we will not pay more than the Limit of Insurance shown in the Declarations under WATER BACK-UP FROM SEWERS OR DRAINS for loss of or damage to Covered Property caused by water back-up from sewers or drains. In the event that the amount of loss of or damage to Covered Property does not exceed the Limit of Insurance shown in the Declarations for WATER BACKUP FROM SEWERS OR DRAINS, you may, at your option, apply the remainder of this Limit of Insurance to your actual loss of Business Income or necessary Extra Expense, if any, subject to the terms and conditions of the Additional Coverage, Business Income and Extra Expense.

All other policy terms and conditions apply.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

Page 1 of 1

54188 (6-00)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BUSINESS PERSONAL PROPERTY AT FAIRS OR EXHIBITIONS

This endorsement modifies insurance under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM

Under **A**. **COVERAGE, 4. Additional Coverages**, the following Additional Coverage is added:

**Business Personal Property at Fairs or Exhibitions**

We will pay for direct physical loss of or damage to Your Business Personal Property while it is temporarily at any fair or exhibition caused by or resulting from any Covered Cause of Loss. This Additional Coverage shall apply for a period not to exceed 15 days at any one fair or exhibition. This coverage does not apply to Covered Property in or on a vehicle.

Our payment for any one loss at any one fair or exhibition shall not exceed the Limit of Insurance shown in Declarations for BUSINESS PERSONAL PROPERTY AT FAIRS OR EXHIBITIONS. The Additional Condition, Coinsurance does not apply to this Additional Coverage.

All other policy terms and conditions apply.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

54189 (6-00)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# REFRIGERATED PRODUCTS

This endorsement modifies insurance under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
CAUSES OF LOSS - SPECIAL FORM

1.  Under **A. COVERAGE**, **4. Additional Coverages**, the following Additional Coverage is added:

    **Refrigerated Products**

    We shall pay for loss of or damage to "perishable stock" caused directly by any of the following:

    > (1)  Mechanical breakdown of the refrigeration system; or
    >
    > (2)  The interruption of electrical services to the refrigeration system caused by damage to electrical generating or transmission equipment.

    You must exercise diligence in inspecting and maintaining refrigeration equipment. If interruption of electrical service or mechanical or electrical breakdown is known, you must use all reasonable means to protect the covered property from further damage.

2.  Under **C. LIMITS OF INSURANCE**, the following limitation is added:

    The most we shall pay for all loss or damage caused directly by mechanical or electrical breakdown of the refrigeration system or the interruption of electrical service to the refrigeration system caused by damage to electrical generating or transmission equipment in any one loss is the Limit of Insurance shown in the Declarations for REFRIGERATED PRODUCTS. In the event that the amount of loss of or damage to "perishable stock" does not exceed the Limit of Insurance shown in the Declarations for REFRIGERATED PRODUCTS, you may, at your option, apply the remainder of this Limit of Insurance to your actual loss of Business Income or necessary Extra Expense, if any, subject to the terms and conditions of the Additional Coverage, Business Income and Extra Expense.

3.  Under the CAUSES OF LOSS - SPECIAL FORM, **B. EXCLUSIONS**, exclusion 2. d. (6) is deleted and replaced by the following exclusion for this endorsement only:

    (6)  Mechanical breakdown, including rupture or bursting caused by centrifugal force. However, this does not apply to any resulting loss or damage caused by elevator collision or mechanical breakdown of refrigeration systems;

4.  **Definitions**

    The following definition applies only to this Additional Coverage:

    "**Perishable stock**" means merchandise held in storage or for sale that is refrigerated for preservation and is susceptible to loss or damage if the refrigeration fails.

All other policy terms and conditions apply.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

Page 1 of 1

54190 (6-00)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## FIRE EXTINGUISHER RECHARGE

This endorsement modifies insurance under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM

Under **A. COVERAGE, 4. Additional Coverages**, the following Additional Coverage is added:

**Fire Extinguisher Recharge**

We shall pay for the recharging of fire extinguishers which you own when such fire extinguishers have been discharged at a premises described in the Declarations to control a fire to which this policy applies.

The most we shall pay to recharge your fire extinguishers in any one occurrence is the Limit of Insurance shown in the Declarations for FIRE EXTINGUISHER RECHARGE.

No Deductible applies to this Additional Coverage.

All other policy terms and conditions apply.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1983, 1987

54191 (6-00)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OUTDOOR PROPERTY

This endorsement modifies insurance under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM

1.  Under **A. COVERAGE, 5. Coverage Extensions, e. Outdoor Property** is deleted.

2.  Under **A. COVERAGE, 4. Additional Coverages**, the following Additional Coverage is added:

    **Outdoor Property**

    We shall pay for direct physical loss or damage to your outdoor fences, radio and television antennas, trees, shrubs and plants (other than "stock" of trees, shrubs or plants), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

    (1)  Fire;

    (2)  Lightning;

    (3)  Explosion;

    (4)  Riot or Civil Commotion; or

    (5)  Aircraft.

    Our payment for any one loss for all covered outdoor property shall not exceed the Limit of Insurance shown in the Declarations for OUTDOOR PROPERTY. Our payment for any one tree, shrub or plant (other than "stock" of trees, shrubs or plants) shall not exceed the Limit of Insurance per item shown in the Declarations under TREES, SHRUBS OR PLANTS.

All other policy terms and conditions apply.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

54192 (6-00)

# PROPERTY IN TRANSIT

This endorsement modifies insurance under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
CAUSES OF LOSS - SPECIAL FORM

1. Under **A. COVERAGE, 4. Additional Coverages,** the following Additional Coverage is added:

    **Property In Transit**

    **a.** We will pay for direct physical loss or damage to Your Business Personal Property (other than property in the care, custody or control of your salespersons) in transit more than 1000 feet from the described premises covered by or resulting from any of the following causes of loss:

      **(1)** Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

      **(2)** Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the road bed.

      **(3)** Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

    **b.** Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

    **c.** Our payment for any one loss shall not exceed the Limit of Insurance shown in the Declarations for PROPERTY IN TRANSIT.

    **d.** The Additional Condition, Coinsurance, does not apply to this Additional Coverage.

2. Under the CAUSES OF LOSS - SPECIAL FORM, **E. ADDITIONAL COVERAGE EXTENSIONS, 1. Property In Transit** is deleted.

All other policy terms and conditions apply.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1983, 1989, 1990

54193 (6-00)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FIRE DEPARTMENT SERVICE CHARGE

This endorsement modifies insurance under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM

Under **A. COVERAGE, 4. Additional Coverages, c. Fire Department Service Charge** is deleted and replaced by the following:

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to the Limit of Insurance shown in the Declarations for FIRE DEPARTMENT SERVICE CHARGE for your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No Deductible applies to this Additional Coverage.

All other policy terms and conditions apply.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

Exhibit A - Page 98 of 198

Case 1:08-cv-04201    Document 1-4    Filed 07/24/2008    Page 1 of 51

54195 (6-00)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## PERSONAL EFFECTS AND PROPERTY OF OTHERS

This endorsement modifies insurance under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM

**1.** Under **A. COVERAGE, 5. Coverage Extensions, b. Personal Effects of Others** is deleted.

**2.** Under **A. COVERAGE, 4. Additional Coverages,** the following Additional Coverage is added:

**Personal Effects and Property of Others**

We shall pay for direct physical loss or damage to:

**(1)** Personal effects owned by you, your officers, your partners or your employees caused by or resulting from any Covered Cause of Loss except loss or damage by theft.

**(2)** Personal property of others in your care, custody or control caused by or resulting from any Covered Cause of Loss.

Our payment for any one loss at any described premises shall not exceed the Limit of Insurance shown in the Declarations for PERSONAL EFFECTS AND PROPERTY OF OTHERS.  Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

The Additional Condition, Coinsurance does not apply to this Additional Coverage.

All other policy terms and conditions apply.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

54196 (6-00)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PROPERTY OFF-PREMISES

This endorsement modifies insurance under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM

1.  Under **A. COVERAGE, 5. Coverage Extensions, d. Property Off-Premises** is deleted.

2.  Under **A. COVERAGE, 4. Additional Coverages**, the following Additional Coverage is added:

> **Property Off-Premises**
>
> We shall pay for direct physical loss of or damage to your Covered Property, other than "stock":
>
> **(1)** That is temporarily at a location you do not own, lease or operate; and
>
> **(2)** Caused by or resulting from any Covered Cause of Loss.
>
> This Coverage does not apply to Covered Property:
>
> **(1)** In or on a vehicle;
>
> **(2)** In the care, custody or control of your salespersons; or
>
> **(3)** At any fair or exhibition.
>
> Our payment for any one loss shall not exceed the Limit of Insurance shown in the Declarations for PROPERTY OFF-PREMISES.

All other policy terms and conditions apply.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

54197 (6-00)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLLUTANT CLEAN UP AND REMOVAL

This endorsement modifies insurance under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM

Under **A**. **COVERAGE**, **4. Additional Coverages, d. Pollutant Clean Up and Removal** is deleted and replaced
by the following:

**d.  Pollutant Clean Up and Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge,
dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered
Cause of Loss that occurs during the policy period.  The expenses will be paid only if they are reported to us in
writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or
effects of "pollutants".  But we will pay for testing which is performed in the course of extracting the "pollutants"
from the land or water.

The most we will pay under this Additional Coverage at each described premises for the sum of all covered ex-
penses arising out of Covered Causes of Loss occurring during each separate 12 month period of this policy is
the Limit of Insurance shown in the Declarations for POLLUTANT CLEAN UP AND REMOVAL.

All other policy terms and conditions apply.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

54198 (6-00)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DEBRIS REMOVAL

This endorsement modifies insurance under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM

Under **C. LIMITS OF INSURANCE**, the fourth paragraph is deleted and replaced by the following:

Payments under the following Additional Coverages will not increase the applicable Limit of Insurance:

1.  Preservation of Property; or

2.  Debris Removal; but if:

    a.  The sum of direct physical loss or damage and debris removal expense exceeds the Limit of Insurance; or

    b.  The debris removal expense exceeds the amount payable under the 25% limitation in the Debris Removal Additional Coverage;

we will pay up to the Limit of Insurance shown in the Declarations for DEBRIS REMOVAL.

All other policy terms and conditions apply.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

54199 (6-00)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# BUSINESS PERSONAL PROPERTY - EXPANDED COVERAGE

This endorsement modifies insurance under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM

Under **A**. **COVERAGE, 1. Covered Property, Your Business Personal Property**, the phrase ". . .within 100 feet of the described premises. . ." is deleted and replaced by ". . .within the distance, shown in the Declarations for BUSINESS PERSONAL PROPERTY - EXPANDED COVERAGE, from the described premises. . .".

All other policy terms and conditions apply.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

54205 (6-00)

# BUSINESS INCOME AND EXTRA EXPENSE

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM

1. The following coverages are added to **A. COVERAGE, 4. Additional Coverages:**

   a. **Business Income**

      Subject to the Limit of Insurance provisions of this endorsement, we will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration".

      Business Income means the:

      (1) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

      (2) Continuing normal operating expenses incurred, including payroll.

   b. **Extra Expense**

      Subject to the Limit of Insurance provisions of this endorsement, we will pay necessary Extra Expense you incur during the "period of restoration".

      Extra Expense means expense incurred:

      (1) To avoid or minimize the suspension of business and to continue "operations":

         (a) At the described premises; or

         (b) At replacement premises or at temporary locations, including:

            1) Relocation expenses; and

            2) Costs to equip and operate the replacement or temporary locations.

   3) To minimize the suspension of business if you cannot continue "operations".

   4) (a) To repair or replace any property; or

      (b) To research, replace or restore the lost information on damaged valuable papers and records:

      to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or the Additional Coverage, Business Income.

2. **Limit of Insurance**

   The following provisions apply only to the Additional Coverages, Business Income and Extra Expense.

   a. In the event of loss or damage to Covered Property which is covered by the following Additional Coverages:

      (1) WATER BACK-UP FROM SEWERS OR DRAINS;
      (2) REFRIGERATED PRODUCTS;
      (3) OFF-PREMISES UTILITY SERVICE FAILURE;
      (4) MECHANICAL BREAKDOWN; or
      (5) ORDINANCE OR LAW;

      and you sustain actual loss of Business Income due to the necessary suspension of you "operations" during the "period of restoration" or incur necessary Extra Expense during the "period of restoration", we shall not pay more

Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1983, 1984, 1986, 1990

Page 1 of 4

than the applicable Limit of Insurance shown in the Declarations for:

(1) WATER BACK-UP FROM SEWERS OR DRAINS;
(2) REFRIGERATED PRODUCTS;
(3) OFF-PREMISES    UTILITY    SERVICE FAILURE;
(4) MECHANICAL BREAKDOWN; or
(5) ORDINANCE OR LAW;

for all loss or damage including Business Income and Extra Expense.

**b.** When a specific dollar amount is shown in the Declarations as the Limit of Insurance for BUSINESS INCOME AND EXTRA EXPENSE, and the loss of or damage to Covered Property is not covered by the following Additional Coverages:

(1) WATER BACK-UP FROM SEWERS OR DRAINS;
(2) REFRIGERATED PRODUCTS;
(3) OFF-PREMISES    UTILITY    SERVICE FAILURE;
(4) MECHANICAL BREAKDOWN; or
(5) ORDINANCE OR LAW;

the Limit of Insurance shown in the Declarations for BUSINESS INCOME AND EXTRA EXPENSE is the most we will pay for the actual loss of Business Income you sustain due to the suspension of your "operations" during the "period of restoration" and necessary Extra Expense you incur during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises, including personal property in the open (or in a vehicle) within 100 feet caused by or resulting from any Covered Cause of Loss.

**c.** When the Limit of Insurance shown in the Declarations for BUSINESS INCOME AND EXTRA EXPENSE is shown as, ACTUAL LOSS SUSTAINED, and loss of or damage to Covered Property is not covered by the following Additional Coverages:

(1) WATER BACK-UP FROM SEWERS OR DRAINS;
(2) REFRIGERATED PRODUCTS;
(3) OFF-PREMISES    UTILITY    SERVICE FAILURE;
(4) MECHANICAL BREAKDOWN; or

(5) ORDINANCE OR LAW;

we will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration" and necessary Extra Expense you incur during the "period of restoration" that occurs within 12 consecutive months after the date of direct physical loss of or damage to property at the described premises, including personal property in the open (or in a vehicle) within 100 feet, caused by or resulting from any Covered Cause of Loss. This is an additional amount of insurance.

**3.** The following conditions apply in addition to the Common Policy Conditions, Commercial Property Conditions and Commercial Property Loss Conditions.

**a. Appraisal**

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**(1)** Pay its chosen appraiser; and

**(2)** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**b. Duties In The Event Of Loss Or Damage**

If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

**c. Limitation - Electronic Media and Records**

Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1983, 1984, 1986, 1990

We will not pay for any loss of Business Income caused by direct physical loss of or damage to Electronic Media and Records after the longer of:

(1) 60 consecutive days from the date of direct physical loss or damage; or

(2) The period, beginning with the date of direct physical loss or damage, necessary to repair, rebuild or replace with reasonable speed and similar quality, other property at the described premises due to loss or damage caused by the same occurrence.

Electronic Media and Records are:

(1) Electronic data processing, recording or storage media such as films, tapes, discs, drums or cells;

(2) Data stored on such media; or

(3) Programming records used for electronic data processing or electronically controlled equipment.

Example No. 1:

A Covered Cause of Loss damages a computer on June 1. It takes until September 1 to replace the computer, and until October 1 to restore the data that was lost when the damage occurred. We will only pay for the Business Income loss sustained during the period June 1-September 1. Loss during the period September 2-October 1 is not covered.

Example No. 2:

A Covered Cause of Loss results in the loss of data processing programming records on August 1. The records are replaced on October 15. We will only pay for the Business Income loss sustained during the period August 1-September 29 (60 consecutive days). Loss during the period September 30-October 15 is not covered.

d. **Loss Determination**

(1) The amount of Business Income loss will be determined based on:

(a) The Net Income of the business if no loss or damage occurred;

(b) The likely Net Income of the business if no loss or damage occurred;

(c) The operation expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

(d) Other relevant sources of information, including;

1) Your financial records and accounting procedures;

2) Bills, invoices and other vouchers; and

3) Deeds, liens or contracts.

(2) The amount of Extra Expense will be determined based on:

(a) All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

1) The salvage value that remains of any property bought for temporary use during the "period of restoration" once "operations" are resumed; and

2) Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

(b) All necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

(3) **Resumption Of Operations**

We will reduce the amount of your:

Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1983, 1984, 1986, 1990

**(a)** Business Income loss, other than Extra Expense, to the extent you can resume your "operations," in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

**(b)** Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

**(4)** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**e. Loss Payment**

We will pay for covered loss within 30 days after we receive the sworn proof of loss, if:

**(1)** You have complied with all of the terms of this Coverage Part; and

**(2) (a)** We have reached agreement with you on the amount of loss; or

    **(b)** An appraisal award has been made.

**4.** The following definitions apply only to this endorsement:

All other policy terms and conditions apply.

"Operations" means your business activities occurring at the described premises.

**"Period of Restoration"** means the period of time that:

**a.** Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

**b.** Ends on the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality.

"Period of restoration" does not include any increased period required due to the enforcement of any law that:

**(1)** Regulates the construction, use or repair, or requires the tearing down of any property; or

**(2)** Regulates the prevention, control, repair, clean-up or restoration of environmental damage.

The expiration date of this policy will not cut short the "period of restoration".

Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1983, 1984, 1986, 1990

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**   54206 (6-00)

# OFF-PREMISES UTILITY SERVICE FAILURE

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
CAUSES OF LOSS - SPECIAL FORM

1.  Under the **A. COVERAGE, 4. Additional Coverages**, the following Additional Coverage is added:

    **Off-Premises Utility Service Failure**

    In the event of the interruption of utility service to the described premises caused by direct physical loss of or damage to off-premises "utilities", we shall pay for loss of or damage to Covered Property at the premises described in the Declarations.

2.  The most we shall pay for all loss or damage caused directly by power interruption to the described premises in any one loss is the Limit of Insurance shown in the Declarations for OFF-PREMISES UTILITY SERVICE FAILURE. In the event that the amount of loss of or damage to Covered Property does not exceed the Limit of Insurance shown in the Declarations for OFF-PREMISES UTILITY SERVICE FAILURE, you may, at your option, apply the remainder of this Limit of Insurance to your actual loss of Business Income or necessary Extra Expense, if any, subject to the terms and conditions of the Additional Coverage, Business Income and Extra Expense.

3.  Under the CAUSES OF LOSS - SPECIAL FORM, **B. EXCLUSIONS**, exclusion **1.e. Off-Premises Services** is deleted and replaced by the following exclusions for this Additional Coverage only:

    **e.  Off-Premises Service**

    Loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.  This exclusion does not apply to loss of or damage to Covered Property at the premises described in the Declarations in the event of the interruption of utility service to the described premises caused by direct physical loss of or damage to off-premises "utilities".

4.  **Definitions**

    The following definitions apply only to this Additional Coverage:

    a.  **"Communication Supply Services"**, meaning property supplying communication services, including telephone, radio, microwave or television services, to the described premises, such as:

        (1)  Communication transmission lines, including optic fiber transmission lines;

        (2)  Coaxial cables; and

        (3)  Microwave radio relays except satellites.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission
Copyright, ISO Commercial Risk Office, Inc., 1983, 1990

Page 1 of 2

b. **"Power Supply Services"**, meaning the following types of property supplying electricity, steam or gas to the described premises:

   (a)  Utility generating plants;

   (b)  Switching stations;

   (c)  Substations;

   (d)  Transformers; and

   (e)  Transmission lines.


c. **"Utilities"** shall mean, "water supply services", "communication supply services" and "power supply services", which are:

   (1)  Not located on a described premises; and

   (2)  Not rented, leased or owned by any insured.

d. **"Water supply Services"**, means the following types of property supplying water to the described premises:

   (1)  Pumping stations; and

   (2)  Water mains.

All other policy terms and conditions apply.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission
Copyright, ISO Commercial Risk Office, Inc., 1983, 1990

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

54207 (6-00)

# SIGNS (ATTACHED AND DETACHED)

This endorsement modifies insurance under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM

Under **A. COVERAGE, 4. Additional Coverages**, the following Additional Coverage is added:

**Signs**

(1) We will pay for direct physical loss of or damage to:

(a) your signs; or

(b) signs owned by others in your care, custody or control;

caused by or resulting from any Covered Cause of Loss.

(2) Under **A. COVERAGE, 2. Property Not Covered,** that portion of **p. (2)** that reads "signs (other than signs attached to buildings)" is deleted.

(3) Under **C. LIMITS OF INSURANCE,** the second paragraph does not apply.  The most we will pay for loss or damage to each sign is the Limit of Insurance shown in the Declarations for SIGNS (ATTACHED AND DETACHED).  This is an additional amount of insurance.

All other policy terms and conditions apply.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1983, 1987

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**  54208 (6-00)

# ORDINANCE OR LAW

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
CAUSES OF LOSS - SPECIAL FORM

## A.  Coverage

1.  Coverage A - Coverage For Loss to the Undamaged Portion of the Building.

    If a Covered Cause of Loss occurs to covered Building property and a Limit of Insurance is shown in the Declarations under ORDINANCE OR LAW, we will pay for loss to the undamaged portion of the building caused by enforcement of any ordinance or law that:

    a.  Requires the demolition of parts of the same property not damaged by a Covered Cause of Loss;

    b.  Regulates the construction or repair of buildings, or establishes zoning or land use requirements at the described premises; and

    c.  Is in force at the time of loss.

2.  Coverage B - Demolition Cost Coverage.

    If a Covered Cause of Loss occurs to covered Building property and a Limit of Insurance is shown in the Declarations under ORDINANCE OR LAW, we will pay the cost to demolish and clear the site of undamaged parts of the property caused by enforcement of building, zoning or land use ordinance or law in force at the time of loss.

3.  Coverage C - Increased Cost of Construction Coverage.

    If a Covered Cause of Loss occurs to covered Building property and a Limit of Insurance is shown in the Declarations under ORDINANCE OR LAW, we will pay for the increased cost to repair, rebuild or construct the property caused by enforcement of building, zoning or land use ordinance or law in force at the time of loss.  If the property is repaired or rebuilt, it must be intended for similar occupancy as the current property, unless otherwise required by zoning or land use ordinance or law in force at the time of loss.

    However, we will not pay for the increased cost of construction if the building is not repaired or replaced.

## B.  Exclusion

The following exclusion applies only to the coverage provided by this endorsement:

We will not pay under this endorsement for the costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, cleanup, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants."

## C.  Limit of Insurance

The most we shall pay for the total of all covered loss caused by the enforcement of any ordinance or law under Coverage A, Coverage B and Coverage C combined, is the Limit of Insurance shown in the Declarations for ORDINANCE OR LAW.  Subject to this Limit of Insurance the following loss payment provisions apply:

Includes copyrighted material of ISO Commercial Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1983, 1984, 1986, 1989, 1990

Page 1 of 2

1. Under Coverage A - Coverage for Loss to the Undamaged Portion of the Building:

   a. If the Replacement Cost Coverage Option applies and the property is repaired or replaced, on the same or another premises, we will not pay more for loss or damage to Covered Property caused by enforcement of an ordinance or law, than the lesser of:

      (1) The amount you actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same premises and to the same height, floor area, style and comparable quality of the original property insured; or

      (2) The Limit of Insurance shown in the Declarations under ORDINANCE OR LAW.

   b. If the Replacement Cost Coverage option applies and the property is not repaired or replaced or if the Replacement Cost Coverage option does not apply, we will not pay more for loss or damage to Covered Property caused by enforcement of an ordinance or law, than the lesser of:

      (1) The actual cash value of the building at the time of loss; or

      (2) The Limit of Insurance shown in the Declarations under ORDINANCE OR LAW.

2. Under Coverage B - Demolition Cost Coverage we will not pay more than the lesser of the following:

   a. The amount you actually spend to demolish and clear the site of the described premises; or

   b. The Limit of Insurance shown in the Declarations under ORDINANCE OR LAW.

3. Under Coverage C - Increased Cost of Construction Coverage:

   a. We shall not pay:

      (1) Until the property is actually repaired or replaced, at the same or another premises; and

      (2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years.  We may extend this period in writing during the two years.

   b. If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, we will not pay more than the lesser of:

      (1) The increased cost of construction at the same premises; or

      (2) The Limit of Insurance shown in the Declarations under ORDINANCE OR LAW.

   c. If the ordinance or law requires relocation to another premises, we will not pay more than the lesser of:

      (1) The increased cost of construction at the new premises; or

      (2) The Limit of Insurance shown in the Declarations under ORDINANCE OR LAW.

4. In the event that the total amount paid under Coverage A, Coverage B and Coverage C combined does not exceed the Limit of Insurance shown in the Declarations for ORDINANCE OR LAW, you may, at your option, apply the remainder of this Limit of Insurance to your actual loss of Business Income or necessary Extra Expense, if any, subject to the terms and conditions of the Additional Coverage, Business Income and Extra Expense.

D. The terms of this endorsement apply separately to each building to which this endorsement applies.

All other policy terms and conditions apply.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1983, 1984, 1986, 1989, 1990

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**    54214 (6-00)

# VALUABLE PAPERS

This endorsement modifies insurance under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
CAUSES OF LOSS - SPECIAL FORM

1.  Under the **A. COVERAGE, 4. Additional Coverages**, the following Additional Coverage is added:

    **Valuable Papers**

    We will pay for direct physical loss of or damage to your "valuable papers and records", caused by or resulting from any Covered Cause of Loss, while such papers and records are:

    1.  inside a building at the described premises; or

    2.  being moved outside the described premises; and

    3.  temporarily at a premises, other than the described premises, except storage.  However, we shall pay no more than 10% of the Limit of Insurance shown in the Declarations for VALUABLE PAPERS.

    This coverage does not apply to property:

    1.  held as samples for sale or for delivery after the sale;

    2.  which can not be replaced with property of like kind and quality; or

    3.  which the trading of or transportation of is prohibited by law.

    Our payment for any one loss shall not exceed the Limit of Insurance shown in the Declarations for VALUABLE PAPERS.  The Additional Condition, Coinsurance, does not apply to this Additional Coverage.

    The following additional definitions apply only to this Additional Coverage.

    1.  **"Valuable Papers and Records":**

        a.  means inscribed, written, or printed documents, manuscripts and records including: books, maps, films, drawings, abstracts, deeds and mortgages.

        b.  does not mean:

            (1)  "money" or "securities"; nor

            (2)  electronic recordings of any kind.

    2.  **"Money"** means:

        a.  currency, coins, bank notes, bullion; and

        b.  travelers checks, register checks and money orders held for sale to the public.

    3.  **"Securities"** means all negotiable and non-negotiable:

        a.  instruments; and

        b.  contracts;

        representing either "money" or other property and includes:

Includes copyrighted material of ISO Commercial Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

Page 1 of 2

      a.  tokens, tickets, stamps; and

      b.  revenue;

      in current use, but does not include "money".

2.  The following exclusions apply only to this Additional Coverage.  **B. EXCLUSIONS** of the CAUSES OF LOSS - SPECIAL FORM does not apply to this Additional Coverage.

**Exclusions**

1.  We do not cover under this form loss or damage caused directly or indirectly by any of the following, whether or not any other cause or happening contributes concurrently or in any sequence to the loss or damage:

    a.  Seizure or destruction of property by order of governmental authority.  But we will pay for such acts of destruction taken at the time of a fire to prevent its spread if the fire would be covered under this form.

    b.  Nuclear reaction, radiation, radioactive contamination, discharge of a nuclear weapon, however caused and whether controlled or uncontrolled, or any consequence of any of these.  We will cover direct loss resulting from fire if caused by any of these, if fire is covered elsewhere in this form.

    c.  War (declared or undeclared), civil war, insurrection, rebellion or revolution.

    d.  Wear and tear; inherent vice, hidden or latent defect; gradual deterioration; mechanical break down; insects vermin, rodents; depreciation; or by processing or any work on the property.  We will cover direct loss from fire or explosion which is caused by any of these.

    e.  Corrosion, rusting, dampness of atmosphere, or extremes of temperature.

    f.  Misappropriation, secretion, conversion, infidelity or any dishonest act by you or others or the employees or agents of either to whom the covered property may be entrusted.  This exclusion does not apply to carriers for hire.

    g.  Bookkeeping, accounting or errors or omissions in processing or copying, unless fire or explosion ensues and then only for direct loss caused by such fire or explosion.

    h.  Electrical or magnetic injury, disturbance or erasure of electronic recordings.  We do cover loss caused by lightning.

    i.  Collapse except to the extent it is covered under **D. ADDITIONAL COVERAGE - COLLAPSE**.

2.  Except as to ensuing loss or damage not otherwise excluded, we do not cover loss or damage resulting directly or indirectly from:

    a.  Acts, omissions or decisions of any person, group, organization or governmental body.

    b.  Faulty, inadequate or defective:

        (1)  construction, reconstruction, repair, remodeling or renovation;
        (2)  materials used in construction, reconstruction, repair, remodeling or renovation;
        (3)  design, workmanship, specifications;
        (4)  siting, surveying, zoning, planning, development, grading or compaction; or
        (5)  maintenance;

        of a part or all of any property.

All other policy terms and conditions apply.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

Page 2 of 2

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**    54216 (6-00)

# SALESPERSON'S SAMPLES

This endorsement modifies insurance under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
CAUSES OF LOSS - SPECIAL FORM

1.  Under the **A. COVERAGE 4. Additional Coverages**, the following Additional Coverage is added:

    **Salesperson's Samples**

    We will pay for direct physical loss of or damage to samples of merchandise described which are:

    1.  owned by you while in your care, custody or control;

    2.  owned by you and in the care, custody or control of your salesperson and/or agents; or

    3.  while in transit, except by parcel post, between your premises and the salesperson and/or agent.

    caused by or resulting from any Covered Cause of Loss.

    This coverage does not apply to:

    1.  Jewelry, furs or articles consisting principally of fur;

    2.  Property located in or on the building described in the Declarations or in the open (or in a vehicle) within 1000 feet of the described premises;

    3.  Property at or on the premises of your salespersons and/or agents; or

    4.  Merchandise intended for sale, which may be sold and shipped by you to others, or which has been purchased by you from others.

    Our payment for any one loss shall not exceed the Limit of Insurance shown in the Declarations for SALESPERSON'S SAMPLES. The Additional Condition, Coinsurance, does not apply to this Additional Coverage.

2.  The following exclusions apply only to this Additional Coverage. **B. EXCLUSIONS** of the CAUSES OF LOSS - SPECIAL FORM does not apply to this Additional Coverage.

    **Exclusions**

    We do not cover under this form loss or damage caused directly or indirectly by any of the following, whether or not any other cause or happening contributes concurrently or in any sequence to the loss or damage:

    1.  Seizure or destruction of property by order of governmental authority. But we will pay for such acts of destruction taken at the time of a fire to prevent its spread if the fire would be covered under this form.

    2.  Nuclear reaction, radiation, radioactive contamination, discharge of a nuclear weapon, however caused and whether controlled or uncontrolled, or any consequence of any of these. We will cover direct loss resulting from fire if caused by any of these, if fire is covered elsewhere in this form.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1983, 1987, 1990

3. War (declared or undeclared), civil war, insurrection, rebellion or revolution.

4. Wear and tear; inherent vice, hidden or latent defect; gradual deterioration; mechanical breakdown; insects vermin, rodents; depreciation; or by processing or any work on the property. We will cover direct loss from fire or explosion which is caused by any of these.

5. Corrosion, rusting, dampness of atmosphere, or extremes of temperature.

6. Misappropriation, secretion, conversion, infidelity or any dishonest act by you or other or the employees or agents of either to whom the covered property may be entrusted. This exclusion does not apply to carriers for hire.

7. Artificially generated electrical currents to electrical apparatus. We will cover loss or damage caused directly by ensuing fire or explosion.

8. Breakage, marring, scratching, tearing or denting, unless caused by: fire or lightning; aircraft; theft and/or attempted theft; cyclone, tornado or windstorm; earthquake; flood; explosion; malicious damage or collision, derailment or overturn of a transporting conveyance.

9. Mysterious or unexplained disappearance or from shortage disclosed by taking inventory.

10. Theft from any vehicle, unless at the time of the theft, there is actually in or upon such vehicle your salesperson, representative or a permanent employee, or a person whose sole duty it is to attend the vehicle. This exclusion shall not apply to property in the custody of a common carrier.

3. In addition to the conditions of this coverage form, the following conditions apply to this Additional Coverage. These additional conditions apply only to this Additional Coverage.

**Conditions**

1. **PAIR OR SET**

   In case of loss of or damage to any part of a pair or set, we may:

   (a) repair or replace any part of the pair or set to restore it to its value before the loss; or

   (b) pay the difference between the actual cash value of the property before and after the loss.

2. **PARTS**

   In case of loss or damage to any part of property covered, consisting of several parts when complete, we shall pay only for the value of the part lost or damaged.

All other policy terms and conditions apply.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1983, 1987, 1990

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

54217 (6-00)

# ELECTRONIC DATA PROCESSING EQUIPMENT

This endorsement modifies insurance under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
CAUSES OF LOSS - SPECIAL FORM

Under **A. COVERAGE, 4. Additional Coverages**, the following Additional Coverage is added:

**Electronic Data Processing Equipment**

1. **Covered Property**

    We will pay for:

    a.  direct physical loss of or damage to electronic equipment, component parts of such equipment, "media" and air conditioning equipment necessary for the operation of the electronic equipment:

        (1)  which you own or which is in your care, custody or control; and

        (2)  while located at the premises described in the Declarations; and

        (3)  caused by or resulting from any Covered Cause of Loss.

        We do not cover "laptop computers".

    b.  your costs to research, replace or restore information on "media" which has incurred direct physical loss or damage.

2. **Exclusions**

    The following exclusions apply only to this Additional Coverage. **B. EXCLUSIONS** of the CAUSES OF LOSS - SPECIAL FORM does not apply to this Additional Coverage.

    We do not cover under this Additional Coverage, loss or damage caused directly or indirectly by any of the following, whether or not any other cause or happening contributes concurrently or in any sequence to the loss or damage:

    a.  Loss or damage caused by:

        (1)  corrosion or rusting;
        (2)  dryness or dampness of atmosphere; or
        (3)  extremes of temperature;

        unless directly resulting from accidental direct physical damage to the data processing system's air conditioning equipment caused by a peril not excluded.

    b.  Any dishonest, fraudulent or criminal act by:

        (1)  you;
        (2)  your partners; or
        (3)  any of your officers, directors, or trustees;

        whether acting alone or in collusion with others.

    c.  Loss or damage caused by data processing "media" failure, while the "media" is being run through the system. We will cover loss, damage or expense caused directly by ensuing fire or explosion.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1983, 1987, 1990

Page 1 of 8

    d.  Actual work upon, installation or testing of property covered. We will cover loss caused by ensuing fire or explosion.

    e.  Faulty construction or error in design of the property covered. We will cover loss, damage or expense caused directly by ensuing fire or explosion.

    f.  Delay or loss of market.

    g.  Loss or damage to any "laptop computer".

**3.  Limit of Insurance**

    a.  Our payment for electronic equipment, component parts of such equipment and air conditioning equipment necessary for the operation of such electronic equipment shall not exceed the Limit of Insurance shown in the Declarations for ELECTRONIC DATA PROCESSING EQUIPMENT.

    b.  Our payment for "media" shall not exceed the smallest of the following:

        (1)  the actual cost to repair, replace or reproduce the "media", including your costs to research, replace or restore information;

        (2)  if the "media" is not repaired, replaced or reproduced, the value of blank "media"; or

        (3)  the Limit of Insurance shown in the Declarations for ELECTRONIC DATA PROCESSING EQUIPMENT.

The Limit of Insurance shown in the Declarations for ELECTRONIC DATA PROCESSING EQUIPMENT is the total limit of our liability for loss or damage to all Covered Property in any one occurrence at one location. With respect to Covered Property you do not own, we will pay no more than the amount for which you are legally liable.

The Additional Condition, Coinsurance does not apply to this Additional Coverage.

**4.  Coverage Extensions**

    a.  **Property At Newly Acquired Or Temporary Locations**

    We will pay for direct physical loss or damage to Covered Property caused by or resulting from any Covered Cause of Loss at:

        (1)  any location you acquire for similar occupancy or warehousing purposes; or

        (2)  any temporary location, other than fairs or exhibitions, you acquire for similar occupancy or warehousing purposes;

    other than at the premises shown in the Declarations, but within territorial limits.

    The most we will pay for loss or damage under this extension is the Limit of Insurance shown in the Declarations for ELECTRONIC DATA PROCESSING EQUIPMENT.

    This coverage extension will stop:

        (1)  60 days from your acquisition or use of such property;

        (2)  on the date, values at such locations are reported to us; or

        (3)  on the expiration date of the policy;

    whichever comes first.

    Additional premium shall be due and payable for values reported from the date the property arrives at such locations.

    b.  **Newly Acquired Property**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1983, 1987, 1990

We will pay for direct physical loss of or damage to property which you acquire of the same type as the property covered at any one location caused by or resulting from any Covered Cause of Loss.

The most we will pay for loss or damage under this extension is the Limit of Insurance shown in the Declarations for ELECTRONIC DATA PROCESSING EQUIPMENT.

This coverage will stop:

(1) 60 days from your acquisition or use of such property;

(2) on the date values of such property are reported to us; or

(3) on the expiration date of the policy;

whichever occurs first.

Additional premium shall be due and payable for values reported from the date the property is acquired.

5. **Additional Coverages**

   a. **Transportation**

   You may apply up to $10,000, for any one occurrence for loss of or damage to property caused by:

   (1) fire; lightning; windstorm and hail; explosion; smoke; riot and civil commotion; and vandalism and malicious mischief;

   (2) the overturning, upset, or collision of the vehicle, transporting the insured property, with another vehicle object other than the road bed; or

   (3) theft of an entire shipping bale, case or package from a vehicle:

      (a) while such property is in a fully enclosed and securely locked body or compartment; and

      (b) theft results from forcible entry, evidenced by visible marks;

   which occurs during transportation by motor vehicles you own, lease or operate.

   We do not cover under this extension property held as samples, held for rental or sale or that you rent to others while in the care, custody or control or salespersons.

   b. **Business Income and Extra Expense**

   (1) **Business Income**

      (a) Subject to the Limit of Insurance provisions of this additional coverage, we will pay for the actual loss of Business Income you sustain as a direct result of the necessary suspension of your "operations" during the "period of restoration" caused by accidental direct physical loss of or damage to:

         1) the electronic equipment or "media" covered by this Additional Coverage;

         2) the building housing the electronic equipment or "media" that prevents access to and use of the electronic equipment or "media"; or

         3) the air conditioning or electrical systems that are required to operate the electronic equipment, provided such damage or destruction is inside the building or outside within 100 feet of the building;

      caused by the perils insured against and subject to **2. Exclusions.**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1983, 1987, 1990

(b) We will also pay expenses you incur to reduce the covered loss. We will not pay for expenses:

    1)   you incur to extinguish a fire; or

    2)   expenses that exceed the amount by which the covered loss is reduced.

Business Income means the:

(1) net income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

(2) continuing normal operating expenses incurred, including payroll.

(2) **Extra Expense**

  (a) Subject to the Limit of Insurance provisions of this additional coverage, we will pay necessary Extra Expense, other than loss of Business Income, you incur to continue "normal" operations of your business following accidental direct physical loss of or damage to:

    1)   the electronic equipment or "media" covered by this Additional Coverage;

    2)   the building housing the electronic equipment or "media" that prevents access to and use of the equipment or "media"; or

    3)   the air conditioning or electrical systems that are required to operate the electronic equipment, provided such damage or destruction is inside the building or outside within 100 feet of the building;

  caused by the perils insured against and subject to **2. Exclusions.**

  You must resume normal operation of your business as soon as practical.

  (b) We will also cover the cost to repair, replace or restore:

    1)   books of accounts, abstracts, drawings;

    2)   card index systems; or

    3)   other records or data such as film, tape, disks, drum, cell or other magnetic storage or recording "media" for electronic data processing;

  that have been damaged or destroyed by perils we insure against, if such cost:

    1)   exceeds the normal cost for such repair, replacement or restoration; and

    2)   was incurred to reduce loss under this endorsement.

Extra Expense means expense incurred:

(1) To avoid or minimize the suspension of business and continue "operations":

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1983, 1987, 1990

(a) At the described premises; or

(b) At replacement premises or at temporary locations, including:

    1) Relocation expenses; and

    2) Costs to equip and operate the replacement or temporary locations.

    3) To minimize the suspension of business if you cannot continue "operations".

    4) (a) To repair or replace any Covered Property; or

       (b) To research, replace or restore the lost information on damaged valuable papers and records:

       to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage.

**(3) Coverage Extension**

We extend Business Income and Extra Expense to include the actual loss or damage sustained by you which is a direct result of an interruption of the business as covered by this policy because access to the described business premises is prohibited by order of civil authority because of damage or destruction of property adjacent to the described premises by the perils insured against.  Coverage applies while access is denied, but no longer than two consecutive weeks.

**(4) Exclusions**

The following exclusions apply to Business Income and Extra Expense provided by this Additional Coverage only, in addition to those contained in **2. Exclusions** above.

(a) We will not be liable for any increase in loss of Business Income or Extra Expense caused by any of the following, whether or not any other cause or happening contributes concurrently or in any sequence to the loss or damage:

    1) enforcement of any local or state ordinance or law regulating construction, repair or demolition of buildings or structures;

    2) interference at the described premises by strikers or other persons with:

       a) rebuilding, repairing or replacing the property; or

       b) resumption or continuation of business; or

    3) the suspension, lapse, or cancellation of any lease, license, contract or order beyond the period of restoration.

(b) We will not cover loss or damage caused directly or indirectly by any of the following, whether or not any other cause or happening contributes concurrently or in any sequence to the loss or damage:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1983, 1987, 1990

    1)   theft of any property, which is not an integral part of a building or structure at the time of loss. We will cover direct loss that ensues from a peril not excluded in this policy. We will cover direct loss by pillage and looting which occurs during and at the immediate place of riot or civil commotion.

    2)   any other consequential or remote loss.

(5)  **Limit of Insurance**

   (a)  Business Income

      Subject to (c) below, we will pay only for loss of your Business Income that occurs during the "period of restoration", but not exceeding 12 consecutive months after the date of accidental direct physical loss of or damage to covered property, resulting from a Covered Cause of Loss.

   (b)  Extra Expense

      Subject to (c) below, we will pay for necessary Extra Expense during the "period of restoration" starting with the date of damage or destruction. Payments under this coverage shall not be limited by the expiration of the policy.

   (c)  Our total payment for both Business Income and Extra Expense for any one occurrence shall not exceed $100,000.

(6)  **Loss Determination**

   (a)  The amount of Business Income loss will be determined based on:

     1)   The Net Income of the business if no loss or damage occurred;

     2)   The likely Net Income of the business if no loss or damage occurred;

     3)   The operation expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

     4)   Other relevant sources of information, including;

        a)   Your financial records and accounting procedures;

        b)   Bills, invoices and other vouchers; and

        c)   Deeds, liens or contracts.

   (b)  The amount of Extra Expense will be determined based on:

     1)   All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

        a)   The salvage value that remains of any property bought for temporary use during the "period of restoration" once "operations" are resumed; and

        b)   Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1983, 1987, 1990

2) All necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

(c) Resumption Of Operations

We will reduce the amount of your:

1) Business Income loss, other than Extra Expense, to the extent you can resume your "operations," in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

2) Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

(d) If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

(7) **Loss Payment - Business Income and Extra Expense**

We will pay for covered loss within 30 days after we receive the sworn proof of loss, if:

(1) You have complied with all of the terms of this Coverage Part; and

(2) (a) We have reached agreement with you on the amount of loss; or

(b) An appraisal award has been made.

## 6. Definitions

The following definitions apply only to this Additional Coverage:

a. **"Laptop computer"** means portable data collectors, notebook (laptop) computers, subnote book computers, palmtop computers, handheld computers and portable or any similar computer. Laptop computer does not mean cellular phone, wireless phone or pager.

b. **"Media"** means materials on which information is recorded such as film, magnetic tope, paper tape, disks, drums, and cards. Media includes computer software.

c. **"Normal"** means the condition than would have existed had no loss occurred.

d. **"Operations"** means your business activities occurring at the described premises.

e. **"Period of Restoration"** means the period of time that:

(1) Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

(2) Ends on the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality.

"Period of restoration" does not include any increased period required due to the enforcement of any law that:

(1) Regulates the construction, use or repair, or requires the tearing down of any property; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1983, 1987, 1990

(2)  Regulates the prevention, control, repair, clean-up or restoration of environmental damage.

The expiration date of this policy will not cut short the "period of restoration".

All other policy terms and conditions apply.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1983, 1987, 1990

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.                54218 (6-00)

## ACCOUNTS RECEIVABLE

This endorsement modifies insurance under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
CAUSES OF LOSS - SPECIAL FORM

1.  Under **A. COVERAGE, 4. Additional Coverages**, the following Additional Coverage is added:

    **Accounts Receivable**

    We will pay:

    1.  all amounts your customers owe you that you cannot collect;

    2.  interest charges on loans you secure to offset impaired receipts until we pay these amounts;

    3.  collection costs in excess of normal; and

    4.  other expenses you reasonably incur to re-establish your records;

    which result from direct physical loss of or damage to your records of accounts receivable;

    1.  caused by or resulting from any Covered Cause of Loss; and

    2.  which occurs on the premises described in the Declarations.

    Our payment for any one loss shall not exceed the Limit of Insurance shown in the Declarations for ACCOUNTS RECEIVABLE.

2.  The following exclusions apply only to this Additional Coverage.  **B. EXCLUSIONS** of the CAUSE OF LOSS - SPECIAL FORM does not apply to this Additional Coverage.

    **Exclusions**

    1.  We do not cover loss caused directly or indirectly by any of the following, whether or not any cause or happening contributes concurrently or in any sequence to the loss:

        a.  Seizure or destruction of property by order of governmental authority.  But we will pay for such acts of destruction taken at the time of the fire to prevent its spread if the fire would by covered under this form.

        b.  Nuclear action, meaning nuclear reaction, radiation, radioactive contamination, however caused and whether controlled or uncontrolled, or any consequence of any of these.  Nuclear action includes the discharge of a nuclear weapon, even if accidental.

        c.  War (declared or undeclared), civil war, insurrection, rebellion or revolution.

        d.  Any dishonest act of:

            (1)  you or your employees;

Includes copyrighted material of ISO Commercial Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

Page 1 of 3

    (2)  your authorized representatives; or

    (3)  anyone entrusted with the property;

    while working or not working and whether alone or in collusion with others.

e.  Bookkeeping, accounting or billing errors or omissions.

f.  Falsification, alteration, concealment or destruction of records done to conceal the wrongful giving, taking or withholding of money, securities or other property.  This exclusion applies only to the extent of the wrongful giving, taking or withholding.

g.  Electrical or magnetic injury, disturbance or erasure of electronic recordings.  But we do cover direct loss caused by lightning.

h.  Voluntary parting with any property by you or anyone entrusted with it if induced to do so by any fraudulent scheme, trick, device or false pretense.

2.  We will not pay for any loss that relies solely upon an audit of records on an inventory computation to prove its factual existence.

3.  Except as to ensuing loss not otherwise excluded, we do not cover loss resulting directly or indirectly from:

    a.  Acts or decisions of any person, group, organization or governmental body, or their failure to act or decide.

    b.  Faulty, inadequate or defective:

        (1)  construction, reconstruction, repair, remodeling or renovation;

        (2)  materials used in construction, reconstruction, repair, remodeling or renovation;

        (3)  design, workmanship, specifications;

        (4)  siting, surveying, zoning, planning, development, grading or compaction; or

        (5)  maintenance;

        of a part or all of any property.

4.  Except as to ensuing loss not otherwise excluded, we do not cover loss resulting directly or indirectly from collapse, unless;

    a.  the loss involves collapse of a building or part of a building; and

    b.  the collapse is caused by any of the following:

        (1)  hidden decay, hidden insect damage or hidden vermin damage;

        (2)  weight of people; contents, animals, equipment and/or furniture;

        (3)  defective material or defective methods used in construction, reconstruction, renovation or remodeling;

        (4)  weight of rain on a roof; or

Includes copyrighted material of ISO Commercial Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

(5) fire; lightning, windstorm; hail, explosion, smoke; aircraft; vehicles; riot; civil commotion; vandalism; breakage of glass; falling objects; weight of ice, snow or sleet; water damage; all only as covered in this form.

3. In addition to the conditions of this coverage form, the following conditions apply to this Additional Coverage. These additional conditions apply only to this Additional Coverage.

    a. **Protection of Records of Accounts Receivable**

    For coverage to apply under this Additional Coverage, you must keep all records of accounts receivable in a locked safe or vault when:

    (1) you are not open for business; or

    (2) you are not using such records; or

    (3) such records are not removed from premises as permitted under the Additional Coverage, **Preservation of Property**.

    b. The following is added to the Loss Payment Condition:

    (1) If you cannot accurately establish the accounts receivable outstanding as of the time of loss or damage, the following method will be used:

      (a) Determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurs; and

      (b) Adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

    (2) The following will be deducted from the total amount of accounts receivable, however that amount is established:

      (a) The amount of the accounts for which there is no loss or damage;

      (b) The amount of the accounts that you are able to re-establish or collect;

      (c) An amount to allow for probable bad debts that you are normally unable to collect; and

      (d) All unearned interest and service charges.

All other policy terms and conditions apply.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

54219 (6-00)

# MONEY AND SECURITIES

This endorsement adds crime coverage to the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM

**A. COVERAGE** - We will pay for loss of Covered Property resulting directly from the Covered Causes of Loss.

   **1. Section 1. - Inside The Premises**

      **a. Covered Property:** "Money" and "securities" inside the "premises" or a "banking premises".

      **b. Covered Causes of Loss**

         **(1)** "Theft"

         **(2)** Disappearance

         **(3)** Destruction

      **c. Coverage Extensions**

         **(1) Containers of Covered Property:** We will pay for loss of, and loss from damage to, a locked safe, vault, cash register, cash box or cash drawer located in the "premises" resulting directly from an actual or attempted:

            **(a)** "Theft" of; or

            **(b)** Unlawful entry into

            those containers.

         **(2) Premises Damage:** We will pay for loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "theft" of Covered Property if you are the owner of the "premises" or are liable for damage to it.

   **2. Section 2. - Outside The Premises**

      **a. Covered Property:** "Money" and "securities" outside the "premises" in the care and custody of a "messenger".

      **b. Covered Causes of Loss**

         **(1)** "Theft"

Includes copyrighted material of ISO Commercial Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1984, 1987, 1989

Page 1 of 9

**(2)** Disappearance

**(3)** Destruction

**c. Coverage Extension**

**Conveyance Of Property By Armored Motor Vehicle Company:** We will pay for loss of Covered Property resulting directly from the Covered Cause of Loss while outside the "premises" in the care and custody of an armored motor vehicle company.

But, we will pay only for the amount of loss you cannot recover:

**(1)** Under your contract with the armored motor vehicle company; and

**(2)** From any insurance or indemnity carried by, or for the benefit of customers of, the armored motor vehicle company.

The amount we pay under this Coverage Extension is part of, not in addition to the Limit of Insurance shown in the Declarations for MONEY AND SECURITIES.

## B. EXCLUSIONS

We will not pay for loss as specified below:

1. **Accounting or Arithmetical Errors or Omissions:** Loss resulting from accounting or arithmetical errors or omissions.

2. **Acts Committed by You or Your Partners:** Loss resulting from any dishonest or criminal act committed by you or any of your partners whether acting alone or in collusion with other persons.

3. **Acts of Employees, Directors, Trustees or Representatives:** Loss resulting from any dishonest or criminal act committed by any of your "employees", directors, trustees or authorized representatives:

   **a.** Acting alone or in collusion with other persons; or

   **b.** While performing services for you or otherwise.

4. **Exchanges or Purchases:** Loss resulting from the giving or surrendering of property in any exchange or purchase.

5. **Fire:** Loss from damage to the "premises" resulting from fire, however caused.

6. **Governmental Action:** Loss resulting from seizure or destruction of property by order of governmental authority.

7. **Indirect Loss:** Loss that is an indirect result of any act or "occurrence" covered by this insurance including, but not limited to, loss resulting from:

   **a.** Your inability to realize income that you would have realized had there been no loss of, or loss from damage to, Covered Property.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1984, 1987, 1989

   **b.** Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this insurance.

   **c.** Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

**8. Legal Expenses:** Expenses related to any legal action.

**9. Nuclear:** Loss resulting from nuclear reaction, nuclear radiation or radioactive contamination, or any related act or incident.

**10. War and Similar Actions:** Loss resulting from war, whether or not declared, warlike action, insurrection, rebellion or revolution, or any related act or incident.

**11. Money Operated Devices:** Loss of "property" contained in any money operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

**12. Transfer or Surrender of Property**

   **a.** Loss of property after it has been transferred or surrendered to a person or place outside the "premises" or "banking premises":

     **(1)** On the basis of unauthorized instructions; or

     **(2)** As a result of a threat to do:

       **(a)** Bodily harm to any person; or

       **(b)** Damage to any property.

   **b.** But, this exclusion does not apply under COVERAGE, Section 2. to loss of Covered Property while outside the "premises" in the care and custody of a "messenger" if you:

     **(1)** Had no knowledge of any threat at the time the conveyance began; or

     **(2)** Had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

**13. Vandalism:** Loss from damage to the "premises" or its exterior or to containers of Covered Property by vandalism or malicious mischief.

**14. Voluntary Parting of Title to or Possession of Property:** Loss resulting from your, or anyone acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

**C. LIMIT OF INSURANCE**

The most we will pay for loss in any one "occurrence" is the Limit of Insurance shown in the Declarations for MONEY AND SECURITIES.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1984, 1987, 1989

**D. DEDUCTIBLE**

We will not pay for loss in any one "occurrence" unless the amount of loss exceeds the Deductible Amount shown in the Declarations for MONEY AND SECURITIES. We will then pay the amount of loss in excess of the Deductible Amount up to the Limit of Insurance.

**E. GENERAL CONDITIONS**

1.  **Consolidation - Merger:** If through consolidation or merger with, or purchase of assets of, some other entity:

    a.  Any additional persons become "employees"; or

    b.  You acquire the use and control of any additional "premises";

    any insurance afforded for "employees" or "premises" also applies to those additional "employees" and "premises", but only if you:

    a.  Give us written notice within 30 days thereafter; and

    b.  Pay us an additional premium.

2.  **Discovery Period for Loss:** We will pay only for covered loss discovered no later than one year from the end of the policy period.

3.  **Duties in the Event of Loss**

    a.  After you discover a loss or a situation that may result in loss of, or loss from damage to, Covered Property you must:

        (1) Notify us as soon as possible.

        (2) Submit to examination under oath at our request and give us a signed statement of your answers.

        (3) Give us a detailed, sworn proof of loss within 120 days.

        (4) Cooperate with us in the investigation and settlement of any claim.

    b.  If you have reason to believe that any loss of or loss from damage to, Covered Property involves a violation of law, you must notify the police.

4.  **Joint Insured**

    a.  If more than one Insured is named in the Declarations, the first named Insured will act for itself and for every other Insured for all purposes of this insurance. If the first named Insured ceases to be covered, then the next named Insured will become the first named Insured.

    b.  If any Insured or partner or officer of that Insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every Insured.

    c.  An "employee" of any Insured is considered to be an "employee" of every Insured.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1984, 1987, 1989

**d.** If this insurance or any of its coverages is canceled or terminated as to any Insured, loss sustained by that Insured is covered only if discovered no later than one year from the date of that cancellation or termination.

**e.** We will not pay more for loss sustained by more than one Insured than the amount we should pay if all the loss had been sustained by one Insured.

5. **Legal Action Against Us:**  You may not bring any legal action against us involving loss:

    **a.** Unless you have complied with all the terms of this insurance;

    **b.** Until 90 days after you have filed proof of loss with us; and

    **c.** Unless brought within 2 years from the date you discover the loss.

6. **Loss Covered Under More Than One Coverage of This Insurance:**  If two or more coverages of this insurance apply to the same loss, we will pay the lesser of:

    **a.** The actual amount of loss; or

    **b.** The sum of the limits of insurance applicable to those coverages.

7. **Loss Sustained During Prior Insurance**

    **a.** If you, or any predecessor in interest, sustained loss during the period of any prior insurance that you or the predecessor in interest could have recovered under that insurance except that the time within which to discover loss had expired, we will pay for it under this insurance, provided:

        **(1)** This insurance became effective at the time of cancellation or termination or the prior insurance; and

        **(2)** The loss would have been covered by this insurance had it been in effect when the acts or events causing the loss were committed or occurred.

    **b.** The insurance under this Condition is part of, not in addition to, the Limits of Insurance and is limited to the lesser of the amount recoverable under:

        **(1)** This insurance as of its effective date; or

        **(2)** The prior insurance had it remained in effect.

8. **Loss Covered Under This Insurance and Prior Insurance Issued by Us or Any Affiliate:**  If any loss is covered:

    **a.** Partly by this insurance; and

    **b.** Partly by any prior canceled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest;

the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1984, 1987, 1989

9. **Non-Cumulation of Limit of Insurance:** Regardless of the number of years this insurance remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

10. **Other Insurance:** This insurance does not apply to loss recoverable or recovered under other insurance or indemnity. However, if the limit of the other insurance or indemnity is insufficient to cover the entire amount of the loss, this insurance will apply to that part of the loss, other than that falling within any deductible amount, not recoverable or recovered under the other insurance or indemnity, but not or more than the Limit of Insurance.

11. **Ownership of Property; Interests Covered:** The property covered under this insurance is limited to property:

    a. That you own or hold; or

    b. For which you are legally liable.

    However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization.

12. **Policy Period**

    a. The Policy Period is shown in the Declarations.

    b. Subject to the Loss Sustained During Prior Insurance condition, we will pay only for loss that you sustain through acts committed or events occurring during the Policy Period.

13. **Records:** You must keep records of all Covered Property so we can verify the amount of any loss.

14. **Recoveries**

    a. Any recoveries, less the cost of obtaining them, made after settlement of loss covered by this insurance will be distributed as follows:

        (1) To you, until you are reimbursed for any loss that you sustain that exceeds the Limit of Insurance and the Deductible Amount, if any:

        (2) Then to us, until we are reimbursed for the settlement made;

        (3) Then to you, until you are reimbursed for that part of the loss equal to the Deductible Amount, if any.

    b. Recoveries do not include any recovery:

        (1) From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

        (2) Of original "securities" after duplicates of them have been issued.

15. **Territory:** This insurance covers only acts committed or events occurring within the United States of America, U.S. Virgin Islands, Puerto Rico, Canal Zone or Canada.

16. **Transfer of Your Rights of Recovery Against Others to Us:** You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1984, 1987, 1989

Page 6 of 9

**17. Valuation - Settlement**

  **a.** Subject to the Limit of Insurance provision we will pay for:

    **(1)** Loss of "money" but only up to and including its face value. We may, at our option, pay for loss of "money" issued by any country other than the United States of America;

      **(a)** At face value in the "money" issued by that country; or

      **(b)** In the United States of America dollar equivalent determined by the rate of exchange on the day the loss was discovered.

    **(2)** Loss of "securities" but only up to and including their value at the close of business on the day the loss was discovered. We may, at our option:

      **(a)** Pay the value of such "securities" or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those "securities";

      **(b)** Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the "securities." However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

        **1)** Value of the "securities" at the close of the business on the day the loss was discovered; or

        **2)** Limit of Insurance.

    **(3)** Loss of, or loss from damage to "property other than money and securities" or loss from damage to the "premises" for not more than the:

      **(a)** Actual cash value of the property on the day the loss was discovered;

      **(b)** Cost of repairing the property or "premises"; or

      **(c)** Cost of replacing the property with property of like kind and quality.

    We may, at our option, pay the actual cash value of the property or repair or replace it.

    If we cannot agree with you upon the actual cash value or the cost of repair or replacement, the value or cost will be determined by arbitration.

  **b.** We may, at our option, pay for loss of, or loss from damage to, property other than "money":

    **(1)** In the "money" of the country in which the loss occurred; or

    **(2)** In the United States of America dollar equivalent of the "money" of the country in which the loss occurred determined by the rate of exchange on the day the loss was discovered.

  **c.** Any property that we pay for or replace becomes our property.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1984, 1987, 1989

**F. DEFINITIONS**

1. **"Banking Premises"** means the interior of that portion of any building occupied by a banking institution or similar safe depository.

2. **"Employee"** means:

   **a.** Any natural person:

       **(1)** While in your service (and for 30 days after termination of service);

       **(2)** whom you compensate directly by salary, wages or commissions; and

       **(3)** whom you have the right to direct and control while performing services for you; or

   **b.** Any natural person employed by an employment contractor while that person is subject to your direction and control and performing services for you excluding however, any such person while having care and custody of property outside the "premises".

   But "employee" does not mean any:

       **(1)** Agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

       **(2)** Director or trustee except while performing acts coming within the scope of the usual duties of an employee.

3. **"Messenger"** means you, any of your partners or any "employee" while having care and custody of the property outside the "premises".

4. **"Money"** means:

   **a.** Currency, coins and bank notes in current use and having a face value; and

   **b.** Travelers checks, register checks and money orders held for sale to the public.

5. **"Occurrence"** means an:

   **a.** Act or series of related acts involving one or more persons; or

   **b.** Act or event, or a series of related acts or events not involving any person.

6. **"Premises"** means the interior of that portion of any building you occupy in conducting your business.

7. **"Property Other Than Money and Securities"** means any tangible property other than "money" and "securities" that has intrinsic value but does not include any property listed in any Coverage Form as Property Not Covered.

8. **"Securities"** means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

Includes copyrighted material of ISO Commercial Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1984, 1987, 1989

Page 8 of 9

**a.** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

**b.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include "money".

9. "**Theft**" means any act of stealing.

10. "**Watchperson**" means any person you retain specifically to have care and custody of property inside the "premises" and who has no other duties.

All other policy terms and conditions apply.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1984, 1987, 1989

54220 (6-00)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FORGERY OR ALTERATION

This endorsement adds Crime Coverage to the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM

**A. COVERAGE**

We will pay for loss involving Covered Instruments resulting directly from the Covered Causes of Loss.

1. **Covered Instruments:** Checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in "money" that are:

   a. Made or drawn by or drawn upon you;

   b. Made or drawn by one acting as your agent; or

   that are purported to have been so made or drawn.

2. **Covered Cause of Loss:** Forgery or alteration of, on or in any Covered Instrument.

3. **Coverage Extension**

   **Legal Expenses:** If you are sued for refusing to pay any Covered Instrument on the basis that it has been forged or altered, and you have our written consent to defend the suit, we will pay for any reasonably legal expenses that you incur and pay in that defense. The amount we will pay under this extension is in addition to the Limit of Insurance applicable to this insurance.

**B. EXCLUSIONS**

We will not pay for loss as specified below:

1. **Acts Committed by You or Your Partners:** Loss resulting from any dishonest or criminal act committed by you or any of your partners whether acting alone or in collusion with other persons.

2. **Acts of Employees, Directors, or Trustees:** We will not pay for loss resulting from any dishonest or criminal act committed by any of your "employees", directors, or trustees:

   a. Whether acting alone or in collusion with other persons; or

   b. Whether while performing services for you or otherwise.

3. **Governmental Action:** Loss resulting from seizure or destruction or property by order of governmental authority.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1984, 1987

Page 1 of 7

4. **Indirect Loss:** Loss that is an indirect result of any act or "occurrence" covered by this insurance including, but not limited to, loss resulting from:

   a. Your inability to realize income that you would have realized had there been no loss of, or loss from damage to, Covered Instruments.

   b. Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this insurance.

   c. Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

5. **Legal Expenses:** Expenses related to any legal action.

6. **Nuclear:** Loss resulting from nuclear reaction, nuclear radiation or radioactive contamination, or any related act or incident.

7. **War and Similar Actions:** Loss resulting from war, whether or not declared, warlike action, insurrection, rebellion or revolution, or any related act or incident.

**C. LIMIT OF INSURANCE**

The most we will pay for loss in any one "occurrence" is the Limit of Insurance shown in the Declarations for FORGERY AND ALTERATION.

**D. DEDUCTIBLE**

We will not pay for loss in any one "occurrence" unless the amount of loss exceeds the Deductible Amount shown in the Declarations for FORGERY AND ALTERATION. We will then pay the amount of loss in excess of the Deductible Amount up to the Limit of Insurance. This provision does not apply to legal expenses paid under the Coverage Extension.

**E. GENERAL CONDITIONS**

1. **Consolidation - Merger:** If through consolidation or merger with, or purchase of assets of, some other entity:

   a. Any additional persons become "employees"; or

   b. You acquire the use and control of any additional "premises";

   any insurance afforded for "employees" or "premises" also applies to those additional "employees" and "premises", but only if you:

   a. Give us written notice within 30 days thereafter; and

   b. Pay us an additional premium.

2. **Discovery Period for Loss:** We will pay only for covered loss discovered no later than one year from the end of the policy period.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1984, 1987

Page 2 of 7

3. **Duties in the Event of Loss:** After you discover a loss or a situation that may result in loss of, or loss from damage to, Covered Instruments you must:

    **a.** Notify us as soon as possible.

    **b.** Submit to examination under oath at our request and give us a signed statement of your answers.

    **c.** Give us a detailed, sworn proof of loss within 120 days.

    **d.** Cooperate with us in the investigation and settlement of any claim.

4. **Joint Insured**

    **a.** If more than one Insured is named in the Declarations, the first named Insured will act for itself and for every other Insured for all purposes of this insurance. If the first named Insured ceases to be covered, then the next named Insured will become the first named Insured.

    **b.** If any Insured or partner or officer of that Insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every Insured.

    **c.** An "employee" of any Insured is considered to be an "employee" of every Insured.

    **d.** If this insurance or any of its coverages is canceled or terminated as to any Insured, loss sustained by that Insured is covered only if discovered no later than one year from the date of that cancellation or termination.

    **e.** We will not pay more for loss sustained by more than one Insured than the amount we should pay if all the loss had been sustained by one Insured.

5. **Legal Action Against Us:** You may not bring any legal action against us involving loss:

    **a.** Unless you have complied with all the terms of this insurance;

    **b.** Until 90 days after you have filed proof of loss with us; and

    **c.** Unless brought within 2 years from the date you discover the loss.

6. **Loss Covered Under More Than One Coverage of This Insurance:** If two or more coverages of this insurance apply to the same loss, we will pay the lesser of:

    **a.** The actual amount of loss; or

    **b.** The sum of the limits of insurance applicable to those coverages.

7. **Loss Sustained During Prior Insurance**

    **a.** If you, or any predecessor in interest, sustained loss during the period of any prior insurance that you or the predecessor in interest could have recovered under that insurance except that the time within which to discover loss had expired, we will pay for it under this insurance, provided:

        **(1)** This insurance became effective at the time of cancellation or termination of the prior insurance; and

Includes copyrighted material of ISO Commercial Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1984, 1987

    **(2)** The loss would have been covered by this insurance had it been in effect when the acts or events causing the loss were committed or occurred.

  **b.** The insurance under this Condition is part of, not in addition to, the Limits of Insurance and is limited to the lesser of the amount recoverable under:

    **(1)** This insurance as of its effective date; or

    **(2)** The prior insurance had it remained in effect.

**8. Loss Covered Under This Insurance and Prior Insurance Issued by Us or Any Affiliate:** If any loss is covered:

  **a.** Partly by this insurance; and

  **b.** Partly by any prior canceled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest;

the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance.

**9. Non-Cumulation of Limit of Insurance:** Regardless of the number of years this insurance remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

**10. Other Insurance:** This insurance does not apply to loss recoverable or recovered under other insurance or indemnity. However, if the limit of the other insurance or indemnity is insufficient to cover the entire amount of the loss, this insurance will apply to that part of the loss, other than that falling within any deductible amount, not recoverable or recovered under the other insurance or indemnity, but not or more than the Limit of Insurance.

**11. Ownership of Property; Interests Covered:** The property covered under this insurance is limited to property:

  **a.** That you own or hold; or

  **b.** For which you are legally liable.

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization.

**12. Policy Period**

  **a.** The Policy Period is shown in the Declarations.

  **b.** Subject to the Loss Sustained During Prior Insurance condition, we will pay only for loss that you sustain through acts committed or events occurring during the Policy Period.

**13. Records:** You must keep records of all Covered Instruments so we can verify the amount of any loss.

**14. Recoveries**

Includes copyrighted material of ISO Commercial Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1984, 1987

**a.** Any recoveries, less the cost of obtaining them, made after settlement of loss covered by this insurance will be distributed as follows:

    **(1)** To you, until you are reimbursed for any loss that you sustain that exceeds the Limit of Insurance and the Deductible Amount, if any:

    **(2)** Then to us, until we are reimbursed for the settlement made;

    **(3)** Then to you, until you are reimbursed for that part of the loss equal to the Deductible Amount, if any.

**b.** Recoveries do not include any recovery:

    **(1)** From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

    **(2)** Of original "securities" after duplicates of them have been issued.

**15. Territory:** This insurance covers only acts committed or events occurring within the United States of America, U.S. Virgin Islands, Puerto Rico, Canal Zone or Canada.

**16. Transfer of Your Rights of Recovery Against Others to Us:** You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

**17. Valuation - Settlement**

**a.** Subject to the Limit of Insurance provision we will pay for:

    **(1)** Loss of "money" but only up to and including its face value. We may, at our option, pay for loss of "money" issued by any country other than the United States of America;

        **(a)** At face value in the "money" issued by that country; or

        **(b)** In the United States of America dollar equivalent determined by the rate of exchange on the day the loss was discovered.

    **(2)** Loss of "securities" but only up to and including their value at the close of business on the day the loss was discovered. We may, at our option:

        **(a)** Pay the value of such "securities" or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those "securities";

        **(b)** Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the "securities". However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

            **i.** Value of the "securities" at the close of the business on the day the loss was discovered; or

            **ii.** Limit of Insurance.

    **(3)** Loss of, or loss from damage to "property other than money and securities" or loss from damage to the "premises" for not more than the:

Includes copyrighted material of ISO Commercial Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1984, 1987

(a) Actual cash value of the property on the day the loss was discovered;

(b) Cost of repairing the property or "premises"; or

(c) Cost of replacing the property with property of like kind and quality.

We may, at our option, pay the actual cash value of the property or repair or replace it.

If we cannot agree with you upon the actual cash value or the cost of repair or replacement, the value or cost will be determined by arbitration.

   **b.** We may, at our option, pay for loss of, or loss from damage to, property other than "money:"

      **(1)** In the "money" of the country in which the loss occurred; or

      **(2)** In the United States of America dollar equivalent of the "money" of the country in which the loss occurred determined by the rate of exchange on the day the loss was discovered.

   **c.** Any property that we pay for or replace becomes our property.

**18. Facsimile Signatures:** We will treat mechanically reproduced facsimile signatures the same as handwritten signatures.

**19. Proof of Loss:** You must include with your proof of loss any instrument involved in that loss, or if that is not possible, an affidavit setting forth the amount and cause of loss.

## F. DEFINITIONS

  **1.** **"Employee"** means:

   **a.** Any natural person:

      **(1)** While in your service (and for 30 days after termination of service);

      **(2)** Whom you compensate directly by salary, wages or commissions; and

      **(3)** Whom you have the right to direct and control while performing services for you; or

   **b.** Any natural person employed by an employment contractor while that person is subject to your direction and control and performing services for you excluding however, any such person while having care and custody of property outside the "premises".

But "employee" does not mean any:

      **(1)** Agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

      **(2)** Director or trustee except while performing acts coming within the scope of the usual duties of an employee.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1984, 1987

2.  **"Money"** means:

   **a.** Currency, coins and bank notes in current use and having a face value; and

   **b.** Travelers checks, register checks and money orders held for sale to the public.

3.  **"Occurrence"** means all loss caused by any person or in which that person is involved, whether the loss involves one or more instruments.

4.  **"Property Other Than Money and Securities"** means any tangible property other than "money" and "securities" that has intrinsic value but does not include any property listed in any Coverage Form and Property Not Covered.

5.  **"Securities"** means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

   **a.** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

   **b.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

   but does not include "money".

All other policy terms and conditions apply.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1984, 1987

54221 (6-00)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYEE DISHONESTY

This endorsement adds Crime Coverage to the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM

## A. COVERAGE

We will pay for loss involving Covered Instruments resulting directly from the Covered Cause of Loss.

1. **Covered Property:** "Money", "securities", and "property other than money and securities".

2. **Covered Cause of Loss:** "Employee Dishonesty".

3. **Coverage Extension**

   **Employee Temporarily Outside Coverage Territory:** We will pay for loss caused by any "employee" while temporarily outside the territory specified in the Territory General Condition for a period not more than 90 days. The amount we pay under this Coverage Extension is part of, not in addition to, the Limit of Insurance shown in the Declarations for EMPLOYEE DISHONESTY.

## B. EXCLUSIONS

We will not pay for loss as specified below:

1. **Acts Committed by You or Your Partners:** Loss resulting from any dishonest or criminal act committed by you or any of your partners whether acting alone or in collusion with other persons.

2. **Governmental Action:** Loss resulting from seizure or destruction or property by order of governmental authority.

3. **Indirect Loss:** Loss that is an indirect result of any act or "occurrence" covered by this insurance including, but not limited to, loss resulting from:

   a. Your inability to realize income that you would have realized had there been no loss of, or loss from damage to, Covered Property.

   b. Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this insurance.

   c. Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

4. **Legal Expenses:** Expenses related to any legal action.

5. **Nuclear:** Loss resulting from nuclear reaction, nuclear radiation or radioactive contamination, or any related act or incident.

6. **War and Similar Actions:** Loss resulting from war, whether or not declared, warlike action, insurrection, rebellion or revolution, or any related act or incident.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1984, 1987

Page 1 of 7

**7. Employee Cancelled Under Prior Insurance:** Loss caused by any "employee" of yours, or predecessor in interest of yours, for whom similar prior insurance has been cancelled and not reinstated since the last such cancellation.

**8. Inventory Shortages:** Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

    **a.** An inventory computation; or

    **b.** A profit and loss computation.

## C. LIMIT OF INSURANCE

The most we will pay for loss in any one "occurrence" is the Limit of Insurance shown in the Declarations for EMPLOYEE DISHONESTY.

## D. DEDUCTIBLE

**1.** We will not pay for loss in any one "occurrence" unless the amount of loss exceeds the Deductible Amount shown in the Declarations for EMPLOYEE DISHONESTY. We will then pay the amount of loss in excess of the Deductible Amount up to the Limit of Insurance. This provision does not apply to legal expenses paid under the Coverage Extension.

**2.** You must:

    **a.** Give us notice as soon as possible of any loss of the type insured under this Coverage Form even though it falls entirely within the Deductible Amount.

    **b.** Upon our request, give us a statement describing the loss.

## E. GENERAL CONDITIONS

**1. Consolidation - Merger:** If through consolidation or merger with, or purchase of assets of, some other entity:

    **a.** Any additional persons become "employees"; or

    **b.** You acquire the use and control of any additional "premises";

any insurance afforded for "employees" or "premises" also applies to those additional "employees" and "premises", but only if you:

    **a.** Give us written notice within 30 days thereafter; and

    **b.** Pay us an additional premium.

**2. Discovery Period for Loss:** We will pay only for covered loss discovered no later than one year from the end of the policy period.

**3. Duties in the Event of Loss:** After you discover a loss or a situation that may result in loss of, or loss from damage to, Covered Property you must:

    **a.** Notify us as soon as possible.

    **b.** Submit to examination under oath at our request and give us a signed statement of your answers.

    **c.** Give us a detailed, sworn proof of loss within 120 days.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1984, 1987

   **d.** Cooperate with us in the investigation and settlement of any claim.

**4. Joint Insured**

   **a.** If more than one Insured is named in the Declarations, the first named Insured will act for itself and for every other Insured for all purposes of this insurance. If the first named Insured ceases to be covered, then the next named Insured will become the first named Insured.

   **b.** If any Insured or partner or officer of that Insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every Insured.

   **c.** An "employee" of any Insured is considered to be an "employee" of every Insured.

   **d.** If this insurance or any of its coverages is canceled or terminated as to any Insured, loss sustained by that Insured is covered only if discovered no later than one year from the date of that cancellation or termination.

   **e.** We will not pay more for loss sustained by more than one Insured than the amount we should pay if all the loss had been sustained by one Insured.

**5. Legal Action Against Us:** You may not bring any legal action against us involving loss:

   **a.** Unless you have complied with all the terms of this insurance;

   **b.** Until 90 days after you have filed proof of loss with us; and

   **c.** Unless brought within 2 years from the date you discover the loss.

**6. Loss Covered Under More Than One Coverage of This Insurance:** If two or more coverages of this insurance apply to the same loss, we will pay the lesser of:

   **a.** The actual amount of loss; or

   **b.** The sum of the limits of insurance applicable to those coverages.

**7. Loss Sustained During Prior Insurance**

   **a.** If you, or any predecessor in interest, sustained loss during the period of any prior insurance that you or the predecessor in interest could have recovered under that insurance except that the time within which to discover loss had expired, we will pay for it under this insurance, provided:

      **(1)** This insurance became effective at the time of cancellation or termination or the prior insurance: and

      **(2)** The loss would have been covered by this insurance had it been in effect when the acts or events causing the loss were committed or occurred.

   **b.** The insurance under this Condition is part of, not in addition to, the Limits of Insurance and is limited to the lesser of the amount recoverable under:

      **(1)** This insurance as of its effective date; or

      **(2)** The prior insurance had it remained in effect.

**8. Loss Covered Under This Insurance and Prior Insurance Issued by Us or Any Affiliate:** If any loss is covered:

Includes copyrighted material of ISO Commercial Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1984, 1987

   **a.** Partly by this insurance; and

   **b.** Partly by any prior canceled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest;

the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance.

9. **Non-Cumulation of Limit of Insurance:** Regardless of the number of years this insurance remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

10. **Other Insurance:** This insurance does not apply to loss recoverable or recovered under other insurance or indemnity. However, if the limit of the other insurance or indemnity is insufficient to cover the entire amount of the loss, this insurance will apply to that part of the loss, other than that falling within any deductible amount, not recoverable or recovered under the other insurance or indemnity, but not or more than the Limit of Insurance.

11. **Ownership of Property; Interests Covered:** The property covered under this insurance is limited to property:

   **a.** That you own or hold; or

   **b.** For which you are legally liable.

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization.

12. **Policy Period**

   **a.** The Policy Period is shown in the Declarations.

   **b.** Subject to the Loss Sustained During Prior Insurance condition, we will pay only for loss that you sustain through acts committed or events occurring during the Policy Period.

13. **Records:** You must keep records of all Covered Property so we can verify the amount of any loss.

14. **Recoveries**

   **a.** Any recoveries, less the cost of obtaining them, made after settlement of loss covered by this insurance will be distributed as follows:

      **(1)** To you, until you are reimbursed for any loss that you sustain that exceeds the Limit of Insurance and the Deductible Amount, if any:

      **(2)** Then to us, until we are reimbursed for the settlement made;

      **(3)** Then to you, until you are reimbursed for that part of the loss equal to the Deductible Amount, if any.

   **b.** Recoveries do not include any recovery:

      **(1)** From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

      **(2)** Of original "securities" after duplicates of them have been issued.

15. **Territory:** This insurance covers only acts committed or events occurring within the United States of America, U.S. Virgin Islands, Puerto Rico, Canal Zone or Canada.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1984, 1987

**16. Transfer of Your Rights of Recovery Against Others to Us:** You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

**17. Valuation - Settlement**

    **a.** Subject to the Limit of Insurance provision we will pay for:

        **(1)** Loss of "money" but only up to and including its face value. We may, at our option, pay for loss of "money" issued by any country other than the United States of America;

           **(a)** At face value in the "money" issued by that country; or

           **(b)** In the United States of America dollar equivalent determined by the rate of exchange on the day the loss was discovered.

        **(2)** Loss of "securities" but only up to and including their value at the close of business on the day the loss was discovered. We may, at our option:

           **(a)** Pay the value of such "securities" or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those "securities";

           **(b)** Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the "securities". However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

               **i.** Value of the "securities" at the close of the business on the day the loss was discovered; or

               **ii.** Limit of Insurance.

        **(3)** Loss of, or loss from damage to "property other than money and securities" or loss from damage to the "premises" for not more than the:

           **(a)** Actual cash value of the property on the day the loss was discovered;

           **(b)** Cost of repairing the property or "premises"; or

           **(c)** Cost of replacing the property with property of like kind and quality.

        We may, at our option, pay the actual cash value of the property or repair or replace it.

        If we cannot agree with you upon the actual cash value or the cost of repair or replacement, the value or cost will be determined by arbitration.

    **b.** We may, at our option, pay for loss of, or loss from damage to, property other than "money":

        **(1)** In the "money" of the country in which the loss occurred; or

        **(2)** In the United States of America dollar equivalent of the "money" of the country in which the loss occurred determined by the rate of exchange on the day the loss was discovered.

    **c.** Any property that we pay for or replace becomes our property.

**18. Cancellation As To any Employee:** This insurance is cancelled as to any "Employee":

    **a.** Immediately upon discovery by:

Includes copyrighted material of ISO Commercial Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1984, 1987

Page 5 of 7

**(1)** You; or

**(2)** Any of your partners, officers or directors not in collusion with the "employee";

of any dishonest act committed by that "employee" whether before or after becoming employed by you.

**b.** On the date specified in a notice mailed to you. That date will be least 30 days after the date of mailing. The notice will be mailed to you at your last mailing address known to us.

## F. DEFINITIONS

**1.** "**Employee**" means:

**a.** Any natural person:

**(1)** While in your service (and for 30 days after termination of service);

**(2)** Whom you compensate directly by salary, wages or commissions; and

**(3)** Whom you have the right to direct and control while performing services for you; or

**b.** Any natural person employed by an employment contractor while that person is subject to your direction and control and performing services for you excluding however, any such person while having care and custody of property outside the "premises".

But "employee" does not mean any:

**(1)** Agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

**(2)** Director or trustee except while performing acts coming within the scope of the usual duties of an employee.

**2.** "**Employee Dishonesty**" in paragraph A.2. means only dishonest acts committed by an "employee", whether identified or not, acting alone or in collusion with other persons, except you or a partner, with the manifest intent to:

**(1)** Cause you to sustain loss; and also

**(2)** Obtain financial benefit (other than employee benefits earned in the normal course of employment, including: salaries, commissions, fees, bonuses, promotions, awards, profit sharing or pensions) for:

**(a)** The "employee"; or

**(b)** any person or organization intended by the "employee" to receive that benefit.

**3.** "**Money**" means:

**a.** Currency, coins and bank notes in current use and having a face value; and

**b.** Travelers checks, register checks and money orders held for sale to the public.

**4.** "**Occurrence**" means all loss caused by, or involving one or more "employees", whether the result of a single act or series or acts.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1984, 1987

08CV4201
JUDGE SHADUR
MAGISTRATE JUDGE COLE
EDA

# PLEADING EXHIBIT B

# *Auto-Owners*

Page 1                                    26449 (07-00)
                                       Issued 08-30-2005

INSURANCE COMPANY                      **UMBRELLA POLICY DECLARATIONS**
6101 ANACAPRI BLVD., LANSING, MI  48917-3999

                                       Effective 06-28-2005
AGENCY  FISHER-SCHOL AGENCY INC
        04-0248-00    MKT TERR 097   (630) 587-9000     **POLICY NUMBER**    **46-487-023-00**

INSURED  COMPLETE MECHANICAL SERVICES INC              Company Use      07-21-IL-0506

| | POLICY TERM | |
|---|---|---|
| Company Bill | 12:01 a.m. | 12:01 a.m. |
| | | to |
| | 06-28-2005 | 06-28-2006 |

ADDRESS  3660 SWENSON AVE

         SAINT CHARLES  IL  60174-3442

---

                              **COMMERCIAL**
**LIMITS OF LIABILITY:**
   $  5,000,000 Each Incident        $  5,000,000 Aggregate

**RETAINED LIMIT:**  $ 10,000  (Waived when an Auto-Owners Insurance Group Company provides
   both the Commercial Automobile and Commercial General Liability coverage).

| FORMS THAT APPLY TO THIS POLICY: | | | | |
|---|---|---|---|---|
| 26889 (12-01) | 26460 (12-01) | 26800 (05-00) | 26397 (12-97) | 26505 (01-06) |
| 26366 (01-96) | 59351 (02-03) | 26896 (08-91) | 26467 (01-02) | 26367 (08-96) |
| 26296 (04-02) | 26826 (09-95) | 26824 (07-87) | 26455 (02-01) | 26816 (07-87) |
| | | 26818 (07-02) | | |

                                                        **PREMIUM**
**COMMERCIAL UMBRELLA PREMIUM**                          $15,059.00

THE POLICY PREMIUM SHOWN ABOVE INCLUDES:
   FOREIGN TERRORISM
      CERTIFIED ACTS  SEE FORM  59351                EXCLUDED
   TERRORISM COVERAGE
   A premium charge may be made effective 01-01-06.  See forms 26505, 59392

| | **TERM** |
|---|---|
| TOTAL POLICY PREMIUM | $15,059.00 |

PROGRAM: Commercial

DISCOUNT APPLIES FOR AFFILIATION WITH: ILLINOIS HOME BUILDERS ASSOCIATION
A 10% Cumulative Multi-Policy Discount applies.  Supporting policies are marked with
an (X): Comm Auto(X)  Comm Prop/Comm Liab(X)  Farm( )  WC(X)  Life( )  Personal( ).

Countersigned By: _____

I certify that this policy was assembled from
available records as a representation of coverage
that was in effect for the policy period shown.

Date _____ 5-7-08

Page 2                                          26449 (07-00)

AUTO-OWNERS INS. CO.                             Issued 08-30-2005

AGENCY FISHER-SCHOL AGENCY INC          Company  **POLICY NUMBER**   **46-487-023-00**
       04-0248-00    MKT TERR 097       Bill     Company Use       07-21-IL-0506

INSURED COMPLETE MECHANICAL SERVICES INC         Term 06-28-2005 to 06-28-2006

---

## SCHEDULE OF UNDERLYING INSURANCE

---

| NAME OF INSURER | TYPE OF POLICY | YOU HAVE AGREED TO MAINTAIN LIABILITY LIMITS AS FOLLOWS: | |
|---|---|---|---|
| OWNERS INSURANCE COMPANY | COMMERCIAL GENERAL LIABILITY | COMBINED SINGLE LIMITS | |
| | General Aggregate | $2,000,000 | |
| | Products and Completed Operations Aggregate | $2,000,000 | |
| | Occurrence | $1,000,000 | |
| | Personal/Advertising Injury | $1,000,000 | |
| AUTO-OWNERS INSURANCE COMPANY | AUTOMOBILE LIABILITY | COMBINED SINGLE LIMITS | |
| | All Owned Automobile Liability | $1,000,000 | |
| | Hired/Non-Ownership Automobile Liability | Included | |
| OWNERS INSURANCE COMPANY | EMPLOYER'S LIABILITY | | LIMIT |
| | Bodily Injury by Accident | Per Accident | $500,000 |
| | Bodily Injury by Disease | Per Employee | $500,000 |
| | Bodily Injury by Disease | Aggregate | $500,000 |

## AUDITED PREMIUM ENDORSEMENT

26818 (7-02)

It is agreed:

The premium shown in the Declarations is the provisional premium and is based on an estimated exposure.  **We** shall compute the earned premium:

1.  annually, upon the anniversary of the policy; or

2.  upon the policy's termination.

The earned premium shall be computed by multiplying the audit rate by the actual exposure for the term of the policy.

If the earned premium:

1.  is less than the provisional premium paid, **we** shall return the unearned portion, greater than the minimum premium, to **you**; or

2.  exceeds the provisional premium paid, **you** shall pay the excess to **us**.

**You** shall maintain the records of the information necessary to compute the earned premium.

Estimated Exposure $  **$3,000,000**

Audit Rate $   **5.020**          per $1000 of Receipts/Sales.

Minimum Premium $       **12,047.00**

All other terms and conditions of the policy apply.

Exhibit B - Page 3 of 45

26441 (5-00)

# Commercial Umbrella
# Insurance Policy

*Auto-Owners Insurance Company*

**POLICY NON-ASSESSABLE**

This policy is non-assessable and the premium stated in the Declarations is the only premium you will be asked to pay.

**PARTICIPATING**

You will be entitled to an equitable participation in Company funds in excess of the amount required to pay expenses and all the losses or claims or other policy obligations incurred, together with the reserve and surplus funds required or permitted by law. A distribution will be made only in accordance with the decision of our Board of Directors acting under the insurance laws and under our charter.

## NOTICE OF MEMBERSHIP AND ANNUAL MEETING

Because we are a mutual company this policy makes you a member of the Auto-Owners Insurance Company. You are entitled to vote, in person or by proxy, at all meetings. Our annual policyholder's meetings are held at our home office at Lansing, Michigan on the second Monday in May in each year at 10:00 A.M.

In witness whereof, we, the Auto-Owners Insurance Company, have caused this policy to be issued and to be duly signed by our President and Secretary.

Secretary

President

26296 (4-02)

# EXCLUSION OF FUNGI OR BACTERIA
## Commercial Umbrella Policy

It is agreed:

A.  Under **DEFINITIONS**, the following additional definition is added:

**Fungi** means any form or type of fungus, including but not limited to, any mildew, mold, spores, mycotoxins, scents or byproducts released or produced by any type or form of fungus.

B.  Under **EXCLUSIONS** the following additional exclusions are added:

1.  **Bodily injury**, **property damage**, **personal injury** or **advertising injury** arising out of, in part or in whole, the actual, threatened or alleged ingestion of, inhalation of, exposure to, contact with, presence of, or existence of, any **fungi** or bacteria, whether airborne or not, within or on a structure or building, including its contents. This exclusion applies whether any other event, cause, product or material contributed in any sequence or concurrently to such damage or injury.

2.  Any loss, expenses or cost arising out of the monitoring, testing for, abating, removing, cleaning up, containing, neutralizing, detoxifying, treating, disposing of or remediating, or in any way assessing the effects of, or responding to, **fungi** or bacteria, by any **insured** or by any other entity, person or governmental authority.

These exclusions shall not apply to any **fungi** or bacteria that are contained in, or are on, a product or good intended for human consumption.

All other policy terms and conditions apply.

## WAIVER OF RETAINED LIMIT
### Commercial Umbrella Policy

26366 (1-96)

It is agreed:

Under **DEFINITIONS**, N. **Retained Limit** is deleted and replaced by the following:

N. **Retained Limit** means the amount stated in the Declarations as **retained limit.** This is the amount **you** are responsible for as part of any settlement or judgement resulting from any one **incident** not covered by **underlying insurance**, but covered by this insurance. The **retained limit** does not apply when the Commercial General Liability policy, and when required, the Automobile Liability policy listed in the Schedule of Underlying Insurance are issued by an Auto-Owners Group company.

All other policy terms and conditions apply.

# AMENDATORY ENDORSEMENT
**Commercial Umbrella**

26367 (8-96)

It is agreed:

**EXCLUSIONS** is amended as follows:

Exclusion T. is deleted.

All other policy terms and conditions apply.

Illinois

26397 (12-97)

# COMMUNICABLE DISEASES EXCLUSION
### Commercial Umbrella Policy

This policy does not apply to **bodily injury** or **personal injury** arising out of or resulting from the transmission of:

1. human immodeficiency virus (HIV);

2. acquired immune deficiency syndrome (AIDS);

3. herpes; or

4. any sexually transmitted disease;

by any insured.

All other policy terms and conditions apply.

26455 (2-01)

# EXCLUSION ENDORSEMENT - CONTRACTORS
## (Form B)

It is agreed:

The following exclusions are added:

1. This policy does not apply to **property damage** to:

   a. personal property leased by or rented to the **insured**; or
   b. property in the custody of the **insured** which is to be installed, erected or used in construction by the **insured**.

2. This policy does not apply to **bodily injury**, **property damage**, or **personal injury**, arising out of:

   a. any professional service performed by or for you in the capacity of engineer, architect or surveyor, including:
      (1) the preparation of approval of maps, plans, opinions, reports, surveys, designs or specification; and
      (2) supervisory, inspection or engineering services;
   b. operations performed by or on behalf of any joint venture of which the **insured** is a member;
   c. any project insured under a "wrap-up" rating plan; or
   d. any claim, suit, action or proceeding against the **insured** arising out of the dispersal, release, escape or inhalation of any asbestos related particle, dust, irritant, contamination, pollutant, toxic element or material.

3. This policy does not apply to:

   **any liability for bodily injury, property damage or personal injury** assumed by the **insured** under an **insured contract**;

   except to the extent coverage is provided:

   i.   in the **scheduled underlying insurance**;
   ii.  at the limits stated in the Scheduled Underlying Insurance; and
   iii. subject to the Maintenance of Underlying Insurance Condition.

4. Exclusion H is deleted and replaced by the following:

   H. **Property damage** to **your work** arising out of it or any part of it and included in the **products-completed operations hazard**.

All other terms and conditions of the policy apply.

## POLLUTION EXCLUSION AMENDATORY ENDORSEMENT
## EXCEPTION FOR BUILDING HEATING EQUIPMENT

26460 (12-01)

It is agreed:

Under **EXCLUSIONS**, exclusion Q.1., provision (b) is deleted and replaced by the following provision:

(b)  at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to any **insured**.  This provision does not apply to **bodily injury**:

   (1)  which is sustained within a building at such premises, site or  location; and
   (2)  which is caused by smoke, fumes, vapor or soot from equipment used to heat a building at such premises, site or location.

All other policy terms and conditions apply.

26467 (1-02)

## AMENDATORY ENDORSEMENT - KNOWN INJURY OR DAMAGE

It is agreed:

The following provision, **COVERAGE,** is deleted and replaced by the following:

### COVERAGE

**We** will pay those sums included in the term **ultimate net loss** that the **Insured** becomes legally obligated to pay as damages because of:

**A.  bodily injury;**
**B.  property damage;**
**C.  personal injury;** or
**D.  advertising injury;**

to which this insurance applies caused by an **incident**.

With respect to:

1.  **Bodily injury** and **property damage**:

    a.  the **incident** must take place in the **policy territory**;

    b.  the **bodily injury** and **property damage** must take place during the policy period; and

    c.  before the beginning of the policy period shown in the Declarations, none of the following persons knew or should have known that the **bodily injury** or **property damage** had occurred in whole or in part:

        (1)  if **you** are designated in the Declarations as an individual, **you** and **your** spouse.

        (2)  if **you** are designated in the Declarations as a partnership or joint venture, **your** members and **your** partners and their spouses.

        (3)  if **you** are designated in the Declarations as a limited liability company, **your** members.

        (4)  if **you** are designated in the Declarations as an organization other than a partnership, joint venture or limited liability company, **your** executive officers and directors.

        (5)  **your** employee authorized by **you** to give or receive notice of an **incident**.

        If any of the above persons know or should have known, prior to the policy period, that the **bodily injury** or **property damage** occurred, then any continuation, change or resumption of such **bodily injury** or **property damage** during or after the policy period will be deemed to have been known before the beginning of the policy period shown in the Declarations.

    d.  **bodily injury** or **property damage** will be deemed to have been known to have occurred at the earliest time when any person shown in **c. (1)** through **c. (5)** immediately above:

        (1)  reports all, or any part, of the **bodily injury** or **property damage** to **us** or any other insurer;

Page 1 of 2

    (2) receives a written or verbal demand or claim for damages because of the **bodily injury** or **property damage**; or

    (3) becomes aware by any other means that **bodily injury** or **property damage** has occurred or has begun to occur.

2. **Personal injury** and **advertising injury** the **incident** must be:

    a.  committed during the policy period; and

    b.  must take place in the **policy territory**.

All other policy terms and conditions apply.

26505 (1-06)

# CONDITIONAL EXCLUSION OF TERRORISM INVOLVING NUCLEAR, BIOLOGICAL OR CHEMICAL TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT OF 2002)

### Commercial Umbrella Policy

**A. Applicability Of This Endorsement**

1. The provisions of this endorsement will apply if and when one of the following situations occurs:

   a. The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act of 2002, terminates; or

   b. The Program is renewed, extended or otherwise continued in effect:

      (1) With revisions that increase insurers' statutory percentage deductible or decrease the federal government's statutory percentage share in potential terrorism losses above such deductible, or that results in a change in the level or terms or conditions of coverage; and

      (2) We are not required by the Program to make terrorism coverage available to you and elect not to do so.

   The Program is scheduled to terminate at the end of December 31, 2005 unless renewed, extended or otherwise continued by act of Congress.

2. When this endorsement becomes applicable in accordance with the terms of A.1.a. or A.1.b., above, it supersedes any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism".

3. If this endorsement does NOT become applicable, then any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism", will remain in effect. However, if the Program is renewed, extended or otherwise continued in effect with revisions that change the level or terms or conditions of coverage, and we are required to offer you the revised coverage or to provide revised coverage to those who previously accepted coverage under the Program, then we will take the appropriate steps in response to the federal requirements.

**B.** Under **DEFINITIONS**, the following definition is added:

**Terrorism** means activities against persons, organizations or property of any nature:

1. That involve the following or preparation for the following:

   a. Use or threat of force or violence; or

   b. Commission or threat of a dangerous act; or

   c. Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

2. When one or both of the following applies:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright ISO Properties, Inc., 2004

Page 1 of 2

a. The effect is to intimidate or coerce a government or the civilian population or any segments thereof, or to disrupt any segment of the economy; or

b. It appears that the intent is to intimidate or coerce a government or civilian population, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

C. Under **EXCLUSIONS**, the following exclusion is added:

This policy does not apply to **bodily injury, property damage, personal injury** or **advertising injury** caused directly or indirectly by **terrorism**, including action in hindering or defending against an actual or expected incident of **terrorism**. All **bodily injury, property damage, personal injury** or **advertising injury** is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. This exclusion applies only when one or more of the following are attributed to an incident of **terrorism**:

1. The **terrorism** is carried out by means of the dispersal or application of radioactive mate-

rial, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination;

2. Radioactive material is released, and it appears that one purpose of the **terrorism** was to release such material;

3. The **terrorism** is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the **terrorism** was to release such materials.

Multiple incidents of **terrorism** which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, regardless of whether this endorsement was in effect during the entirety of that time period or not.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright ISO Properties, Inc., 2004

# A QUICK GUIDE TO YOUR POLICY

26800 (5-00)

The **DECLARATIONS PAGE** contains:

| | |
|---|---|
| **Your** name | Limits of Liability |
| Policy Period | Schedule of **Underlying Insurance** |
| | Endorsements that apply |

**Beginning On Page**

INSURING AGREEMENT ............................................................... 2

DEFINITIONS................................................................................ 2

COVERAGE................................................................................. 6

EXCLUSIONS.............................................................................. 6

DEFENSE AND SETTLEMENT PAYMENTS .......................... 10

PERSONS AND ORGANIZATIONS INSURED...................... 10

LIMITS OF LIABILITY................................................................ 11

EXTENDED REPORTING PERIOD
(Claims-Made Coverage Only) .............................................. 12

CONDITIONS ............................................................................. 13

## * NOTICE TO POLICYHOLDER REGARDING CLAIMS-MADE PROVISIONS IN YOUR POLICY

The parts of this policy that are listed below have provisions which apply when coverage is provided on a claims-made basis by either this policy or an underlying policy:

1. DEFINITIONS:  F. INCIDENT See 1.c. and 1.c.(3)

2. DEFINITIONS:  O. SCHEDULED UNDERLYING INSURANCE

3. EXTENDED REPORTING PERIOD

4. CONDITIONS:  B. INSPECTION AND AUDIT

5. CONDITIONS:  E. MAINTENANCE OF UNDERLYING INSURANCE

6. CONDITIONS:  P. INCIDENT AND CLAIM INFORMATION

These parts are also indicated by an asterisk (*) when they appear in the policy.

Page 1 of 18

Exhibit B - Page 16 of 45

## COMMERCIAL UMBRELLA POLICY

### INSURING AGREEMENT

**We** agree to provide insurance relying on the statements in the Declarations and subject to all the terms of this policy. In return, **you** must pay the premium and comply with all policy terms.

### DEFINITIONS

To understand this policy, **you** must understand what **we** mean when **we** use these words and phrases. They appear in bold faced print in this part and wherever used in the policy.

A. **Advertising injury** means injury arising out of one or more of the following offenses committed in the course of advertising **your** goods, products or services:

   1. oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   2. oral or written publication of material that violates a person's right of privacy;

   3. misappropriation of advertising ideas or style of doing business; or

   4. infringement of copyright, title or slogan.

B. **Aircraft** means any air-craft designed to transport persons or property in the air.

C. **Automobile** means a land motor vehicle, trailer or semi-trailer.

D. **Bodily injury** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

E. **Impaired property** means tangible property, other than **your product** or **your work**, that cannot be used or is less useful because:

   1. it incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate or dangerous; or

2. **you** have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

1. the repair, replacement, adjustment or removal of **your product** or **your work**; or

2. **your** fulfilling the terms of the contract or agreement.

\* F. **Incident** means:

   1. When coverage applies under both this policy and the **scheduled underlying insurance**, either:

     a. occurrence;
     b. offense; or
    \* c. claims-made;

   whichever one of these is the basis of coverage under the **scheduled underlying insurance**.

   (1) When coverage applies on an occurrence basis, an **incident** means an accident with respect to **bodily injury** and **property damage**, including continuous or repeated exposure to substantially the same general harmful conditions.

   (2) When coverage applies on an offense basis, an **incident** means offenses committed by the **insured** resulting in **personal injury** or **advertising injury**, including all such injury sustained by any one person or organization.

  \* (3) When coverage applies on a claims-made basis, an **incident** means an accident with respect to **bodily injury** and **property dam-**

Page 2 of 18

**age**, including continuous or repeated exposure to substantially the same general harmful conditions. Coverage applies only if a claim for damages is first made against the **insured** during the policy period. Coverage does not apply to **bodily injury** or **property damage** which takes place before the retroactive date shown on the Declarations or which occurs after the policy period.

(a) A claim by a person or organization seeking damages will be deemed to have been made when received and recorded by any **insured** or by the **underlying insurer**, or **us**, whichever comes first.

(b) All claims for damages because of **bodily injury** to the same person, including damages claimed for care, loss of services, or death resulting at any time from the **bodily injury**, will be deemed to have been made at the time the first of those claims is made against any **insured**.

(c) All claims for damages because of **property damage** causing loss to the same person or organization as a result of an **incident** will be deemed to have been made at the time the first of those claims is made against any **insured**.

2. When coverage applies under this policy, but does not apply under the **scheduled underlying insurance** (whether or not the limits thereof become reduced or exhausted) either:

a. an occurrence; or

b. an offense:

(1) When coverage for **bodily injury** and **property damage** applies on an occurrence basis, an **incident** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

(2) When coverage for **personal injury** and **advertising injury** applies on an offense basis, an **incident** means offenses committed by the **insured** resulting in **personal injury** or **advertising injury** including all such injury or advertising injury including all such injury sustained by any one person or organization.

Continuous or repeated exposure to substantially the same general harmful conditions constitutes one **incident**.

G. **Insured** means the person(s) or organization(s) qualifying as such under PERSONS AND ORGANIZATIONS INSURED of this policy.

H. **Insured contract** means:

1. a lease of premises;

2. a sidetrack agreement;

3. an easement or license agreement in connection with vehicle or pedestrian private railroad crossings at grade;

4. any other easement agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

5. an obligation, as required by ordinance, to indemnify a municipality, except in connection with work for such municipality;

6. an elevator maintenance agreement; or

7. that part of any other contract or agreement pertaining to **your** business (including indemnification of a municipality in connection with work performed for a municipality) under which **you** assume the **tort liability** of another to pay damages because of **bodily injury** or **property damage** to a third person or organization.

An **insured contract** does not include that part of any contract or agreement:

a. that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    (1) preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

    (2) giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

b. under which the **insured**, if an architect, engineer or surveyor, assumes liability for injury or damage arising out of the **insured's** rendering or failing to render professional services, including those listed in a. above and supervisory, inspection or engineering services;

c. that indemnifies any person or organization for damage by fire to premises rented or loaned to **you**; or

d. that indemnifies any person or organization for **bodily injury** or **property damage** arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing.

I. **Personal injury** means injury, other than **bodily injury**, arising out of one or more of the following offenses:

1. false arrest, detention or imprisonment;

2. malicious prosecution;

3. the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises, that a person occupies, by or on behalf of its owner, landlord or lessor;

4. oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or service;

5. oral or written publication of material that violates a person's right to privacy; or

6. discrimination or humiliation.

J. **Policy territory** means anywhere in the world, provided that a suit on the merits is brought in the United States of America (including its territories and possessions), Puerto Rico or Canada.

K. **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, liquids, gases and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

L. **Products-completed operations hazard** includes all **bodily injury** and **property damage** occurring away from premises **you** own or rent and arising out of **your product** or **your work** except:

1. products that are still in **your** physical possession; or

2. work that has not yet been completed or abandoned.

**Your work** will be deemed completed at the earliest of the following times:

1. When all of the work called for in **your** contract has been completed.

2. When all of the work to be done at the site has been completed, if **your** contract calls for work at more than one site.

3. When that part of the work done at a job site had been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

This hazard does not include **bodily injury** or **property damage** arising out of:

1. the transportation of property, unless the injury or damage arises out of a condition in or

on a vehicle created by the loading or unloading of it;

2. the existence of tools, uninstalled equipment or abandoned or unused materials; or

3. products or operations for which the classification in the **underlying insurance** includes products or completed operations.

M. **Property damage** means:

1. Physical injury to tangible property, including all resulting loss of use of that property. All such loss shall be deemed to occur at the time of the physical injury that caused the loss of use.

2. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **incident** that caused the loss of use.

N. **Retained limit** means the amount stated in the Declarations as **retained limit**. This is the amount **you** are responsible for as part of any settlement or judgment resulting from any one incident not covered by **underlying insurance**, but covered by this insurance.

* O. **Scheduled underlying insurance** means the insurance policies listed in the Schedule of Underlying Insurance including any renewal, extended reporting period, or replacement of such contracts which are not more restrictive.

P. **Tort liability** means a liability that would be imposed by law in the absence of any contract or agreement.

Q. **Ultimate net loss** means the sum actually payable in cash by **us** to procure settlement or satisfaction of the **insured's** legal obligation for damages either by:

1. final adjudication; or
2. compromise with **our** written consent.

However, **ultimate net loss** shall not include salaries of the **insured's** employees or those of an **underlying insurer** or expenses incurred by the in-

sured or **underlying insurer** or **us** in investigation, adjustment or litigation.

R. **Underlying insurance** means both **scheduled underlying insurance** and **unscheduled underlying insurance**.

S. **Underlying insurer** means any insurer whose policy covers an **incident** also covered by this policy, but does not include insurers whose policies were purchased specifically to be in excess of this insurance. It includes all insurers providing **scheduled underlying insurance** and **unscheduled underlying insurance**.

T. **Unscheduled underlying insurance** means any insurance policies available to any **insured** (whether primary, excess, excess-contingent, or otherwise) except the policies listed in the Schedule of Underlying Insurance. **Unscheduled underlying insurance** does not include insurance purchased specifically to be excess of this insurance.

U. **We**, **us**, **our** and **company** means the Company providing this insurance.

V. **You** and **your** means the person(s) or organization(s) shown as the Named Insured in the Declarations and any other person or organization qualifying as a Named Insured under this policy.

W. **Your product** means:

1. any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

a. **you**;

b. others trading under **your** name; or

c. a person or organization whose business or assets **you** have acquired; and

2. containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Your product** includes warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of any of the items included in 1. and 2. above.

**Your product** also includes the providing of or failure to provide warnings or instructions relative to any of the items in 1. or 2. above.

**Your product** does not include vending machines or other property rented to or located for the use of others but not sold.

X. **Your work** means:

1. work or operations performed by **you** or on **your** behalf; and

2. materials, parts or equipment furnished in connection with such work or operations.

**Your work** includes warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of any of the items included in 1. or 2. above.

**Your work** also includes the providing of or failure to provide warnings or instructions relative to any of the items included in 1. or 2. above.

## COVERAGE

**We** will pay those sums included in the term **ultimate net loss** that the **insured** becomes legally obligated to pay as damages because of:

A. **bodily injury**;

B. **property damage**;

C. **personal injury**; or

D. **advertising injury**;

to which this insurance applies caused by an **incident**.

With respect to:

1. **Bodily injury** and **property damage**:

   a. the **bodily injury** and **property damage** must take place during the policy period; and

   b. the **incident** must take place in the **policy territory**.

2. **Personal injury** and **advertising injury** the **incident** must be:

   a. committed during the policy period; and

   b. must take place in the **policy territory**.

## EXCLUSIONS

This policy does not apply to:

A. **Bodily injury, property damage, personal injury** or **advertising injury** expected or intended from the standpoint of the **insured**. This exclusion does not apply to **bodily injury** resulting from the use of reasonable force to protect persons or property.

B. Any obligation an insured may have under a workers' compensation, disability benefits or un-employment compensation law, or any similar law.

C. 1. **Bodily injury** or **personal injury** of an em-ployee of the **insured** arising out of and in the course of employment by the **insured**; or

2. A loss or claim by the spouse, child, parent, brother or sister of the employee of the in-sured as a consequence of C.1.

This exclusion applies:

1. whether the **insured** may be liable as an em-ployer or in any other capacity; and

2. to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to:

Page 6 of 18

1. liability assumed by the **insured** under an **insured contract**; or

2. **bodily injury** with respect to which insurance is provided such **insured** by **scheduled underlying insurance**.

D. **Bodily injury** or **property damage** arising out of the ownership, maintenance, operation, use, entrustment to others, or loading or unloading of an **aircraft**.

This exclusion shall not apply to liability to the extent insurance is provided such **insured** by **scheduled underlying insurance**.

E. **Bodily injury** or **property damage** arising out of the ownership, maintenance, operation, use, entrustment to others, or loading or unloading of a watercraft if such watercraft is owned or chartered without a crew by or on behalf of any **insured**.

This exclusion shall not apply to liability:

1. for a watercraft while ashore on premises owned, rented or controlled by an **insured**; or

2. to the extent insurance is provided such **insured** by **scheduled underlying insurance**.

F. **Property damage** to:

1. property an **insured** owns;

2. property an **insured** rents or occupies, but this exclusion applies only to the extent the **insured** is required by contract to provide insurance for such property;

3. premises an **insured** sells, gives away or abandons, if the **property damage** arises out of any part of those premises;

4. property loaned to an **insured**;

5. personal property in an **insured's** care, custody, or control, but this exclusion applies only to the extent the **insured** is required by contract to provide insurance for such property;

6. that particular part of real property on which an **insured** or any contractor or subcontractor working directly or indirectly on an **insured's** behalf are performing operations, if **property damage** arises out of those operations; or

7. that particular part of any property that must be restored, repaired or replaced because **your work** was incorrectly performed on it.

This exclusion does not apply with respect to:

a. F.3., if the premises are **your work** and were never occupied, rented or held for rental by an **insured**;

b. F.4., 5., 6., and 7. to liability assumed under a sidetrack agreement; or

c. F.7. to property **damage** included in the **products-completed operations hazard**.

G. **Property damage** to **your product** arising out of it or any part of it.

H. **Property damage** to **your work** arising out of it or any part of it and included in **the products-completed operations hazard**. This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on **your** behalf by a subcontractor.

I. **Property damage** to **impaired property** or property that has not been physically injured, arising out of:

1. a defect, deficiency, inadequacy or dangerous condition in **your product** or **your work**; or

2. a delay or failure by **you** or anyone acting on **your** behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **your product** or **your work** after it has been put to its intended use.

J. Damages claimed for any loss, cost or expense incurred by **you** or others for loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1. **your product**;

2. **your work**; or

3. **impaired property**;

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

K. **Advertising injury** arising out of:

1. breach of contract, other than misappropriation of advertising ideas under an implied contract;

2. the failure of goods, products or services to conform with advertised quality or performance; or

3. the wrong description of the price of goods, products or services.

L. **Personal injury** or **advertising injury**:

1. arising out of oral or written publication of material, if done by or at the direction of the **insured** with knowledge of its falsity;

2. arising out of oral or written publication of material whose first publication took place before the beginning of the policy period; or

3. arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the **insured**;

4. for which the **insured** has assumed liability in a contract or agreement. This part of the exclusion does not apply to liability for damages that the **insured** would have in the absence of such contract or agreement; or

5. arising out of an offense committed by or on behalf of an **insured** whose business is advertising, broadcasting, publishing or telecasting.

M. Any alleged or actual **bodily injury** or **personal injury** if directly or indirectly related to the past, present or prospective employment of any person or persons by an **insured**.

N. **Bodily injury**, **personal injury** or **property damage** due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition related to any of the foregoing, with respect to liability assumed by the **insured** under any contract or agreement.

O. Any alleged or actual violation of the Employee's Retirement Income Security Act (ERISA) of 1974 or subsequent amendments.

P. **Bodily injury** or **property damage** arising out of uninsured motorist, underinsured motorist, automobile no-fault, first party personal injury or any other similar law.

Q. 1. **Bodily injury** or **property damage** arising out of the actual, alleged or threatened discharge, dispersal, release, escape, seepage or migration of **pollutants**:

(a) that are, or are contained in any property that is:

(1) being moved from the place where such property or **pollutants** are accepted by the **insured** for movement into or onto an **automobile**;

(2) being transported or towed by an **automobile**;

(3) otherwise in the course of transit;

(4) being stored, disposed of, treated or processed in or upon an **automobile**; or

(5) being moved from an **automobile** to the place where such property or **pollutants** are finally delivered, disposed of or abandoned by the **insured**;

(b) at or from any premises, site or location which is or was at anytime owned or occupied by, or rented or loaned to any **insured**;

Page 8 of 18

(c) at or from any premises, site or location which is or was at any time used by or for any **insured** or others for the handling, storage, disposal, processing or treatment of waste;

(d) which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any **insured** or any person or organization for whom **you** may be legally responsible;

(e) at or from any premises, site or location on which any **insured** or any contractors or subcontractors working directly or indirectly on any **insured's** behalf are performing operations:

(1) if the **pollutants** are brought on or to the premises, site, or location in connection with such operations by such **insured**, contractor or subcontractor; or

(2) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize or in any way respond to, or assess the effects of **pollutants**.

2.  Any loss, cost or expense arising out of any:

(a) request, demand or order that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants**; or

(b) claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants**.

Paragraphs 1.(a)(4) and 1.(b) through 1.(e) do not apply to fuels, lubricants, fluids, exhaust gases or other similar **pollutants** that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the **automobile** or its parts, if the **pollutants** escape or are discharged, dispersed or released directly from an **automobile**

part designed by its manufacturer to hold, store, receive or dispose of such **pollutants**.

Paragraphs 1.(b) through 1.(e) do not apply to **pollutants** not in or upon an **automobile** if:

(a) the **pollutants** or any property in which the **pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of an **automobile**;

(b) the discharge, dispersal, release or escape of the **pollutants** is caused directly by such upset, overturn or damage; and

(c) the **bodily injury** or **property damage** is not otherwise excluded under paragraph 1.(a) of this exclusion.

Paragraphs 1.(b) and 1.(e)(1) of this exclusion do not apply to **bodily injury** or **property damage** caused by heat, smoke or fumes from a hostile fire. As used herein, a hostile fire is one which becomes uncontrollable or breaks out from where it was intended to be.

R.  **Bodily injury** or **property damage** for which the **insured** is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

1.  assumed in a contract or agreement that is an **insured contract**, provided such **bodily injury** or **property damage** occurs subsequent to the execution of the contract or agreement. However, if the insurance under this policy does not apply to the liability of the **insured**, it also does not apply to such liability assumed by the **insured** under an **insured contract**; or

2.  that the **insured** would have in the absence of the contract or agreement.

S.  Any wrongful act, error or omission or breach of duty by any **insured** in the performance of the office of director or officer of any organization.

T.  Any liability covered under a personal or farm umbrella policy written by **us**.

Page 9 of 18

U. Liability for injury or damages to **you** or any other **insured**.

V. Nuclear Energy Liability Exclusion, see page 17.

## DEFENSE AND SETTLEMENT PAYMENTS

**When Underlying Insurance Does Not Apply To An Incident**

When **underlying insurance** does not apply to an **incident** which is covered by this policy, **we** shall have the right and duty to defend any suit against the **insured** seeking damages on account of **bodily injury, property damage, personal injury,** or **advertising injury**. **We** may investigate and settle any claim or suit at **our** discretion, but **our** right and duty to defend any suit ends when **we** have used up **our** limit of liability as described in LIMITS OF LIABILITY in payment of judgements or settlements.

**We** will pay with respect to any claim or suit **we** defend:

A. All expenses **we** incur.

B. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of liability. **We** do not have to furnish these bonds.

C. All reasonable expenses incurred by the **insured** at **our** request, including actual loss of earnings up to $100 a day because of time off from work.

D. all costs taxed against the **insured** in the suit.

E. Prejudgment interest awarded against the **insured** on that part of the judgment **we** pay. If **we** make an offer to pay the applicable limit of liability, **we** will not pay any prejudgment interest based on that period of time after the offer.

F. All interest on the full amount of any judgment that accrues after entry of the judgment and before **we** have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of liability.

These payments will be in addition to the applicable limit of liability. However, if the **scheduled underlying insurance** includes the amount paid for any of these within their applicable limit of liability, then **we** will also include the amount **we** pay for these within **our** limit of liability to the extent they were included under the **scheduled underlying insurance**.

Where **we** may be prevented by law or otherwise from carrying out this agreement, **we** shall pay any expense incurred with our written consent in accordance with this agreement.

**When Underlying Insurance Does Not Apply To An Incident**

When **underlying insurance** does not apply to an **incident**, this policy will not apply to defense, investigation, settlement or legal expenses which are covered by **scheduled underlying insurance** or **unscheduled underlying insurance**, but **we** shall have the right to associate with the **insured** in the defense and control of any claim or proceeding for which coverage may be afforded by this policy. In such event the **insured** and the **company** shall cooperate fully.

## PERSONS AND ORGANIZATIONS INSURED

Each of the following is an **insured** under this policy to the extent described below:

A. If **you** are designated in the Declarations as an individual, **you** and **your** spouse are **insureds**, but only for the conduct of a business of which **you** are the sole owner.

B. If **you** are designated in the Declarations as a partnership or joint venture, **you** are an **insured**. **Your** members, **your** partners, and their spouses are also **insureds**, but only with respect to the conduct of **your** business.

Page 10 of 18

C. If **you** are designated in the Declarations as an organization other than a partnership or joint venture:

   (1) **you** are an **insured**; and

   (2) any organization **you** newly acquire or form, other than a partnership or joint venture, and over which **you** maintain ownership or majority interest, will qualify as a Named Insured if there is not other similar insurance available to that organization. However:

      a. coverage under this provision if afforded only until the 90th day after **you** acquire or form the organization or the end of the policy period, whichever is earlier; and

      b. coverage does not apply to **bodily injury, personal injury, property damage** or **advertising injury** that occurred before **you** acquired or formed the organization.

D. Any executive officer or director of **yours** while acting within the scope of their duties for **you**.

**Your** stockholders are **insureds**, but only with respect to their liability as a stockholder.

E. Any person (other than **your** employee) or organization while acting as **your** real estate manager.

F. Any person, organization, trustee or estate with respect to which **you** are obligated by virtue of a written contract to provide insurance such as is afforded by this policy, but only with respect to operations by or on behalf of, or to facilities of or used by **you**.

G. Subject to the terms and conditions of this insurance, any other **insured(s)** included in the **scheduled underlying insurance** issued to **you** and listed in the Declarations, but only to the extent that insurance is provided for such other **insured(s)** in the **scheduled underlying insurance**.

However, no person or organization is an **insured** with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

## LIMITS OF LIABILITY

Regardless of the number of:

1. **insureds** under this policy;

2. persons or organizations who sustain **bodily injury, personal injury, property damage** or **advertising injury**; or

3. claims made or suits brought on account of **bodily injury, personal injury, property damage or advertising injury**;

**we** shall only be liable for the **ultimate net loss** in excess of either:

a. the applicable limits of **scheduled underlying insurance** plus the limits of any **unscheduled underlying insurance**; or

b. the **retained limit** if an **incident** is not covered by **underlying insurance**, but covered by the terms and conditions of this policy;

subject to the limits of liability as stated in the Declarations.

In the event of reduction or exhaustion of the aggregate limits of liability in the **scheduled underlying insurance** by reason of losses paid, this policy shall, subject to this limits of liability provision, and to the terms and conditions of this policy:

a. in the event of reduction, apply in excess of the reduced **scheduled underlying insurance**; or

b. in the event of exhaustion, apply in place of the **scheduled underlying insurance**.

The aggregate limit of liability stated in the declarations, is the most **we** will pay for **ultimate net loss** arising out of all **incidents** during each consecutive annual policy period commencing from its effective date. The aggregate limit applies on the same basis as the aggregate limit of liability of any **underlying insurance** that provides coverage subject to an aggregate limit and to which this policy also applies.

If this policy is extended for a period of less than 12 months, the extended period will be deemed to be part of the last preceding period for purposes of determining the limits of liability.

## *EXTENDED REPORTING PERIOD

A. When the **scheduled underlying insurance** shown in the Declarations applies on a claims-made basis, **we** will provide a Basic Extended Reporting Period, and, if **you** purchase it, an Extended Reporting Period Endorsement, as described in parts B., C. and D. if:

1. this policy is cancelled, except in cases where **we** cancel for nonpayment of premium, or nonrenewed; or

2. **we** renew or replace this policy with insurance that:

   a. has a Retroactive Date later than the date shown in the Declarations of this policy; or

   b. does not apply to **bodily injury** or **property damage** on a claims-made basis; or

3. **we** exclude coverage for specifically described accidents, products, work or locations, but only for such excluded coverage.

B. Basic Extended Reporting Period

   **We** will provide a Basic Extended Reporting Period automatically without additional premium. This period starts with the end of the policy period and lasts for:

1. a. five (5) years for claims arising out of an **incident** reported to **us**, in accordance with Condition C - Notice of Incident, Claim or Suit, or to the scheduled underlying insurer no later than sixty (60) days after the end of the policy period; or

   b. sixty (60) days for all other claims;

   provided the **scheduled underlying insurance** has an extended reporting period of the same duration or the **scheduled underlying insurance** is maintained without interruption; or

2. the time period of the extended reporting period under the **scheduled underlying insurance**;

   whichever period of time is shorter.

C. Extended Reporting Period Endorsement

   An Extended Reporting Period Endorsement is available for an additional premium. The endorsement lasts for the period of time shown in the endorsement. The Extended Reporting Period Endorsement starts after the end of:

1. the policy period; or

2. the Basic Extended Reporting Period;

   whichever is later for claims arising out of an **incident** reported to **us** or **underlying insurer** in accordance with Condition C - Notice of Incident, Claim or Suit.

   **You** must give **us** a written request for the endorsement within 60 days after the end of the policy period, unless **you** are required by the **scheduled underlying insurance** to make the request for an extended reporting period endorsement earlier than required above; then **you** must also give **us** written request within the same period of time. The Extended Reporting Endorsement will not go into effect unless:

1. **you** pay the additional premium promptly when due; and

2. purchase a similar Extended Reporting Period Endorsement which applies to the **scheduled underlying insurance** for the same or longer period of time.

   **We** will determine the actual premium for the Extended Reporting Period Endorsement at the time the endorsement is issued in accordance with our rules and rates.

The premium for the Extended Reporting Period Endorsement will not exceed 200 percent of the annual premium for the expiring policy term. It will be fully earned when the endorsement takes effect.

D. The scope of the coverage for an **incident** reported under either of the Extended Reporting Periods, parts B. or C., will be limited to the:

1. terms and provisions in force under **our** policy at the time of the grant of the Extended Reporting Period in **our** policy; and

2. time and coverage limitations (such as specific accidents, work or locations) which apply to the Extended Reporting Periods.

However, if the **scheduled underlying insurance** has more restrictive terms or provisions with respect to time and coverage than described in D.2. above, then the Extended Reporting Period Endorsement is also subject to such terms and provisions whether or not they are stated in the Extended Reporting Period Endorsement.

Extended Reporting Periods, parts B. and C., do not apply to claims that are covered under any in-surance of the type provided by this policy which **you** purchase subsequent to the end of the policy period, or that would be covered but for exhaustion of the amount of insurance which applies to such claims.

Extended Reporting Periods, parts B. and C., do not extend the policy period or change the scope of coverage provided. They apply only to injury or damage that occurs before the end of the policy period, but not before the Retroactive Date shown in the Declarations.

Claims for such injury or damage which are first received and recorded during the Extended Reporting Periods will be deemed to have been made in the last day of the policy period.

Once in effect, Extended Reporting Periods may not be cancelled, unless **scheduled underlying insurance** is not maintained.

Extended Reporting Periods, parts B. and C., do not reinstate or increase the limits of liability applicable to any claim to which this policy applies.

## CONDITIONS

This policy is subject to the following conditions:

A. **Premium**

The premium for this policy shall be as stated in the Declarations. The advance and anniversary premiums are not subject to adjustment except as stated in the Declarations, or as stated in an endorsement issued by **us** to form a part of this policy.

**You** shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to us at the end of the policy period as **we** may direct.

\* B. **Inspection and Audit**

**We** shall be permitted but not obligated to inspect **your** property and operations at any time. **Our** inspection, or reports or recommendations based on such inspections shall not constitute an undertaking to determine or warrant that such property or operations are:

1. safe or healthful; or

2. in compliance with any law, rule or regulation.

**We** may examine and audit **your** books and records:

1. at any time during the policy period and extended reporting periods; and

2. within three years after the final termination of this policy, as they relate to this insurance.

C. **Notice of Incident, Claim or Suit**

1. When an **incident** likely to involve **us** takes place, the **insured** shall notify **us**, or the agent,

in writing as soon as practicable, of any **incident**, claim or suit. Notice of an **incident** is not notice of a claim.

The notice must give:

a. **your** name and policy number;

b. the time, place and circumstances of the **incident**; and

c. the names and addresses of injured persons and witnesses.

The **insured** shall promptly take at his expense all reasonable steps to prevent other **bodily injury, personal injury, property damage** or **advertising injury** from arising out of the same or similar conditions, but such expense shall not be recoverable under this policy.

2. If claim is made or suit is brought, **we** must be advised promptly. All papers in connection with claims or suits must be sent to **us** without delay.

3. The **insured** shall cooperate with **us** and upon **our** request assist in:

a. making settlements;

b. the conduct of suits; and

c. enforcing any right of contribution or indemnity against any person or organization who may be liable to the **insured** because of **bodily injury, personal injury, property damage** or **advertising injury** with respect to which insurance is afforded under this policy.

The **insured** shall attend hearings and trials and assist in securing and giving evidence and the obtaining and attendance of witnesses. The **insured** shall not, except at the **insured's** own cost, voluntarily make any payment, assume any obligation or incur any expense.

D. **Other Insurance**

The insurance afforded under this policy shall apply as excess insurance over other collectible insurance (other than insurance applying as excess to **our** limit of liability) available to the insured and covering **ultimate net loss** covered by this insurance.

\* E. **Maintenance of Underlying Insurance**

**You** agree to maintain in full effect the **scheduled underlying insurance** listed in the Declarations during the term of this policy and any extended reporting period. **We** will not consider a reduction or exhaustion of the aggregate limit of any **scheduled underlying insurance** by payments of judgments and settlements with respect to **incidents** during the term of this policy as a failure to maintain **scheduled underlying insurance** in full effective. If **you** fail to comply with this condition:

1. by failure or neglect to maintain the **scheduled underlying insurance** listed in the Declarations;

2. because an **underlying insurer** becomes insolvent; or

3. because **you** breached a contract of **scheduled underlying insurance**;

this policy will apply, but **we** shall only be liable to the same extent as if the **scheduled underlying insurance** applied and maintained in full effect.

**You** further agree:

1. to give **us** written notice as soon as practicable of any change in the **scheduled underlying insurance** listed in the Declarations; and

2. that if **you** are notified that any aggregate limit of **scheduled underlying insurance** has been exhausted or reduced, **you** shall immediately take all reasonable efforts to reinstate limits.

\* Any false statement made by **you** in the application for this policy as to the nature of the **underlying insurance** - i.e. "occurrence" or "claims-made" (including retroactive dates) -- shall not invalidate this insurance, but **we** shall be liable only

to the extent **we** would have been liable had the statement been true.

F. **Subrogation**

After making payment under this policy, **we** will have the right to recover to the extent of **our** payment from anyone held responsible. The **insured** will do whatever is required to transfer this right to us. Any amounts so recovered shall be apportioned as follows:

1. Any amount paid over and above the payments under this policy shall be reimbursed first up to the amount paid to those who made such payments. This includes such amounts paid by the **insured**.

2. **We** are then to be reimbursed up to the amount **we** paid.

3. Any amount which remains after those under 1. and 2. are reimbursed shall be available to those, including the **insured**, over whom this insurance is excess and are entitled to claim such remainder.

Expenses necessary to the recovery of any such amounts shall be divided between the interests, including the **insured**, over whom this insurance is excess and are entitled to claim such remainder.

G. **Changes**

This policy contains all the agreements between **you** and **us** or any of **our** agents relating to this insurance. The terms of this policy may not be changed except by endorsement issued by **us**.

H. **Assignment**

No interest in this policy may be assigned without **our** written consent. But, if **you** should die within the policy period, the policy will cover:

1. **your** legal representative, as the Named Insured, but only with respect to **his** duties as such; and

2. any person or organization having proper temporary custody of **your** property, as in-

sured, but only until your legal representative has been appointed.

I. **Action Against Us**

**We** may not be sued unless:

1. there is full compliance with all the terms of this policy; and

2. until the obligation of an **insured** to pay is finally determined either by:

   a. judgment against the **insured** after actual trial; or

   b. by written agreement of the **insured**, the claimant and **us**.

No one shall have any right to make **us** a party to a suit to determine the liability of an **insured**.

J. **Bankruptcy**

**We** are not relieved of any obligation under this policy because of the bankruptcy or insolvency of any **insured**.

K. **Severability**

The insurance afforded applies separately to each **insured** against whom claim is made or suit is brought, but the inclusion of more than one **insured** shall not operate to increase the limits of **our** liability.

L. **Appeals**

If the **insured** or any insurer who provides the applicable **underlying insurance** elects not to appeal a judgment which exceeds the underlying limit or **retained limit**, **we** may elect to do so at our own expense. **We** shall be liable for the taxable costs and disbursements and interest incidental thereto, but in no event shall this provision increase **our** liability beyond our applicable limits of liability for all **ultimate net loss** plus the expense of such appeal.

M. **Cancellation**

**You** may cancel this policy by returning it to **us** or by giving **us** written notice of the future date **you** wish the cancellation to take effect. **We** may cancel this policy by mailing or delivering written notice to the first named insured at the address shown in the Declarations giving the date cancellation is to be effective.

The date **we** use must be at least:

1.  10 days from the date the notice is mailed or delivered if cancelled for nonpayment of premium.

2.  30 days from the date the notice is mailed or delivered if cancelled for reasons other than nonpayment of premium.

Proof of mailing shall be sufficient proof of notice.

Refund of any premium due will be made as soon as practicable after the date of cancellation. **You** will be charged premium only for the days **you** were covered during the policy period.

If the law of **your** state requires any longer notice period or any special form or procedure for giving notice, **we** will comply with those requirements.

N.  **Nonrenewal**

**We** will mail to **you** at the address shown in the Declarations or deliver to **you** notice of nonrenewal not less than 30 days before the end of the policy period if **we** decide not to renew or continue this policy. Proof of mailing shall be sufficient proof of notice.

If the law of **your** state requires any longer notice period or any special form or procedure for giving notice, **we** will comply with those requirements.

O.  **Declarations**

By acceptance of this policy, **you** agree that:

1.  the statements in the Declarations and in any subsequent notice relating to **underlying insurance** are **your** agreements and representations;

2.  this policy is issued in reliance upon the truth of such representations; and

3.  that this policy embodies all agreements existing between **you** and **us** or any of **our** agents relating to this insurance.

\* P.  **Incident and Claim Information (Claims-Made Version)**

The first named insured may be provided with claims information which relates to the Commercial Umbrellas **we** have issued to **you** during the three year period prior to the termination date of this policy.

**We** shall include a brief description of the loss and payments made by **us**.

**You** agree not to disclose this information to a claimant or a representative of a claimant without obtaining **our** consent.

**We** shall provide this information only if **we** receive a written request from the first named. **We** shall provide the information within 45 days from the date **we** receive the request.

**We** shall provide this information, but **we** are not making any representations or warranties regarding it.

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (BROAD FORM)

It is agreed that:

1. This policy does not apply to **ultimate net loss**:

   a. with respect to which an **insured** under this policy is also an **insured** under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or any of their successors, or would be an **insured** under any such policy but for its termination upon exhaustion of its limit of liability;

   b. resulting from the hazardous properties of **nuclear material** and with respect to which: (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy act of 1954, or any law amendatory thereof; or (2) the **insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization; or

   c. resulting from the hazardous properties of **nuclear material**, if:

      (1) the **nuclear material**: (a) is at any **nuclear facility** owned by, or operated by or on behalf of, an **insured**; or (b) has been discharged or dispersed therefrom;

      (2) the **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **insured**; or

      (3) the loss arises out of the furnishing by an **insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions

   or Canada, this exclusion (3) applies only to **ultimate net loss** to such **nuclear facility** and any property thereat.

2. As used in this endorsement:

   a. **hazardous properties** include radioactive, toxic or explosive properties.

   b. **nuclear material** means **source material, special nuclear material** or **byproduct material**.

   c. **source material, special nuclear material,** and **byproduct material** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

   d. **spent fuel** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor**.

   e. **waste** means any waste material: (1) containing by **product material** other than the tailings or waste produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **source material** content; and (2) resulting from the operation by any person or organization of any **nuclear facility** includes within the definition of **nuclear facility** under paragraph (a) or (b) thereof.

   f. **nuclear facility** means:

      (a) any nuclear reactor;

      (b) any equipment or device designed or used for: (1) separating the isotopes of uranium or plutonium; (2) processing or utilizing **spent fuel**; or (3) handling, processing or packaging **waste**;

      (c) any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the **insured** at the premises where such

equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 25 grams of uranium 235; or

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **waste**;

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

g. **nuclear reactor** means any apparatus designed or used to sustain nuclear fission in a self supporting chain reaction or to contain a critical mass of fissionable material.

h. **ultimate net loss** includes all forms of radioactive contamination of property.

26816 (7-87)

## EXCLUSION OF DAMAGE TO REAL PROPERTY ENDORSEMENT

It is agreed:

This policy does not apply to the injury to or destruction of real property:

1.  leased or rented; or
2.  occupied;

by the **insured.**

All other terms and conditions of the policy apply.

## AUTOMOBILE LIABILITY ENDORSEMENT
### (Following Form)

26824 (7-87)

It is agreed:

This policy does not apply to liability for **bodily injury** or **property damage** arising out of the ownership, maintenance, operation, use, entrustment, loading or unloading of any **automobile**, except to the extent coverage is provided:

1.   in the **scheduled underlying insurance**;

2.   at the limits stated in the Schedule of Underlying Insurance; and

3.   subject to the Maintenance of Underlying Insurance Condition.

All other terms and conditions of the policy apply.

# PRODUCTS-COMPLETED OPERATIONS LIABILITY ENDORSEMENT   26826 (9-95)
### Commercial Umbrella Policy
### (Following Form)

It is agreed:

This policy does not apply to liability for:

1.  **bodily injury**; or

2.  **property damage**;

arising out of the **products - completed operations hazard** except to the extent coverage is provided:

1.  in the **scheduled underlying insurance**;
2.  at the limits stated in the Schedule of Underlying Insurance; and
3.  subject to the Maintenance of Underlying Insurance Condition.

All other terms and conditions of the policy apply.

**Illinois**                                                    26889 (12-01)

# AMENDATORY ENDORSEMENT
### Commercial Umbrella Policy

It is agreed:

A. That under the **DEFENSE AND SETTLEMENT PAYMENTS** section of the policy the following wording is deleted:

"However, if the **scheduled underlying insurance** includes the amount paid for any of these within their applicable limit of liability, then **we** will also include the amount **we** pay for these within **our** limit of liability to the extent that they were included under the **scheduled underlying insurance**."

B. That the **EXTENDED REPORTING PERIOD** section of the policy is amended as follows:

1. Item A.1. is deleted and replaced with the following:

   1) this policy is cancelled or nonrenewed; or

2. Item B.2. is deleted:

3. Item C. Extended Reporting Period Endorsement is deleted and replaced by the following:

   C. Extended Reporting Period Endorsement

   An Extended Reporting Period Endorsement is available for an additional premium. The endorsement lasts for the period of time shown in the endorsement. The Extended Reporting Period Endorsement starts after the end of the Basic Extended Reporting Period for claims arising out of an **incident** reported to **us** or **underlying insurer** in accordance with Condition C. Notice of Incident, Claim or Suit.

   **You** must give **us** a written request for the endorsement within 60 days after the end of the policy period, unless **you** are required by the **scheduled underlying insurance** to make the request for an extended reporting period endorsement earlier than required above; then **you** must also give **us** written request within the same period of time. The Extended Reporting Endorsement will not go into effect unless:

   1. **you** pay the additional premium promptly when due; and

   2. **you** purchase a similar Extended Reporting Period Endorsement which applies to the **scheduled underlying insurance** for the same or longer period of time.

   **We** will determine the actual premium for the Extended Reporting Period Endorsement at the time the endorsement is issued in accordance with **our** rules and rates.

   The premium for the Extended Reporting Period Endorsement will not exceed 200 percent of the annual premium for the expiring policy term. It will be fully earned when the endorsement takes effect.

   Subject to the conditions in this section, an **Extended Reporting Period** of unlimited duration is available.

4. Item D. has the following paragraph deleted:

   "However, if the **scheduled underlying insurance** has more restrictive terms or provisions with respect to time and coverage than described in D.2 above, then the Extended Reporting Period Endorsement is also

Page 1 of 3

subject to such terms and provisions whether or not they are stated in the Extended Reporting Period Endorsement."

5.  The paragraph relating to cancellation of the Extended Reporting Period is amended to read:

"Once in effect, **Extended Reporting Periods** may not be cancelled."

6.  The last paragraph in the **Extended Reporting Period** Section is amended to read:

"Extended Reporting Periods provided in parts B. and C. will provide a separate aggregate of insurance."

C.  The **CANCELLATION** provisions of the policy are amended in the following respect:

1.  **We** may cancel this policy by mailing written notice to **you** at the last mailing address known to **us**, stating when the cancellation shall be effective.  When this policy is cancelled:

a.  during the first 60 days of coverage, the notice shall be mailed at least 30 days prior to the effective date of cancellation; or

b.  after 60 days of coverage the notice shall be mailed at least 60 days prior to the effective date of cancellation; or

c.  when cancellation is for nonpayment of premium, **we** shall mail 10 days notice.

2.  **You** may cancel this policy by returning it to **us** or by giving **us** written notice of the future date **you** wish the cancellation to take effect.

3.  If this policy has been in effect for 60 days, or if this is a renewal policy, it may only be cancelled for one or more of the following reasons:

a.  Nonpayment of premium.

b.  The policy was obtained through material misrepresentation.

c.  Any **insured** violated any of the terms and conditions of the policy.

d.  The risk originally accepted has measurably increased.

e.  Certification to the Director of the loss of reinsurance by **us** for all or a substantial part of the underlying risk insured.

f.  A determination by the Director that the continuation of the policy could place **us** in violation of the insurance laws of this state.

D.  The **NONRENEWAL** provisions of the policy are amended on the following respect:

If we elect not to renew this policy, **we** shall mail to **you** at the last mailing address known to **us**, written notice of nonrenewal at least 60 days prior to the expiration date of the policy.

Page 2 of 3

E. That under **CONDITIONS**, *P. **Incident and Claim Information (Claims-Made Version)** is deleted and replaced by the following:

*P. **Incident and Claim Information (Claims-Made Version)**

The first named insured may be provided with claims information which relates to the Commercial Umbrellas **we** have issued to **you** during the three year period prior to the termination date of this policy.

**We** shall include a brief description of the loss and payments made by **us**.

**You** agree not to disclose this information to a claimant or a representative of a claimant without obtaining **our** consent.

**We** shall provide this information at the same time as any notice of cancellation or nonrenewal unless the reason for cancellation or nonrenewal is nonpayment of premium, material misrepresentation or fraud committed by **you**.

**We** shall also provide this information if **we** receive a written request from the first named insured. **We** shall provide the information within 30 days from the date **we** receive the request.

Such claims information requested by **you** for a prospective insurer's use shall not be subject to discovery by any party other than an **insured**, **us**, or a prospective insurer.

**We** shall provide this information, but **we** are not making any representations or warranties regarding it.

All other policy terms and conditions apply.

Page 3 of 3

26896 (8-91)

# POLLUTION LIABILITY EXCLUSION
# COMMERCIAL UMBRELLA POLICY

It is agreed that under EXCLUSIONS, Paragraph Q is deleted and replaced by the following:

Q. 1. **Bodily injury**, **property damage or personal injury** resulting from the actual, alleged or threatened discharge, release, escape, seepage, migration, or dispersal of **pollutants**:

    (a) that are, or are contained in any property that is:

        (1) being transported or towed by, handled or prepared for placement into or upon, or taken from any **automobile**;

        (2) otherwise in the course of transit by an **insured** or on behalf of an **insured**; or

        (3) being disposed of, stored, treated or processed into or upon any **automobile**;

    (b) before such **pollutants** or property containing **pollutants** are moved from the place they are accepted by an **insured** or any one acting on behalf of an **insured** for placement into or onto any **automobile**; or

    (c) after such pollutants or property containing **pollutants** are removed from any **automobile** to where they are delivered, disposed of or abandoned by an **insured** or any one acting on behalf of an **insured**.

Part 1.(a) does not apply to **pollutants** that are needed or result from the normal mechanical, electrical or hydraulic functioning of the **automobile** or its parts, if the escape, discharge, dispersal, seepage, migration or release of such **pollutants** is directly from a part of the **automobile** designed to hold, store, receive or dispose of such **pollutants** by the **automobile** manufacturer.

Parts 1.(b) and 1.(c) of this exclusion do not apply, if as a direct result of the maintenance or use of the **automobile**, **pollutants** or property containing **pollutants** which are not in or upon the **automobile**, are upset, overturned or damaged at any premises not owned by or leased to an insured. The discharge, dispersal, release, seepage, migration or escape of the **pollutants** must be directly caused by such upset, overturn or damage.

2. **Bodily injury**, **property damage** or **personal injury** resulting from the actual, alleged or threatened discharge, release, escape, seepage, migration, or dispersal of **pollutants**:

    (a) at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to any **insured**;

    (b) at or from any premises, site or location which is or was at any time used by or for any **insured** or others for the handling, storage, disposal, processing or treatment of waste;

    (c) which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any **insured** or any person or organization for whom an **insured** may be legally responsible;

    (d) at or from any premises, site or location on which any **insured** or any contractors or subcontractors working directly or indirectly on any **insured's** behalf are performing operations:

        (1) if the **pollutants** are brought on or to the premises, site, or location in connection with such operations by such **insured**, contractor or subcontractor; or

        (2) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize or in any way respond to, or assess the effects of **pollutants**.

Parts 2.(a) and 2.(d)(1) do not apply to **bodily injury**, **property damage** or **personal injury** caused by heat, smoke or fumes from a hostile fire. As used herein, a hostile fire is one which becomes uncontrollable or breaks out from where it is intended to be.

3. Any loss, cost or expense arising out of any:
   (a) request, demand or order that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants**; or

   (b) claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants**.

All other policy terms and conditions apply.

59006 (11-90)

## POLICYHOLDER ASSISTANCE AND INFORMATION

Dear Policyholder:

We are here to serve you and as our policyholder your satisfaction is very important to us.  Should you have any questions or a complaint regarding your policy that cannot be resolved by your agent, you may contact our Illinois Branch Office for assistance.  Please direct your inquiries to:

Branch Manager
Auto-Owners Insurance Company
6715 North Big Hollow Rd.
Peoria, Illinois  61615
P.O. Box 3337
Peoria, Illinois  61612-3337
Telephone:  309-693-2550

If after contacting our Illinois Branch Office, you are not satisfied, you may contact the Illinois Department of Insurance for further assistance at the following address:  Public Services Section, Department of Insurance, 320 West Washington, Springfield, Illinois 62767.

Auto-Owners Insurance Company
Owners Insurance Company
Auto-Owners Life Insurance Company

59351 (2-03)

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM
### and
## IMPORTANT INFORMATION REGARDING TERRORISM RISK INSURANCE COVERAGE

It is agreed:

**1.** The following definition applies:

**Certified act of terrorism** means any act certified by the Secretary of the Treasury, in concurrence with:

**a.** the Secretary of State; and
**b.** the Attorney General of the United States;

to be an act of terrorism as defined and in accordance with the federal Terrorism Risk Insurance Act of 2002.

Under the federal Terrorism Risk Insurance Act of 2002 a terrorist act may be certified:

**a.** if the aggregate covered commercial property and casualty insurance losses resulting from the terrorist act exceed $5 million; and

**b.** **(1)**   if the act of terrorism is:

      **a)**   a violent act; or

      **b)**   an act that is dangerous to human life, property or infrastructure; and

  **(2)**   if the act is committed:

      **a)**   by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States; or

      **b)**   to influence the policy or affect the conduct of the United States Government by coercion.

**2.** The following exclusion is added:

We shall not pay:

**a.** for any loss caused directly or indirectly by a **certified act of terrorism**, whether or not any other cause or event contributed concurrently or in any sequence to the loss.

**b.** sums any insured becomes legally obligated to pay because of or arising out of bodily injury, property damage, personal injury or advertising injury, if covered by this insurance, caused by a **certified act of terrorism.**

All other policy terms and conditions apply.

# IMPORTANT INFORMATION REGARDING TERRORISM RISK INSURANCE COVERAGE

The Terrorism Risk Insurance Act of 2002 was signed into law on November 26, 2002. The Act defines an act of terrorism, to mean any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States to be (i) an act of terrorism; (ii) to be a violent act or an act that is dangerous to human life, property or infrastructure; (iii) to have resulted in damage within the United States or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and (iv) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

At your request, this policy does not provide insurance coverage for certified acts of terrorism as defined in the Act. "Excluded" is shown on the Declarations page under this coverage. In the event of a certified act of terrorism, future policies also may include a government assessed terrorism loss risk-spreading premium in accordance with the provisions of the Act.

59392 (10-04)

# NOTIFICATION OF POSSIBLE CHANGES IN COVERAGE FOR TERRORISM

Dear Policyholder:

The Terrorism Risk Insurance Act of 2002 was signed into law on November 26, 2002 and will expire on December 31, 2005 unless the Federal Government extends the Act.  What this means to you is the following:

1.  This policy does not provide coverage for certified acts of terrorism, since you have previously declined this coverage.

2.  A conditional endorsement entitled, Conditional Exclusion Of Terrorism Involving Nuclear, Biological Or Chemical Terrorism (Relating To Disposition Of Federal Terrorism Risk Insurance Act of 2002) is enclosed.  This conditional endorsement will only apply if the Act is not extended beyond December 31, 2005 or if the Act is revised to increase statutory deductibles, decrease the federal government's share in potential losses above the statutory deductibles, change the levels, terms or conditions of coverage and we are no longer required to make terrorism coverage available and elect not to do so.  It will not apply if the Act is simply extended.

3.  The conditional endorsement will provide coverage for an incident of terrorism pursuant to the terms and conditions of the policy only if the incident does not involve nuclear, biological or chemical material.

4.  A premium charge will be made for this coverage after January 1, 2006.  It will be prorated for the period beginning January 1, 2006 and ending on the expiration date of this policy term.  However, it will only be made if the Terrorism Risk Insurance Act of 2002 is not extended.

5.  If the Act is extended without any revision, the enclosed policy will continue to exclude coverage for certified acts of terrorism.  The conditional endorsement will not be activated and the changes in coverage or premium referenced above will not apply.

6.  If the Act is extended with revisions or is replaced, and we are required or elect to continue to offer coverage for certified acts of terrorism, we may amend this policy in accordance with the provisions of the revised Act or its replacement.

This notice is for informational purposes only.

If you have any questions concerning your policy or this notice, please contact your Auto-Owners agency.

JUDGE SHADUR
MAGISTRATE JUDGE COLE
EDA

# PLEADING EXHIBIT C

# *Owners*

PAGE   1
WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY

INSURANCE COMPANY                18147
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

INFORMATION PAGE

| | |
|---|---|
| AGENCY    FISHER-SCHOL AGENCY INC<br>04-0248-00  700 S RANDALL RD # 4<br>SAINT CHARLES       IL  60174<br>ITEM 1<br>INSURED    COMPLETE MECHANICAL SERVICES INC<br><br>ADDRESS    PO BOX 3038<br>SAINT CHARLES       IL  60174-9099 | (630) 587-9000<br>MKT TERR 097<br><br>COMPANY<br>BILL |

```
                                           POLICY NUMBER
                                           051704 07239279

                                            ITEM 2 POLICY PERIOD
                                        FROM 12:01 A.M. 06-28-2005
                                        TO   12:01 A.M. 06-28-2006
                                           AT THE INSURED'S
                                           MAILING ADDRESS
```

INSURED IS - CORPORATION

OTHER WORK PLACES NOT SHOWN ABOVE:

ITEM 3   A.  WORKERS' COMPENSATION INSURANCE:   PART ONE OF THE POLICY APPLIES TO WORKERS'
             COMPENSATION LAW OF THE STATES LISTED HERE: IL

         B.  EMPLOYERS LIABILITY INSURANCE:  PART TWO OF THE POLICY APPLIES TO WORK IN EACH STATE
             LISTED IN ITEM 3.  THE LIMITS OF OUR LIABILITY UNDER PART TWO ARE:

                      BODILY INJURY BY ACCIDENT     $500,000   EACH ACCIDENT
                      BODILY INJURY BY DISEASE      $500,000   EACH EMPLOYEE
                      BODILY INJURY BY DISEASE      $500,000   POLICY LIMIT

         C.  OTHER STATES INSURANCE:  PART THREE OF THE POLICY APPLIES TO THE STATES, IF ANY,
             LISTED HERE:   AL, AZ, CO, FL, GA, IA, IL, MN, MO, NC, NE, SC, SD, TN, UT, VA & WI
                            UNLESS ALREADY LISTED IN ITEM 3A.

ITEM 4   THE PREMIUM FOR THIS POLICY WILL BE DETERMINED BY OUR MANUALS RULES, CLASSIFICATIONS,
         RATES AND RATING PLANS.  ALL INFORMATION REQUIRED BELOW IS SUBJECT TO VERIFICATION
         AND CHANGE BY AUDIT.

| CLASSIFICATIONS OF OPERATIONS | | PREMIUM BASIS | RATES | |
|---|---|---|---|---|
| | CLASS<br>CODE | ESTIMATED<br>TOTAL ANNUAL<br>REMUNERATION | RATE<br>PER<br>$100 | ESTIMATED<br>ANNUAL<br>PREMIUM |
| STATE OF ILLINOIS | | | | |
| ID# 0010 (SEE FED NUM 001)  DESC 001 | | | | |
| ELECTRICAL WIRING - WITHIN BUILDINGS &<br>DRIVERS | 5190 | 72,000 | 8.94 | 6,437 |
| ID# 0020 (SEE FED NUM 001)  DESC 001 | | | | |
| HEATING AND AIR CONDITIONING DUCTWORK -<br>SHOP AND OUTSIDE & DRIVERS | 5536 | 653,400 | 11.38 | 74,357 |
| ID# 0030 (SEE FED NUM 001)  DESC 001 | | | | |
| SALESPERSONS, COLLECTORS OR MESSENGERS -<br>OUTSIDE | 8742 | 130,000 | .58 | 754 |
| ID# 0040 (SEE FED NUM 001)  DESC 001 | | | | |
| CLERICAL OFFICE EMPLOYEES NOC | 8810 | 45,000 | .32 | 144 |

ISSUED  8-09-2005

27777 (10-88)(WC000001A)

I certify that this policy was assembled from
available records as a representation of coverage
that was in effect for the policy period shown.

~~Dwf M. Madley~~

Date  05-8-8

Exhibit C - Page1 of 34

# Owners

PAGE  2
WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY

INSURANCE COMPANY                18147
6101 ANACAPRI BLVD., LANSING, MI 48917-3999
INFORMATION PAGE

AGENCY     FISHER-SCHOOL AGENCY INC
04-0248-00 700 S RANDALL RD # 4
           SAINT CHARLES      IL  60174      (630) 587-9000
                                             MKT TERR 097

ITEM 1
INSURED    COMPLETE MECHANICAL SERVICES INC
                                             COMPANY
ADDRESS    PO BOX 3038                       BILL
           SAINT CHARLES      IL  60174-9099

| POLICY NUMBER |
| 051704 07239279 |

ITEM 2 POLICY PERIOD
FROM 12:01 A.M. 06-28-2005
TO  12:01 A.M. 06-28-2006
AT THE INSURED'S
MAILING ADDRESS

| | | |
|---|---:|---:|
| TOTAL | | 81,692 |
| INCREASED LIMITS ITEM 3 B | 1,389 | 83,081 |
| 108% EXPERIENCE MOD | 6,646 | 89,727 |
| 28.0% SCHEDULE CREDIT - ILLINOIS | 25,124- | 64,603 |
| PREMIUM ADJ FACTOR | 6,460- | 58,143 |
| PREMIUM DISCOUNT | 5,793- | 52,350 |
| 9% MULTI-POLICY DISCOUNT | 4,712- | 47,638 |
| EXPENSE CONSTANT | 220 | 47,858 |
| FOREIGN TERRORISM - CERTIFIED ACTS  SEE FORM 27288 | 540 | 48,398 |
| DOMESTIC TERRORISM, EARTHQUAKES & CAT. INDUSTRIAL ACCIDENTS | 180 | 48,578 |
| 1.01% IL INDUSTRIAL COMMISSION OPERATIONS FUND SURCHARGE | 483 | 49,061 |
| TOTAL ESTIMATED ANNUAL PREMIUM | | 49,061 |

FEDERAL ID -   363878182

IL EXPERIENCE RISK ID - 127355797

COUNTY 045

A  9% CUMULATIVE MULTI-POLICY DISCOUNT APPLIES. SUPPORTING POLICIES ARE MARKED WITH AN (X):
COMM UMB(X) COMM PROP/COMM LIAB(X) COMM AUTO(X) LIFE( ) PERSONAL( ) FARM( ).

MINIMUM PREMIUM     $850  ILLINOIS

AUDIT IS -  ANNUAL

DISCOUNT APPLIES FOR AFFILIATION WITH:  ILLINOIS HOME BUILDERS ASSOCIATION

ENDORSEMENTS:
27016 (WC000000A)   27027 (WC120601C)   27279 (WC000419 )   27288 (WC000420 )   27305 (WC000112 )
27306 (WC000421 )   27942 (WC000414 )   27953               59006               27171 (WC120402 )

ISSUED  8-09-2005

COUNTERSIGNED BY: _____

27777 (10-88)(WC000001A)

Exhibit C - Page2 of 34

# *Owners*

PAGE   1

WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY

INSURANCE COMPANY                                    ATTACHED TO AND FORMING PART OF
6101 ANACAPRI BLVD., LANSING, MI 48917-3999
                                    INFORMATION PAGE

| | | |
|---|---|---|
| AGENCY | FISHER-SCHOL AGENCY INC | |
| 04-0248-00 | 700 S RANDALL RD # 4 | (630) 587-9000 |
| | SAINT CHARLES        IL  60174 | MKT TERR 097 |

```
                                                        ┌─────────────────────────────┐
                                                        │       POLICY NUMBER         │
                                                        │      051704 07239279        │
ITEM 1                                                  │                             │
INSURED    COMPLETE MECHANICAL SERVICES INC             │   ITEM 2 POLICY PERIOD      │
                                            COMPANY     │ FROM 12:01 A.M. 06-28-2005  │
ADDRESS    PO BOX 3038                      BILL        │ TO   12:01 A.M. 06-28-2006  │
           SAINT CHARLES        IL  60174-9099          │     AT THE INSURED'S        │
                                                        │     MAILING ADDRESS         │
                                                        └─────────────────────────────┘
```

        FED NUM 001   STATE IL
          FED ID 363878182
          ENTITY   CORPORATION
                   COMPLETE MECHANICAL SERVICES INC
                   3660 SWENSON AVE
                   ST CHARLES        IL 60174-3442

ISSUED  8-09-2005

2762 (4-84)

Exhibit C - Page3 of 34

AUTO-OWNERS INSURANCE COMPANY
AUTO-OWNERS LIFE INSURANCE COMPANY
HOME-OWNERS LIFE INSURANCE COMPANY
OWNERS LIFE INSURANCE COMPANY
PROPERTY-OWNERS INSURANCE COMPANY
SOUTHERN-OWNERS INSURANCE COMPANY



*Auto-Owners Insurance*

Life  Home  Car  Business

*The No Problem People®*

COMPLETE MECHANICAL SERVICES INC
PO BOX 3038
SAINT CHARLES, IL 60174-9099

## ILLINOIS CONTRACTING CLASSIFICATION PREMIUM ADJUSTMENT PROGRAM (ILCCPAP)
## CONFIDENTIAL WORKERS COMPENSATION PREMIUM CREDIT APPLICATION

The Illinois Contracting Classification Premium Adjustment Program is applicable to qualifying employers engaged in contracting operations and is applicable to policies with effective dates on or after April 1, 1994. In order to qualify for the program, **your policy must have more than 50% of manual premium attributable to one or more contracting classifications (as designated by the program) for Illinois operations only and have a calculated experience modification of less than or equal to 1.00.**

A special premium calculation, which may result in a premium credit for you, will be based on an average hourly wage scale for each classification of contracting operations in Illinois. In order that your premium may be correctly established, please return the completed premium credit application, as set out on the reverse side of these instructions, to:

> National Council on Compensation Insurance, Inc.
> Customer Service Center
> 901 Peninsula Corporate Circle
> Boca Raton, FL 33487

NCCI will advise us of any premium credit applicable. **If NCCI does not receive this application within 180 days after policy inception, your premium calculation will not reflect any possible premium credit. In addition, this application will be returned unprocessed if not completed in its entirety.** The information supplied on this application will be confidential.

For each applicable classification (both contracting and non-contracting) covering your company's operations in the state of Illinois, report the total Illinois payroll (excluding overtime premium pay, vacation pay, unanticipated bonuses, pay for any exempt sole proprietor, partner, or officer, Davis Bacon fringe benefits you pay into any ERISA qualified third party pension plan and other Illinois exclusions) and the corresponding total number of hours worked for the third calendar quarter (JULY, AUGUST, SEPTEMBER) of the year preceding your policy effective date as reported to taxing authorities.

Note #1:   If you did not engage in contracting operations during the third quarter, the requested information to be provided should then be for the last complete calendar quarter prior to the effective date of your workers compensation policy. Do not include payroll from any state other than Illinois.

Note #2:   If you have just begun operations in Illinois (no prior operations) and have a calculated experience modification equal to 1.00 or less, submit the requested information for the first complete calendar quarter following the effective date of your workers compensation policy when available, excluding any payroll from any state other than Illinois.

Note #3:   In the absence of specific records for salaried employees, you should assume that each individual worked forty (40) hours per week. Payroll for partners, sole proprietors and corporate officers subject to contracting classifications will be subject to appropriate Basic Manual minimums and maximums or limitations. Do not include payroll for persons not covered by the policy, such as exempt partners, sole proprietors and officers.

Note #4:   If you do not have a calculated experience modification equal to 1.00 or less and do not have more than 50% of IL manual premium attributable to one or more qualifying contracting classifications, do not complete and submit this application as you are not qualified for this credit program.

**You must preserve your payroll records which formed the basis for this declaration as we will be required to verify the reported information in order for any premium credit to be applied.**

Thank you for your cooperation.

© 2003 National Council on Comprehensive Insurance, Inc.

27172 (12-03)                    Turn Page Over For Premium Credit Application

Exhibit C - Page4 of 34

**ILLINOIS CONTRACTING CLASSIFICATION PREMIUM ADJUSTMENT PROGRAM**
**CONFIDENTIAL WORKERS COMPENSATION PREMIUM CREDIT APPLICATION**

### SECTION ONE

INSURED: <u>COMPLETE MECHANICAL SERVICES INC</u>     CARRIER: <u>OWNERS INS. CO.</u>

POLICY NUMBER: <u>051704 - 07239279</u>     PERIOD: FROM <u>06-28-2005</u> TO <u>06-28-2006</u>

1. Is this business experience rated at 1.00 or less?     Yes   No
   - If yes, provide NCCI risk ID#: _____
   - If no, please do not complete and submit the application.
2. Did you have operations in Illinois during the third quarter of the prior calendar year?   Yes   No
   - If yes, in Section Two below, submit information for the **THIRD** calendar quarter (July, August, September) of the year **PRECEDING** the policy effective date as reported to taxing authorities.
   - If no, in Section Two below, submit information for the the last complete quarter prior to the effective date of your workers compensation policy.   **(Note: If you have just begun operations in Illinois, submit information for the first complete calendar quarter following the effective date of your workers compensation policy.**

**Notice:** Unless codes(s), total wages paid, total hours worked, calendar quarter reported are indicated and application is signed, the application will be returned unprocessed.  Contact your agent or carrier if assistance is desired.

### SECTION TWO

| CLASSIFICATIONS<br>Eligible Contracting Classifications: | CODE | TOTAL ILLINOIS<br>WAGES PAID* | TOTAL ILLINOIS<br>HOURS WORKED** |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
| Non-Contracting Classifications: |  |  |  |
|  |  |  |  |
|  |  |  |  |

\* Excluding overtime premium pay-if an employee makes $20/hour and is paid time and one-half ($30), only report the payroll based upon the $20/hour.
   Also, excluding the salaries and hours worked of any exempt sole proprietor, partner or officer.
\*\* Including overtime hours.

### SECTION THREE

The above is based on actual wages (excluding overtime premium pay, pay for any exempt sole proprietor, partner, or officer, Davis Bacon Fringe Benefits and other Illinois exclusions) and hours worked as reflected in our payroll records for the complete calendar quarter ending _____.

SIGNATURE:_____     POSITION:_____   DATE: ___ /___ /____

2008 National Council on Comprehensive Insurance, Inc.

Exhibit C - Page5 of 34

# YOUR INSURANCE AUDIT – HOW TO SAVE TIME AND MONEY

14019 (12-04)

## WHAT IS AN INSURANCE AUDIT?

Insurance audits are typically performed on commercial insurance policies providing auto, general liability, garage liability, umbrella and workers compensation coverages. When these polices are issued, you are asked to pay an estimated premium. Estimated premiums are based on the nature of your business and your estimate of exposures (i.e., payroll, sales, etc.) for the policy period.

Once your policy expires, we conduct an audit to collect information on actual exposures and operations.   From this information, we determine the final earned premium. Premium adjustments are then determined by comparing audited exposures and operations with the original policy estimates.

## WHAT RECORDS ARE NEEDED FOR THE AUDIT?

Records are important to the audit process. They provide and verify information, save time and minimize your insurance costs. The field auditor will let you know which of the following records will be needed for your audit when the audit appointment is made.

- PAYROLL RECORDS include payroll journal and summary, federal tax reports (941's), state unemployment reports and individual earnings records. Totals should be kept for overtime when applicable.

- EMPLOYEE RECORDS include the number of employees and hours, days or weeks worked annually.

- SALES JOURNAL includes all goods or products sold, rented and/or distributed as well as service, repair and installation. Sales or excise taxes collected separately and submitted to the government need to be identified in order to be excluded.

- CASH DISBURSEMENTS show subcontractors, materials and casual labor.

- CERTIFICATES OF INSURANCE show the subcontractors used during the policy period for construction, erection and/or structural alteration for general liability and workers compensation insurance coverages. They are also used for commercial automobile hired auto coverage.

- INCOME STATEMENTS include subcontracted costs used to determine the cost of hired autos for commercial automobile audits.

## WHEN AND HOW WILL THE AUDIT BE DONE?

We will collect audit information from you shortly after your policy expires.

Smaller, less complex policies may only require that you assemble and send the necessary information to us or have the information available when a telephone auditor calls.

Larger and more complicated policies are handled by a field auditor, who will schedule an appointment with you shortly after the policy expires.

If you must change or cancel a scheduled appointment, please advise the auditor as far in advance as you can. It is best to schedule and complete this audit within 30 days from your policy expiration date.

It is important for the auditor to ask questions about your operations. If you cannot be present to answer questions, someone familiar with the specifics of your entire business operations should be available.

If you direct us to your accountant, we will obtain as much information as possible from your accountant and contact you if we have additional questions.

Most of our audits only take a half hour or less, but audits of larger policies may take longer. Though the auditor will have a number of questions, you will not have to be directly involved during the entire audit if adequate records are available.

Exhibit C - Page6 of 34

## HOW CAN YOU SAVE MONEY?

There are several ways you can save on premium dollars depending on the type of business and coverages you have. Not all of the following may apply to your particular business.

- PAYROLL DIVISION - A single employee's payroll can be divided except when the employee works in a clerical or sales position. Proper records must be kept in dollar amounts that reflect work actually spent before a breakdown can be applied. Without adequate records, the entire payroll for the employee must be placed in the highest rated classification.

- EMPLOYEE TIPS - Tips declared by employees may be excluded from their gross payroll only if separately identified.

- CERTIFICATES OF INSURANCE - Have certificates available for the audit at your premises (or your accountant's) to ensure that charges are not made unnecessarily. Certificates must cover the period when the subcontractor worked for you. This may require certificates covering two different policy terms for the subcontractor in some cases. For commercial automobile hired auto coverage certificates of insurance covering the insured on a direct primary basis will reduce rates by 95%.

- DRIVERS - (For general liability coverage), employees with the sole responsibility of driving may often be excluded from chargeable payroll if their wages are shown separately. However, employees who perform other duties besides driving must be placed in the highest rated class describing their duties.

- COST OF HIRE is commonly used on commercial automobile policies as a premium basis for hired auto coverage. This includes automobiles and trailers used under contract on behalf of or loaned to the named insured, which may include rental units as well as subcontracted hauling for the insured.

Your business is unique. If you have questions about how your specific circumstances will affect savings, please contact your insurance agent.

## BASIC DEFINITIONS

REMUNERATION is commonly called payroll. It includes wages, commissions, bonuses, overtime pay, pay for holidays, vacations and sickness, payment for piece work, value of meals and lodging and other substitutes for money.

OVERTIME is the hours worked for which there is an increase in the rate of pay. It includes:

- Work in excess of 8 hours per day or 40 hours per week.
- Work on Saturdays, Sundays or holidays.
- Work in any day or week in excess of a guaranteed wage agreement.

Extra pay for shift differential is not considered overtime.

Ordinarily, overtime pay is equal to 1 1/2 times the regular hourly rate. For example, a regular pay rate of $10 per hour at time and a half generates a $15 per hour overtime rate.

If the extra $5 of pay is shown separately, it is excluded in total. If total overtime wage is shown in a combined amount of $15 (regular pay plus increase) and included in gross payroll, one third ($5) will be deducted from gross pay.

If the overtime wage is calculated at double time, one half will be deducted from gross pay.

GROSS SALES is the gross amount charged by you or others trading under your name for all goods or products sold or distributed, operations performed and rentals. Some deductions from gross sales include sales or excise tax, returns and allowances and finance charges for items sold on installment.

SUBCONTRACTOR is often used interchangeably with "independent contractor." We ordinarily apply the definition to subcontractors performing construction, erection or structural alteration for a general contractor. Most workers compensation laws hold you responsible for employees of an uninsured subcontractor. In some states, they may extend to an uninsured subcontractor without employees if an employee-employer relationship can be established. A liability policy will also include a charge for subcontractors as though they were your employees if there is no certificate showing evidence of insurance. Subcontractors can easily obtain a certificate of insurance through their insurance agent.

Exhibit C - Page7 of 34

## COMMONLY ASKED QUESTIONS

Q: Why is an audit necessary?
A: To calculate the exact amount of premium you will be charged. Actual exposures and operations are determined by an audit. After they are compared with initial estimates and later endorsements, a final audit premium is determined.

Q: If overtime is not summarized, will I still get credit?
A: Overtime records must show overtime pay separately by employee or classification or it will not be deducted.

Q: If I do not have certificates of insurance from subcontractors for the audit, will I be able to get them?
A: It is in your best interest to request a certificate from a subcontractor at the time the work is performed rather than at the time of audit. You will be charged for employees of those subcontractors not providing certificates as though they were your employees.

Q: Several of my employees do more than one type of work. How should I assign their payrolls?
A: Payrolls may be divided into appropriate classifications, provided the division is reflected on the original records in dollar amounts.

Q: Some of my work could be considered clerical and sales. Should I separate it?
A: The clerical and sales classifications cannot be used with any other class for division of a single employee's payroll.

Q: Is it necessary to provide audit information if my renewal policy has been canceled?
A: Yes, policies are issued using estimated payroll or sales. Actual payroll or sales needs to be known to determine if additional premium is due the company or a return premium is due the policyholder.

Exhibit C - Page8 of 34

## POLICYHOLDER ASSISTANCE AND INFORMATION

Dear Policyholder:

We are here to serve you and as our policyholder your satisfaction is very important to us. Should you have any questions or a complaint regarding your policy that cannot be resolved by your agent, you may contact our Illinois Branch Office for assistance. Please direct your inquiries to:

<div style="margin-left: 3em">

Branch Manager
Auto-Owners Insurance Company
4208 West Partridge Way
P.O. Box 3337
Peoria, Illinois 61612
Telephone: 309-693-2550

</div>

If after contacting our Illinois Branch Office, you are not satisfied, you may contact the Illinois Department of Insurance for further assistance at the following address:   Public Service Division, Department of Insurance, 320 West Washington, Springfield, Illinois 62767.

Auto-Owners Insurance Company
Owners Insurance Company
Auto-Owners Life Insurance Company

59006 (11-90)

Exhibit C - Page9 of 34

**AUTO-OWNERS INSURANCE COMPANY**
**AND**
**OWNERS INSURANCE COMPANY**

**ORDER FOR MEDICAL TREATMENT**

Date _____

Dr. _____

_____

Kindly render such First Aid Treatment as may be necessary to

_____
(Name of Employee)

Injured in our Employ on _____    _____

Nature of Injury _____

Signed _____
(Name of Company)

Per _____

Notice -  Our liability for subsequent treatment is governed solely by
the provisions of the Workers' Compensation Act.

1890 (3-83)

Exhibit C - Page10 of 34

# ILLINOIS FORM 45: EMPLOYER'S FIRST REPORT OF INJURY

*Please type or print.*

| Employer's FEIN | Date of report | Case or File # | Is this a lost workday case? Yes / No |
|---|---|---|---|

| Employer's name | Doing business as |
|---|---|

Employer's mailing address

| Nature of business or service | SIC code |
|---|---|

| Name of workers' compensation carrier/admin. | Policy/Contract # | Self-insured? Yes / No |
|---|---|---|

| Employee's full name | Social Security # | Birthdate |
|---|---|---|

| Employee's mailing address | Employee's e-mail address |
|---|---|

| Male / Female | Married / Single | # Dependents | Employee's average weekly wage |
|---|---|---|---|

| Job title or occupation | Date hired |
|---|---|

| Time employee began work **AM PM** | Date and time of accident | Last day employee worked |
|---|---|---|

| If the employee died as a result of the accident, give the date of death. | Did the accident occur on the employer's premises? Yes / No |
|---|---|

Address of accident

What was the employee doing when the accident occurred?

How did the accident occur?

What was the injury or illness? List the part of body affected and explain how it was affected.

What object or substance, if any, directly harmed the employee?

Name and address of physician/health care professional

If treatment was given away from the worksite, list the name and address of the place it was given.

| Was the employee treated in an emergency room? Yes / No | Was the employee hospitalized overnight as an inpatient? Yes / No |
|---|---|

| Report prepared by | Signature | Title and telephone # |
|---|---|---|

Please send this form to the ILLINOIS WORKERS' COMPENSATION COMMISSION  701 S. SECOND STREET  SPRINGFIELD, IL 62704.  IC45  12/04

By law, employers must keep accurate records of all work-related injuries and illness (except for certain minor injuries). Employers shall report to the Commission all injuries resulting in the loss of more than three scheduled workdays. Filing this form does not affect liability under the Workers' Compensation Act and is not incriminatory in any sense. This information is confidential.

Exhibit C - Page11 of 34
18139 (3-05)

# *Auto-Owners Insurance*

## WORKERS' COMPENSATION - ILLINOIS

## REPORTING OF CLAIMS

1.  Report **all** injuries, whether or not medical attention is required.

2.  Report the injury or claim **promptly**. **Do not delay.** The law may impose penalties and fines for late reporting.

3.  **Reporting Procedure:** When an injury occurs on the job, complete four (4) copies of "Employer's First Report of Injury or Illness".

    (a) Retain one (1) copy for your records.

    (b) Submit the original and two (2) copies to your Auto-Owners Workers' Compensation Claim Office. Do not wait for medical reports or bills.

    (c) Be sure to complete all blocks and entries on the Form. Incomplete forms cause delays which may invite penalties or fines by the state. Always provide the injured employee's telephone number and weekly wage information.

    (d) Submit all medical reports, bills, suit papers and all other claim related material to your Auto-Owners Workers' Compensation Claim Office.

Agent:

_____

_____

_____

_____

Claims Office:

Auto-Owners Insurance Co.

P.O. Box 3337

Peoria, IL  61612

Phone Number: (309) 693-2556      Fax: (309) 693-0548

18212 (4-03)

Exhibit C - Page12 of 34

Workers Compensation and Employers Liability Insurance Policy

# ILLINOIS AMENDATORY ENDORSEMENT
WC 12 06 01 C

This endorsement applies only to the insurance provided by the policy because Illinois is shown in Item 3.A. of the Information Page.

Part Six (Conditions), Condition A. Inspection, Condition D. Cancelation and Condition E. Sole Representative of the policy are replaced by these four Conditions.

## Inspection

We have the right, but are not obliged, to inspect your workplaces at any time. Our inspections are not safety inspections. They relate only to the insurability of the workplaces and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person to provide for the health or safety of your employees or the public. We do not warrant that your workplaces are safe or healthful or that they comply with laws, regulations, codes or standards. The National Council on Compensation Insurance has the same rights we have under this provision.

## Cancelation

1.  You may cancel this policy. You will mail or deliver advance written notice to us, stating when the cancelation is to take effect.

2.  We may cancel this policy. We will mail to each named insured and to the broker or the agent of record advance written notice stating when the cancelation is to take effect.

3.  If we cancel because you do not pay all premium when due, we will mail the notice of cancelation at least ten days before the cancelation is to take effect. If we cancel for any other reason, we will mail the notice:

    a.  at least 30 days before the cancelation is to take effect if the policy has been in force for 60 days or less;
    b.  at least 60 days before the cancelation is to take effect if the policy has been in force for more than 60 days.

4.  If this policy has been in effect for 60 days or more, we may cancel only for one of the following reasons:

    a.  Nonpayment of premium.
    b.  The policy was issued because of a material misrepresentation.
    c.  You violated any of the material terms and conditions of the policy.
    d.  There are unfavorable underwriting factors, specific to you, that were not present when the policy took effect.
    e.  The Director has determined that we no longer have adequate reinsurance to meet our needs.
    f.  The Director has determined that continuation of coverage could place us in violation of the laws of Illinois.

5.  Our notice of cancelation will state our reasons for canceling.

6.  The policy period will end on the day and hour stated in the cancelation notice.

## Nonrenewal

1.  We may elect not to renew the policy. If we fail to give 60 days notice, the policy will automatically be extended for one year. Mailing that notice to you at your last known mailing address will be sufficient to prove notice. An exact and unaltered copy of such notice shall also be sent to the insured's broker, if known, or the agent of record at the last mailing address known by the company.

2.  Our notice of nonrenewal will state our reasons for not renewing.

1 of 2

Copyright 1986, 1988, 1990 National Council on Compensation Insurance.

Exhibit C - Page13 of 34

3.  If we fail to provide the notice of nonrenewal as required, the policy will still terminate on its expiration date if:

    a.  We show you a willingness to renew the policy.
    b.  You notify us or the agent or broker who procured this policy that you do not want the policy renewed.
    c.  You fail to pay all premiums when due.
    d.  You obtain other insurance as a replacement of the policy.

## Sole Representative

The insured first named in Item 1 of the Information Page will act on behalf of all insureds to change this policy, receive return premium or to give us notice of cancellation.

Part Five (Premium), Section G. Audit is replaced by this Section.

## Audit

You will let us examine and audit all your records that relate to this policy.  These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data.  We may conduct the audits during regular business hours during the policy period and within three years after the policy ends.  Information developed by audit will be used to determine final premium.  The National Council on Compensation Insurance has the same rights we have under this provision.

Copyright 1986, 1988, 1990 National Council on Compensation Insurance.

Exhibit C - Page 14 of 34

AUTO-OWNERS INSURANCE COMPANY
AUTO-OWNERS LIFE INSURANCE COMPANY
HOME-OWNERS INSURANCE COMPANY
OWNERS INSURANCE COMPANY
PROPERTY-OWNERS INSURANCE COMPANY



*Auto-Owners Insurance*
Life Home Car Business
*The 'No Problem' People®*

# NOTICE OF ELECTION TO ACCEPT AN INSURANCE DEDUCTIBLE
# FOR ILLINOIS WORKERS COMPENSATION MEDICAL BENEFITS

Illinois Law permits an employer to buy Workers Compensation Insurance with a deductible. The deductible is for medical benefits only and applies to each accident. A full description of how the deductible works is printed as a sample endorsement below.

This deductible will reduce your insurance cost by 5.6%.

**If you wish this deductible to apply please complete this form and return it to your agent.**

**If you do not return this form your Workers Compensation policy will continue to provide medical benefits with no deductible as presently written.**

_____     Yes, I want a deductible of $1,000 applied to medical benefits under the Illinois Workers Compensation Law. I understand that the company shall pay the deductible amount and seek reimbursement from the employer shown below.

_____          _____
(Employee, Insured Name)                                      (Policy Number)

_____          _____
(Signature of Owner or Authorized Officer)                 (Date)

---

SAMPLE

### ILLINOIS MEDICAL BENEFITS DEDUCTIBLE ENDORSEMENT
WC 12 06 02 A

**This endorsement applies only to the insurance provided by Part One (Workers Compensation Insurance) because Illinois is shown in item 3.A of the Information Page.**

1. **Part One (Workers Compensation Insurance) applies to medical benefits only in excess of a deductible amount of $1,000. This deductible applies separately to each accident, regardless of the number of persons injured in the accident.**

2. **We will pay the deductible amount for you, but you must reimburse us within 30 days after we send you notice that payment is due. If you fail to reimburse us, we may cancel the policy in accordance with Illinois cancellation law. We may keep the amount of unearned premium that will reimburse us for the payments we made. These rights are in addition to other rights we have to be reimbursed.**

27005 (3-93)

Exhibit C - Page15 of 34

Workers Compensation and Employers Liability Insurance Policy

# DOMESTIC TERRORISM, EARTHQUAKES, AND CATASTROPHIC INDUSTRIAL ACCIDENTS PREMIUM ENDORSEMENT
### WC 00 04 21

This endorsement is notification that your insurance carrier is charging premium to cover the losses that may occur in the event of domestic terrorism, earthquakes and/or a catastrophic industrial accident.

The premium charge provides funding for the risk of earthquakes, catastrophic industrial accidents, and certain acts of domestic and foreign terrorism. It does not provide funding for acts of terrorism certified as such by the Terrorism Risk Insurance Act (TRIA) of 2002, but rather provides funding for all other acts of terrorism specifically excluded by TRIA.

For purposes of this endorsement, the following definitions apply:

Domestic terrorism: All acts of terrorism outside the scope of TRIA with aggregate workers compensation losses in excess of $50 million

Earthquake: The shaking and vibration at the surface of the earth resulting from underground movement along a fault plane of from volcanic activity where aggregate workers compensation losses from the single event are in excess of $50 million

Catastrophic Industrial Accident: Any single event resulting in aggregate workers compensation losses in excess of $50 million

| | Schedule | |
|---|---|---|
| Payroll | Rate | Premium |

© 2004 National Council on Compensation Insurance, Inc.

27306 (10-04)

Exhibit C - Page16 of 34

Workers Compensation and Employers Liability Insurance Policy

# NOTIFICATION ENDORSEMENT OF PENDING LAW CHANGE TO TERRORISM RISK INSURANCE ACT OF 2002
### WC 00 01 12

This endorsement is being sent to you with respect to your workers compensation and employers liability insurance policy. This endorsement does not replace the separate Terrorism Risk Insurance Act Endorsement (WC 00 04 20) that is attached to your current policy and which remains in effect as applicable.

The Terrorism Risk Insurance Act of 2002 (TRIA) took effect on November 26, 2002 and provides for a three-year program under which the Federal Government will share in the payment of insured losses caused by certain acts of terrorism. In the absence of affirmative U.S. Congressional action to extend, update or otherwise reauthorize in whole or in part, TRIA is scheduled to expire December 31, 2005.

Since the timetable for any further Congressional action respecting TRIA is unknown at this time, and the exposure to acts of terrorism remains, we are providing our policyholders with relevant information concerning their workers compensation policies in effect on or after January 1, 2005 in the event of TRIA's expiration.

Your policy provides coverage for workers compensation losses caused by acts of terrorism or war, including workers compensation benefit obligations dictated by state law. Coverage for such losses is still subject to all terms, definitions, exclusions, and conditions in your policy.

**The premium charge for the coverage your policy provides for terrorism or war losses is shown in Item 4 of the Information Page or the Schedule in the Terrorism Risk Insurance Act Endorsement (WC 00 04 20) that is attached to your policy, and this amount may continue or change for new, renewal, and inforce policies in effect on or after December 31, 2005 in the event of TRIA's expiration, subject to regulatory review in accordance with applicable state law.**

You need not do anything further at this time.

© 2004 National Council on Compensation Insurance, Inc.

27305 (8-04)

Exhibit C - Page 17 of 34



# NOTICE TO EMPLOYEES
# FROM THE STATE OF ILLINOIS:

**WORKERS' COMPENSATION** is a system of benefits provided by law to most workers who have job-related injuries or illnesses. Benefits are paid for injuries that are caused, in whole or in part, by an employee's work. This may include the aggravation of a pre-existing condition, injuries brought on by the repetitive use of a part of the body, heart attacks, or any other physical problem caused by work. Benefits are paid regardless of fault.

## IF YOU SUFFER FROM A WORK-RELATED INJURY OR ILLNESS, YOU SHOULD TAKE THE FOLLOWING STEPS:

1. **GET MEDICAL ASSISTANCE.** By law, your employer must pay for all necessary medical services required to cure or relieve the effects of the injury or illness. The employee may choose two physicians, surgeons, or hospitals. Where necessary, the employer must also pay for physical, mental, or vocational rehabilitation, within prescribed limits.

2. **NOTIFY YOUR EMPLOYER.** Notify your employer of the accidental injury or illness within 45 days, either orally or in writing. To avoid possible delays, it is recommended the notice also include your name, address, telephone number, Social Security number, and a brief description of the injury or illness.

3. **LEARN YOUR RIGHTS.** Your employer is required by law to report accidents that result in more than three lost work days to the Industrial Commission. Once the accident is reported, you should receive a handbook that explains the law, benefits, and procedures. If you need a handbook, please call the Industrial Commission.

If you must lose time from work to recover from the injury or illness, you may be entitled to receive ......................................................................................able to return to work that is reasonably

Exhibit C - Page18 of 34

Workers Compensation and Employers Liability Insurance Policy

# PREMIUM DISCOUNT ENDORSEMENT

The standard premium for this policy may be eligible for discount.

The Premium Discount will apply as follows:
    the first $5,000 of standard premium will not receive a discount;
    the balance will receive a discount of 10.9%.

27953 (4-96)

Exhibit C - Page19 of 34

WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

# TERRORISM RISK INSURANCE ACT ENDORSEMENT
### WC 00 04 20

This endorsement addresses requirements of the Terrorism Risk Insurance Act of 2002.

## Definitions

The definitions provided in this endorsement are based on the definitions in the Act and are intended to have the same meaning. If words or phrases not defined in this endorsement are defined in the Act, the definitions in the Act will apply.

"Act" means the Terrorism Risk Insurance Act of 2002, which took effect on November 26, 2002, and any amendments.

"Act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States as meeting all of the following requirements:

a.  The act is an act of terrorism.

b.  The act is violent or dangerous to human life, property or infrastructure.

c.  The act resulted in damage within the United States, or outside of the United States in the case of United States missions or certain air carriers or vessels.

d.  The act has been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States government by coercion.

"Insured terrorism or war loss" means any loss resulting from an act of terrorism (including an act of war, in the case of workers compensation) that is covered by primary or excess property and casualty insurance issued by an insurer if the loss occurs in the United States or at United States missions or to certain air carriers or vessels.

"Insurer deductible" means:

a.  For the period beginning on November 26, 2002 and ending on December 31, 2002, an amount equal to 1% of our direct earned premiums, as provided in the Act, over the calendar year immediately preceding November 26, 2002.

b.  For the period beginning on January 1, 2003 and ending on December 31, 2003, an amount equal to 7% of our direct earned premiums, as provided in the Act, over the calendar year immediately preceding January 1, 2003.

c.  For the period beginning on January 1, 2004 and ending on December 31, 2004, an amount equal to 10% of our direct earned premiums, as provided in the Act, over the calendar year immediately preceding January 1, 2004.

d.  For the period beginning on January 1, 2005 and ending on December 31, 2005, an amount equal to 15% of our direct earned premiums, as provided in the Act, over the calendar year immediately preceding January 1, 2005.

## Limitation of Liability

The Act may limit our liability to you under this policy. If annual aggregate insured terrorism or war losses of all insurers exceed $100,000,000,000 during the applicable period provided in the Act, and if we have met our insurer deductible, the amount we will pay for insured terrorism or war losses under this policy will be limited by the Act, as determined by the Secretary of the Treasury.

Copyright 2002 National Council on Compensation Insurance, Inc.

**Policyholder Disclosure Notice**

1.  Insured terrorism or war losses would be partially reimbursed by the United States Government under a formula established by the Act. Under this formula, the United States Government would pay 90% of our insured terrorism or war losses exceeding our insurer deductible.

2.  The additional premium charged for the coverage this policy provides for insured terrorism or war losses is shown in Item 4 of the Information Page or the Schedule below.

<div align="center"><b>Schedule</b></div>

**State**                                                                    **Rate per $100 of Remuneration**

Exhibit C - Page21 of 34

Copyright 2002 National Council on Compensation Insurance, Inc.

Workers Compensation And Employers Liability Insurance Policy

# ILLINOIS CONTRACTING CLASSIFICATION PREMIUM ADJUSTMENT ENDORSEMENT
### WC 12 04 02

The premium for the policy may be adjusted by an Illinois Contracting Classification Premium Adjustment factor. The factor was not available when the policy was issued. If you qualify, or if an estimated factor has been applied, we will issue an endorsement to show the premium adjustment factor after it is calculated.

27171 (9-92)

Exhibit C - Page22 of 34

Help Us To Help You Reduce Your Insurance Cost

## CONTRACT WORK

The Workers Compensation Law may make you responsible to the employees of a contractor (or subcontractor) doing work for you, unless such contractor (or subcontractor) is operating under the Workers Compensation Act. Your Workers Compensation and Employer's Liability Insurance Policy affords you complete coverage for this liability.

If such contractor (or subcontractor) is operating under the Workers Compensation Act, you should secure satisfactory evidence to that effect, preferably by securing a Certificate of Insurance, to be retained by you and to be available to our payroll auditor at time of audit.

Lack of such evidence requires a statement of wages earned by employees of such contractor (or subcontractor) upon which you may be charged the appropriate premium.

## MINORS

The illegal employment of minors is one source of excessive losses. The laws of many states require that up to triple benefits* be paid to injured employees under 18 years of age unless their employment has been made legal. This may require approval of your state labor department for you to employ minors in the kind of work being done and the minor himself may be required to secure a "working permit". You will want to check with your state authorities to be sure you are in compliance with the law.

\* Triple Benefits: Wisconsin (prohibited work or illegally employed)
Double Benefits: Alabama, Indiana, Michigan, Wisconsin (No Permit)
50% Additional Benefits: Arizona, Illinois, Missouri

### HELP US TO HELP YOU REDUCE YOUR INSURANCE COSTS

2710 (12-83)

Exhibit C - Page23 of 34

Workers Compensation and Employers Liability Insurance Policy

# NOTIFICATION OF CHANGE IN OWNERSHIP ENDORSEMENT
## WC 00 04 14

Experience rating is mandatory for all eligible insureds. The experience rating modification factor, if any, applicable to this policy, may change if there is a change in your ownership or in that of one or more of the entities eligible to be combined with you for experience rating purposes. Change in ownership includes sales, purchases, other transfers, mergers, consolidations, dissolutions, formations of a new entity and other changes provided for in the applicable experience rating plan manual.

You must report any change in ownership to us in writing within 90 days of such change. Failure to report such changes within this period may result in revision of the experience rating modification factor used to determine your premium.

27942 (11-90)

Copyright 1990 National Council on Compensation Insurance.

Exhibit C - Page24 of 34

WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

## PREMIUM DUE DATE ENDORSEMENT
### WC 00 04 19

This endorsement is used to amend:

Section D. of Part Five of the policy is replaced by this provision.

### PART FIVE
### PREMIUM

**D.   Premium** is amended to read:

You will pay all premium when due.  You will pay the premium even if part or all of a workers compensation law is not valid.  **The due date for audit and retrospective premiums is the date of the billing.**

**Notes:**
   1.   This endorsement allows the insurer to comply with the NAIC statement of Statutory Accounting Principles Number 6.
   2.   The date of billing means the date the billing is received by the insured.

© 2000 National Council on Compensation Insurance, Inc.

27279 (1-01)

Exhibit C - Page25 of 34



*Auto-Owners Insurance*
Life Home Car Business
*The "No Problem" People®*

# Workers Compensation and Employers Liability Insurance Policy



*Owners Insurance Company*

## WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY
## QUICK REFERENCE

|  | | BEGINNING ON Page |
|---|---|---|
| **Information Page** | | i |
| **General Section** | | 1 |
| A. | The Policy | 1 |
| B. | Who Is Insured | 1 |
| C. | Workers Compensation Law | 1 |
| D. | State | 1 |
| E. | Locations | 1 |
| **PART ONE — WORKERS COMPENSATION INSURANCE** | | 1 |
| A. | How This Insurance Applies | 1 |
| B. | We Will Pay | 1 |
| C. | We Will Defend | 1 |
| D. | We Will Also Pay | 1 |
| E. | Other Insurance | 2 |
| F. | Payments You Must Make | 2 |
| G. | Recovery From Others | 2 |
| H. | Statutory Provisions | 2 |
| **PART TWO — EMPLOYERS LIABILITY INSURANCE** | | 2 |
| A. | How This Insurance Applies | 2 |
| B. | We Will Pay | 2 |
| C. | Exclusions | 3 |
| D. | We Will Defend | 3 |
| E. | We Will Also Pay | 3 |
| F. | Other Insurance | 4 |
| G. | Limits of Liability | 4 |
| H. | Recovery From Others | 4 |
| I. | Actions Against Us | 4 |
| **PART THREE — OTHER STATES INSURANCE** | | 4 |
| A. | How This Insurance Applies | 4 |
| B. | Notice | 4 |
| **PART FOUR — YOUR DUTIES IF INJURY OCCURS** | | 4 |
| **PART FIVE — PREMIUM** | | 5 |
| A. | Our Manuals | 5 |
| B. | Classifications | 5 |
| C. | Remuneration | 5 |
| D. | Premium Payments | 5 |
| E. | Final Premium | 5 |
| F. | Records | 5 |
| G. | Audit | 5 |
| **PART SIX — CONDITIONS** | | 6 |
| A. | Inspection | 6 |
| B. | Long Term Policy | 6 |
| C. | Transfer of Your Rights and Duties | 6 |
| D. | Cancelation | 6 |
| E. | Sole Representative | 6 |

**IMPORTANT:** This Quick Reference is **not** part of the Workers Compensation and Employers Liability Insurance Policy, and does **not** provide coverage. Refer to the Workers Compensation and Employers Liability Insurance Policy itself for actual contractual provisions.

PLEASE READ THE WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY CAREFULLY

Includes material of the National Council on Compensation Insurance, Copyright 1991, used with its permission.

Exhibit C - Page 27 of 34

# WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

In return for the payment of the premium and subject to all terms of this policy, we agree with you as follows:

## GENERAL SECTION

### A. The Policy

This policy includes at its effective date the Information Page and all endorsements and schedules listed there. It is a contract of insurance between you (the employer named in Item 1 of the Information Page) and us (the insurer named on the Information Page). The only agreements relating to this insurance are stated in this policy. The terms of this policy may not be changed or waived except by endorsement issued by us to be part of this policy.

### B. Who Is Insured

You are insured if you are an employer named in Item 1 of the Information Page. If that employer is a partnership, and if you are one of its partners, you are insured, but only in your capacity as an employer of the partnership's employees.

### C. Workers Compensation Law

Workers Compensation Law means the workers or workmen's compensation law and occupational disease law of each state or territory named in Item 3.A. of the Information Page. It includes any amendments to that law which are in effect during the policy period. It does not include any federal workers or workmen's compensation law, any federal occupational disease law or the provisions of any law that provide nonoccupational disability benefits.

### D. State

State means any state of the United States of America, and the District of Columbia.

### E. Locations

This policy covers all of your workplaces listed in Items 1 or 4 of the Information Page; and it covers all other workplaces in Item 3.A. states unless you have other insurance or are self-insured for such workplaces.

## PART ONE — WORKERS COMPENSATION INSURANCE

### A. How This Insurance Applies

This workers compensation insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. Bodily injury by accident must occur during the policy period.

2. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

### B. We Will Pay

We will pay promptly when due the benefits required of you by the workers compensation law.

### C. We Will Defend

We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance. We have the right to investigate and settle these claims, proceedings or suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.

### D. We Will Also Pay

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding or suit we defend:

1. reasonable expenses incurred at our request, but not loss of earnings;

2. premiums for bonds to release attachments and for appeal bonds in bond amounts up to the amount payable under this insurance;

3. litigation costs taxed against you;

4. interest on a judgment as required by law until we offer the amount due under this insurance; and

5. expenses we incur.

1

Exhibit C - Page28 of 34

E. **Other Insurance**

We will not pay more than our share of benefits and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that may apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance will be equal until the loss is paid.

F. **Payments You Must Make**

You are responsible for any payments in excess of the benefits regularly provided by the workers compensation law including those required because:

1. of your serious and willful misconduct;

2. you knowingly employ an employee in violation of law;

3. you fail to comply with a health or safety law or regulation; or

4. you discharge, coerce or otherwise discriminate against any employee in violation of the workers compensation law.

If we make any payments in excess of the benefits regularly provided by the workers compensation law on your behalf, you will reimburse us promptly.

G. **Recovery From Others**

We have your rights, and the rights of persons entitled to the benefits of this insurance, to recover your payments from anyone liable for the injury. You will do everything necessary to protect those rights for us and to help us enforce them.

H. **Statutory Provisions**

These statements apply where they are required by law.

1. As between an injured worker and us, we have notice of the injury when you have notice.

2. Your default or the bankruptcy or insolvency of you or your estate will not relieve us of our duties under this insurance after an injury occurs.

3. We are directly and primarily liable to any person entitled to the benefits payable by this insurance. Those persons may enforce our duties; so may an agency authorized by law. Enforcement may be against us or against you and us.

4. Jurisdiction over you is jurisdiction over us for purposes of the workers compensation law. We are bound by decisions against you under that law, subject to the provisions of this policy that are not in conflict with that law.

5. This insurance conforms to the parts of the workers compensation law that apply to:

   a. benefits payable by this insurance; or

   b. special taxes, payments into security or other special funds, and assessments payable by us under that law.

6. Terms of this insurance that conflict with the workers compensation law are changed by this statement to conform to that law.

Nothing in these paragraphs relieves you of your duties under this policy.

## PART TWO — EMPLOYERS LIABILITY INSURANCE

A. **How This Insurance Applies**

This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. The bodily injury must arise out of and in the course of the injured employee's employment by you.

2. The employment must be necessary or incidental to your work in a state or territory listed in Item 3.A. of the Information Page.

3. Bodily injury by accident must occur during the policy period.

4. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such

bodily injury by disease must occur during the policy period.

5. If you are sued, the original suit and any related legal actions for damages for bodily injury by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

B. **We Will Pay**

We will pay all sums you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance.

The damages we will pay, where recovery is permitted by law, include damages:

1. for which you are liable to a third party by rea-

2

son of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee;

2. for care and loss of services; and

3. for consequential bodily injury to a spouse, child, parent, brother or sister of the injured employee;

provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by you; and

4. because of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

## C. Exclusions

This insurance does not cover:

1. liability assumed under a contract. This exclusion does not apply to a warranty that your work will be done in a workmanlike manner;

2. punitive or exemplary damages because of bodily injury to an employee employed in violation of law;

3. bodily injury to an employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your executive officers;

4. any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

5. bodily injury intentionally caused or aggravated by you;

6. bodily injury occurring outside the United States of America, its territories or possessions, and Canada. This exclusion does not apply to bodily injury to a citizen or resident of the United States of America or Canada who is temporarily outside these countries;

7. damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions;

8. bodily injury to any person in work subject to the Longshore and Harbor Workers' Compensation Act (33 USC Sections 901—950), the Nonappropriated Fund Instrumentalities Act (5

USC Sections 8171—8173), the Outer Continental Shelf Lands Act (43 USC Sections 1331—1356), the Defense Base Act (42 USC Sections 1651—1654), the Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901—942), any other federal workers or workmen's compensation law or other federal occupational disease law, or any amendments to these laws;

9. bodily injury to any person in work subject to the Federal Employers' Liability Act (45 USC Sections 51—60), any other federal laws obligating an employer to pay damages to an employee due to bodily injury arising out of or in the course of employment, or any amendments to those laws;

10. bodily injury to a master or member of the crew of any vessel;

11. fines or penalties imposed for violation of federal or state law; and

12. damages payable under the Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801—1872) and under any other federal law awarding damages for violation of those laws or regulations issued thereunder, and any amendments to those laws.

## D. We Will Defend

We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance.

## E. We Will Also Pay

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding, or suit we defend:

1. reasonable expenses incurred at our request, but not loss of earnings;

2. premiums for bonds to release attachments and for appeal bonds in bond amounts up to the limit of our liability under this insurance;

3. litigation costs taxed against you;

4. interest on a judgment as required by law until we offer the amount due under this insurance; and

5. expenses we incur.

3

Includes material of the National Council on Compensation Insurance. Copyright 1991, used with its permission.

Exhibit C - Page30 of 34

F. **Other Insurance**

We will not pay more than our share of damages and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance and self-insurance will be equal until the loss is paid.

G. **Limits of Liability**

Our liability to pay for damages is limited. Our limits of liability are shown in Item 3.B. of the Information Page. They apply as explained below.

1. Bodily Injury by Accident. The limit shown for "bodily injury by accident — each accident" is the most we will pay for all damages covered by this insurance because of bodily injury to one or more employees in any one accident.

   A disease is not bodily injury by accident unless it results directly from bodily injury by accident.

2. Bodily Injury by Disease. The limit shown for "bodily injury by disease — policy limit" is the most we will pay for all damages covered by this insurance and arising out of bodily injury by disease, regardless of the number of employees who sustain bodily injury by disease. The limit shown for "bodily injury by disease — each employee" is the most we will pay for all

damages because of bodily injury by disease to any one employee.

Bodily injury by disease does not include disease that results directly from a bodily injury by accident.

3. We will not pay any claims for damages after we have paid the applicable limit of our liability under this insurance.

H. **Recovery From Others**

We have your rights to recover our payment from anyone liable for an injury covered by this insurance. You will do everything necessary to protect those rights for us and to help us enforce them.

I. **Actions Against Us**

There will be no right of action against us under this insurance unless:

1. You have complied with all the terms of this policy; and

2. The amount you owe has been determined with our consent or by actual trial and final judgment.

This insurance does not give anyone the right to add us as a defendant in an action against you to determine your liability. The bankruptcy or insolvency of you or your estate will not relieve us of our obligations under this Part.

## PART THREE — OTHER STATES INSURANCE

A. **How This Insurance Applies**

1. This other states insurance applies only if one or more states are shown in Item 3.C. of the Information Page.

2. If you begin work in any one of those states after the effective date of this policy and are not insured or are not self-insured for such work, all provisions of the policy will apply as though that state were listed in Item 3.A. of the Information Page.

3. We will reimburse you for the benefits required by the workers compensation law of that state if

we are not permitted to pay the benefits directly to persons entitled to them.

4. If you have work on the effective date of this policy in any state not listed in Item 3.A. of the Information Page, coverage will not be afforded for that state unless we are notified within thirty days.

B. **Notice**

Tell us at once if you begin work in any state listed in Item 3.C. of the Information Page.

## PART FOUR — YOUR DUTIES IF INJURY OCCURS

Tell us at once if injury occurs that may be covered by this policy. Your other duties are listed here.

1. Provide for immediate medical and other services required by the workers compensation law.

2. Give us or our agent the names and addresses of the injured persons and of witnesses, and other information we may need.

3. Promptly give us all notices, demands and legal papers related to the injury, claim, pro-

4

Includes material of the National Council on Compensation Insurance. Copyright 1991. used with its permission.

Exhibit C - Page31 of 34

ceeding or suit.

4. Cooperate with us and assist us, as we may request, in the investigation, settlement or defense of any claim, proceeding or suit.

5. Do nothing after an injury occurs that would

interfere with our right to recover from others.

6. Do not voluntarily make payments, assume obligations or incur expenses, except at your own cost.

# PART FIVE — PREMIUM

## A. Our Manuals

All premium for this policy will be determined by our manuals of rules, rates, rating plans and classifications. We may change our manuals and apply the changes to this policy if authorized by law or a governmental agency regulating this insurance.

## B. Classifications

Item 4 of the Information Page shows the rate and premium basis for certain business or work classifications. These classifications were assigned based on an estimate of the exposures you would have during the policy period. If your actual exposures are not properly described by those classifications, we will assign proper classifications, rates and premium basis by endorsement to this policy.

## C. Remuneration

Premium for each work classification is determined by multiplying a rate times a premium basis. Remuneration is the most common premium basis. This premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of:

1. all your officers and employees engaged in work covered by this policy; and

2. all other persons engaged in work that could make us liable under Part One (Workers Compensation Insurance) of this policy. If you do not have payroll records for these persons, the contract price for their services and materials may be used as the premium basis. This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured their workers compensation obligations.

## D. Premium Payments

You will pay all premium when due. You will pay the premium even if part or all of a workers compensation law is not valid.

## E. Final Premium

The premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance. If it is less, we will refund the balance to you. The final premium will not be less than the highest minimum premium for the classifications covered by this policy.

If this policy is canceled, final premium will be determined in the following way unless our manuals provide otherwise:

1. If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the minimum premium.

2. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force, and increased by our short-rate cancelation table and procedure. Final premium will not be less than the minimum premium.

## F. Records

You will keep records of information needed to compute premium. You will provide us with copies of those records when we ask for them.

## G. Audit

You will let us examine and audit all your records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data. We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium. Insurance rate service organizations have the same rights we have under this provision.

5

Includes material of the National Council on Compensation Insurance. Copyright 1991. used with its permission.

Exhibit C - Page32 of 34

## PART SIX — CONDITIONS

### A. Inspection

We have the right, but are not obliged to inspect your workplaces at any time. Our inspections are not safety inspections. They relate only to the insurability of the workplaces and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person to provide for the health or safety of your employees or the public. We do not warrant that your workplaces are safe or healthful or that they comply with laws, regulations, codes or standards. Insurance rate service organizations have the same rights we have under this provision.

### B. Long Term Policy

If the policy period is longer than one year and sixteen days, all provisions of this policy will apply as though a new policy were issued on each annual anniversary that this policy is in force.

### C. Transfer of Your Rights and Duties

Your rights or duties under this policy may not be transferred without our written consent.

If you die and we receive notice within thirty days after your death, we will cover your legal representative as insured.

### D. Cancelation

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancelation is to take effect.

2. We may cancel this policy. We must mail or deliver to you not less than ten days advance written notice stating when the cancelation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Information Page will be sufficient to prove notice.

3. The policy period will end on the day and hour stated in the cancelation notice.

4. Any of these provisions that conflict with a law that controls the cancelation of the insurance in this policy is changed by this statement to comply with the law.

### E. Sole Representative

The insured first named in Item 1 of the Information Page will act on behalf of all insureds to change this policy, receive return premium, and give or receive notice of cancelation.

WC 00 00 00 A

Exhibit C - Page 34
Includes copyrighted material of the National Council on Compensation Insurance, Copyright 1991, used with its permission.

In witness whereof, we, the Owners Insurance Company, have caused this policy to be issued and to be duly signed by our President and Secretary.

Secretary

President

JUDGE SHADUR
MAGISTRATE JUDGE COLE
EDA

# PLEADING EXHIBIT D

STATE OF ILLINOIS      )
                        )      SS          Attorney No. 58500
COUNTY OF DuPAGE       )

IN THE CIRCUIT COURT FOR THE EIGHTEENTH JUDICIAL CIRCUIT
DuPAGE COUNTY, ILLINOIS

MICHAEL EHRHARDT                    )
                                     )
          Plaintiff,                 )
                                     )
vs.                                  )        Case No.  07 L 153
                                     )
COMPLETE MECHANICAL SERVICES,        )
                                     )
          Defendant.                 )

*Chris Kachiroubas*
****Electronically Filed****
Transaction Id: 1017488
2007L 000153
01/22/2008
KIM FRANCO
************************

## PLAINTIFF'S THIRD AMENDED COMPLAINT AT LAW

NOW COMES your Plaintiff, MICHAEL EHRHARDT, by and through his attorneys, MIRABELLA, KINCAID, FREDERICK & MIRABELLA, P.C., and complains of the Defendant, COMPLETE MECHANICAL SERVICES as follows:

### JURISDICTION AND VENUE

1.    Plaintiff, MICHAEL EHRHARDT (hereinafter "MICHAEL"), is and was at all relevant times herein, a resident of DuPage County, Illinois.

2.    Defendant, COMPLETE MECHANICAL SERVICES (hereinafter "CMS") is a business in Illinois and was at all relevant times herein doing business in Illinois.

3.    That all of the transactions herein, which form the basis of the Plaintiff's claims, occurred within the State of Illinois.

<u>GENERAL FACTS</u>

4.      From on or about July 11, 2005 through on or about March 5, 2006, MICHAEL was

employed at CMS in St. Charles, Illinois, first as a sheet metal pre-apprentice and then as a sheet

metal apprentice.

5.      During his employment with CMS, MICHAEL'S immediate supervisor at all times

was THOMAS FLYNN (hereinafter "FLYNN"). FLYNN'S direct supervisor was the owner of

CMS, Mike Wagner.

6.      That as MICHAEL'S immediate supervisor, FLYNN acted under the express

authority granted to him by the owner of CMS, and had the express authority to discipline, train and

otherwise control the terms and conditions of MICHAEL'S employment.

<div align="center">COUNT I</div>

<div align="center"><u>ASSAULT</u></div>

7.      During MICHAEL'S employment with CMS, he was subjected to a pattern of

abusive actions by FLYNN, in FLYNN'S capacity as a supervisor of CMS, with the specific intent

of FLYNN and upon information and belief, the specific intent and authorization of the owner of

CMS, to injure MICHAEL, and which put MICHAEL in apprehension of an immediate battery,

which included <u>but was not limited</u> to the following acts:

A.      On or about July 11, 2005, FLYNN requested that MICHAEL look at the

top of a hammer, when MICHAEL did, FLYNN purposely released the hammer head so it would

swing down and hit MICHAEL on his penis;

B.      On or about July 11, 2005, FLYNN was holding a tape measure that he

requested MICHAEL to look at the arrows, when MICHAEL did, FLYNN purposely released

part of the tape measure so it would swing down and it hit MICHAEL in his testicles;

<div align="center">-2-</div>

C.    While putting together gutters, MICHAEL was bent over and FLYNN very quietly, snuck up behind MICHAEL and stood so close to him that they were touching. FLYNN then stated to MICHAEL that he was going to "fuck him in the ass." This event occurred several different times over a course of months whenever MICHAEL was bent over working on projects that FLYNN had assigned to him;

D.    On several occasions, FLYNN would grab MICHAEL'S nipples and twist, causing MICHAEL great pain and discomfort for the amusement of other CMS employees; and,

E.    In late January 2006, FLYNN came up behind MICHAEL and stuck his finger into MICHAEL'S right ear and twisted his finger, and pulled it out, and yelled "Wet Willy," to the amusement of other CMS employees.

8.    That upon information and belief, FLYNN'S aforementioned actions toward MICHAEL were done with the express authorization and knowledge of the owner of CMS.

9.    That upon information and belief the owner of CMS directed and instructed FLYNN to use the aforementioned actions to control MICHAEL'S work environment in order to toughen MICHAEL up during his apprentice program that CMS was sponsoring him through and to help ensure that MICHAEL was strong enough to fit into the career of a sheet metal worker.

10.    That the aforementioned actions of FLYNN continued openly and publicly for numerous months such that owner of CMS was aware of FLYNN'S conduct towards MICHAEL, and upon information and belief, both tolerated and accepted FLYNN'S behavior and the intended consequences of same.

11.    As an apprentice MICHAEL was not allowed to terminate his employment with

CMS per Union policy, which provides that if an apprentice terminates their employment they would be kicked out of the Union. Knowing of this policy, upon information and belief, the owner of CMS directed FLYNN to act as the alter ego of the company with the specific intent to harass MICHAEL to test whether he was strong enough to endure the abuse or quit the trade.

12.    When MICHAEL could no longer emotionally tolerate the abuse and his efforts to stop FLYNN on his own were futile, he informed other members of CMS above him and ultimately the owner of CMS that based upon doctors orders he could not return to work unless the abuse would stop and FLYNN was removed.

13.    Rather than taking any action to prevent FLYNN'S behavior, MICHAEL was told to simply punch FLYNN in the face and that the ball was in his court if he wanted it to stop.

14.    Upon information and belief, because the owner of CMS intended and authorized FLYNN to assault MICHAEL in order to toughen him up, the owner of CMS never took any action to prevent FLYNN from assaulting MICHAEL, such that MICHAEL was ultimately forced to leave his employment with CMS.

15.    CMS made no effort to stop FLYNN'S tortuous actions and refused to terminate or otherwise discipline FLYNN in any manner for his conduct towards MICHAEL because upon information and belief, FLYNN was acting under the direction of the owner of CMS.

16.    As a result of FLYNN'S conduct as the alter ego of CMS, MICHAEL suffered damages, including but not limited to lost wages, severe emotional distress, severe pain and suffering, severe humiliation, damage to professional and personal reputation and severe stress.

WHEREFORE, your Plaintiff, MICHAEL EHRHARDT, respectfully prays unto this Honorable Court to find in favor of the Plaintiff and issue judgment against the Defendant, COMPLETE MECHANICAL SERVICES, under Count I, as follows:

A.      Compensatory damages for the humiliation, emotional distress, pain and suffering caused as a direct and proximate result of the assaults by FLYNN, as the alter ego of CMS, in an amount not less than FIFTY THOUSAND DOLLARS ($50,000.00);

B.      Punitive damages in an amount not less than FIFTY THOUSAND DOLLARS ($50,000.00); and,

C.      Such further relief as is equitable and just.

## COUNT II

## BATTERY

17.    The Plaintiff, MICHAEL EHRHARDT, repeats and re-alleges the allegations contained in Paragraphs 7 through 16 of Count I with the same force and effect as if herein stated.

18.    During MICHAEL'S employment with CMS he was subjected to a pattern of abusive actions by FLYNN, in his capacity as the alter ego of CMS, with the specific intent to injure, which resulted in uninvited physical contact with his person as more specifically set forth in Paragraph 7 of Count I.

WHEREFORE, your Plaintiff, MICHAEL EHRHARDT, respectfully prays unto this Honorable Court to find in favor of the Plaintiff and issue judgment against the Defendant, COMPLETE MECHANICAL SERVICES, under Count II, as follows:

A.      Compensatory damages for the humiliation, emotional distress, pain and suffering and physical distress caused as a direct and proximate result of the battery by FLYNN, as the alter ego of CMS, in an amount not less than FIFTY THOUSAND DOLLARS ($50,000.00);

B.      Punitive damages in an amount not less than FIFTY THOUSAND DOLLARS ($50,000.00); and

C.      Such further relief as is equitable and just.

COUNT III

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

19.    The Plaintiff, MICHAEL EHRHARDT, repeats and re-alleges the allegations contained in Paragraphs 7 through 18 of Counts I and II with the same force and effect as if herein stated.

20.    During MICHAEL'S employment with CMS he was subjected to an ongoing pattern of extreme and outrageous actions by FLYNN, in his capacity as the alter ego of CMS, with the specific intent to injure which resulted in severe emotional distress to MICHAEL, as more specifically set forth in Paragraph 7 of Count I.

21.    That in addition to the specific acts set forth in Paragraph 7 of Count I, FLYNN committed the following acts upon MICHAEL in his capacity as the alter ego of CMS pursuant to the supervisory and managerial authorities granted to him by the owner of CMS:

     A.    Instead of calling MICHAEL by his name, FLYNN publicly referred to MICHAEL as "Ophelia", "Amelia" or his "bitch";

     B.    Repeatedly throughout MICHAEL'S employment with CMS, FLYNN would openly point at objects and compare it to his penis size and then to further embarrass and humiliate MICHAEL, he would point at a smaller object and say to MICHAEL that it was the size of his penis;

     C.    Throughout MICHAEL'S employment at CMS, FLYNN would state to MICHAEL that he should, "put on red lipstick and give him a blow-job," on almost a daily basis, to openly embarrass and humiliate MICHAEL;

     D.    On many occasions, FLYNN asked MICHAEL, "do you eat pussy" and "do you eat your girlfriend out." FLYNN made several comments that MICHAEL should

engage in these sexual acts and then FLYNN would openly tease MICHAEL by making comments to the other employees that "Ophelia does not eat pussy";

E.   On a regular and frequent basis, in an effort to humiliate MICHAEL, FLYNN would state to MICHAEL: "it's okay Mike, you can experiment on me, do you want to go first or second?";

F.   On one occasion, FLYNN asked MICHAEL why he looked so sad. In response, MICHAEL stated that his parents had an argument.  To embarrass MICHAEL in front of others, FLYNN then publicly responded that, "If his parents were not getting along, it was because his dad wasn't eating out his mom good enough";

G.   On one occasion, FLYNN wrote on MICHAEL'S union card,  "Pussy Eater";

H.   On numerous occasions when MICHAEL would ask FLYNN what his next assignment was, FLYNN would move aside his work apron and tell MICHAEL to "give him a blow job";

I.   On one occasion, FLYNN asked MICHAEL if he, "whacked off in the shower." Shortly after this conversation, FLYNN was telling other employees that, "MICHAEL jerks off into a shampoo bottle";

22.   That upon information and belief, FLYNN'S aforementioned actions and conduct towards MICHAEL were done with the express authorization and knowledge of the owner of CMS.

23.   The extreme and outrageous actions perpetrated by FLYNN, in his capacity as a the alter ego of CMS, was done with the specific intent to cause severe emotional distress and create intolerable working conditions for MICHAEL.

24.     That FLYNN'S extreme and outrageous actions as the alter ego of CMS, did in fact cause severe emotional distress and created intolerable working conditions for MICHAEL.

WHEREFORE, your Plaintiff, MICHAEL EHRHARDT, respectfully prays unto this Honorable Court to find in favor of the Plaintiff and issue judgment against the Defendant, COMPLETE MECHANICAL SERVICES, under Count III, as follows:

A.      Compensatory damages for the extreme humiliation, severe emotional distress, pain and suffering and physical distress caused as a direct and proximate result of the intentional infliction of emotional distress by FLYNN, as the alter ego of CMS, in an amount not less than FIFTY THOUSAND DOLLARS ($50,000.00);

B.      Punitive damages in an amount not less than FIFTY THOUSAND DOLLARS ($50,000.00); and

C.      Such further relief as is equitable and just.

Respectfully Submitted,

By: _____
George S. Frederick, one of Plaintiff's attorneys

STATE OF ILLINOIS          )
                           ) SS.
COUNTY OF DuPAGE           )

### AFFIDAVIT

**MICHAEL EHRHARDT**, being duly sworn on oath, deposes and states that he is the

Plaintiff in the above-captioned matter; that he has read the foregoing **Third Amended Complaint**

by him subscribed; and that the contents contained therein are true and correct.

_____
MICHAEL EHRHARDT

SUBSCRIBED and SWORN to
before me this 21st day
of January , 2008.

_____
Notary Public

> OFFICIAL SEAL
> MELISSA M FORMENTI
> NOTARY PUBLIC, STATE OF ILLINOIS
> MY COMMISSION EXPIRES 03/12/08

In compliance with Illinois Supreme Court Rule 1-137 as amended, counsel for the Plaintiff

affixes his signature hereto and on information and belief is of the opinion that the foregoing is true

and accurate.

_____
George S. Frederick

Mirabella, Kincaid, Frederick & Mirabella, P.C.
DuPage County Attorney No. 58500
1737 S. Naperville Rd, Suite 100
Wheaton, IL  60187
(630) 665-7300
S:\GSF\Ehrhardt, Michael\Complaint.amended.3rd.doc

STATE OF ILLINOIS     )
                             ) SS

COUNTY OF DUPAGE    )

### IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
### DUPAGE COUNTY, WHEATON, ILLINOIS

| | | |
|---|---|---|
| MICHAEL EHRHARDT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  07 L 153 |
| | ) | |
| COMPLETE MECHANICAL SERVICES, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

*Chris Kachiroubas*
****Electronically Filed****
Transaction Id: 1017488
2007L 000153
01/22/2008
KIM FRANCO
*************************

### NOTICE OF FILING

To:    Mr. Cornelius Riordan, Riordan, Donnelly, Lipinski & McKee, Ltd., 10 North Dearborn Street, Fourth Floor, Chicago, IL 60602

Judge French, 505 N. County Farm Road, Wheaton, Illinois 60187
(hand delivered)

      PLEASE TAKE NOTICE that on the 22nd day of **January, 2008**, we filed with the Clerk of the Circuit Court of the Eighteenth Judicial Circuit, in the DuPage County Judicial Center, 505 N. County Farm Road, Wheaton, Illinois, the attached **Plaintiff's Third Amended Complaint at Law**. Copies of which are hereby served upon you.

Mirabella, Kincaid, Frederick & Mirabella, P.C.
DuPage County Attorney No. 58500
1737 S. Naperville Rd., Ste. 100
Wheaton, IL 60187
(630) 665-7300

George S. Frederick

### PROOF OF SERVICE

      I, the undersigned, on oath, state I served this Notice by mailing a copy to the above-mentioned person at the address shown above, by depositing the same, with proper postage prepaid, in the U.S. Mail at Wheaton, Illinois on the 22nd day of **January, 2008**.

Melissa Formenti

SUBSCRIBED and SWORN to
before me this 22nd day
of January, 2008.

Notary Public

**"OFFICIAL SEAL"**
A. Ramirez Jr.
Notary Public, State of Illinois
My Commission Expires 7/27/09

# PLEADING EXHIBIT E

REVIEWED

NOV - 5 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

MICHAEL EHRHARDT,                              )
                                               )
           PLAINTIFF,                          )
                                               )
VS.                                                     **07CV6246**
                                                    **JUDGE SHADUR**
COMPLETE MECHANICAL SERVICES,                       **MAG. JUDGE COLE**
                                               
           DEFENDANT.                          
                                               )

## COMPLAINT

### SEXUAL HARASSMENT AND RETALIATION

*(TRIAL BY JURY DEMANDED)*

NOW COMES THE PLAINTIFF, MICHAEL EHRHARDT, by his attorneys, the Law

Firm of MIRABELLA, KINCAID, FREDERICK & MIRABELLA, P.C, and seeks redress for

sexual harassment and retaliation suffered by Plaintiff in violation of the laws of the United

States in his capacity as an employee of the Defendant, and in support thereof states as follows:

### JURISDICTION AND VENUE

1.      Jurisdiction of this court is invoked and authorized pursuant to Title VII of the

Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.

### PLAINTIFF

2.      PLAINTIFF, MICHAEL EHRHARDT, (hereinafter "MICHAEL EHRHARDT")

is a male citizen, residing at 478 N. Blackhawk Drive, Carol Stream, Illinois, in the United States

who was employed by DEFENDANT, COMPLETE MECHANICAL SERVICES, beginning on

or about July 11, 2005 through on or about March 5, 2006, in the city of St. Charles, in which all

of the unlawful employment practices alleged below were committed, in the State of Illinois,
within the Northern District thereof.

<div align="center">DEFENDANT</div>

3.    DEFENDANT, COMPLETE MECHANICAL SERVICES, (hereinafter referred
to as "CMS") an "employer" with more than 15 employees in the State of Illinois, within the
meaning of Title VII as amended, is qualified to do business and actually doing business in the
State of Illinois and CMS conduct of which MICHAEL EHRHARDT'S claims are based
occurred in the State of Illinois, within the Northern District thereof.

<div align="center">EXHAUSTION OF ADMINISTRATIVE REMEDIES</div>

4.    MICHAEL EHRHARDT filed a timely Charge of Discrimination with the Equal
Employment Opportunity Commission (hereinafter EEOC Charge #21BA61890) and the Illinois
Department of Human Rights (hereinafter IDHR Charge #2006CF3219)(a copy of which is
attached hereto and incorporated herein as Exhibit A). After the passage of more than 180 days, a
request for the issuance of a Right To Sue Notice was timely made upon the EEOC. Both
administrative agencies have had jurisdiction of the Plaintiff's claims for a period well in excess
of 180 days, have been unable to negotiate a settlement and have not issued final decisions to
date. On September 20, 2007, MICHAEL EHRHARDT received his Right To Sue Notice, a copy
of which is attached hereto and incorporated herein as Exhibit B.

<div align="center">JURY TRIAL DEMANDED</div>

5.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure MICHAEL
EHRHARDT hereby demands a trial by jury.

<div align="center">-2-</div>

COUNT I
## HOSTILE ENVIRONMENT SEXUAL HARASSMENT
*(Hostile Environment Sexual Harassment in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000(e)-(2)(a)(1))*

1.    MICHAEL EHRHARDT, a male, is a protected person under Title VII of the Civil Rights Act of 1964.

2.    From July 11, 2005 through the date of filing, MICHAEL EHRHARDT was employed at COMPLETE MECHANICAL SERVICES in St. Charles, Illinois, as a sheet metal apprentice earning $14.46 per hour, plus $16.00 per hour in additional benefits once he became an apprentice in September 2005.

3.    During MICHAEL EHRHARDT'S employment with CMS, he was subjected to unwelcome, offensive, physical and verbal sexual harassment based upon his sex, from his supervisor, FLYNN, which included but was not limited to the following:

A.    On or about July 11, 2005, FLYNN requested that MICHAEL look at the top of a hammer, when MICHAEL did, FLYNN purposely released the hammer head so it would swing down and actually hit MICHAEL on the tip of his penis;

B.    On or about July 11, 2005, FLYNN was holding a tape measure that he requested that MICHAEL look at the arrows, when MICHAEL did, FLYNN purposely released part of the tape measure so it would swing down and it hit MICHAEL in the testicles;

C.    During MICHAEL'S employment with CMS, instead of calling MICHAEL by his name, FLYNN constantly referred to MICHAEL as "Ophelia", "Amelia" or his "bitch;"

D.    Throughout MICHAEL'S employment with CMS, FLYNN would point at objects and compare it to his penis size and then point at a smaller object and say to MICHAEL

-3-

that it was the size of his penis. FLYNN would touch machines with long handles, and say "hey Ophelia, like this big." FLYNN would also say to MICHAEL, "it is unusual for a guy to have brains, good looks and a big dick;"

   E. Throughout MICHAEL'S employment, on almost a daily basis FLYNN stated to MICHAEL that he should, "put on red lipstick and give him a blow-job;"

   F. On many occasions, FLYNN asked MICHAEL, "do you eat pussy" and "do you eat your girlfriend out." FLYNN made several comments that MICHAEL should engage in these sexual acts, then FLYNN would make comments to the other employees that "Ophelia does not eat pussy;"

   G. On a regular and frequent basis, FLYNN would state to MICHAEL, "it's okay Mike, you can experiment on me, do you want to go first or second?";

   H. On a regular basis FLYNN would state to MICHAEL comments about "fucking him in the ass;"

   I. On one occasion, FLYNN asked MICHAEL why he looked so sad. In response, MICHAEL stated that his parents had an argument. FLYNN stated to MICHAEL that, "if his parents were not getting along, it was because his dad wasn't eating out his mom good enough;"

   J. Whenever MICHAEL would ask supervisor, FLYNN, what he should do next, instead of giving him direction for work, FLYNN would move aside his work apron and tell MICHAEL to "give him a blow job;"

   K. While putting together gutters, MICHAEL was bent over. FLYNN very quietly, snuck up behind MICHAEL and stood so close to him that they were touching. FLYNN

-4-

then stated to MICHAEL that he was going to "fuck him in the ass." This event occurred several different times whenever MICHAEL was bent over working on projects.

        L.    On several occasions, FLYNN would grab MICHAEL'S nipples and twist, causing MICHAEL great pain and discomfort;

        M.    In late January 2006, FLYNN came up behind MICHAEL and stuck his finger into MICHAEL'S right ear and twisted his finger, and pulled it out, and yelled "Wet Willy." As FLYNN walked away, MICHAEL could feel the moisture and wetness in his ear and his ear hurt; and,

        N.    On one occasion, FLYNN asked MICHAEL if he, "whacked off in the shower." Shortly after this conversation, FLYNN was telling other employees that, "MICHAEL jerks off into a shampoo bottle."

        4.    The offensive unwelcome sexual harassment by supervisor, FLYNN, had the effect of and did create an intimidating, hostile and offensive working environment for MICHAEL EHRHARDT.

        5.    That supervisor, FLYNN'S, unwelcome sexual harassment and verbal and physical abuse was sufficiently severe and pervasive such that it created an intimidating, hostile and offensive working environment for MICHAEL EHRHARDT.

        6.    As a direct result of RESPONDENTS' unwelcome offensive sexual harassment, MICHAEL EHRHARDT suffered damages, including but not limited to, lost wages, severe emotional distress, severe pain and suffering, severe humiliation, damage to professional and personal reputation and severe stress.

        WHEREFORE, Plaintiff, MICHAEL EHRHARDT, respectfully requests under Count I, a judgment against the Defendant, CMS, as follows:

A.      Compensatory damages for back pay, front pay, bonus and interest thereon;

B.      Compensatory damages for the severe humiliation, severe emotional stress, pain and suffering and physical distress caused as a direct and proximate result of CMS' unwelcome, offensive, sexual harassment and intimidating, hostile and offensive working environment, in an amount no less than $100,000.00;

C.      Punitive damages in an amount no less than $100,000.00;

D.      A reasonable attorney's fee;

E.      Costs; and,

F.      Such further relief as is equitable and just.

## COUNT II
## RETALIATION
*(Retaliation in violation of Title VII of the Civil Rights Act of 1964,*
*as amended 42 U.S.C. § 2000e-3)*

7.      MICHAEL EHRHARDT repeats and re-alleges Paragraphs 1 through 6, with the same force and effect as if herein stated.

8.      After MICHAEL EHRHARDT could no longer take the continuing sexual harassment from FLYNN and MICHAEL'S repeated objections and requests to FLYNN to stop became futile, MICHAEL reported the sexual harassment to other members of management.

9.      In response to MICHAEL EHRHARDT'S report of sexual harassment, the other members of management told MICHAEL to punch FLYNN in the head.

10.      After reporting the sexual harassment to others in management, FLYNN began a course of retaliation designed to intimidate, penalize and detrimentally affect the terms, conditions and privileges of MICHAEL EHRHARDT'S continued employment with CMS.

11. Ultimately, MICHAEL EHRHARDT was forced to leave work by doctor's order, because the sexual harassment and abusive environment by FLYNN, which was sanctioned and accepted by management of CMS, was sufficiently severe and pervasive such that it created intolerable working conditions for MICHAEL EHRHARDT.

12. The Defendant intended to make MICHAEL EHRHARDT'S working conditions intolerable so that he would be forced to leave work.

13. MICHAEL EHRHARDT was forced to leave work because of the hostile work environment, sexual harassment and retaliation for him exercising his rights.

14. As a direct result of the retaliation, MICHAEL EHRHARDT suffered damages, including but not limited to lost wages, severe emotional distress, severe pain and suffering, severe humiliation, damage to professional and personal reputation and severe stress.

WHEREFORE, Plaintiff, MICHAEL EHRHARDT, respectfully requests under Count II, a judgment against the Defendant, CMS, as follows:

A. Compensatory damages for back pay, front pay, bonus and interest thereon;

B. Compensatory damages for the severe humiliation, severe emotional stress, pain and suffering and physical distress caused as a direct and proximate result of CMS' retaliation, in an amount no less than $100,000.00;

C. Punitive damages in an amount no less than $100,000.00;

D. A reasonable attorney's fee;

E. Costs; and,

F. Such further relief as is equitable and just.

Respectfully submitted by:

*Michael G. Ehrhardt*

MICHAEL EHRHARDT

-7-

I, MICHAEL EHRHARDT, being first duly sworn on oath, depose and state under penalty of perjury that I am the Plaintiff in this Complaint, that I have read the foregoing; and that all of the allegations contained therein are true and correct.

MICHAEL EHRHARDT

SUBSCRIBED and SWORN to
before me this 25ᵗʰ day
of October, 2007.

Notary Public

OFFICIAL SEAL
MELISSA M FORMENTI
NOTARY PUBLIC  STATE OF ILLINOIS
MY COMMISSION EXPIRES 03/12/08

Counsel for the Plaintiff affixes his signature hereto and on information and belief is of the opinion that the foregoing is true and accurate and conforms in good faith with the requirements of Rule 11 of the Federal Rules of Civil Procedure.

George Frederick of Mirabella & Kincaid, P.C.,
One of Plaintiff's Attorneys

Mirabella, Kincaid, Frederick & Mirabella, P.C.
DuPage County Attorney No. 58500
1737 S. Naperville Road, Suite 100
Wheaton, IL  60187
(630) 665-7300
S:\GSF\Ehrhardt, Michael\Complaint.federal1.DOC

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974: See Privacy act statement before completing this form.

*06M0503.02*

| AGENCY | CHARGE NUMBER |
|---|---|
| ☒ IDHR ☐ EEOC | 2006CF3219 |

### Illinois Department of Human Rights and EEOC

| NAME (indicate Mr. Ms. Mrs.) | HOME TELEPHONE (include area code) |
|---|---|
| Mr. Michael Ehrhardt | 630/690-7137 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 478 N. Blackhawk Drive | Carol Stream, IL 60188 | 08/20 87 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME

| NAME | NUMBER OF EMPLOYEES, MEMBERS 15+ | TELEPHONE (Include area code) |
|---|---|---|
| Complete Mechanical Services | 15+ | 630/584-1182 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 3660 Swenson Ave. | St. Charles, IL 60174 | DuPage |

| CAUSE OF DISCRIMINATION BASED ON: | DATE OF DISCRIMINATION |
|---|---|
| sexual harassment; retaliation | EARLIEST (ADEA/EPA) LATEST (ALL) 07/11/05 - 03/05/06 ☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional space is needed attach extra sheets)

See attached Charge.

EXHIBIT
A

DEPT. OF HUMAN RIGHTS
SWITCHBOARD

MAY 0 3 2006

| I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | SUBSCRIBED AND SWORN TO BEFORE ME |
|---|---|
| | *Melissa Fermenti* 4/21/06 |
| | NOTARY SIGNATURE     MONTH DATE YEAR |

OFFICIAL SEAL
MELISSA M FORMENTI
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:03/12/08

NOTARY SEAL

x *Michael J. Ehrhardt*
SIGNATURE OF COMPLAINANT     DATE

I declare under penalty that the foregoing is true and correct I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief

FORM 5 (5/05)

# CHARGE OF DISCRIMINATION TO THE

# ILLINOIS DEPARTMENT OF HUMAN RIGHTS AND EEOC

## COMPLAINANT

I.      COMPLAINANT, MICHAEL EHRHARDT, (hereinafter, "MICHAEL") is a male

citizen, born, August 20, 1987 (presently age 18), residing at 478 N. Blackhawk Drive, Carol

Stream, Illinois, in the United States who was employed by RESPONDENT, COMPLETE

MECHANICAL SERVICES, beginning on or about July 11, 2005 through on or about March 5,

2006, in the city of St. Charles, in which the unlawful employment practices alleged below were

committed, within the State of Illinois.

## RESPONDENT

II.      1) RESPONDENT, COMPLETE MECHANICAL SERVICES, (hereinafter, "CMS")

an "employer" with more than 15 employees in the State of Illinois, within the meaning of the

Illinois Human Rights Act and Title VII as amended, is qualified to do business and actually doing

business at 3660 Swenson Avenue, St. Charles, Illinois 60174, in the State of Illinois and the

RESPONDENT'S conduct of which MICHAEL'S claims are based occurred in the State of Illinois.

## COUNT I

### HOSTILE ENVIRONMENT SEXUAL HARASSMENT
*(Hostile Environment Sexual Harassment in violation of Section 2-102(D) of the Illinois Human Rights Act and Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000(e)-(2)(a)(1))*

1.      MICHAEL, a male, is a protected person under both the Illinois

Human Rights Act and Title VII of the Civil Rights Act of 1964.

2.      From July 11, 2005 through on or about March 5, 2006, MICHAEL was employed at

COMPLETE MECHANICAL SERVICES in St. Charles, Illinois, as a sheet metal apprentice

*1*

earning $14.46 per hour, plus $16.00 per hour in additional benefits once he became an apprentice in September 2005.

    3.    During MICHAEL'S employment with CMS, he was subjected to unwelcome, offensive, physical and verbal sexual harassment based upon his sex, from his supervisor, FLYNN, which included <u>but was not limited</u> to the following:

    A.    On or about July 11, 2005, FLYNN requested that MICHAEL look at the top of a hammer, when MICHAEL did, FLYNN purposely released the hammer head so it would swing down and actually hit MICHAEL on the tip of his penis;

    B.    On or about July 11, 2005, FLYNN was holding a tape measure that he requested that MICHAEL look at the arrows, when MICHAEL did FLYNN purposely released part of the tape measure so it would swing down and it hit MICHAEL in the testicles;

    C.    During MICHAEL'S employment with CMS, instead of calling MICHAEL by his name, FLYNN constantly referred to MICHAEL as "Ophelia", "Amelia" or his "bitch;"

    D.    Throughout MICHAEL'S employment with CMS, FLYNN would point at objects and compare it to his penis size and then point at a smaller object and say to MICHAEL that it was the size of his penis.  FLYNN would touch machines with long handles, and say "hey Ophelia, like this big."  FLYNN would also say to MICHAEL,  "it is unusual for a guy to have brains, good looks and a big dick;"

    E.    Throughout MICHAEL'S employment, on almost a daily basis FLYNN stated to MICHAEL that he should, "put on red lipstick and give him a blow-job;"

    F.    On many occasions, FLYNN asked MICHAEL, "do you eat pussy" and "do you eat your girlfriend out." FLYNN made several comments that MICHAEL should engage in

2

these sexual acts; then FLYNN would make comments to the other employees that "Ophelia does not eat pussy;"

      G.     On a regular and frequent basis, FLYNN would state to MICHAEL, "it's okay Mike, you can experiment on me, do you want to go first or second?";

      H.     On a regular basis FLYNN would state to MICHAEL comments about "fucking him in the ass;"

      I.     On one occasion, FLYNN asked MICHAEL why he looked so sad. In response, MICHAEL stated that his parents had an argument. FLYNN stated to MICHAEL that, "if his parents were not getting along, it was because his dad wasn't eating out his mom good enough;"

      J.     Whenever the secretary would come out of her office, into the shop, FLYNN would call MICHAEL "elf ears," explaining that the secretary would give MICHAEL "elf ears" by grabbing his ears and pulling hard, if MICHAEL was to perform oral sex on her. One day in particular when FLYNN repeatedly made these comments is when the secretary was to take MICHAEL in her vehicle to pick up the company truck, which was being serviced;

      K.     On one occasion, FLYNN wrote on part of MICHAEL'S union card, "Pussy Eater;"

      L.     Whenever MICHAEL would ask supervisor, FLYNN, what he should do next, instead of giving him direction for work, FLYNN would move aside his work apron and tell MICHAEL to "give him a blow job;"

      M.     While putting together gutters, MICHAEL was bent over. FLYNN very quietly, snuck up behind MICHAEL and stood so close to him that they were touching. FLYNN then stated to MICHAEL that he was going to "fuck him in the ass." This event occurred several different times whenever MICHAEL was bent over working on projects.

<div align="center">3</div>

N.      On several occasions, FLYNN would grab MICHAEL'S nipples and twist, causing MICHAEL great pain and discomfort;

O.      In late January 2006, FLYNN came up behind MICHAEL and stuck his finger into MICHAEL'S right ear and twisted his finger, and pulled it out, and yelled "Wet Willy." As FLYNN walked away, MICHAEL could feel the moisture and wetness in his ear and his ear hurt; and,

P.      On one occasion, FLYNN asked MICHAEL if he, "whacked off in the shower." Shortly after this conversation, FLYNN was telling other employees that, "MICHAEL jerks off into a shampoo bottle."

4.      The offensive unwelcome sexual harassment by supervisor, FLYNN, had the effect of and did create an intimidating, hostile and offensive working environment for MICHAEL.

5.      The sexual harassment and abusive environment perpetrated by MICHAEL'S supervisor was sufficiently severe and pervasive such that it created intolerable working conditions for MICHAEL.

6.      That supervisor, FLYNN'S, unwelcome sexual harassment and verbal and physical abuse was sufficiently severe and pervasive such that it created an intimidating, hostile and offensive working environment for MICHAEL.

7.      As a direct result of RESPONDENT'S unwelcome offensive sexual harassment, MICHAEL suffered damages, including but not limited to, lost wages, severe emotional distress, severe pain and suffering, severe humiliation, damage to professional and personal reputation and severe stress.

4

WHEREFORE, COMPLAINANT, MICHAEL EHRHARDT, respectfully requests a judgment against RESPONDENT, COMPLETE MECHANICAL SERVICES, under Count I, as follows:

A.    Compensatory damages for back pay, front pay, bonus and interest thereon;

B.    Compensatory damages for the severe humiliation, severe emotional stress, pain and suffering and physical distress caused as a direct and proximate result of the sexual harassment by RESPONDENT;

C.    Punitive damages;

D.    A reasonable attorney's fee;

E.    Costs; and,

F.    Such further relief as is equitable and just.

## COUNT II
## RETALIATION
*(Retaliation in violation of Section 6-101(A) of the Illinois Human Rights Act and Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e-3)*

8.    MICHAEL repeats and re-alleges Paragraphs 1 through 7, with the same force and effect as if herein stated.

9.    After MICHAEL could no longer take the continuing sexual harassment from FLYNN and MICHAEL'S repeated objections and requests to FLYNN to stop became futile, MICHAEL reported the sexual harassment to other members of management.

10.    After reporting the sexual harassment to other members of management, wherein MICHAEL was engaging in a protected activity under the Acts by reporting sexual harassment, FLYNN began a course of retaliation designed to intimidate, penalize and detrimentally affect the terms, conditions and privileges of MICHAEL'S continued employment with CMS.

5

11.    Ultimately, MICHAEL was forced to leave work by doctor's order, because the sexual harassment and abusive environment by FLYNN, which was sanctioned and accepted by management of CMS, was sufficiently severe and pervasive such that it created intolerable working conditions for MICHAEL.

12.    RESPONDENT intended to make MICHAEL'S working conditions intolerable so that he would be forced to leave work.

13.    MICHAEL was forced to leave work because of the hostile work environment, sexual harassment and retaliation for him exercising his rights under the Acts.

14.    As a direct result of the retaliation by RESPONDENT, MICHAEL suffered damages, including but not limited to lost wages, severe emotional distress, severe pain and suffering, severe humiliation, damage to professional and personal reputation and severe stress.

WHEREFORE, COMPLAINANT, MICHAEL EHRHARDT, respectfully requests a judgment against RESPONDENT, COMPLETE MECHANICAL SERVICES, under Count II, as follows:

A.    Compensatory damages for back pay, front pay, bonus and interest thereon;

B.    Compensatory damages for the severe humiliation, severe emotional stress, pain and suffering and physical distress caused as a direct and proximate result of the retaliation;

C.    Punitive damages;

D.    A reasonable attorney's fee;

E.    Costs; and,

F.    Such further relief as is equitable and just.

Respectfully submitted by:

MICHAEL EHRHARDT

6

I, MICHAEL EHRHARDT being first duly sworn on oath, depose and state under penalty of perjury that I am the Complainant in this Charge, that I have read the foregoing; and that all of the allegations contained therein are true and correct.

MICHAEL EHRHARDT

SUBSCRIBED and SWORN to
before me this 21st day
of April 2006.

Notary Public

> OFFICIAL SEAL
> MELISSA M FORMENTI
> NOTARY PUBLIC STATE OF ILLINOIS
> MY COMMISSION EXPIRES 03/12/08

Counsel for the Complainant affixes his signature hereto and on information and belief is of the opinion that the foregoing is true and accurate.

George Frederick of Mirabella, Kincaid,
Frederick & Mirabella, P.C.,
One of Complainant's Attorneys

Mirabella, Kincaid, Frederick & Mirabella, P.C.
DuPage County Attorney No. 58500
1776 S. Naperville Road
Building A, Suite 103
Wheaton, Illinois 60187
(630) 665-7300

7

Exhibit E - Page 16 of 17

EEOC Form 161-B (3/98)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Michael Ehrhardt<br>478 N Blackhawk Dr<br>Carol Stream, IL 60188 | From: | Chicago District Office<br>500 West Madison St<br>Suite 2800<br>Chicago, IL 60661 |
|---|---|---|---|

**CERTIFIED MAIL#: 7003 3110 0004 0947 4283**

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 21B-2006-01890 | **Armernola P. Smith,**<br>**State & Local Coordinator** | **(312) 886-5973** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*[signature]*

**John P. Rowe,**
**District Director**

*September 20, 2007*
*(Date Mailed)*

Enclosures(s)

cc: **COMPLETE MECHANICAL SERVICE**
3660 Swenson Ave
St Charles, IL 60174

**EXHIBIT**
B

# PLEADING EXHIBIT F

RECEIVED
JAN 1 8 2008
HUMAN RIGHTS COMMISSION
HD USES FX MM ID

STATE OF ILLINOIS
HUMAN RIGHTS COMMISSION

IN THE MATTER OF: )
)
MICHAEL EHRHARDT, )
)
      Complainant, )
and )    CHARGE NO.: 2006CN3222
)    EEOC NO.: N/A
THOMAS FLYNN, )
)
      Respondent. )

## COMPLAINT OF CIVIL RIGHTS VIOLATION

In accordance with the provisions of the Illinois Human Rights Act ("Act"), 775 ILCS 5/1-101 et seq., and pursuant to the authority vested in it by the Act, the ILLINOIS DEPARTMENT OF HUMAN RIGHTS ("Department") hereby issues and files its Complaint of Civil Rights Violation in this cause as follows:

PARAGRAPH ONE: That Complainant, Michael Ehrhardt, filed perfected Charge No. 2006CN3222 with the Department on May 3, 2006, alleging to have been aggrieved by practices of sexual harassment prohibited by Section 2-102(D) of the Act. Pursuant to Section 7A-102(G)(1) of the Act, on January 11, 2007, and January 19, 2007, the parties respectively agreed to extend the 365-day time limit to investigate the charge by 300 days. Therefore, the instant complaint is timely filed;

PARAGRAPH TWO: That at the time of the incidents complained of herein, Respondent, Thomas Flynn, was a "Person" within the meaning of Section 1-103(L), and an "Employee" within the meaning of Section 2-101(A)(1)(a), and was subject to the provisions of the Act;

MICHAEL EHRHARDT V. THOMAS FLYNN
CHARGE NO. 2006CN3222
PAGE 2

PARAGRAPH THREE:  That beginning on July 11, 2005, Complete Mechanical Services ("CMS") hired Complainant as a Sheet Metal Pre-Apprentice;

PARAGRAPH FOUR:  That at the time of the incidents complained of herein, CMS employed Complainant as a Sheet Metal Apprentice;

PARAGRAPH FIVE: That throughout his employment with CMS, Complainant performed his duties in a satisfactory manner consistent with CMS's standards;

PARAGRAPH SIX:  That at the time of the incidents complained of herein, Respondent was employed by CMS as a Journeyman and was Complainant's immediate supervisor;

PARAGRAPH SEVEN:  That Complainant alleges that from on or about July 11, 2005, through on or about March 5, 2006, Respondent sexually harassed Complainant, in that:

(a)     On one occasion in July, 2005, Respondent released a hammer hitting Complainant's penis, held a tape measure hitting Complainant's testicles, and commented to Complainant that "if his parents were not getting along, it was because his dad wasn't eating out his mom good enough;"

(b)     On one occasion, Respondent wrote on Complainant's union card "p... eater;"

(c)     In January 2006, Respondent stuck his finger in Complainant's ear and yelled "wet Willy;"

(d)     On one occasion, Respondent asked if Complainant "whacked off in the shower" and stated that Complainant "jerks off into a shampoo bottle;"

MICHAEL EHRHARDT V. THOMAS FLYNN
CHARGE NO. 2006CN3222
PAGE 3

(e)    On one occasion, Respondent called Complainant "elf ears," explaining that the secretary would give Complainant "elf ears," while Complainant performed oral sex on her;

(f)    On a daily basis and several times each day, Respondent called Complainant "Ophelia," "Amelia," or "his bitch," pointed to objects comparing them to his penis size and then pointed to smaller objects comparing them to Complainant's penis size, told Complainant that "it is unusual for a guy to have brains, good looks and a big dick," to "put on red lipstick and give him a blow job," and "you can experiment on me, do you want to go first or second?" asked Complainant "do you eat p… ? and "do you eat your girlfriend out? and told others "Ophelia does not eat p…;"

(g)    On one occasion, Respondent stood behind Complainant, as Complainant was bending over putting together gutters, and told him that Respondent was going to "f… him in the ass;" and

(h)    On several occasions, Respondent told Complainant to "f… him in the ass."

PARAGRAPH EIGHT:   That Complainant found Respondent's conduct unwelcome and unwanted;

PARAGRAPH NINE:  That Respondent's conduct created a hostile, intimidating, and offensive work environment that substantially interfered with Complainant's ability to perform his job;

PARAGRAPH TEN:   That Respondent sexually harassed Complainant, in violation of Section 2-102(D) of the Act.

MICHAEL EHRHARDT V. THOMAS FLYNN
CHARGE NO. 2006CN3222
PAGE 4

WHEREFORE, an ORDER is requested providing the following relief:

(a) That Respondent pay to Complainant a sum equal to the damages he may
have suffered because of embarrassment, humiliation, insult and emotional
suffering as a result of the civil rights violation committed against him by
Respondent;

(b) That Respondent pay to Complainant reasonable attorney's fees and costs
incurred as a result of the civil rights violation alleged herein;

(c) That Respondent be referred to the Department's Human Rights Training
Institute to participate in such training as is necessary to prevent future civil
rights violations; and

(d) That such further relief be granted as may be necessary to make Complainant
whole.

ISSUED AND FILED THIS 18th DAY OF January 2008.

DEPARTMENT OF HUMAN RIGHTS
ROCCO J. CLAPS, DIRECTOR

BY: _Carol A. Cera_
Carol A. Cera
Staff Attorney

Carol A. Cera
Department of Human Rights
100 W. Randolph St., Suite 10-100
Chicago, IL 60601
(312) 814-4674

STATE OF ILLINOIS     )

                    )    SS         CHARGE NO.: 2006CN3222

COUNTY OF COOK     )

Carol A. Cera, being duly sworn on oath, states that she is a Staff Attorney for the

ILLINOIS DEPARTMENT OF HUMAN RIGHTS; that she is familiar with the facts

relating to the above-captioned charge; that she has read the foregoing Complaint; and

that on information and belief, she believes the facts alleged therein are true and correct.

                                      Carol A. Cera

                                      Staff Attorney

SUBSCRIBED and SWORN to before me
THIS 18th DAY of January 2008.

NOTARY PUBLIC

"OFFICIAL SEAL"
RAQUEL C. GUERRA
Notary Public, State of Illinois
My Commission Expires 4/12/2008

STATE OF ILLINOIS
HUMAN RIGHTS COMMISSION
ADMINISTRATIVE LAW SECTION

)
)
)
)
)

## STANDING ORDER RELATING TO PREHEARING MEMORANDA

Pursuant to 56 Ill. Admin Code § 5300.710, the parties shall jointly prepare and submit a prehearing memorandum to the presiding administrative law judge of the Illinois Human Rights Commission not less than fourteen days before the hearing is scheduled to commence. The complainant shall prepare the first draft and submit it to the respondent at least fourteen (14) days prior to the filing deadline. The presiding administrative law judge may waive the preparation of a prehearing memorandum if any litigant is not represented by counsel.

The prehearing memorandum shall be signed by counsel for each party and shall include the following:

1. The name, address and telephone number of the counsel for each party.

2. A concise statement of the claim(s) of Complainant(s) and defense(s) of Respondent(s).

3. A statement, in numbered paragraph form, of contested and uncontested facts relating to liability, and any stipulations the parties have made to the facts.

4. A statement of the issues of law relating to liability.

5. Itemization of damages and other relief sought, including a summary of attorney's fees and costs to date.

6. A list of names and addresses of all witnesses: a) who will be called; b) who may be called; and if a deposition has been allowed, c) whose deposition will be used.

7. A list of names of expert witnesses who will be called to testify at hearing and a brief statement of the subject matter to which each will testify. The parties shall stipulate to the qualifications of experts or state any specific objections to the experts.

8.  A schedule of all exhibits a party may introduce at hearing, identified by exhibit number.  Absent good cause for their omission, documents not listed in the prehearing memorandum will not be admitted at public hearing

9.  The opposing party shall state which of the exhibits are objected to and the basis for the objection.  Unlisted objections are waived.  There is no right to "reserve" objections.

10.  Expected length of hearing.

11.  A statement summarizing the current status of settlement negotiations.

ILLINOIS HUMAN RIGHTS COMMISSION

Michael J. Evans
Chief Administrative Law Judge
Administrative Law Section

## INFORMATION FOR LITIGANTS BEFORE THE ADMINISTRATIVE LAW SECTION OF THE HUMAN RIGHTS COMMISSION

1. The Illinois Human Rights Act can be found at 775 ILCS 5/1-101 *et seq.* The Commission's Procedural Rules can be found at 56 Ill. Admin. Code, Ch. XI, Section 5300 *et seq.* All cases will proceed in strict accordance with the Act and the Rules. Failure to comply with them may result in sanctions including dismissal or default.

2. Although it is not mandatory, unrepresented complainants and individual respondents are urged to obtain legal counsel. Incorporated respondents are required by law to be represented by an attorney. All parties and counsel are required to inform the Commission in writing of any change of address promptly. If a failure to do so results in an order or other correspondence being returned undelivered, such is still effective and failure to comply or respond may result in default or dismissal.

3. The five-digit ALS number which appears on the Notice of Public Hearing must be clearly marked on the first page of every document filed with the Human Rights Commission.

4. Discovery requests and responses should not be filed with the Commission; only the certificate of service should be filed.

5. Any answer, supplemental answer, motion to dismiss, motion for summary decision, motion to amend the complaint, motion to allow a Department of Human Rights employee to testify at hearing, and responses to any of the above must be served on the opposing party and on the Chief Legal Counsel of the Department of Human Rights, 100 W. Randolph, Suite 10-100, Chicago, Illinois 60601 and the proof of service filed with the Commission must show such service. Copies of other motions and all discovery requests and responses should not be served on the Department unless it is a named party on the complaint.

6. Parties are strongly urged to explore settlement possibilities with their opponents. If the parties desire a mediated settlement conference conducted by an administrative law judge, they may contact the clerk of the Administrative Law Section to schedule one at any time.

7. There are two ways to effect a settlement. First, parties may propose a written settlement to the Commission which will consider and approve or reject it. The Administrative Law Section has no role other than to submit the case file and proposal to the Commission. The Commission will retain jurisdiction of any settlement it approves. Second, the parties may reach a settlement between themselves and then have the Complainant file a motion

for voluntary dismissal. In this case, the Commission neither approves nor disapproves the settlement, nor do the settlement terms have to be disclosed, and any enforcement must be in civil court.

8. Public hearings before an administrative law judge are stenographically recorded by a court reporter at the Commission's expense and the Commission orders the original transcript, which can be examined at the Commission offices. Copies are available from the court reporter at a party's expense.

9. At the start of a public hearing, each party must have a complete set of exhibits for use by the presiding administrative law judge.

10. Except for the original charge of discrimination, the materials in the Department of Human Rights' file are not automatically part of the public hearing record. Such materials will be considered by the administrative law judge only if there is appropriate foundation and they are otherwise admissible.

11. Post-hearing briefing shall be at the discretion of the presiding administrative law judge. That determination will be made with input from the parties, either at the final status hearing or following the public hearing.

12. The administrative law judge is bound by Commission decisions, which are published and available at the State Library. Commission decisions are also available through Westlaw and Lexis. Federal decisions interpreting analogous federal law may be helpful and relevant, but are not binding precedent.

13. The procedures for filing exceptions to the administrative law judge's Recommended Order and Decision are found at 775 ILCS 5/8A-103 *et seq.* and the pertinent rules are found at 56 Ill. Admin. Code, Ch. XI, Section 5300.910 *et seq.* The Commission serves as the appellate level of proceedings under the Human Rights Act. No exceptions may be filed to a Recommended Liability Determination, which is an interim order on liability alone. Proceedings at the Administrative Law Section level are complete upon issuance of a Recommended Order and Decision.

## NOTICE REGARDING ATTORNEYS

<u>Individuals</u>

There is no requirement that individuals have attorneys to represent them before the Human Rights Commission. However, unrepresented parties are at a great disadvantage when facing opponents who are represented. Having competent legal counsel provides you with your best opportunity to present your case. Therefore, if you are an unrepresented individual, you are strongly advised to hire an attorney as soon as possible.

It is vital that you begin your search immediately. While the Commission wants to give you the opportunity to be represented, it is not fair to other parties to delay this matter indefinitely if you have not been diligent. Moreover, the sooner an attorney becomes involved in the case, the more help he or she can be to you.

<u>Corporations</u>

Under Illinois law, a corporation is required to have a licensed attorney represent it in litigation matters. As a result, is it absolutely necessary for a corporation to hire an attorney in order to appear before the Human Rights Commission.

It is important for a corporation to hire an attorney as soon as possible. A corporation can be held in default if no attorney appears on its behalf. In addition, the sooner an attorney becomes involved in the case, the more help he or she can be.

The Human Rights Commission does not have the ability to appoint attorneys to represent parties. Furthermore, the Commission cannot provide legal advice regarding your case. We strongly urge you to refer any legal questions to an attorney.

*# 06M0503.04*

## STATE OF ILLINOIS
## ILLINOIS DEPARTMENT OF HUMAN RIGHTS

| CHICAGO OFFICE | SPRINGFIELD OFFICE |
|---|---|
| 100 WEST RANDOLPH STREET | DEPARTMENT OF HUMAN RIGHTS |
| SUITE 10-100 INTAKE UNIT | 222 SOUTH COLLEGE, ROOM 101 |
| CHICAGO, ILLINOIS 60601 | SPRINGFIELD, ILLINOIS 62704 |
| (312) 814-6200 | (217) 785-5100 |
| (312) 814-1579 TDD | (217) 785-5125 TDD |

CHARGE NO. *2006 CN 3222*

## CHARGE OF DISCRIMINATION

### COMPLAINANT

**Name** Michael Ehrhardt
**Address** 478 N. Blackhawk Drive
**City, State, Zip Code** Carol Stream, IL 60188
**Telephone Number** 630/690-7137

believe that I have been personally aggrieved by a civil rights violation committed on (Date of Harm) , by:

### RESPONDENT

**Name** Thomas Flynn, c/o Complete Mechanical Services
**Address** 3660 Swenson Avenue
**City, State, Zip Code** St. Charles, IL 60174
**Telephone number** 630/584-1182

The particulars of the alleged civil rights violation are as follows:

## S E E   A T T A C H E D

DEPT. OF HUMAN RIGHTS
SWITCHBOARD
MAY 0 3 2006

IDHR FORM #6

Exhibit F - Page 11 of 23

**Complainant:**
**Charge Number:**
**Page 2**

sexual harassment; retaliation.

See Attached Charge.

I, _Michael Ehrhardt_____, on oath or affirmation state that I am the Complainant herein, that I have read the foregoing charge and know the contents thereof, and that the same is true and correct to the best of my knowledge.

_____
**Complainant's Signature/Date**

**Subscribed and Sworn to**

**Before me this** _21st_ **day**

**of** _April_____, **2006.**

OFFICIAL SEAL
MELISSA M FORMENTI
NOTARY PUBLIC · STATE OF ILLINOIS
MY COMMISSION EXPIRES 03/12/08

_____
**Notary Public Signature**

_____
**Notary Seal**

**IDHR FORM #6**

Exhibit F - Page 12 of 23

# CHARGE OF DISCRIMINATION TO THE
# ILLINOIS DEPARTMENT OF HUMAN RIGHTS

## COMPLAINANT

I.    COMPLAINANT, MICHAEL EHRHARDT, (hereinafter, "MICHAEL") is a male citizen, born, August 20, 1987 (presently age 18), residing at 478 N. Blackhawk Drive, Carol Stream, Illinois, in the United States who was employed by Complete Mechanical Services, beginning on or about July 11, 2005 through on or about March 5, 2006, in the city of St. Charles, in which the unlawful employment practices alleged below were committed, within the State of Illinois.

## RESPONDENT

II.    1) RESPONDENT, THOMAS FLYNN, (hereinafter, "FLYNN") was the shop foreman at Complete Mechanical Services, (hereinafter CMS), located at 3660 Swenson Avenue, St. Charles, Illinois 60174 and at all relevant times was MICHAEL'S immediate supervisor.

## COUNT I
## HOSTILE ENVIRONMENT SEXUAL HARASSMENT
*(Hostile Environment Sexual Harassment in violation of Section 2-102(D) of the Illinois Human Rights Act)*

1.    MICHAEL, a male, is a protected person under the Illinois Human Rights Act.

2.    From July 11, 2005 through on or about March 5, 2006, MICHAEL was employed at CMS in St. Charles, Illinois, as a sheet metal apprentice earning $14.46

*1*

per hour, plus $16.00 per hour in additional benefits once he became an apprentice in September 2005.

3.    During MICHAEL'S employment with CMS, he was subjected to unwelcome, offensive, physical and verbal sexual harassment based upon his sex, from his Respondent, FLYNN, which included <u>but was not limited</u> to the following:

A.    On or about July 11, 2005, FLYNN requested that MICHAEL look at the top of a hammer, when MICHAEL did, FLYNN purposely released the hammer head so it would swing down and actually hit MICHAEL on the tip of his penis;

B.    On or about July 11, 2005, FLYNN was holding a tape measure that he requested that MICHAEL look at the arrows, when MICHAEL did, FLYNN purposely released part of the tape measure so it would swing down and it hit MICHAEL in the testicles;

C.    During MICHAEL'S employment with CMS, instead of calling MICHAEL by his name, FLYNN constantly referred to MICHAEL as "Ophelia", "Amelia" or his "bitch;"

D.    Throughout MICHAEL'S employment with CMS, FLYNN would point at objects and compare it to his penis size and then point at a smaller object and say to MICHAEL that it was the size of his penis. FLYNN would touch machines with long handles, and say "hey Ophelia, like this big." FLYNN would also say to MICHAEL, "it is unusual for a guy to have brains, good looks and a big dick;"

2

E.    Throughout MICHAEL'S employment, on almost a daily basis FLYNN stated to MICHAEL that he should, "put on red lipstick and give him a blow-job;"

F.    On many occasions, FLYNN asked MICHAEL, "do you eat pussy" and "do you eat your girlfriend out." FLYNN made several comments that MICHAEL should engage in these sexual acts, then FLYNN would make comments to the other employees that "Ophelia does not eat pussy;"

G.    On a regular and frequent basis, FLYNN would state to MICHAEL, "it's okay Mike, you can experiment on me, do you want to go first or second?";

H.    On a regular basis FLYNN would state to MICHAEL comments about "fucking him in the ass;"

I.    On one occasion, FLYNN asked MICHAEL why he looked so sad. In response, MICHAEL stated that his parents had an argument. FLYNN stated to MICHAEL that, "if his parents were not getting along, it was because his dad wasn't eating out his mom good enough;"

J.    Whenever the secretary would come out of her office, into the shop, FLYNN would call MICHAEL "elf ears," explaining that the secretary would give MICHAEL "elf ears" by grabbing his ears and pulling hard, if MICHAEL was to perform oral sex on her. One day in particular when FLYNN repeatedly made these comments is when the secretary was to take MICHAEL in her vehicle to pick up the company truck, which was being serviced;

K.    On one occasion, FLYNN wrote on part of MICHAEL'S union card, "Pussy Eater;"

3

L.     Whenever MICHAEL would ask supervisor, FLYNN, what he should do next, instead of giving him direction for work, FLYNN would move aside his work apron and tell MICHAEL to "give him a blow job;"

M.     While putting together gutters, MICHAEL was bent over.  FLYNN very quietly, snuck up behind MICHAEL and stood so close to him that they were touching.  FLYNN then stated to MICHAEL that he was going to "fuck him in the ass."  This event occurred several different times whenever MICHAEL was bent over working on projects.

N.     On several occasions, FLYNN would grab MICHAEL'S nipples and twist, causing MICHAEL great pain and discomfort;

O.     In late January 2006, FLYNN came up behind MICHAEL and stuck his finger into MICHAEL'S right ear and twisted his finger, and pulled it out, and yelled "Wet Willy."  As FLYNN walked away, MICHAEL could feel the moisture and wetness in his ear and his ear hurt; and,

P.     On one occasion, FLYNN asked MICHAEL if he, "whacked off in the shower."  Shortly after this conversation, FLYNN was telling other employees that, "MICHAEL jerks off into a shampoo bottle."

4.     The offensive unwelcome sexual harassment by Respondent, FLYNN, had the effect of and did create an intimidating, hostile and offensive working environment for MICHAEL.

5.     The sexual harassment and abusive environment perpetrated by Respondent, FLYNN, was sufficiently severe and pervasive such that it created intolerable working conditions for MICHAEL.

4

6. That Respondent, FLYNN'S, unwelcome sexual harassment and verbal and physical abuse was sufficiently severe and pervasive such that it created an intimidating, hostile and offensive working environment for MICHAEL.

7. As a direct result of Respondent, FLYNN'S unwelcome offensive sexual harassment, he suffered damages, including but not limited to, lost wages, severe emotional distress, severe pain and suffering, severe humiliation, damage to professional and personal reputation and severe stress

WHEREFORE, COMPLAINANT, MICHAEL EHRHARDT, respectfully requests a judgment against RESPONDENT, THOMAS FLYNN under Count I, as follows:

A. Compensatory damages for back pay, front pay, bonus and interest thereon;

B. Compensatory damages for the severe humiliation, severe emotional stress, pain and suffering and physical distress caused as a direct and proximate result of the sexual harassment by RESPONDENT;

C. Punitive damages;

D. A reasonable attorney's fee;

E. Costs; and,

F. Such further relief as is equitable and just.

## COUNT II
## RETALIATION
*(Retaliation in violation of Section 6-101(A) of the Illinois Human Rights Act)*

8. MICHAEL repeats and re-alleges Paragraphs 1 through 7, with the same force and effect as if herein stated.

5

Exhibit F - Page 17 of 23

9.   After MICHAEL could no longer take the continuing sexual harassment from FLYNN and MICHAEL'S repeated objections and requests to FLYNN to stop became futile, MICHAEL reported the sexual harassment to management.

10.   After reporting the sexual harassment to management, wherein MICHAEL was engaging in a protected activity under the Acts by reporting sexual harassment, FLYNN began a course of retaliation designed to intimidate, penalize and detrimentally affect the terms, conditions and privileges of MICHAEL'S continued employment with CMS.

11.   Ultimately, MICHAEL was forced to leave work by doctor's order, because the sexual harassment and abusive environment by FLYNN, which was sanctioned and accepted by management of CMS, was sufficiently severe and pervasive such that it created intolerable working conditions for MICHAEL.

12.   FLYNN intended to make MICHAEL'S working conditions intolerable so that he would be forced to leave work.

13.   MICHAEL was forced to leave work because of the hostile work environment, sexual harassment and retaliation for him exercising his rights under the Acts.

14.   As a direct result of the retaliation by FLYNN, MICHAEL suffered damages, including but not limited to lost wages, severe emotional distress, severe pain and suffering, severe humiliation, damage to professional and personal reputation and severe stress.

Exhibit F - Page 18 of 23

WHEREFORE, COMPLAINANT, MICHAEL EHRHARDT, respectfully requests a judgment against RESPONDENT, THOMAS FLYNN under Count II, as follows:

A.     Compensatory damages for back pay, front pay, bonus and interest thereon;

B.     Compensatory damages for the severe humiliation, severe emotional stress, pain and suffering and physical distress caused as a direct and proximate result of the retaliation;

C.     Punitive damages;

D.     A reasonable attorney's fee;

E.     Costs; and,

F.     Such further relief as is equitable and just.

Respectfully submitted by,

MICHAEL EHRHARDT

I,  MICHAEL EHRHARDT being first duly sworn on oath, depose and state under penalty of perjury that I am the Complainant in this Charge, that I have read the foregoing; and that all of the allegations contained therein are true and correct.

MICHAEL EHRHARDT

7

SUBSCRIBED and SWORN to
before me this 26th day
of April 2006.

_Melissa Formenti_
Notary Public

OFFICIAL SEAL
MELISSA M FORMENTI
NOTARY PUBLIC STATE OF ILLINOIS
MY COMMISSION EXPIRES 03/12/08

    Counsel for the Complainant affixes his signature hereto and on information
and belief is of the opinion that the foregoing is true and accurate.

George Frederick of Mirabella, Kincaid,
Frederick & Mirabella, P.C.,
One of Complainant's Attorneys


Mirabella, Kincaid, Frederick & Mirabella, P.C.
DuPage County Attorney No. 58500
1776 S. Naperville Road
Building A, Suite 103
Wheaton, Illinois 60187
(630) 665-7300

8

STATE OF ILLINOIS )
                ) ss
COUNTY OF COOK )                          CHARGE NO: <u>2006CN3222</u>

## <u>AFFIDAVIT OF SERVICE</u>

ENEIDA SANTANA, being first duly sworn on oath, states that she served a copy of the attached NOTICE OF SUBSTANTIAL EVIDENCE upon each person named below by depositing the same this _____4th_____ day of ____DECEMBER____, 2007, in a U.S. Mail Box at 100 West Randolph Street, Chicago, Illinois, properly posted for FIRST CLASS MAIL, addresses as follows:

George S. Frederick, Esq.
Mirabella, Kincaid, Frederick & Mirabella, P.C.
1776A S. Naperville Road, Ste. 103
Wheaton, IL 60187

Zrinka Rukavina, Esq.
Hervas, Condon & Bersani, P.C.
333 Pierce Road, Ste. 195
Itasca, IL 60143-3156

_____
ENEIDA SANTANA

SUBSCRIBED AND SWORN TO BEFORE ME

THIS , 4th_____ DAY OF_____DECEMBER____, 2007

_____
NOTARY PUBLIC

OFFICIAL SEAL
YOLANDA G GODWIN
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:09/21/11

Exhibit F - Page 21 of 23



ILLINOIS DEPARTMENT OF
# Human Rights

Rod R. Blagojevich, Governor
Rocco J. Claps, Director

December 4, 2007


George S. Frederick, Esq.
Mirabella, Kincaid, Frederick & Mirabella, P.C.
1776A S. Naperville Road, Ste. 103
Wheaton, IL 60187


Zrinka Rukavina, Esq.
Hervas, Condon & Bersani, P.C.
333 Pierce Road, Ste. 195
Itasca, IL 60143-3156

RE:  <u>Michael Ehrhardt vs. Thomas Flynn, 2006CN3222</u>

## <u>NOTICE OF SUBSTANTIAL EVIDENCE</u>

The Director of the Department of Human Rights ("Department") has reviewed the investigation report in the above-referenced matter and determined there is substantial evidence that a civil rights violation has been committed.

The Illinois Human Rights Act ("Act") mandates that the Department conduct conciliation to give the parties an opportunity to settle the case before a complaint is filed with the Human Rights Commission ("Commission").

I have been designated by the Director to CONCILIATE this case. Conciliation is a process in which a Department Staff Attorney facilitates settlement discussions with both parties via telephone.

The Department also offers mediation, which is a form of conciliation. Mediation is a private, informal dispute resolution process in which a neutral third person, the mediator, meets with the parties to help reach an agreement.

All settlement efforts are confidential. If it is determined there is not a reasonable possibility of settlement, I will prepare a complaint against Respondent, file it with the Commission and serve notice of such filing on all parties, pursuant to Section 7A-102(F) of the Act. It is then the parties' responsibility to go forward with the case at the Commission.

**IT IS THE RESPONSIBILITY OF THE PARTIES TO INITIATE DISCUSSIONS IMMEDIATELY AFTER RECEIPT OF THIS NOTICE. THEREFORE, PLEASE REVIEW THE ENCLOSED INFORMATION AND CONTACT ME NO LATER THAN 5 DAYS AFTER RECEIPT OF THIS NOTICE IF YOU WISH TO CONCILIATE THIS MATTER. OTHERWISE, I SHALL FILE A COMPLAINT WITH THE COMMISSION.**

Carol Cera
Staff Attorney
(312) 814-4674

# TRANSMITTAL MEMORANDUM

TO:        HUMAN RIGHTS COMMISSION

FROM:    DEPARTMENT OF HUMAN RIGHTS

DATE:              1/18/08

RE:      MICHAEL EHRHARDT VS. THOMAS FLYNN

CHARGE NO.:        2006CN3222

The following documents are hereby delivered to the Administrative Law Division, in the above-captioned matter.

      XX        Charge filed with DHR

      XX        Appearance, etc.

      XX        Complaint

      XX        Notice of Filing/Certificate of Service

      XX        Affidavit of Service/Notice of Substantial Evidence

RECEIVED
JAN 1 8 2008
HUMAN RIGHTS COMMISSION
HQ USES FR MM ID

5.  **"Property Other Than Money and Securities"** means any tangible property other than "money" and "securities" that has intrinsic value but does not include any property listed in any Coverage Form and Property Not Covered.

6.  **"Securities"** means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

    a.  Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

    b.  Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

    but does not include "money."

All other policy terms and conditions apply.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1984, 1987

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.** 54223 (6-00)

# GLASS BREAKAGE

This endorsement modifies insurance under the CAUSES OF LOSS - SPECIAL FORM.

Under **C. LIMITATIONS**, paragraph **2.** is deleted and replaced by the following:

**2.**  We will not pay more for loss of or damage to glass that is part of a building or structure than the Limit of Insurance shown in the Declarations for GLASS BREAKAGE for each plate, pane, multiple plate insulating unit, radiant or solar heating panel, jalousie, louver or shutter. We will not pay more than the Limit of Insurance shown in the Declaration for GLASS BREAKAGE for all loss or damage to building glass that occurs at any one time.

This Limitation does not apply to loss or damage by the "specified causes of loss", except vandalism.

All other policy terms and conditions apply.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

54236 (3-01)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES

This endorsement modifies insurance provided under the COMMERCIAL PROPERTY COVERAGE PART.

A.  The following is added to The LEGAL ACTION AGAINST US Condition in:

1.  The Commercial Property Conditions; and

2.  The following forms if they are included in this Coverage Part:

a.  Money And Securities;

b.  Forgery Or Alterations; or

c.  Employee Dishonesty.

The 2 year period for legal action against us is extended by the number of days between the date the proof of loss is filed with us and the date we deny the claim in whole or in part.

B.  If this policy covers:

1.  The following in a. and b., then Paragraphs 2. and 3. apply:

a.  Real property used principally for residential purposes up to and including a four family dwelling; or

b.  Household or personal property that is usual or incidental to the occupancy of any premises used for residential purposes.

2.  The second paragraph of the Appraisal Condition is deleted and replaced by the following:

a.  Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally, except as provided in b. below.

b.  We will pay your appraiser's fee and the umpire's appraisal fee, if the following conditions exist:

(1)  You demanded the appraisal; and

(2)  The full amount of loss, as set by your appraiser, is agreed to by our appraiser or by the umpire.

3.  The Concealment, Misrepresentation Or Fraud Condition is replaced by the following:

CONCEALMENT, MISREPRESENTATION OR FRAUD

a.  This Coverage Part or Coverage Form is void if you or any insured ("insured") commit fraud or conceal or misrepresent a fact in the process leading to the issuance of this insurance, and such fraud, con-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1998

Page 1 of 2

54236 (3-01)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES

This endorsement modifies insurance provided under the COMMERCIAL PROPERTY COVERAGE PART.

A.  The following is added to The LEGAL ACTION AGAINST US Condition in:

    1.  The Commercial Property Conditions; and

    2.  The following forms if they are included in this Coverage Part:

        a.  Money And Securities;

        b.  Forgery Or Alterations; or

        c.  Employee Dishonesty.

The 2 year period for legal action against us is extended by the number of days between the date the proof of loss is filed with us and the date we deny the claim in whole or in part.

B.  If this policy covers:

    1.  The following in a. and b., then Paragraphs 2. and 3. apply:

        a.  Real property used principally for residential purposes up to and including a four family dwelling; or

        b.  Household or personal property that is usual or incidental to the occupancy of any premises used for residential purposes.

    2.  The second paragraph of the Appraisal Condition is deleted and replaced by the following:

        a.  Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally, except as provided in b. below.

        b.  We will pay your appraiser's fee and the umpire's appraisal fee, if the following conditions exist:

            (1)  You demanded the appraisal; and

            (2)  The full amount of loss, as set by your appraiser, is agreed to by our appraiser or by the umpire.

    3.  The Concealment, Misrepresentation Or Fraud Condition is replaced by the following:

    CONCEALMENT, MISREPRESENTATION OR FRAUD

        a.  This Coverage Part or Coverage Form is void if you or any insured ("insured") commit fraud or conceal or misrepresent a fact in the process leading to the issuance of this insurance, and such fraud, con-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1998

Page 1 of 2

cealment or misrepresentation is stated in the policy or endorsement or in the written application for this policy and:

(1) Was made with actual intent to deceive; or

(2) Materially affected either our decision to provide this insurance or the hazard we assumed.

However, this condition will not serve as a reason to void this Coverage Part or Coverage Form after the Coverage Part or Coverage Form has been in effect for one year or one policy term, whichever is less.

b. This Coverage Part or Coverage Form is void if you or any other insured ("insured"), at any time subsequent to the issuance of this insurance, commit fraud or intentionally conceal or misrepresent a material fact relating to:

(1) This Coverage Part or Coverage Form;

(2) The Covered Property;

(3) Your interest in the Covered Property; or

(4) A claim under this Coverage Part or Coverage Form.

c. Notwithstanding the limitations stated in 3.a. above, we may cancel the Coverage Part or Coverage Form in accordance with the terms of the Cancellation Condition.

C. For the Commercial Property Coverage Part, the following exclusion and related provisions are added to Paragraph B.2. Exclusions in the Causes of Loss Forms and to any Coverage Form or policy to which a Causes of Loss Form is not attached:

1. We will not pay for loss or damage arising out of any act committed:

a. By or at the direction of any insured; and

b. With the intent to cause a loss.

2. However, this exclusion will not apply to deny payment to any innocent co-insured who did not cooperate in or contribute to the creation of the loss if:

a. The loss arose out of a pattern of criminal domestic violence; and

b. The perpetrator of the loss is criminally prosecuted for the act causing the loss.

3. If we pay a claim pursuant to Paragraph C.2., our payment to the insured is limited to that insured's insurable interest in the property less any payments we first made to a mortgagee or other party with a legal secured interest in the property. In no event will we pay more than the Limit of Insurance.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1998

54833 (1-06)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONDITIONAL EXCLUSION OF TERRORISM INVOLVING NUCLEAR, BIOLOGICAL OR CHEMICAL TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT OF 2002)

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE PART

**A. Applicability Of This Endorsement**

1. The provisions of this endorsement will apply if and when one of the following situations occurs:

    a. The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act of 2002, terminates; or

    b. The Program is renewed, extended or otherwise continued in effect:

        (1) With revisions that increase insurers' statutory percentage deductible or decrease the federal government's statutory percentage share in potential terrorism losses above such deductible, or that results in a change in the level or terms or conditions of coverage; and

        (2) We are not required by the Program to make terrorism coverage available to you and elect not to do so.

    The Program is scheduled to terminate at the end of December 31, 2005 unless renewed, extended or otherwise continued by act of Congress.

2. When this endorsement becomes applicable in accordance with the terms of A.1.a. or A.1.b., above, it supersedes any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism".

3. If this endorsement does NOT become applicable, then any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism", will remain in effect. However, if the Program is renewed, extended or otherwise continued in effect with revisions that change the level or terms or conditions of coverage, and we are required to offer you the revised coverage or to provide the revised coverage to those who previously accepted coverage under the Program, then we will take the appropriate steps in response to the federal requirements.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright ISO Properties, Inc., 2004

Page 1 of 2

**B.** The following definition is added and applies under this endorsement wherever the term terrorism is enclosed in quotation marks.

"Terrorism" means activities against persons, organizations or property of any nature:

1. That involve the following or preparation for the following:

   a. Use or threat of force or violence; or

   b. Commission or threat of a dangerous act; or

   c. Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

2. When one or both of the following applies:

   a. The effect is to intimidate or coerce a government or the civilian population or any segments thereof, or to disrupt any segment of the economy; or

   b. It appears that the intent is to intimidate or coerce a government or the civilian population, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

**C.** The following exclusion is added:

**Exclusion Of "Terrorism"**

We will not pay for loss or damage caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. This exclusion applies only when one or more of the following are attributed to an incident of "terrorism":

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination;

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material;

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, regardless of whether this endorsement was in effect during the entirety of that time period or not.

**D. Exception To Exclusion Of "Terrorism" For Certain Fire Losses**

If "terrorism" results in fire, we will pay for the loss or damage caused by that fire, subject to all applicable policy provisions including the Limit of Insurance on the affected property. Such coverage for fire applies only to direct loss or damage caused by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements that apply to those coverage forms or to the Legal Liability Coverage Form.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright ISO Properties, Inc., 2004

Page 2 of 2

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**    55006 (7-87)

# VOLUNTARY PROPERTY DAMAGE ENDORSEMENT

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE COMMERCIAL GENERAL LIABILITY COVERAGE PART.**

It is agreed the following coverage is added:

**COVERAGE**

**INSURING AGREEMENT**

We agree to pay, at your request, for loss to property of others:

1.    which is caused by an insured; or
2.    while in the insured's possession; and
3.    arising out of operations:

      a.    away from the insured's premises; and
      b.    incidental to your business covered by the policy.

**EXCLUSIONS**

This coverage does not apply to:

1.    loss to property:

      a.    held by the insured for servicing, repair, storage or sale at premises or the ways immediately adjoining which are:
         (a)    owned;
         (b)    rented or leased; or
         (c)    operated or used;
         by the insured.
      b.    while being transported by, caused by or which occurs during the loading or unloading of any:
         (a)    automobile, motorcycle, trailer; or
         (b)    watercraft or aircraft;
         owned, hired, used by or on behalf of the insured.
      c.    owned, rented to, leased to, borrowed by or used by the insured.

2.    the cost of repairing or replacing any:

      a.    work performed or completed by the insured or his sub contractor which is incorrect or defective;
      b.    product manufactured, sold or supplied by or work completed by the insured or his sub contractor, unless such damage or destruction:
         (a)    is caused directly by the insured after the product is delivered or the work completed; and
         (b)    results from a subsequent undertaking;
      c.    property because of liability of others assumed by the insured under a contract or agreement;
      d.    product manufactured, sold, handled or distributed by the insured or a concessionaire because of a warranty of such product; or
      e.    work completed by the insured or his sub contractor because of warranty of such work.

3.  loss to property caused by or resulting from:

    a.  blasting;
    b.  excavation or related filling or backfilling;
    c.  drilling, tunneling, pile driving, coffer-dam or caisson work; or
    d.  moving, shoring, underpinning, raising or demolition of any building or structure or rebuilding of the structural support of any such structure.

4.  loss to property caused by or resulting from the operations of an independent contractor for the insured, but this exclusion does not apply to such contractors if coverage for property damage liability is provided by the policy.

5.  loss to property caused by or arising out of the "products - completed operations hazard" as defined in this policy.

6.  the disappearance or abstraction of property.

## DEDUCTIBLE

The amount of $250 shall be deducted from the amount of each loss "occurrence" covered by this endorsement.

## ADDITIONAL CONDITIONS

## DEFINITIONS

"Loss" means unintentional damage or destruction, including loss of use, but does not include disappearance or abstraction.

## LIMITS OF LIABILITY

Our liability under this endorsement is limited to $5,000 of any one "occurrence", subject to a total aggregate limit of $25,000 which is the amount we will pay for the loss covered under this endorsement for any one policy period.

## OTHER INSURANCE

If there is other valid and collectible insurance available to the insured for a loss covered under this endorsement, this insurance is excess over such other insurance.

## REPAIR OR REPLACEMENT OF DAMAGED PROPERTY

If we request it, the insured shall replace the damaged or destroyed property or furnish the labor or materials necessary to repair such property at actual cost to the insured excluding any profit or overhead.

All other terms and conditions of the policy apply.

55029 (7-87)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## ABSOLUTE ASBESTOS EXCLUSION ENDORSEMENT

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE COMMERCIAL GENERAL LIABILITY COVERAGE PART.**

No coverage is provided by this policy for any claim, suit, action or proceeding against the insured arising out of the discharge, dispersal, release, escape or inhalation of any asbestos related particle, dust, irritant, contaminant, pollutant, toxic element or material.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**     55050 (6-01)

## AMENDMENT OF GENERAL AGGREGATE LIMIT

It is agreed:

The following is added to LIMITS OF INSURANCE (Section III):

Beginning with the effective date of this policy, we will provide twice the General Aggregate Limit (other than Products-Completed Operations), shown in the Declarations.

If this policy is written for more than one 12 month period, the General Aggregate Limit for each 12 month period shall never exceed twice the General Aggregate Limit shown in the Declarations. The General Aggregate Limit applies separately to each 12 month period starting with the beginning of the policy period shown in the Declarations.

55064 (7-87)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## MOTOR VEHICLE LAWS

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE COMMERCIAL GENERAL LIABILITY COVERAGE PART.**

It is agreed the following is added to COMMERCIAL GENERAL LIABILITY CONDITIONS:

We will provide coverage:

1.   up to the minimum required limits; and
2.   subject to all the terms and conditions of the policy;

to comply with any motor vehicle insurance law to the extent such law applies to the "mobile equipment" covered by this coverage part.

All other terms and conditions of the policy apply.

55069 (1-88)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

# CONTRACTUAL COVERAGE AMENDATORY
## ENDORSEMENT

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE COMMERCIAL GENERAL LIABILITY COVERAGE FORM.**

It is agreed:

Under Section I - COVERAGE A, Item 2 Exclusions:

Exclusion b. is deleted and replaced by the following:

b.    "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

    (1)    Assumed in a contract or agreement that is an "insured contract".  However, if the insurance under this policy does not apply to the liability of the insured, it also does not apply to such liability assumed by the insured under an "insured contract".

    (2)    That the insured would have in the absence of the contract or agreement.

All other terms and conditions of the policy apply.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.** 55118 (8-91)

# POLLUTION EXCLUSION ENDORSEMENT
## PERSONAL INJURY LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Under SECTION I - COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY, 2. EXCLUSIONS, exclusion c. is added:

c. (1) "Personal injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(i) if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

(ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraphs (a) and (d) (i) do not apply to "personal injury" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing from, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

All other policy terms and conditions apply.

Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, 1982, 1988

55145 (12-01)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF POLLUTION EXCLUSION -
# EXCEPTION FOR BUILDING HEATING EQUIPMENT

This endorsement modifies insurance provided under the COMMERCIAL GENERAL LIABILITY COVERAGE FORM,

It is agreed:

Under **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions**, exclusion **f.**, subparagraph **(1) (a)** is deleted and replaced by the following:

This insurance does not apply to:

**f. (1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to any insured.  However, this subparagraph, **(a)**, does not apply to "bodily injury" if sustained within a building at such premises, site or location and caused by smoke, fumes, vapor or soot from equipment used to heat a building at such premises, site or location.

All other policy terms and conditions apply.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1996, 1997

Page 1 of 1

Exhibit A - Page 163 of 198

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.    55146 (7-96)

## UPSET AND OVERSPRAY COVERAGE

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE COMMERCIAL GENERAL LIABILITY COVERAGE PART.

It is agreed the coverage for "property damage" liability with respect to your operations is extended as follows:

1. **COVERAGE**

   We will pay those sums which you become legally obligated to pay for "property damage" caused directly by immediate, abrupt and accidental:

   a.  upset, overturn or collision of your "mobile equipment" while transporting; or

   b.  "overspray" during your application or dispersal of;

   "pollutants" which are intended for and normally used in your operations. The operations must be in compliance with local, state, and federal ordinances and laws.

   This is not an additional amount of insurance and does not increase the LIMITS OF INSURANCE stated in the Declarations.

2. **EXCLUSIONS**

   a.  With regard only to the coverage provided by this endorsement, SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, f. is deleted and replaced by the following:

       f.  Any loss, cost or expense arising out of any:

           (1)  request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

           (2)  claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

   b.  The following exclusion is added under SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions:

       o.  This coverage does not apply to "overspray" resulting from aerial application or dispersal of "pollutants".

   All other policy exclusions apply.

3. **DEDUCTIBLE**

   Any deductible provision of the policy which is applicable to Property Damage Liability coverage applies to this coverage extension.

4. **DEFINITIONS**

The following definitions apply in addition to those in the policy.

"Overspray" means spray, from a device specifically designed for spray application or dispersal, that goes beyond the entire area of intended application or dispersal.

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, liquids, gases and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

All other policy terms and conditions apply.

55152 (8-94)

**Illinois**
# COMMUNICABLE DISEASES EXCLUSION

It is agreed:

1.  The following exclusion is added and applies to:

    a.  Business Liability Coverage; and

    b.  Medical Expenses Coverage.

2.  **EXCLUSION**

    This policy does not apply to "bodily injury", "personal injury" or medical expenses for "bodily injury" arising out of or resulting from the transmission of:

    a.  human immunodeficiency virus (HIV);

    b.  acquired immune deficiency syndrome (AIDS);

    c.  herpes; or

    d.  any sexually transmitted disease;

    by any insured.

All other policy terms and conditions apply.

55200 (6-96)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF LOCATION AND PROJECT AGGREGATE LIMITS OF INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

1.  The General Aggregate Limit under LIMITS OF INSURANCE (Section III) applies separately to each of your "locations" owned by or rented to you.

    "Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

2.  The General Aggregate Limit under LIMITS OF INSURANCE (SECTION III) applies separately to each of your projects away from premises owned by or rented to you.

Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1984

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

55209 (1-01)

# EXCLUSION - COMPLETED OPERATIONS - PROPERTY DAMAGE TO YOUR WORK

This endorsement modifies insurance provided under the COMMERCIAL GENERAL LIABILITY COVERAGE PART

Under **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions**, exclusion l. is deleted and replaced by the following:

**2. Exclusions**

l.  "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

All other policy terms and conditions apply.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright Insurance Services Office, Inc., 1982, 1988, 1999

COMMERCIAL GENERAL LIABILITY
55229 (1-02)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURING AGREEMENT - KNOWN INJURY OR DAMAGE

This endorsement modifies insurance provided under the COMMERCIAL GENERAL LIABILITY COVERAGE PART.

It is agreed:

Paragraph 1. Insuring Agreement of COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I) is deleted and replaced by the following:

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (Section III); and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period; and

      (3) Prior to the policy period, no insured listed under Paragraph 1. of WHO IS AN INSURED (Section II) and no employee authorized by you to give or receive notice of an "occurrence" or claim, knew or should have known that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized employee knew or should have known, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   c. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of WHO IS AN INSURED (Section II) or any employee authorized by you to give or receive notice of an "occurrence" or claim:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1982, 1988, 1998

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**d.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

All other policy terms and conditions apply.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1982, 1988, 1998

55238 (4-02)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FUNGI OR BACTERIA EXCLUSIONS

This endorsement modifies insurance provided under the COMMERCIAL GENERAL LIABILITY COVERAGE PART.

**A.** The following exclusions are added to paragraph 2. Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I):

**1.** Bodily injury" or "property damage" arising out of, in whole or in part, the actual, alleged or threatened in-halation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria, whether airborne or not, on or within a building or structure, including its contents. This exclusion applies whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**2.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person, entity or governmental authority.

These exclusions do not apply to any "fungi" or bacteria that are on, or are contained in, a good or product intended for human consumption.

**B.** The following exclusions are added to paragraph a. of 2. Exclusions of COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY (Section I):

**1.** Arising out of, in whole or in part, the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria, whether airborne or not, on or within a building or structure, including its contents. This exclusion applies whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**2.** For any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person, entity or governmental authority.

**C.** The following definition is added to DEFINITIONS (Section V):

"Fungi" means any type or form of fungus, including but not limited to, any mold, mildew, mycotoxins, spores, scents or byproducts produced or released by any type or form of fungus.

All other policy terms and conditions apply.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright Insurance Services Office, Inc., 1982, 1988, 2001

55403 (7-04)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**Illinois**
**COMMERCIAL GENERAL LIABILITY PLUS ENDORSEMENT**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE COMMERCIAL GENERAL LIABILITY COVERAGE PART.**

It is agreed the insurance provided under this Coverage Part is amended as follows:

1.  **EXTENDED WATERCRAFT COVERAGE**

    Under COVERAGE A., 2. Exclusions, exclusion g.(2) is deleted and is replaced by the following:

    (2)  A watercraft you do not own that is:

        (a)  Less than 50 feet long; and

        (b)  Not being used to carry persons or property for a charge;

2.  **BROADENED SUPPLEMENTARY PAYMENTS COVERAGE**

    Under SUPPLEMENTARY PAYMENTS - COVERAGES A. and B.:

    a.  item 2., the amount we will pay for the cost of bail bonds in increased from $250 to $500.

    b.  item 4., the amount we will pay for the actual loss of earnings is increased from $100 per day to $150 per day.

3.  **PRODUCTS-COMPLETED OPERATIONS AGGREGATE REINSTATEMENT**

    The following is added to the section LIMITS OF INSURANCE:

    If the Products-Completed Operations Aggregate limit is exhausted, as a result of losses occurring during the policy period because of payment of judgments or settlements, we will reinstate that aggregate limit for losses occurring during the same policy period.  We will reinstate such limit only once for each policy period.  Further, our liability:

    a.  with respect to any one occurrence, shall never exceed the aggregate limit; or

    b.  with respect to all occurrences during the policy period, shall never exceed two times the aggregate limit.

4.  **PERSONAL INJURY EXTENSION COVERAGE**

    a.  Under the section DEFINITIONS, the following is added to the definition for "Personal Injury":

        f.  discrimination and humiliation.

Page 1 of 2

b.  Under COVERAGE B., 2. Exclusions, the following exclusion is added:

c.  Any alleged or actual "personal injury" if directly or indirectly related to the past, present or prospective employment of any person or persons by an insured.

All other terms and conditions of the policy apply.

Page 2 of 2

55405 (1-06)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONDITIONAL EXCLUSION OF TERRORISM INVOLVING NUCLEAR, BIOLOGICAL OR CHEMICAL TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT OF 2002)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

**A. Applicability Of This Endorsement**

1. The provisions of this endorsement will apply if and when one of the following situations occurs:

    a. The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act of 2002, terminates; or

    b. The Program is renewed, extended or otherwise continued in effect:

        (1) With revisions that increase insurers' statutory percentage deductible or decrease the federal government's statutory percentage share in potential terrorism losses above such deductible, or that results in a change in the level or terms or conditions of coverage; and

        (2) We are not required by the Program to make terrorism coverage available to you and elect not to do so.

    The Program is scheduled to terminate at the end of December 31, 2005 unless renewed, extended or otherwise continued by act of Congress.

2. When this endorsement becomes applicable in accordance with the terms of A.1.a. or A.1.b., above, it supersedes any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism".

3. If this endorsement does NOT become applicable, then any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism", will remain in effect. However, if the Program is renewed, extended or otherwise continued in effect with revisions that change the level or terms or conditions of coverage, and we are required to offer you the revised coverage or to provide revised coverage to those who previously accepted cover-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright ISO Properties, Inc., 2004

Page 1 of 2

**age under the Program, then we will take the appropriate steps in response to the federal requirements.**

B. The following definition is added and applies under this endorsement wherever the term terrorism is enclosed in quotation marks.

"Terrorism" means activities against persons, organizations or property of any nature:

1. That involve the following or preparation for the following:

   a. Use or threat of force or violence; or

   b. Commission or threat of a dangerous act; or

   c. Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

2. When one or both of the following applies:

   a. The effect is to intimidate or coerce a government or the civilian population or any segments thereof, or to disrupt any segment of the economy; or

   b. It appears that the intent is to intimidate or coerce a government or the civilian population, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

C. The following exclusion is added:

**Exclusion Of "Terrorism"**

We will not pay for "bodily injury", "property damage", "personal injury" or "advertising injury" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". All "bodily injury", "property damage", "personal injury" or "advertising injury" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. This exclusion applies only when one or more of the following are attributed to an incident of "terrorism":

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination;

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material;

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, regardless of whether this endorsement was in effect during the entirety of that time period or not.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright ISO Properties, Inc., 2004

Page 2 of 2

59006 (11-90)

# POLICYHOLDER ASSISTANCE AND INFORMATION

Dear Policyholder:

We are here to serve you and as our policyholder your satisfaction is very important to us.  Should you have any questions or a complaint regarding your policy that cannot be resolved by your agent, you may contact our Illinois Branch Office for assistance.  Please direct your inquiries to:

Branch Manager
Auto-Owners Insurance Company
6715 North Big Hollow Rd.
Peoria, Illinois  61615
P.O. Box 3337
Peoria, Illinois  61612-3337
Telephone:  309-693-2550

If after contacting our Illinois Branch Office, you are not satisfied, you may contact the Illinois Department of Insurance for further assistance at the following address:  Public Services Section, Department of Insurance, 320 West Washington, Springfield, Illinois 62767.

Auto-Owners Insurance Company
Owners Insurance Company
Auto-Owners Life Insurance Company

59350 (2-03)

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM
# AND
# IMPORTANT INFORMATION REGARDING TERRORISM RISK INSURANCE COVERAGE

It is agreed:

1.  With respect to any one or more certified acts of terrorism, we will not pay any amounts for which we are not responsible because of the application of any provision which results in a cap on our liability for payments for terrorism losses in accordance with the terms of the federal Terrorism Risk Insurance Act of 2002 (including ensuing Congressional actions pursuant to the Act).

2.  Certified act of terrorism means any act certified by the Secretary of the Treasury, in concurrence with:

    a.  the Secretary of State; and

    b.  the Attorney General of the United States;

    to be an act of terrorism as defined and in accordance with the federal Terrorism Risk Insurance Act of 2002.

3.  Under the federal Terrorism Risk Insurance Act of 2002 a terrorist act may be certified:

    a.  if the aggregate covered commercial property and casualty insurance losses resulting from the terrorist act exceed $5 million; and

    b.  (1)  if the act of terrorism is:

        a)  a violent act; or

        b)  an act that is dangerous to human life, property or infrastructure; and

    (2)  if the act is committed:

        a)  by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States; or

        b)  to influence the policy or affect the conduct of the United States government by coercion.

All other policy terms and conditions apply.

Page 1 of 2

# IMPORTANT INFORMATION REGARDING TERRORISM RISK
# INSURANCE COVERAGE

The Terrorism Risk Insurance Act of 2002 was signed into law on November 26, 2002. The Act defines an act of terrorism, to mean any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States to be (i) an act of terrorism; (ii) to be a violent act or an act that is dangerous to human life, property or infrastructure; (iii) to have resulted in damage within the United States or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and (iv) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States government by coercion.

Subject to the policy terms and conditions, this policy provides insurance coverage for acts of terrorism as defined in the Act.

Any coverage for commercial lines of property and casualty insurance provided by your policy for losses caused by certified acts of terrorism are partially paid by the federal government under a formula established by federal law. Under this formula, the government will pay 90% of such covered losses that exceed the statutory deductible paid by us for commercial lines of property and casualty insurance defined in the Act. You should also know that the federal government and participating United States insurers are required to provide coverage for total losses of $100 billion annually. In the event that aggregate insured losses exceed $100 billion annually, no additional claims will be paid by the federal government or insurers. This formula is currently effective through December 31, 2005.

The premium charge, if any, for this coverage is shown separately on the attached Declarations page. In the event of a certified act of terrorism, future policies also may include a government assessed terrorism loss risk-spreading premium in accordance with the provisions of the Act.

Please contact us if you would like to reject coverage for certified acts of terrorism.

Page 2 of 2

59390 (10-04)

# NOTIFICATION OF POSSIBLE CHANGES IN COVERAGE FOR TERRORISM

Dear Policyholder:

The Terrorism Risk Insurance Act of 2002 was signed into law on November 26, 2002 and will expire on December 31, 2005 unless the Federal Government extends the Act. What this means to you is the following:

1.  Subject to policy terms and conditions, the enclosed policy will provide insurance coverage for certified acts of terrorism as defined in the Act only until December 31, 2005.

2.  A conditional endorsement entitled, Conditional Exclusion Of Terrorism Involving Nuclear, Biological Or Chemical Terrorism (Relating To Disposition Of Federal Terrorism Risk Insurance Act of 2002) is enclosed. This conditional endorsement will only apply if the Act is not extended beyond December 31, 2005 or if the Act is revised to increase statutory deductibles, decrease the federal government's share in potential losses above the statutory deductibles, change the levels, terms or conditions of coverage and we are no longer required to make terrorism coverage available and elect not to do so. It will not apply if the Act is simply extended.

3.  The conditional endorsement will provide coverage for an incident of terrorism pursuant to the terms and conditions of the policy only if the incident does not involve nuclear, biological or chemical material.

4.  A premium charge for the conditional endorsement will be applied effective January 1, 2006. The premium will be prorated for the remainder of the policy term and is one-half of the current premium charge appearing in the Declarations for FOREIGN TERRORISM - CERTIFIED ACTS. Revised Declarations will be mailed to you after January 1, 2006.

5.  If the Act is extended without any revision, the enclosed policy will continue to exclude coverage for certified acts of terrorism. The conditional endorsement will not be activated and the changes in coverage or premium referenced above will not apply.

6.  If the Act is extended with revisions or is replaced, and we are required or elect to continue to offer coverage for certified acts of terrorism, we may amend this policy in accordance with the provisions of the revised Act or its replacement.

This notice is for informational purposes only.

If you have any questions concerning your policy or this notice, please contact your Auto-Owners agency.

IL 00 03 11 85

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
BUSINESS AUTO COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY - NEW YORK

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued.  On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

Copyright, Insurance Services Office, Inc., 1983
Copyright, ISO Commercial Risk Services, Inc., 1983

# COMMON POLICY CONDITIONS

IL 00 17 11 85

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATIONS OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

Copyright, Insurance Services Office, 1982, 1983

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, 1982, 1983

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

IL 00 21 11 85

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage:"

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United State of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material," if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or

IL 00 21 11 85           Copyright, Insurance Services Office, Inc., 1983, 1984           **Page 1 of 2**

possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

"Hazardous properties" include radioactive, toxic or explosive properties;

"Nuclear material" means "source material," "Special nuclear material" or "by-product material;"

"Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor;"

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

(a) Any "nuclear reactor;"

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste;"

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste;"

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

Copyright, Insurance Services Office, Inc., 1983, 1984

IL 02 84 05 90

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART

**A.** The CANCELLATION Common Policy Condition is replaced by the following:

**CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

2. If this policy has been in effect for 60 days or less, except as provided in paragraphs 9 and 10 below, we may cancel this policy by mailing written notice of cancellation at least:

   **a.** 10 days before the effective date of cancellation if we cancel for non-payment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

3. If this policy has been in effect for more than 60 days, except as provided in paragraphs 9 and 10 below, we may cancel this policy only for one or more of the following reasons:

   **a.** Nonpayment of premium;

   **b.** The policy was obtained through a material misrepresentation:

   **c.** You have violated any of the terms and conditions of the policy;

   **d.** The risk originally accepted has measurably increased;

   **e.** Certification to the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or

   **f.** A determination by the Director that the continuation of the policy could place us in violation of the insurance laws of this State.

   If we cancel this policy based on one or more of the above reasons except for nonpayment of premium, we will mail written notice at least 60 days before the effective date of cancellation. When cancellation is for nonpayment of premium, we will mail written notice at least 10 days before the effective date of cancellation.

4. We will mail our notice to you, any mortgagee or lienholder known to us and to the agent or broker, at the last addresses known to us.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

Copyright, Insurance Services Office, Inc., 1990
Copyright, ISO Commercial Risk Services, Inc., 1990

7. Proof of mailing will be sufficient proof of notice.

8. Our notice of cancellation will state the reason for cancellation.

9. **REAL PROPERTY OTHER THAN RESIDENTIAL PROPERTIES OCCUPIED BY 4 FAMILIES OR LESS:**

   The following applies only if this policy covers real property other than residential property occupied by 4 families or less:

   If any one or more of the following conditions exists at any building that is Covered Property in this policy, we may cancel this policy by mailing to you written notice of cancellation at least 10 days before the effective date of cancellation.

   a. After a fire loss, permanent repairs to the building have not started within 60 days of satisfactory adjustment of loss, unless the delay is due to a labor dispute or weather conditions.

   b. The building has been unoccupied 60 or more consecutive days.  This does not apply to:

      (1) Seasonal occupancy; or

      (2) Buildings under repair, construction or reconstruction, if properly secured against unauthorized entry.

   c. The building has:

      (1) An outstanding order to vacate;

      (2) An outstanding demolition order; or

      (3) Been declared unsafe in accordance with the law.

   d. Heat, water, sewer service or public lighting have not been connected to the building for 30 consecutive days or more.

10. **RESIDENTIAL PROPERTIES OCCUPIED BY 4 FAMILIES OR LESS:**

    The following applies if this policy covers residential properties occupied by 4 families or less.

    If this policy has been in effect for 60 days, or if this is a renewal policy, we may only cancel this policy for one or more of the following reasons:

    a. Nonpayment of premium;

    b. the policy was obtained by misrepresentation or fraud; or

    c. Any act that measurably increases the risk originally accepted.

The provisions of paragraphs 9 and 10 above do not apply to coverage under the Glass Coverage Form.

11. For insurance provided under the COMMERCIAL PROPERTY COVERAGE PART, the following applies:

    **GRAIN IN PUBLIC GRAIN WAREHOUSES**

    (Not applicable to grain owned by the Commodity Credit Corporation.)

    The following applies only with respect to grain in public grain warehouses:

    The first Named Insured or we may cancel this policy at any time by mailing to:

    a. The other; and

    b. The Director of the Illinois Department of Agriculture (at its Springfield Office);

    60 days' written notice of cancellation.

B. The following is added:

    **NONRENEWAL**

    1. If we decide not to renew this policy, we will mail written notice stating the reason for

Copyright, Insurance Services Office, Inc., 1990
Copyright, ISO Commercial Risk Services, Inc., 1990

nonrenewal to your last mailing address known to us at least 60 days before the expiration of the policy. A copy of the notice will also be sent to:

a. The broker, if known to us, or the agent of record; and

b. The last known mortgagee or lienholder named in the policy at the last mailing address known to us.

This paragraph does not apply if we have manifested our willingness to renew directly to you.

2. The following provision applies only if this policy covers residential properties occupied by 4 families or less:

If this policy has been issued to you and in effect with us for 5 or more years, we may not fail to renew this policy unless:

a. The policy was obtained by misrepresentation or fraud;

b. The risk originally accepted has measurably increased; or

c. You received 60 days' notice of our intent not to renew as provided in 1. above.

The provisions of paragraph B.2. above do not apply to coverage under the Glass Coverage Form.

Copyright, Insurance Services Office, Inc., 1990
Copyright, ISO Commercial Risk Services, Inc., 1990

# *Owners*

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

Issued  12-23-2005

**TAILORED PROTECTION POLICY DECLARATIONS**

Change Endorsement Effective 12-07-2005

AGENCY  FISHER-SCHOL AGENCY INC
       04-0248-00    MKT TERR 097    (630) 587-9000    **POLICY NUMBER  054604-07424498-05**

INSURED  COMPLETE MECHANICAL SERVICES INC

ADDRESS  PO BOX 3038

SAINT CHARLES, IL  60174-9099

Company
Bill

| POLICY TERM | |
|---|---|
| 12:01 a.m. | 12:01 a.m. |
| 06-28-2005 to | 06-28-2006 |

---

# FOR COMPANY/AGENCY USE ONLY

The following attachments were issued with this policy transaction.

Premium/Commission Recap:        $362 @ 12.0%

Billing Type: Company Bill    MONTHLY        Account  008169632
Insured Copy Mailed to:  Agency

Trailback Date: 09-26-2005        User-ID: E001716
Original Effective Date: 06-28-2005

AGENCY 04-0248-00    POLICY 054604-07424498

13271 (8-99)

FISHER-SCHOL AGENCY INC
700 S RANDALL RD # 4
SAINT CHARLES, IL  60174



**Auto-Owners Insurance**
Life Home Car Business
The No Problem People®

12-23-2005

P.O. BOX 30660, LANSING, MICHIGAN 48909-8160 • 517-323-1200
AUTO-OWNERS INSURANCE COMPANY
AUTO-OWNERS LIFE INSURANCE COMPANY
HOME-OWNERS INSURANCE COMPANY
OWNERS INSURANCE COMPANY
PROPERTY-OWNERS INSURANCE COMPANY
SOUTHERN-OWNERS INSURANCE COMPANY

COMPLETE MECHANICAL SERVICES INC

PO BOX 3038

SAINT CHARLES, IL  60174-9099

Thank you for allowing Auto-Owners to handle your insurance needs.

Auto-Owners Insurance Group is financially sound with sufficient reserves to be ranked among the leaders in the industry for financial security.  Our A++ (Superior) rating by the A.M. Best Company signifies that we have the financial strength to provide the insurance protection you need.

Feel free to contact your Auto-Owners agency with any questions you may have about your insurance needs.    Your agency's phone number is (630) 587-9000.

Auto-Owners Insurance - The "No Problem" People®

* * * * * * * **THIS IS NOT A BILL.** * * * * * * *
**IF ADDITIONAL PREMIUM IS OWED, A BILL WILL BE MAILED SEPARATELY.  PLEASE PAY ANY UNPAID BILLS.**

*Serving Our Policyholders and Agents for More Than 85 Years*

# *Owners*

Page    1

55055 (7-87)
Issued  12-23-2005

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

**TAILORED PROTECTION POLICY DECLARATIONS**

Change Endorsement Effective 12-07-2005

AGENCY  FISHER-SCHOL AGENCY INC
        04-0248-00     MKT TERR 097     (630) 587-9000     **POLICY NUMBER   054604-07424498-05**
INSURED  COMPLETE MECHANICAL SERVICES INC

ADDRESS  PO BOX 3038

         SAINT CHARLES, IL  60174-9099

| | **POLICY TERM** | |
|---|---|---|
| Company Bill | 12:01 a.m.    12:01 a.m. | |
| | 06-28-2005 to 06-28-2006 | |

---

DESCRIPTION OF CHANGE

LIABILITY COVERAGE - INCREASED PAYROLL TO $910,000 ON CODE 35648

TRANSACTION NUMBER:  003

| ENDORSEMENT PREMIUM: | ADDITIONAL | $362.00 |
|---|---|---|

I certify that this policy was assembled from
available records as a representation of coverage
that was in effect for the policy period shown.

*[signature]*

Date     3-6-08

# *Owners*

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

Issued   12-29-2005

**TAILORED PROTECTION POLICY DECLARATIONS**

Change Endorsement Effective 12-07-2005

AGENCY  FISHER-SCHOL AGENCY INC
        04-0248-00    MKT TERR 097    (630) 587-9000     **POLICY NUMBER   054604-07424498-05**
INSURED  COMPLETE MECHANICAL SERVICES INC

ADDRESS PO BOX 3038

SAINT CHARLES, IL  60174-9099

Company
Bill

| **POLICY TERM** | |
|---|---|
| 12:01 a.m. | 12:01 a.m. |
| 06-28-2005 to | 06-28-2006 |

---

# FOR COMPANY/AGENCY USE ONLY

The following attachments were issued with this policy transaction.

Billing Type:  Company Bill    MONTHLY        Account  008169632
Insured Copy Mailed to:  Agency

Trailback Date: 12-23-2005        User-ID: E001722
Original Effective Date: 06-28-2005

AGENCY 04-0248-00    POLICY 054604-07424498

FISHER-SCHOL AGENCY INC
700 S RANDALL RD # 4
SAINT CHARLES, IL  60174

13271 (8-99)



Life Home Car Business
The "No Problem" People®

12-29-2005

P.O. BOX 30660, LANSING, MICHIGAN 48909-8160 • 517-323-1200
AUTO-OWNERS INSURANCE COMPANY
AUTO-OWNERS LIFE INSURANCE COMPANY
HOME-OWNERS INSURANCE COMPANY
OWNERS INSURANCE COMPANY
PROPERTY-OWNERS INSURANCE COMPANY
SOUTHERN-OWNERS INSURANCE COMPANY

COMPLETE MECHANICAL SERVICES INC

PO BOX 3038

SAINT CHARLES, IL  60174-9099

Thank you for allowing Auto-Owners to handle your insurance needs.

Auto-Owners Insurance Group is financially sound with sufficient reserves to be ranked among the leaders in the industry for financial security. Our A++ (Superior) rating by the A.M. Best Company signifies that we have the financial strength to provide the insurance protection you need.

Feel free to contact your Auto-Owners agency with any questions you may have about your insurance needs.   Your agency's phone number is (630) 587-9000.

Auto-Owners Insurance - The "No Problem" People®

* * * * * * * THIS IS NOT A BILL. * * * * * * *
IF ADDITIONAL PREMIUM IS OWED, A BILL WILL BE MAILED SEPARATELY.  PLEASE PAY ANY UNPAID BILLS.

⌐ *Serving Our Policyholders and Agents for More Than 85 Years* ⌐

*Owners*

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

Page    1

55055 (7-87)
Issued  12-29-2005

**TAILORED PROTECTION POLICY DECLARATIONS**

Change Endorsement Effective 12-07-2005

AGENCY FISHER-SCHOL AGENCY INC
04-0248-00     MKT TERR 097     (630) 587-9000
INSURED COMPLETE MECHANICAL SERVICES INC

**POLICY NUMBER  054604-07424498-05**

ADDRESS PO BOX 3038

SAINT CHARLES, IL  60174-9099

Company
Bill

| **POLICY TERM** | |
|---|---|
| 12:01 a.m. | 12:01 a.m. |
| 06-28-2005 | to | 06-28-2006 |

DESCRIPTION OF CHANGE

ADDED ADDL INSURED TO FORM 55202 AS FOLLOWS:

FCL BUILDERS INC
MARKLUND

TRANSACTION NUMBER:  004

| ENDORSEMENT PREMIUM: | NO CHANGE | $.00 |
|---|---|---|

I certify that this policy was assembled from
available records as a representation of coverage
that was in effect for the policy period shown.

Date_____3-6-08_____

TAILORED PROTECTION POLICY

CANCELLATION

INSURANCE COMPANY
2325 NORTH COLE ST LIMA OH 45801-0000

INSURED: COMPLETE MECHANICAL SERVICES I

      PO BOX 3038
      SAINT CHARLES     IL 60174-9099

POLICY NUMBER 054604 07424498 05
COMPANY BILL

AGENCY:04-0248-00 MKT TERR: 097 PRODUCER:
FISHER-SCHOL AGENCY INC
700 S RANDALL RD # 4
SAINT CHARLES     IL 60174-1504
(630) 587-9000

# FOR COMPANY/AGENCY USE ONLY

1200000000011918

BILLING TYPE:  COMPANY BILL    MONTHLY    ACCOUNT  008169632

55057 (7/87)

Exhibit A - Page 194 of 198

TAILORED PROTECTION POLICY

CANCELLATION

# *Owners*

INSURANCE COMPANY
2325 NORTH COLE ST LIMA OH 45801-0000

POLICY NUMBER 054604 07424498 05
COMPANY BILL

INSURED: COMPLETE MECHANICAL SERVICES I

      PO BOX 3038
      SAINT CHARLES     IL 60174-9099

AGENCY:04-0248-00 MKT TERR: 097 PRODUCER:
FISHER-SCHOL AGENCY INC
700 S RANDALL RD # 4
SAINT CHARLES     IL 60174-1504
(630) 587-9000

POLICY TERM: 06-28-2005 TO 06-28-2006

CANCELLATION INVOICE

THIS POLICY IS CANCELLED AS OF 12:01 A.M. ON 12-28-2005.

A CANCELLATION CREDIT OF $11,918.00 HAS BEEN
APPLIED TO YOUR BILLING ACCOUNT. THIS CREDIT
MAY OR MAY NOT RESULT IN A PREMIUM REFUND
DEPENDING ON YOUR ACCOUNT BALANCE.

PLEASE CONTACT YOUR AGENT CONCERNING ANY
QUESTIONS.

I certify that this policy was assembled from
available records as a representation of coverage
that was in effect for the policy period shown.

_Nancy Vanderkolk_

Date _3-6-08_

55057 (7/87)

2908    01-05-2006

TAILORED PROTECTION POLICY

REINSTATEMENT

INSURANCE COMPANY
2325 NORTH COLE ST LIMA OH 45801-0000

POLICY NUMBER 054604 07424498 05
COMPANY BILL

INSURED: COMPLETE MECHANICAL SERVICES I

        PO BOX 3038
        SAINT CHARLES        IL 60174-9099

AGENCY:04-0248-00 MKT TERR: 097 PRODUCER:
FISHER-SCHOL AGENCY INC
700 S RANDALL RD # 4
SAINT CHARLES        IL 60174-1504
(630) 587-9000

# FOR COMPANY/AGENCY USE ONLY

1200000000011918

BILLING TYPE:  COMPANY BILL    MONTHLY        ACCOUNT  008169632

55059 (7/87)

TAILORED PROTECTION POLICY

REINSTATEMENT

# *Owners*

INSURANCE COMPANY
2325 NORTH COLE ST LIMA OH 45801-0000

POLICY NUMBER 054604 07424498 05
COMPANY BILL

INSURED: COMPLETE MECHANICAL SERVICES I

        PO BOX 3038
        SAINT CHARLES        IL 60174-9099

AGENCY:04-0248-00 MKT TERR: 097 PRODUCER:
FISHER-SCHOL AGENCY INC
700 S RANDALL RD # 4
SAINT CHARLES        IL 60174-1504
(630) 587-9000

POLICY TERM: 06-28-2005  TO  06-28-2006

REINSTATEMENT INVOICE

    IN CONSIDERATION OF      $11,918.00 PREMIUM THIS POLICY
    IS REINSTATED AS OF 12:01 A.M. ON 12-28-2005

THIS IS NOT A BILL

I certify that this policy was assembled from
available records as a representation of coverage
that was in effect for the policy period shown.

Date_____ 3-6-08

55059 (7/87)

2684    01-10-2006



**Auto-Owners Insurance**

Life Home Car Business

*The No Problem People®*

# *Tailored Protection Insurance Policy*

*Owners Insurance Company*